FOLGER LEVIN & KAHN LLP
Michael A. Kahn (SB# 057432) (mkahn@flk.com)
J. Daniel Sharp (SB# 131042) (dsharp@flk.com)
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 986-2800

Attorneys for Petitioners David C. Soward
and & Management Company

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID C. SOWARD and & MANAGEMENT COMPANY,<br><br>Petitioners,<br><br>v.<br><br>LEONARD BOSACK, SANDY LERNER, CARTESIAN PARTNERS, L.P, *et al.*,<br><br>Respondents. | Case No. 3:07-cv-03894-MMC<br><br>**NOTICE OF MOTION AND MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Date: September 21, 2007<br>Time: 9:00 a.m.<br>Place: Courtroom 7, 19th floor<br>Hon. Maxine M. Chesney |

TO RESPONDENTS AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE THAT on September 21, 2007 at 9:00 a.m., or as soon thereafter as the matter may be heard, Petitioners David C. Soward and & Management Company (collectively "Petitioners") will and hereby do move the Court in Courtroom 7, 450 Golden Gate Avenue, San Francisco, California, for an order remanding the above-captioned matter from the United States District Court for the Northern District of California to the Superior Court of the State of California, County of San Francisco.

This motion to remand is made on the grounds that there is no federal subject matter

jurisdiction over the matter, because there is not complete diversity between the parties.

This motion is based on this (1) Notice of Motion and the Memorandum of Points and Authorities filed herewith; (2) the Declaration of J. Daniel Sharp and Request for Judicial Notice filed herewith; and (3) all of the papers on file in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This action follows a lengthy arbitration that took place over more than three years in San Francisco, California, between Petitioner David C. Soward and two extraordinarily wealthy individuals, Leonard Bosack and Sandy Lerner, and various entities they control. The Arbitration Panel found that Bosack and Lerner acted with malice and oppression toward David Soward "for the purpose of making it as difficult as possible for Soward to receive his funds . . . and to hurt him" (Interim Award No. 4, p.16) and that Soward "was literally being crushed financially by Lerner and Bosack." (Interim Award No. 5, p.5)[1]

Soward prevailed in the arbitration and was awarded approximately $24.5 million, including substantial punitive damages and attorneys' fees. Soward promptly filed a petition to confirm the award in San Francisco Superior Court, where he has lived almost his whole life.

Respondents Bosack and Lerner have refused to perform the award and appear intent on continuing their campaign to make it as difficult as possible for him to receive his funds and to hurt him. In addition to the improper removal of this action to federal court, Respondents have improperly initiated additional proceedings in the United States District Court for the Western District of Washington.

Soward now brings this motion to remand this case to San Francisco Superior Court. The Court should remand this action to the state court because there is California citizenship among both Petitioners and Respondents, and thus no diversity jurisdiction.

[1] The Final and Interim Awards are attached to the Declaration of J. Daniel Sharp, filed herewith. The quoted phrases are found at Sharp Decl. Ex. E, p. 16, and Ex. F, p.5.

## II. FACTS

### A. Background and Summary of Arbitration Proceedings[2]

Respondents Leonard Bosack and Sandy Lerner founded Cisco Systems, Inc., in Palo Alto, California, in 1984. Six years later, they severed their ties with Cisco and sold their Cisco stock, realizing a gain "in excess of $100,000,000." (*See* Interim Award #1, pp. 4-5 [Sharp Dec. Ex. B]).

In 1992, Bosack and Lerner hired Petitioner David C. Soward to manage their wealth. Over the next 11 years, Soward achieved excellent results for Bosack and Lerner, increasing their wealth "considerably." (*Id.*, p. 6) At the time of the hearing, their combined net worth was at least $313,000,000. (*See* Interim Award # 5, p.3 [Sharp Dec, Ex. E]). There were four entities for which Soward provided investment management:

- The & Trust, a charitable remainder unitrust, for which Bosack and Lerner were the sole lifetime beneficiaries.
- & Capital Partners, LP, a partnership for which Soward served as general partner, and Bosack and Lerner were limited partners.
- Cartesian Partners, LP, a partnership for which Soward served as general partner, and Bosack and Soward were limited partners.
- The Leonard Bosack and Bette M. Kruger Charitable Foundation, which Bosack and Lerner set up to fund certain charitable endeavors.

*See* Interim Award #1 at p. 6 (Sharp Dec. Ex. B).

In November 2003, Bosack and Lerner abruptly terminated Soward, falsely accusing him of various acts of intentional misconduct, fraud, and conversion. (*See* Interim Award #1, pp. 6-7, [Sharp Decl. Ex. B]; <u>the Arbitration Panel found no acts of intentional wrongdoing by Soward</u>.) Bosack and Lerner refused to pay Soward his past due compensation, and claimed that they were entitled to keep all of Soward's partnership interests as their own.

---

[2] All of the facts recited herein were found by the Arbitration Panel in the Interim and Final Awards issued in the underlying arbitration.

On February 3, 2004, Soward filed a demand for arbitration with the American Arbitration Association ("AAA") in San Francisco. (*Id.*, p. 7) Bosack and Lerner responded with scorched-earth litigation. As Bosack explained, "certainly after he sued us he wasn't going to get much. Somehow being sued disimproves one's mood with regard to these things." (Interim Award #4, p. 15 [Sharp Decl. Ex. D])

The arbitration consumed "countless hours" on more than 60 hearing days scattered over more than two years, with over 500 exhibits, thirty witnesses, five interim awards, and nearly 50 written hearing orders. (Final Award, pp. 2-3 [Sharp Decl. Ex. A]). The hearing transcripts consumed more than 13,000 pages (excluding depositions). In the end, the Arbitration Panel found in favor of Soward on each of his claims, ruling that he was owed compensation by each of the four entities for which he provided management services. (Interim Award #1, pp. 55-58 [Sharp Decl. Ex. B]). They also found "by clear and convincing evidence that both Bosack and Lerner have acted with malice and oppression towards Soward, and that Soward is entitled to punitive damages from them." (Interim Award # 5, p. 2 [Sharp Decl. Ex. E]).

**B. Bosack and Lerner's Forum-Shopping Efforts Intended to Increase the Burden and Expense for Soward**

In 2004, after Soward filed for arbitration with the AAA, Bosack and Lerner initially refused to consent to arbitration, and in July 2004 filed the action *Bosack et al. v. Soward et al.,* Case No. CV-04-1664 in Federal District Court in Seattle, Washington. (*See* Interim Award #1, p.8 [Sharp Decl. Ex. B]). In November 2004, the Washington court granted Soward's motion for a stay pending the completion of the arbitration. (*Id.*) Thereafter, in order to assert counterclaims against Soward seeking many multiples of his net worth, Bosack and Lerner waived their objections to arbitration and "elected to assert their claims in the present arbitration." (*Id.*) Thus, Bosack and Lerner agreed to arbitration in California, although their lawsuit in Washington remained pending and stayed.

In 2007, after it was clear that Bosack and Lerner had lost the arbitration and that the

Panel intended to award punitive damages against them, Bosack and Lerner voluntarily dismissed their federal action in Washington, but immediately re-filed a new action in the same court seeking to vacate one of the interim awards made by the arbitrators. (Sharp Decl. Ex. F). Soward responded by filing a motion to dismiss the second Washington action for lack of subject matter jurisdiction. Without waiting for Bosack and Lerner's response to Soward's jurisdictional motion, the District Judge in Washington (Hon. Thomas Zilly) *sua sponte* issued an order again staying the litigation in its entirety. (*Id.* Ex. G). The stay order remains in effect. (*Id.* ¶ 10, Ex. H)

**C. Jurisdictional Facts Regarding Diversity of Citizenship**

Respondent Cartesian Partners LP ("Cartesian Partners") is a Delaware limited partnership formed in 1999 by Petitioner Soward and Respondent Bosack. (*See* Interim Award #1, p. 14 [Sharp Decl. Ex. B]) Soward contributed $526,636 in capital and was the general partner. Bosack was a limited partner, and his capital contribution was $9,500,000. (*Id.*, pp. 14-15) Soward at all relevant times has resided in San Francisco; Bosack, in Washington. (*Id.*)

Soward attempted to memorialize the Cartesian partnership agreement by hiring San Francisco attorney Rob Wood to draft a written agreement. (*Id.*) Soward sent the written agreement to Bosack, but Bosack neglected to sign and return it. (*Id.*, p. 15). Nevertheless, the parties "commenced to implement its terms." (*Id.*). The Arbitration Panel found that the "Wood agreement" sets forth the relevant terms of Cartesian Partners. (*Id.*, pp. 16-17)

In 2003, Bosack and Lerner purported to oust Soward from Cartesian Partners (along with all his other positions) and to install a newly-created entity called SLLB, LLC as general partner. (Interim Award #4 at p. 5 [Sharp Decl. Ex. D]) However, under the Wood agreement and Delaware law, Lerner and "Bosack had no right to remove [Soward] as a General Partner," and their wrongful attempt to do so gave Soward the status "of a 'special' limited partner." (Interim Award #1 at p.16, *see* Interim Award #4 at p.8 [Sharp Decl. Exs. B, D]).

The Arbitration Panel issued awards in favor of Soward on all three of Soward's claims pertaining to his partnership interest in Cartesian Partners:

Dissolution and Accounting: In Interim Awards #1 and #3, the Panel found that "Soward is and continues to be a partner, albeit not the general partner, in Cartesian and is entitled to be paid the value of his capital account as of September 30, 2006," and decreed that Cartesian should be dissolved in the event that Soward was not paid within 60 days. (*See* Interim Award #1 at 19-20; Interim Award # 3 at 3 [Sharp Decl. Exs. B, C])

Breach of Fiduciary Duty: In Interim Award #4, the Panel found that Bosack is "liable for an intentional breach of fiduciary duty in failing both to account to Soward for the value of his interest in Cartesian within a reasonable time and to pay him the value of that interest." (*See* Interim Award #4 at 20 [Sharp Decl. Ex. D])

Conversion: The Panel found that Bosack and Lerner's attempt to take Soward's interest amounted to "willful conversion." (*Id.*, p. 25.)

In addition, the Panel ruled in favor of Cartesian Partners and against Soward with respect to the amount of interest collected on a loan made by the partnership. (Interim Award #1, pp. 54-55, 59, [Sharp Decl. Ex. B])

Soward brought the present action in San Francisco Superior Court to obtain a court judgment against Respondents Cartesian Partners, Bosack, and Lerner confirming the foregoing findings and the Final Award of the arbitrators. Respondents have removed the action to this court, claiming diversity of citizenship. However, diversity does not appear on the face of Soward's state court complaint, which states:

> **Cartesian Partners, LP**, a limited partnership comprised of **Soward** and **Bosack**. (Upon confirmation of the Final Award of the arbitrators, Soward will be deemed to have withdrawn from Cartesian Partners, LP)

Attachment 1 to Soward's Petition to Confirm Arbitration Award (Sharp Decl. Ex. A) If the Final Award is vacated as sought by Respondents, Soward would be forced to undergo a new

arbitration to vindicate his rights as a partner in Cartesian Partners as found by the Arbitration Panel. As set forth below, unless and until there is a court judgment confirming the findings made by the arbitrators, Soward remains a partner in Respondent Cartesian Partners. Thus, there is no diversity of citizenship for purposes of 28 U.S.C. § 1332 or § 1441 and no federal jurisdiction.

## III. ARGUMENT

### A. Removal Jurisdiction Is to be Strictly Construed, and Petitioners Bear the Burden of Proving Federal Jurisdiction.

For removal to be proper, diversity must exist both at the time the action was commenced and at the time of removal. *Strotek Corp. v. Air Transport Ass'n of* America, 300 F.3d 1129, 1131 (9th Cir. 2002). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper" by a preponderance of the evidence. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

The Federal Arbitration Act ("FAA") does not confer subject matter jurisdiction on the federal courts. *Southland Corp. v. Keating*, 465 U.S. 1, 16 n.9 (1984). Because the FAA does not confer federal jurisdiction, a party who seeks to confirm or vacate an arbitration award "must demonstrate independent grounds of federal subject matter jurisdiction." *General Atomic, Co. v. United Nuclear Corp.,* 655 F.2d 968, 969 (9th Cir. 1981).

### B. Respondent Cartesian Partners Holds the Citizenship of Each of Its Individual Partners, Including Petitioner Soward.

For diversity purposes, the citizenship of a limited partnership such as Cartesian Partners is the citizenship of each of its partners, both general and limited. *Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990). Thus, there is no diversity jurisdiction in an action between a partner and the limited partnership to which he belongs, because the citizenship of the partnership includes that of the adverse partner. *Boulder Creek Co. v. Maruko Inc.*, 772 F. Supp. 1150, 1153 (C.D. Cal. 1991); *Buckley v. Control Data Corp.*, 923 F.2d 96, 97 (8th Cir. 1991). Because Soward was a

partner in Cartesian at the time of the filing of the Petition and at the time of removal, there is no diversity jurisdiction over this matter.

Respondents allege that "[t]he general partner of Cartesian Partners LP is SLLB, LLC, and the sole limited partner is Leonard Bosack." *See* Respondents' Notice of Removal at ¶ 4(i). This allegation is contrary to the findings of the Arbitration Panel. While Petitioner Bosack purported to remove Soward as general partner in Cartesian Partners on November 24, 2003, that removal was wrongful and ineffective, and the Arbitration Panel determined that "<u>Soward is and continues to be a partner, albeit not the general partner, in Cartesian</u>." (Interim Award #3, p. 3, emphasis added [Sharp Decl. Ex. C]).

As the Arbitration Panel noted, there is no provision under Delaware law (which is the controlling law under the agreement governing Cartesian Partners) for unilateral removal of a partner without a court order, unless the partnership agreement provides for such removal. 6 Del. C. § 17-402; *see Greenwich Global, LLC v. Clairvoyant Capital, LLC*, 2002 WL 31168715 (Conn. Super. 2002). There is no provision in the Cartesian partnership agreement authorizing the unilateral removal of the general partner. (*See* Interim Award #1, p. 16 [Sharp Decl. Ex. B]). None of the grounds for removal set forth in 6 Del. C. § 17-402 exist here, and the arbitrators found none. Further, even if Soward had been validly removed as general partner, the Cartesian partnership agreement provides that Soward's interest would be converted to a limited partnership interest, with all the rights pertaining thereto. (*Id.*).

Soward remains a partner in Cartesian Partners, which therefore holds California citizenship. Respondents cannot manufacture diversity jurisdiction by contradicting the findings made in the Arbitration Award that is the subject of a confirmation action under the FAA.

### C. The Arbitration Award Is Not Self-Executing, and Soward Remains a Partner In Cartesian Partners Unless and Until There Is a Court Judgment Confirming the Final Award.

In Interim Award #3 and their Final Award, the Arbitration Panel ruled that Soward "shall be considered for every purpose as having withdrawn as a partner." (Interim Award #3, p. 11

[Sharp Decl. Ex. C])  However, Respondents' payment to Soward did not effect his removal from Cartesian Partners.  "Because [a]rbitration awards are not self-enforcing, they must be given force and effect by being converted to judicial orders by courts; these orders can confirm and/or vacate the award, either in whole or in part."  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) (internal quotations omitted).  Until confirmed, the arbitration award remains subject to judicial approval and does not have the force of law.  Mere payment of the award did not give it binding force.  "[S]atisfaction and confirmation [of arbitration awards] are separate issues," and a party may seek confirmation even if an award is paid in full.  *Collins v. Horton, Inc.,* 361 F. Supp. 2d 1085, 1093 (D. Ariz. 2005).

Delaware law requires a court order to effectuate the removal of a partner.  6 Del. Code § 17-402.  (*See* Interim Award #4, p.8 [Sharp Decl. Ex. D]).  Indeed, Delaware law affirmatively restricts a limited partner from withdrawing from a partnership in the absence of an authorizing provision in the partnership agreement or a court decree:

> Under the current law, which applies to limited partnerships for which certificates of limited partnership were effective after July 31, 1996, a limited partner may not withdraw from a limited partnership prior to the dissolution and winding up of the limited partnership unless the partnership agreement provides otherwise. If the partnership agreement does provide for withdrawal by a limited partner, such withdrawal may happen only at the time or upon the happening of events specified in the partnership agreement and in accordance with the partnership agreement.

Folk on Delaware General Corporation Law Part 5, § 17-603 (2001).  An arbitration award is not a court order; only judicial confirmation converts an award into an enforceable judgment.  *See Scott v. Snelling & Snelling, Inc.,* 732 F. Supp. 1034, 1039 (D. Cal. 1990) ("under California law, an arbitrator's award does not constitute a 'final judgment' which would enable a party to invoke the doctrine of collateral estoppel until a judgment has been entered by a court and is no longer reviewable.")

Unless and until the Arbitration Panel's award is confirmed, Soward remains a partner in Cartesian Partners.  For example, if this Court or the California Superior Court were to refuse

confirmation of the arbitration award and instead (as Respondents advocate) vacate the award and send the parties back to arbitration, Soward will be in the position of again enforcing his claims as a partner in Cartesian Partners. Consequently, there is no basis for diversity jurisdiction, and this Court must remand the action to state court. *See Mudge Rose Guthrie Alexander & Ferdon v. Pickett*, 11 F. Supp. 2d 449, 452 (S.D.N.Y. 1998) (action remanded where citizenship of former partners in dissolved partnership was not diverse from citizenship of defendants).

## IV. CONCLUSION

For all the foregoing reasons, the Court should remand the above-captioned matter to the Superior Court of California, County of San Francisco.

Dated: August 14, 2007

/s/

J. Daniel Sharp
Counsel for Petitioners
David C. Soward and
& Management Company

86083\2001\560319.1