SUBJECT TO PROTECTIVE ORDER DATED MARCH 21, 2006

*AMERICAN ARBITRATION ASSOCIATION*

**Commercial Arbitration Tribunal**

| | |
|---|---|
| **DAVID C. SOWARD**, an individual; **& MANAGEMENT COMPANY**<br><br>Claimants and Counter Respondents<br><br>and<br><br>**THE & TRUST; SANDY LERNER,** Individually and as Trustee on behalf of the & Trust and the Sandy Lerner Trust; **LEONARD BOSACK**, individually and as Trustee on behalf of the & Trust and The Leonard Bosack Trust; **RICHARD TROIANO**, as Trustee on behalf of **THE & TRUST; & CAPITAL PARTNERS, L.P.; CARTESIAN PARTNERS, L.P.; LEONARD BOSACK AND BETTE M. KRUGER FOUNDATION**, a California corporation; and **& CAPITAL, INC.**<br><br>Respondents and Counterclaimants | **INTERIM AWARD #5**<br>No. #74 181 Y 00129 04 DEAR<br><br>**Punitive Damages** |

David C. Soward et al and &Trust et al
American Arbitration Association #74 181 Y 00129 04  DEAR

THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the arbitration agreement contained in the Management Agreement ("Management Agreement") entered into between the parties on January 30, 2001, and effective as of January 1, 1999, having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby AWARD as follows:

### PRELIMINARY STATEMENT

In INTERIM AWARD #4, this Panel ruled on Claimant David Soward's ("Soward") claims against Respondent Leonard Bosack ("Bosack") for breach of fiduciary duty with respect to Cartesian Partners ("Cartesian") (claim 7) and Soward's claims against Respondent Bosack and Respondent Sandra Lerner ("Lerner") for conversion of Soward's interest in Cartesian (Claim 8). INTERIM AWARD #4 also incorporated by reference certain findings and determinations made by the Panel in Interim Awards 1 through 3. In turn, INTERIM AWARD #4 is incorporated herein by reference.

Subsequent to the Panel's release of INTERIM AWARD #4, a hearing was held for the purpose of determining whether or not, on account of the actions of Bosack and Lerner, Soward was entitled to an award of Punitive damages against them. The Panel set forth its decision on that issue in Hearing Order #49.   In Hearing Order #49, the Panel determined, among other things, that:

> For those reasons set forth in Interim Award #4, as well as the overarching conduct of both Lerner and Bosack throughout the period commencing with the firing of Soward in November, 2003 through the end of testimonial hearings in this matter, it is the belief of the Panel that it has been established by clear and convincing evidence that both Bosack and Lerner have acted with malice and oppression towards Soward, and that Soward is entitled to punitive damages from them. Although the Panel has found that Bosack was the architect of the scheme to strip Soward of his capital account in Cartesian, Lerner, as detailed in Award #4, was a willing participant

in the creation of SLLB. She acted in concert with Bosack in implementing the scheme to strip Soward's capital account from Soward and to transfer the account to Bosack. Both of them attempted to eliminate Soward as a partner at all.

On account of the findings made by the Panel that Lerner and Bosack acted with malice and oppression toward Soward, a hearing was held on May 10, 2007, for the purpose of determining the net worth of Bosack and Lerner, so that the Panel could determine an appropriate amount of punitive damages. At that hearing, the Parties stipulated that the net worth of Bosack was $160,000,000 and that the net worth of Lerner was $153,000,000. After considering the arguments of the Parties and the applicable law, the Panel has concluded that the amount of Punitive damages that ought to be assessed against Bosack is $10,999,494 and against Lerner is $8,555,162.

## DISCUSSION

The cases that have discussed the protocol that a trier of fact is obligated to follow with respect to the determination of an appropriate amount of punitive damages essentially establish a two stage process. First, one must consider the State and the public's interest in punishing the Respondents, and determine an amount that will have the proper deterrent effect and insure that the malicious and oppressive conduct is not repeated. Second, having determined what an appropriate amount is for the purpose of giving effect to policy of the State, one must determine whether or not the amount proposed is consistent with the Due Process standard of the 14th Amendment, as established by the US Supreme Court in *BMW v. Gore*, (1996) 517 U.S. 559, and *State Farm v. Campbell* (2003) 123 S.Ct. 1513. Significantly, in *Rifkind & Sterling, Inc. v. Rifkind* (1994) 28 Cal.App.4th 1282, 1290-1293, 33 Cal.Rptr.2d 828, the court held that because of the lack of state action, a private contractual arbitration is not subject to the strictures of the due process clause. Notwithstanding *Rifkind*, the Panel has endeavored to follow the due process guidelines set forth in *BMW v. Gore and successor* cases.

### A. THE CALIFORNIA STANDARD

The California standard is succinctly set forth in *Simon v. San Paolo* (2005), 35 Cal.4th 1159:

> Where the defendant's oppression, fraud or malice has been proven by clear and convincing evidence, California law permits the recovery of punitive damages "for the sake of example and by way of punishing the defendant." (Civ.Code, § 3294, subd. (a).) As we explained in Nealfv. Farmers Ins. Exchange, supra, 21 Cal.3d at page 928, 148 Cal.Rptr. 389, 582 P.2d 980, and Adams v. Murakami, supra, 54 Cal.3d at pages 110-112, 284 Cal.Rptr. 318, 813 P.2d 1348, the defendant's financial condition is an essential factor in fixing an amount that is sufficient to serve these goals without exceeding the necessary level of punishment. "[O]bviously, the function of deterrence ... will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort." (*Neal v. Farmers Ins. Exchange, supra,* at p. 928, 148 Cal.Rptr. 389, 582 P.2d 980.)

After considering the import of *Simon*, supra, and the earlier case of *Adams v. Murakami* (1991) 54 Cal.3d 105, 109-110, 284 Cal.Rptr. 318, 813 P.2d 1348 and other cases and law presented by counsel for both sides; the briefs, arguments, and evidence presented by counsel for Lerner and Bosack and for Soward; and the stipulation with respect to the net worth of Lerner and Bosack, the panel has determined that a punitive damages award of $10,999,494 against Bosack and $8,555,162 against Lerner would comport with the California policy of an award with sufficient sting to insure that – given the net worth of the two Respondents – their bad actions will not be repeated. The panel has set forth those bad actions in INTERIM AWARD #4, including a specific finding that Lerner and Bosack acted with the intention of hurting Soward.

### B. THE DUE PROCESS STANDARD

Having decided that the actions of Lerner and Bosack were such as to require the imposition of a large punitive damages award under California law, the panel must determine whether or not the size of the award set forth above is consistent with the due process standards of *BMW v. Gore* (1996) 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (*BMW*), and *State Farm v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513. Those two cases and their progeny set forth three standards against which the award must be measured: "(1) the degree of reprehensibility of the

defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." (*State Farm, supra,* 538 U.S. at p. 418, 123 S.Ct. 1513; see *BMW, supra,* 517 U.S. at p. 575, 116 S.Ct. 1589.)

In both cases, the court emphasized that the most important factor was the first: the degree of reprehensibility of the respondents actions. And, in *State Farm*, the court took that analysis one step further, as explained in *Simon:*

> In *State Farm,* the court summarized the subsidiary factual circumstances it believed particularly relevant to assessing reprehensibility:
>
>> "We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." (*State Farm, supra,* at p. 419, 123 S.Ct. 1513.)

Measuring the actions of the Respondents against the five point scale of State Farm, we find the actions of Bosack and Lerner highly reprehensible. Although the first two items on the list are low on the scale with respect to impact on punitives because the harms here were economic, the last three items rank high on the list.

Soward was financially vulnerable. He testified that, as a money manager, the ongoing arbitration completely destroyed his ability to earn a livelihood. Indeed, his financial statement (Ex. 4504) showed a decline in his net worth (not including his house) during the period of the arbitration of approximately $6,000,000, completely eroding his finances. His arbitration related costs during that period totaled almost $4,000,000. He was literally being crushed financially by Lerner and Bosack.

The 4th item is also present. The actions of Lerner and Bosack were not isolated actions,

but were repeated over time. INTERIM AWARD #4 documents those actions. The attempt to strip Soward of his interest in Cartesian was not a casual enterprise, but rather a planned, malicious, purposeful attempt to take Soward's interest in Cartesian away from him and convert it for Bosack's use.

The 5th item is also present to a high degree. The actions of Lerner and Bosack as set forth in Interim Award #4 were the result of "intentional malice, trickery, or deceit." Accordingly, the panel finds that the actions of Lerner and Bosack were highly reprehensible.

The second factor of BMW and State Farm is the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award. Here, the panel has awarded Soward nine times the compensatory award of $1,222,166 against Bosack and seven times the compensatory award against Lerner. Given the trickery and deceit of Bosack and Lerner's actions and given the California mandate that those who engage in such actions be punished, it appears to be appropriate to get close to the due process line. Given the large net worth of both Lerner and Bosack, nothing short of that would have a sufficiently deterrent impact.

The last factor listed in *BMW* is the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. Instructive in this regard is *Bardis v. Oates*, (2004) 119 Cal.App.4th 1, 106. In awarding punitive damages, the Panel has also considered this factor.

In sum, the Panel has determined that the actions of Lerner and Bosack, as detailed in INTERIM AWARD #4, were highly despicable and, in order to properly give effect to the California mandate that those who act with malice and oppression to another ought to be punished, we AWARD as follows:

**AWARD**

1. This is an Interim Award and is not intended to be final. Accordingly, it is neither capable of being confirmed nor vacated. The panel presently has an attorneys' fees and costs hearing scheduled. When that hearing has been held and the Panel has determined each party's entitlement to attorneys' fees and costs (if any), a Final

Award will be made which will dispose of all issues before the panel;

2. Soward is **AWARDED** against Bosack as punitive damages the sum of $10,999,494;

3. Soward is **AWARDED** against Lerner as punitive damages the sum of $8,555,162.

4. This Interim Award #5 is intended to dispose of all issues with respect to punitive damages; the Panel still has before it the issue of attorneys fees and costs, which will be the subject of a further award.

DATED: June 5, 2007

Professor J. Lani Bader
Chair

Zela G. Claiborne, Esq.
Arbitrator