QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Daniel H. Bromberg (Bar No. 242659)
  danbromberg@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065

  Fred G. Bennett (Bar No. 059135)
  fredbennett@quinnemanuel.com
  Steven G. Madison (Bar No. 101006)
  stevemadison@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Respondents Leonard Bosack, The & Trust, Richard Troiano, & Capital Partners, L.P., Cartesian Partners, L.P., Leonard Bosack and Bette M. Kruger Charitable Foundation, Inc., and & Capital, Inc.

O'MELVENY & MYERS LLP
  Steven L. Smith (Bar No.109942)
  ssmith@omm.com
  Scott T. Nonaka (Bar No. 224770)
  snonaka@omm.com
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone:    (415) 984-8700
Facsimile:    (415) 974-8701

Attorneys for Respondent Sandy Lerner

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID SOWARD, et al.,<br><br>                Petitioners,<br><br>         v.<br><br>THE & TRUST, et al.,,<br><br>                Respondents. | CASE NO. C–07–3894<br><br>**RESPONDENTS' OPPOSITION TO MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Date:         September 21, 2007<br>Time:        9:00 a.m.<br>Crtrm.:       7, 19th floor<br>              Hon. Maxine M. Chesney<br><br>Trial Date:   None Set |

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ....................................................................................................2

    A.    Cartesian Partners ...........................................................................................2

    B.    Soward's Claim ..............................................................................................3

    C.    The December 2006 Payment .......................................................................4

    D.    The Final Award ............................................................................................4

ARGUMENT .........................................................................................................................5

I.    THE PANEL'S AWARDS WERE BINDING WHEN ISSUED, AND SOWARD THEREFORE CEASED TO BE A PARTNER IN CARTESIAN LAST DECEMBER WHEN HE ACCEPTED $1.5 MILLION IN EXCHANGE FOR HIS PARTNERSHIP INTEREST ..................................................................................5

II.    HAVING ACCEPTED THE $1.5 MILLION AWARDED BY THE ARBITRATION PANEL FOR HIS INTEREST IN CARTESIAN, SOWARD ALSO MUST ACCEPT THE PANEL'S DECREE THAT HE CEASED BEING A PARTNER IN CARTESIAN UPON PAYMENT .....................................................10

III.    BY ACCEPTING PAYMENT OF HIS PARTNERSHIP INTEREST FROM CARTESIAN, SOWARD RELINQUISHED HIS INTEREST IN THE PARTNERSHIP ..................................................................................................12

CONCLUSION ....................................................................................................................13

# TABLE OF AUTHORITIES

Page

**Cases**

*Americas Ins. Co. v. Seagull Compania Naviera, S.A.*,
   774 F.2d 64 (2d Cir. 1985)..................................................................................6, 9

*Bosack et al v. Soward et al*,
   No. 2:07-CV-00574 (W.D. Wash. May 1, 2007).................................................7

*Bosack v. Soward*,
   No. 2:07-CV-00574-TSZ (W.D. Wash. July 30, 2007) .....................................11

*Britz, Inc. v. Alfa-Laval Food & Dairy Co.*,
   34 Cal. App. 4th 1085 (1995) ...............................................................................7

*Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*,
   420 F.3d 1146 (11th Cir. 2005)............................................................................6

*D.H. Blair & Co., Inc. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006)....................................................................................9

*Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   205 F.3d 906 (6th Cir. 2000)................................................................................6

*Federated Rural Elec. Ins. Exch. v. Nationwide Mut. Ins. Co.*,
   134 F. Supp. 2d 923 (S.D. Ohio 2001).................................................................6

*Florasynth, Inc. v. Pickholz*,
   750 F.2d 171 (2d Cir. 1984).............................................................................6, 9

*Harrington v. Warlick*,
   758 P.2d 387 (Or. 1988) .....................................................................................11

*Hillman v. Hillman*,
   910 A.2d 262 (Del. Ch. 2006)............................................................................13

*Insurdata Mktg. Servs., LLC v. Healthplan Servs., Inc.*,
   352 F. Supp. 2d 1252 (M.D. Fla. 2005).............................................................10

*Jacobson v. Fireman's Fund Ins. Co.*,
   111 F.3d 261 (2d Cir. 1997).............................................................................7, 9

*Lenfest v. Boston & Maine Corp.*,
   537 F. Supp. 324 (D. Mass. 1982)......................................................................11

*MJ Woods, Inc. v. Conopco, Inc.*,
   271 F. Supp. 2d 576 (S.D.N.Y. 2003) .................................................................8

*Marion Mfg. Co. v. Long*,
   588 F.2d 538 (6th Cir. 1978)................................................................................6

# TABLE OF AUTHORITIES
## (continued)

**Page**

*O'Connell v. Fed. Ins. Co.*,
 484 F. Supp. 2d 223 (D. Mass. 2007)...................................................................................7

*Ottley v. Swartzberg*,
 819 F.2d 373 (2d Cir. 1987).................................................................................................9

*Photopaint Techs., LLC v. Smartlens Corp.*,
 335 F.3d 152 (2d Cir. 2003)...............................................................................................10

*Ramish v. Marsh*,
 178 Cal. 217 (1918)............................................................................................................10

*Sartor v. Superior Court*,
 136 Cal. App. 3d 322 (1982)................................................................................................9

*Scott v. Snelling & Snelling, Inc.*,
 732 F. Supp. 1034 (N.D. Cal. 1990)..................................................................................8, 9

*State Farm Mutual Auto. Ins. Co. v. Superior Court*,
 211 Cal. App. 3d 5 (1982)....................................................................................................8

*Stulberg v. Intermedics Orthopedics, Inc.*,
 997 F. Supp. 1060 (N.D. Ill. 1998).......................................................................................8

*Thibodeau v. Crum*,
 4 Cal. App. 4th 749 (1992)...................................................................................................8

*Trollope v. Jeffries*,
 55 Cal. App. 3d 816 (1976) (citation omitted)........................................................ 6, 10, 11

*Val-U Constr. Co. v. Rosebud Sioux Tribe*,
 146 F.3d 573 (8th Cir. 1998)................................................................................................7

*Vandenberg v. Superior Court*,
 21 Cal. 4th 815 (1999).........................................................................................................8

**Statutes**

Cal. Civ. Proc. Code § 1287.6 ..................................................................................................7, 9

6 Del. Code § 17-702(d).........................................................................................................12, 13

28 U.S.C. § 1332..........................................................................................................................5

28 U.S.C. § 1446..........................................................................................................................5

Respondents Leonard Bosack ("Bosack"), Sandy Lerner ("Lerner"), The Leonard Bosack Trust, The Sandy Lerner Trust, Richard Troiano, The & Trust, & Capital Partners, L.P., Cartesian Partners, L.P., The Leonard X. Bosack and Bette M. Kruger Charitable Foundation, Inc., and & Capital, Inc. respectfully submit the following opposition to the motion to remand of Petitioners David C. Soward and & Management Company (collectively "Soward" or "Petitioners").

## INTRODUCTION

Petitioner David Soward's assertion that he remains a partner in Cartesian Partners, L.P., and that Cartesian is therefore a California citizen, is flat-out wrong. In awarding Soward approximately $1.5 million for his interest in Cartesian, the arbitration panel decreed that Soward would cease to be a partner in Cartesian upon payment of that amount:

> Upon payment to Soward, it is the decree of this Panel that Soward shall no longer be a partner of Cartesian and shall be considered for every purpose as having withdrawn as a partner.

Interim Award No. 3 at 3, 11; *accord* Interim Award No. 1 at 20, 57.[1] As the panel repeatedly recognized, on December 14, 2006, Cartesian paid and Soward accepted without reservation the amount awarded by the panel. Interim Award No. 4 at 7-8; Final Award at 10. As a consequence, Soward is no longer a partner in Cartesian and has not been one for the better part of a year.

In asserting that he nonetheless remains a partner in Cartesian, Soward contends that the panel's award has no legal effect until confirmed and therefore does not bind him. Thus, according to Soward, he can enjoy full payment for his interest in Cartesian and remain a partner in Cartesian until the arbitration awards are confirmed. That is wrong for three reasons.

*First*, arbitration awards are binding whether or not they are confirmed. It is well-settled that when a party agrees to engage in binding arbitration, as Soward has done here, it is bound by the arbitrators' award unless it successfully moves to vacate that award. Confirmation is a supplemental procedure that allows a party to convert an award into a judgment, thereby providing access to traditional post-judgment enforcement mechanisms. As Soward has not sought to vacate

---

[1] For the Court's convenience, Respondents are submitting with this brief a bound appendix with the arbitration awards.

the arbitrators' accounting award and in fact seeks to confirm it, he is bound by the panel's determination that upon payment of his interest in the partnership he relinquished that interest.

*Second*, having accepted $1.5 million for his partnership interest in Cartesian, Soward cannot dispute that he relinquished that interest. Once a party accepts the benefits of an arbitration award, whether confirmed or not, it is barred from disputing the burdens of the award, which is implicitly what Soward is seeking to do in his motion to remand.

*Third*, even under Delaware law, which Soward improperly invokes, his acceptance of payment for his partnership interest bars him from asserting that he remains a partner. In a provision that Soward fails to bring to the Court's attention, Delaware limited partnership law clearly states that when a partnership purchases or otherwise redeems a limited partner's interest in the partnership, the limited partner's interest in the partnership is canceled.

In short, the law does not allow Soward to have his cake and eat it too. Because he has accepted payment of $1.5 million in exchange for relinquishing his partnership interest in Cartesian, Soward now cannot claim that he is still a partner in Cartesian. As a result, Cartesian is not a California resident, there is complete diversity between the parties, and Soward's motion to remand must be denied.

## STATEMENT OF FACTS

Soward's brief fails to describe the key aspects of the arbitration awards relating to Cartesian or to clearly disclose that he was paid pursuant to those awards to relinquish his interest in Cartesian.[2] It is therefore necessary to briefly describe the material facts.

### A.     Cartesian Partners

Cartesian Partners, L.P. is a limited partnership, which was formed in 1999 by Soward and petitioner Leonard Bosack. Interim Award No. 1 at 14. Initially, at least, Soward was the general

---

[2] Soward devotes considerable space to describing the arbitration proceedings as a whole and the action pending in the Western District of Washington. As demonstrated in Respondents' cross-motion to stay or transfer, these descriptions are highly selective, one-sided and in key instances entirely inaccurate. *See, e.g.,* Resp. Mot. to Stay or Transfer at 4. (discussing Soward's claims that the arbitrators found no intentional wrongdoing by him).

partner, and Bosack was the sole limited partner. *Id*. at 14. The initial starting capital for the partnership was $10 million. Bosack contributed $9.5 million, or 95%, and Soward contributed the remaining $500,000, or 5%. *Id*.

In 2002, claiming that he had been able to secure rates of return far higher than the market, Soward asked that his compensation for managing a trust containing most of the assets of Bosack and Lerner be increased. Memorandum from David Soward to Sandy Lerner *et al*., December 18, 2002.[3] To evaluate this claim, Bosack and Lerner asked Clark Nuber, an accounting firm based in Seattle, to audit the records of the investments that Soward was managing for them (which also were located in the Seattle area). Declaration of Leonard Bosack ¶ 8 (Bromberg Decl., Ex. B). The audit uncovered startling evidence of misconduct, including more than $1 million in improperly documented loans and more than $5 million in apparently excess distributions. *Id*. ¶¶ 9-10. Accordingly, in November 2003, Bosack decided, among other things, to terminate Soward as his investment manager and remove Soward as general partner of Cartesian. *Id*. ¶¶ 10-12; Interim Award No. 4 at 6.

### B. Soward's Claim

In February 2004, Soward submitted a demand for arbitration seeking, among other things, dissolution of Cartesian and an accounting of his interest in the partnership. Statement of Claim, ¶¶ 82-88 (Bromberg Decl., Ex. C). Bosack defended on the ground that the funds that Soward contributed to & Capital were from $5 million improperly withdrawn from the & Capital partnership. Interim Award No. 1 at 17. Although the panel recognized that the funds were withdrawn in violation of the terms of the & Capital partnership agreement, *id*. at 17-18, it found that the parties had "through conduct" modified the agreement to permit withdrawals in violation of the literal terms of the agreement. *Id*. at 18.

---

[3] Mr. Soward's memorandum is attached as Exhibit A to the accompanying Declaration of Daniel H. Bromberg in Support of Respondents' Opposition to Motion to Remand for Lack of Subject Matter Jurisdiction ("Bromberg Decl.").

1    Finding that Soward became a limited partner in & Capital upon his removal as general
2    partner in November 2003, the panel also determined that Soward continued to be a partner in
3    Cartesian. *Id*. at 15-17. It also determined that the partnership could not carry on its business with
4    Soward as a partner. *Id*. at 19-20. The panel decided, however, not to order dissolution of the
5    partnership. Instead, it decided to conduct an accounting to determine the value of Soward's
6    interest in Cartesian and to give Cartesian 60 days following that determination to pay Soward an
7    amount reflecting his net interest in the assets of the partnership. *Id*. at 19-20. Even more
8    important for present purposes, the panel continued, "upon payment to Soward, it is the decree of
9    this Panel that Soward shall no longer be a partner of Cartesian and shall be considered for every
10   purpose as having withdrawn as a partner." *Id*. at 20; *see also id*. at 57 (same.)

11   The panel determined that Soward's interest in Cartesian should be valued as of September
12   30, 2006, the end of the month in which Interim Award No. 1 was issued. *Id*. at 15-17, 19.
13   Several months later, the panel conducted the accounting. *See* Interim Award No. 3. It
14   determined that the net interest of Soward in the assets of Cartesian was $1,464,391. *Id*. at 10.
15   Thus, consistent with its prior award, the panel gave Cartesian 60 days in which to pay this
16   amount, and it repeated that "[u]pon payment to Soward, it is the decree of this Panel that Soward
17   shall no longer be a partner of Cartesian and shall be considered for every purpose as having
18   withdrawn as a partner." *Id*. at 11.

**C.    The December 2006 Payment**

20   On December 14, 2006, two days after the panel determined Soward's net interest in the
21   assets of Cartesian, either Bosack or SLLB paid Soward that amount, $1,464,391, plus interest.
22   Interim Award No. at 7-8; Final Award at 10.

**D.    The Final Award**

24   On July 27, 2007, the panel issued a final award, which gathered together the prior
25   determinations of the panel. With respect to the Cartesian accounting claim, the panel stated that
26   Soward was deemed to have withdrawn from Cartesian as a result of his acceptance of payment
27   for his interest in the partnership:

> Soward is entitled to payment of $1,464,391 as his share of the assets of Cartesian as of September 30, 2006, with interest on the $1,464,391 at 10% from October 1, 2006, until paid. This amount has been paid to Soward, and Cartesian's obligation with respect to the payment of his capital account has been satisfied. *Soward for every purpose is deemed to have withdrawn as a partner of Cartesian.*

Final Award at 10 (emphasis added).

## ARGUMENT

Soward's motion to remand, which is based solely on the claim that the parties lack diversity, should be denied. This case was properly removed to this Court because the parties are diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1332, 1446. Petitioners David C. Soward and & Management Company are both citizens of California, *see* Soward's Petition to Confirm, Attachment 1, and Respondents are citizens of Washington, Virginia, Massachusetts, and Pennsylvania. *See id.*; Petition for Removal ¶ 4.[4]

Soward's claim that there is no diversity is premised on the assertion that he remains a partner of Cartesian and that Cartesian therefore shares his California citizenship. Soward, however, ceased being a partner in December 2006, long before this action was either commenced or removed, when he accepted payment of the value of his interest in the assets of Cartesian, pursuant to the arbitration panel's orders providing that he would cease to be a partner in Cartesian upon payment of these amounts.

### I. THE PANEL'S AWARDS WERE BINDING WHEN ISSUED, AND SOWARD THEREFORE CEASED TO BE A PARTNER IN CARTESIAN LAST DECEMBER WHEN HE ACCEPTED $1.5 MILLION IN EXCHANGE FOR HIS PARTNERSHIP INTEREST

Soward does not—and cannot—dispute that under the terms of the arbitration awards that he is seeking to confirm he is no longer a partner in Cartesian. Those awards state that "[u]pon payment" of the value of his interest in the assets of Cartesian, "Soward shall no longer be a

---

[4] Although the caption used by petitioners in the Superior Court indicates that one of the respondents is a California corporation, as petitioners elsewhere acknowledge, that corporation has been merged into the Leonard X. Bosack and Bette M. Kruger Charitable Foundation, Inc., which is a Massachusetts corporation. *See* Petition for Removal ¶4(f); Petition to Confirm, Attach. 1.

partner of Cartesian," Interim Award No. 1 at 20, 57; Interim Award No. 3 at 3, 11, that he received payment of this amount last December, *see* Interim Award No. 4 at 7-8, and that he therefore "for every purpose is deemed to have withdrawn as a partner of Cartesian." Final Award at 10. Instead, Soward asserts that the arbitration awards have "no binding force" until they are judicially confirmed. Pet'rs Mot. at 8. That is not the law. A valid and final arbitration award is binding upon issuance.

Under the Federal Arbitration Act, a final arbitration award is binding and valid upon its issuance, whether or not it is eventually confirmed. "[A]n arbitrator's order is binding on the parties unless they expressly agree otherwise, *and does not require affirmation from a court to take effect*." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1150 (11th Cir. 2005) (emphasis added).[5] "[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court. *The award need not actually be confirmed by the court to be valid*. An unconfirmed award is a contract right that may be used as the basis for a cause of action." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984) (emphasis added) (citations omitted). "In fact, in the majority of cases the parties to an arbitration do not obtain court confirmation." *Id*. Accordingly, rights under arbitration awards are determined "from the date of the award, and not the date of the court's judgment confirming the award." *Marion Mfg. Co. v. Long*, 588 F.2d 538, 541 (6th Cir. 1978).

Likewise under California law, which though not applicable here is nonetheless instructive, an arbitral award binds the parties regardless of whether it is confirmed. *See Trollope v. Jeffries*, 55 Cal. App. 3d 816, 822-23 (1976) ("Although it is true that an arbitration award is not a judgment having the same force and effect as a judgment in a civil action until confirmed . . . it is,

---

[5] *See also Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906, 909 (6th Cir. 2000) ("An arbitrator's award will be binding on the parties unless they challenge the validity of the underlying contract to arbitrate . . . or seek to vacate, modify, or correct the award . . ."); *Americas Ins. Co. v. Seagull Compania Naviera, S.A.*, 774 F.2d 64, 67 (2d Cir. 1985) ("Until awards are vacated, they are conclusive as to the rights of parties."); *Federated Rural Elec. Ins. Exch. v. Nationwide Mut. Ins. Co.*, 134 F. Supp. 2d 923, 931 (S.D. Ohio 2001) ("Although the award was not confirmed, the court finds that it is nevertheless final and binding").

nevertheless, the final *and binding* decision or judgment of the arbitrator of his quasi-judicial function to determine the disputed matters referred to him by the parties to the submission.") (emphasis added) (citation omitted). In fact, the California Code expressly recognizes that unconfirmed arbitration awards are binding:

> An award that has not been confirmed or vacated has the same force and effect as a contract in writing between the parties to the arbitration.

Cal. Civ. Proc. Code § 1287.6; *see also Britz, Inc. v. Alfa-Laval Food & Dairy Co.*, 34 Cal. App. 4th 1085, 1107 (1995) ("The arbitration award was the contractual equivalent of a judgment in respondents' favor").[6]

Because a valid and final arbitration award is legally binding when issued, federal courts "have held repeatedly and authoritatively that confirmation is not required to apply preclusion so long as the award is final under the applicable arbitration rules." MACNEIL, ET AL., 4 FEDERAL ARBITRATION LAW § 39.6 (1994); *see also* THOMAS H. OEHMKE, COMMERCIAL ARBITRATION § 133:1 (2007) ("An order from AAA arbitrators is binding unless the parties expressly agree otherwise and does not require affirmation from a court to bring it into effect"). "So long as the criteria for issue and claim preclusion have been met, courts have generally given preclusive effect to both confirmed and unconfirmed awards." *O'Connell v. Fed. Ins. Co.*, 484 F. Supp. 2d 223, 225 n.2 (D. Mass. 2007); *see also Val-U Constr. Co. v. Rosebud Sioux Tribe*, 146 F.3d 573, 582-83 (8th Cir. 1998) (giving preclusive effect to unconfirmed arbitral award); *Jacobson v. Fireman's*

---

[6] Soward is well aware of this provision. In the motion to dismiss that Soward filed in May in the Western District of Washington, he invoked this provision in arguing that the amount-in-controversy provision was not satisfied. *See* Motion To Dismiss, *Bosack et al v. Soward et al*, No. 2:07-CV-00574, at 8 (W.D. Wash. May 1, 2007) (Bromberg Decl., Ex. D). Specifically, citing Section 1287.6, Soward argued that arbitration awards have "the same effect as a contract between the parties" and that because petitioners "have voluntarily paid the amount awarded by the arbitrators" there was no more controversy between the parties "than in a case involving a contract where the plaintiff is the obligor under the contract and has fully performed his contractual obligations." *Id*. Here, of course, Soward ignores both the fact that unconfirmed arbitration awards have the force and effect of contracts and that he has received payment under those awards.

*Fund Ins. Co.*, 111 F.3d 261, 267-68 (2d Cir. 1997) (holding that "res judicata and collateral estoppel apply to issues resolved by arbitration where there has been a final determination on the merits, notwithstanding the lack of confirmation of the award"); *MJ Woods, Inc. v. Conopco, Inc.*, 271 F. Supp. 2d 576, 581 (S.D.N.Y. 2003) (stating that it has become "well-settled" that unconfirmed arbitral awards may have preclusive effect); *Stulberg v. Intermedics Orthopedics, Inc.*, 997 F. Supp. 1060, 1068 (N.D. Ill. 1998) (citing cases that granted preclusive effect to unconfirmed awards).

California law likewise gives preclusive effect to unconfirmed arbitral awards, so long as the requirements of issue or claim preclusion have been met. California appellate courts have held that unconfirmed awards are res judicata as to all factual and legal matters necessarily determined by the award. *See, e.g.*, *Thibodeau v. Crum*, 4 Cal. App. 4th 749, 759 (1992) ("Once a valid award is made by the arbitrator, it is conclusive on matters of fact and law and all matters in the award are thereafter res judicata"). The California Supreme Court has cited this line of cases with favor. *See Vandenberg v. Superior Court*, 21 Cal. 4th 815, 824 n.2 (1999) (citing *Thibodeau* as holding that an "unconfirmed award . . . is res judicata"); *see also* HON. H. WARREN KNIGHT ET AL., CALIFORNIA PRACTICE GUIDE: ALTERNATIVE DISPUTE RESOLUTION ¶ 5:545 (2007) (citing *Thibodeau* and observing that "[i]t is not necessary that judgment have been entered confirming the award" for the award to have preclusive effect).

Ignoring this authority, Soward asserts that under California law an arbitral award does not have any collateral estoppel effect "until a judgment has been entered by a court and is no longer reviewable." Pet'rs Mot. at 8. Soward bases this assertion on a single case, *Scott v. Snelling & Snelling, Inc.*, 732 F. Supp. 1034 (N.D. Cal. 1990). However, this case does not accurately reflect California law. The district court cited only two California cases, neither of which actually considered whether an unconfirmed arbitral award has preclusive effect. *See State Farm Mutual Auto. Ins. Co. v. Superior Court*, 211 Cal. App. 3d 5, 9-12 (1982) (holding that a judgment based upon a judicial arbitration had preclusive effect); *Sartor v. Superior Court*, 136 Cal. App.3d 322, 326-28 (1982) (holding that a confirmed arbitral award had preclusive effect). Nor did the court in *Scott* consider any of the California authority that did consider the preclusive effect of

1  unconfirmed arbitral awards. In fact, the district court's statement was an alternative basis for its
2  holding which was not necessary to the outcome of the decision. *See Scott*, 732 F. Supp. at 1039
3  (finding no collateral estoppel because the relevant issues were not the same).

4  Soward also relies upon the Second Circuit's decision in *D.H. Blair & Co., Inc. v.
5  Gottdiener*, 462 F.3d 95 (2d Cir. 2006). Here again, Soward's reliance is misplaced. Although
6  *D.H. Blair* stated that arbitration awards are "not self-enforcing" and "must be given force and
7  effect by being converted to judicial orders," *id*. at 104, it did not hold that arbitration awards are
8  not binding until they are confirmed. In *D.H. Blair*, the Second Circuit was discussing whether a
9  petition to confirm qualifies as an enforcement action under a forum selection clause, and it did
10 not consider whether unconfirmed awards are binding. *See id*. at 103-04. When faced with that
11 issue, the Second Circuit has repeatedly recognized that arbitration awards are binding without
12 confirmation. *See Jacobson*, 111 F.3d at 267-28; *Florasynth*, 750 F.2d at 176; *Americas Ins Co*.,
13 774 F.2d at 67. Thus, for example, the Second Circuit has specifically held that "res judicata and
14 collateral estoppel apply to issues resolved by arbitration where there has been a final
15 determination on the merits, *notwithstanding the lack of confirmation of the award*." *Jacobson*,
16 111 F.3d at 267-68 (emphasis added).

17 The purpose of confirmation is not to make a final and valid arbitral award binding on the
18 parties. Where, as here, the parties have agreed to binding arbitration, the arbitrators' award binds
19 them as a matter of contract law. *See*, *e.g.*, *Florasynth*, 750 F.2d at 176; Cal. Civ. Proc. Code §
20 1287.6. Instead, the purpose of confirmation is to make "what is already a final arbitration award
21 a judgment of the court." *Ottley v. Swartzberg*, 819 F.2d 373, 377 (2d Cir. 1987). Although
22 arbitral awards are not "self-enforcing," this simply means that an award must be converted into a
23 judgment before the judicial process may be used to enforce the terms of the award. "[T]he
24 reduction of a non-judicial award to the form of a readily enforceable judgment . . . permits
25 execution and levy, fixes priorities among creditors in some instances, places third parties on
26 constructive notice of the judgment's contents, and subjects a judgment debtor to prompt
27 supplemental proceedings, such as deposition in aid of execution, garnishment, levy, and other
28 formidable tools of collection." *Insurdata Mktg. Servs., LLC v. Healthplan Servs., Inc.*, 352 F.

Supp. 2d 1252, 1255-56 (M.D. Fla. 2005); see also *Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 159 (2d Cir. 2003) (noting that "the summary confirmation proceeding established by the FAA . . . was intended to streamline the process" of enforcing arbitral awards); MACNEIL, ET AL., FEDERAL ARBITRATION LAW § 38.2.2.2 (1994) (stating that the drafters of the FAA viewed "confirmation as an extra remedy the parties might or might not want").

In short, under well-established arbitration law, because the arbitration awards are final and Soward is not seeking to vacate them, those awards are binding upon him and he therefore is no longer a partner in Cartesian. As a consequence, Cartesian does not share his California citizenship, and there is complete diversity. For this reason alone, Soward's motion to remand must be denied.

**II. HAVING ACCEPTED THE $1.5 MILLION AWARDED BY THE ARBITRATION PANEL FOR HIS INTEREST IN CARTESIAN, SOWARD ALSO MUST ACCEPT THE PANEL'S DECREE THAT HE CEASED BEING A PARTNER IN CARTESIAN UPON PAYMENT**

The motion to remand also must be denied because, in claiming that he remains a partner in Cartesian despite the arbitration panel's clear and unequivocal determination that he has withdrawn as a partner for every purpose, *see* Final Award at 10, Soward is in effect challenging the panel's awards. Indeed, notably absent from Soward's brief is any clear recognition either of the fact of this payment or that under the arbitrators' awards he ceased being a partner upon payment of $1.5 million for his partnership interest. Soward is, however, barred from challenging this aspect of the awards because he already has accepted the benefits of the award.

The California Supreme Court held long ago that a party may not accept payment under an arbitration award and then turn around and challenge that award. *See, e.g., Ramish v. Marsh*, 178 Cal. 217 (1918). As a general rule, a party cannot accept the benefits of a judgment and then appeal from it, *see Trollope*, 55 Cal. App. 3d at 822, and because arbitration awards are, like judgments issued by courts, binding decisions, "the principles governing acceptance of the benefits of a judgment, order, or decree apply with equal force to an arbitration award." *Id*. at 824. Moreover, this is true whether or not the arbitration award has been confirmed. *See id*. at 822-23 (rejecting argument that rule inapplicable because "award was not confirmed by a judgment" until

after payment was received); *see also Harrington v. Warlick*, 758 P.2d 387, 388 (Or. 1988) (noting that *Trollope* is the "leading case" on "acceptance of benefits in the arbitration context"). Thus, because Soward received and accepted payment of the $1.5 million awarded him under Interim Award No. 3, he cannot challenge Interim Award No. 3's decree: upon payment he ceased being a partner in Cartesian.

"Applying well-established principles of equity, one who benefits from an award should not later be allowed to question the award's validity. Thus, a party who accepts payment in satisfaction of a voidable award, accepts anything done by the opposing party in part performance of the award, or receives the fruits of the award, is deemed to have ratified the award and is estopped from thereafter questioning the validity of the award or refusing the counterperformance due according to its terms." 21 WILLISTON ON CONTRACTS § 57:141 (4th ed. 2007); *see also Lenfest v. Boston & Maine Corp.*, 537 F. Supp. 324, 337 (D. Mass. 1982) (party who accepted benefits of arbitral award was estopped from denying the validity of the award). Thus, because Soward received and accepted payment of the $1.5 million awarded to him under Award No. 3, he cannot now challenge Award No. 3's determination that upon payment of his partnership interest he ceased being a partner in Cartesian. By accepting the benefits of the award, he is barred from denying Respondents' corresponding benefit—Soward's withdrawal as partner.

Soward contends that it would be unfair to require him to abide by the terms of the arbitrators' awards because "[i]f the Final Award is vacated as sought by Respondents," he would be forced to undergo a new arbitration "to vindicate his rights as a partner in Cartesian Partners." Pet'rs Mot. at 5-6, 9. But Respondents are not seeking to vacate all of the arbitration awards—they are seeking to vacate only those portions relating to and dependent upon the punitive damage awards. Respondents have petitioned to confirm the rest of the awards, including the portions of Interim Award Nos. 1 and 3 concerning Soward's accounting claim. Amended Petition, *Bosack v. Soward*, No. 2:07-CV-00574-TSZ, at 17 (W.D. Wash. July 30, 2007) (Bromberg Decl., Ex. E ) (seeking confirmation of Interim Award Nos. 1, 2 & 3). More importantly, Soward already has been compensated for any claims "as a partner in Cartesian." As noted above, last December he received the approximately $1.5 million plus interest that the panel calculated as the value of his

partnership interest in Cartesian.  Thus, there is no risk that Soward will be forced to relitigate his accounting claim, which was Soward's only claim against Cartesian in the arbitration.

Having accepted payment of the arbitrators' award on his accounting claim, Soward should be held to the terms of that award and be deemed to have relinquished his interest in Cartesian.

### III. BY ACCEPTING PAYMENT OF HIS PARTNERSHIP INTEREST FROM CARTESIAN, SOWARD RELINQUISHED HIS INTEREST IN THE PARTNERSHIP

Citing a treatise on Delaware law, Soward asserts that under Delaware law, limited partners are not permitted to withdraw unless the partnership agreement authorizes withdrawal or a court has issued a decree.  Pet'rs Mot. at 8.  However, Soward cannot object to the panel's awards on the ground that they violate Delaware law because, as just demonstrated, Soward is foreclosed from challenging the awards by his acceptance of payment under the awards.

In any event, Delaware law specifically provides that a limited partnership may purchase "*any* partner's interest"—be it a general or limited partner—and thereby extinguish the partner's interest in the partnership:

> Unless otherwise provided in the partnership agreement, a limited partnership may acquire, by purchase, redemption, or otherwise any partnership interest or other interest of a partner in the limited partnership.  Unless otherwise provided in the partnership agreement, any such interest so acquired by the limited partnership shall be deemed canceled.

6 Del. Code § 17-702(d).  Thus, as the very treatise cited by Soward recognizes, absent something in the partnership agreement to the contrary, "a limited partnership may acquire a partnership interest," and "[a]ny interest so acquired is cancelled, unless otherwise provided in the partnership agreement."  IV FOLK ON DELAWARE GENERAL CORPORATE LAW § 17-702.4, at 17-702:6.

The Delaware provisions cited by Soward do not suggest otherwise.  For example, citing Section 17-402 of the Delaware Uniform Limited Partnership Act, Soward asserts that "Delaware law requires a court order to effectuate the removal of a partner."  Pet'rs Mot. at 8.  In fact, Section 17-402 recognizes that a party ceases to be a general partner under Delaware law when it ceases to be a general partner "as provided in § 17-702," 6 Del. Code § 17-402(a)(2), which includes the provision concerning purchasing of partnership interests quoted above.  The statute does not help Soward.  While that provision limits the ability of limited partners to withdraw, it only applies to

voluntary withdrawal, *see Hillman v. Hillman*, 910 A.2d 262, 272-73 (Del. Ch. 2006), and does not apply to other forms of dissociation such as sale of a partnership interest back to the partnership.

Thus, under Delaware law as well, Soward cannot accept payment for his partnership interest and claim to remain a partner. Because Soward has been fully paid for his interest in the assets of Cartesian, he is no longer a partner in Cartesian and has not been so since he received payment in December of last year. As a consequence, Soward's only objection to this Court's removal jurisdiction fails.

## CONCLUSION

For the foregoing reasons, Petitioners' Motion to Remand for Lack of Subject Matter Jurisdiction should be denied.

DATED: August 31, 2007         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ Daniel H. Bromberg
Daniel H. Bromberg
Attorneys for Respondents Leonard Bosack, The & Trust, Richard Troiano, & Capital Partners, L.P., Cartesian Partners, L.P., Leonard Bosack and Bette M. Kruger Charitable Foundation, Inc., and & Capital, Inc.


DATED: August 31, 2007         O'MELVENY & MYERS LLP


By /s/ Scott T. Nonaka
Scott T. Nonaka
Attorneys for Respondent Sandy Lerner