# TAB 3

SUBJECT TO PROTECTIVE ORDER DATED MARCH 21, 2006

## AMERICAN ARBITRATION ASSOCIATION

### Commercial Arbitration Tribunal

**DAVID C. SOWARD**, an individual;
**&MANAGEMENT COMPANY**

Claimants and Counter Respondents

and

**THE & TRUST; SANDY LERNER**,
Individually and as Trustee on behalf of the
& Trust and the Sandy Lerner Trust;
**LEONARD BOSACK**, individually and as
Trustee on behalf of the & Trust and The
Leonard Bosack Trust; **RICHARD
TROIANO**, as Trustee on behalf of **THE &
TRUST; & CAPITAL PARTNERS, L.P.;
CARTESIAN PARTNERS, L.P.; LEONARD
BOSACK AND BETTE M. KRUGER
FOUNDATION**, a California corporation;
and **& CAPITAL, INC.**

Respondents and Counterclaimants

**INTERIM AWARD #3.**
No. #74 181 Y 00129 04 DEAR

David C. Soward et al and &Trust et al
American Arbitration Association #74 181 Y 00129 04 DEAR

THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the arbitration agreement contained in the Management Agreement ("Management Agreement") entered into between the parties on January 30, 2001, and effective as of January 1, 1999, having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby AWARD as follows:

## PRELIMINARY STATEMENT

This INTERIM AWARD #3 incorporates by reference the prior findings by the Panel as to Soward's claim for an accounting and distribution of his partnership interest in Cartesian Partners ("'Cartesian") at pages 13-19 of INTERIM AWARD #1 and the prior award to Soward as to Cartesian at pages 56-57 of INTERIM AWARD #1 (claim 2).

In making our findings and award in this INTERIM AWARD #3, we have considered the credibility of the witnesses, the expert testimony and reports, the accountings submitted by the parties, our views of the weight to be given to the documentary evidence and testimony of the various witnesses including the experts and their reports, the respective accountings, and the oral and written arguments of the parties. We have also considered the inferences that could, or could not, be drawn from the documents, the reports, the accountings, and the testimony.

## I. BACKGROUND AND PROCEDURAL HISTORY

When Bosack and Lerner terminated Soward as investment manager of their respective trusts and partnerships on November 24, 2003, Bosack also terminated Soward as general partner of Cartesian. In the subsequent months, neither Bosack nor SLLB, the successor General Partner, provided Soward with an accounting for his interest in Cartesian,

even though they claimed that he was no longer a partner.[1] Instead, Bosack and SLLB took the position that the value of Soward's interest was zero.

However, in Soward's K-1 for 2003, Cartesian told the IRS that Soward had a balance of $1,001,101 in his Capital Account as of December 31, 2003. In Soward's K-1 for 2004, Cartesian stated that Soward had a balance of $135,000 in his Capital Account as of December 31, 2004. Cartesian has paid neither of these sums to Soward.

In these arbitration proceedings Soward sought an accounting for the value of his partnership in Cartesian. In INTERIM AWARD #1, we determined that Soward is and continues to be a partner, albeit not the general partner, in Cartesian and is entitled to be paid the value of his capital account as of September 30, 2006. We ordered that within 60 days after the date of INTERIM AWARD #1, Soward and the respondents were to file with the Panel an accounting, prepared by their respective experts, calculating the value of Soward's capital account in Cartesian as of 9/30/2006.

The Panel also ordered that once Soward had an accounting and the value of his interest had been determined, Cartesian would have sixty (60) days in which to pay that amount to Soward. Upon payment to Soward, it was the Panel's decree that Soward shall no longer be a partner of Cartesian and shall be considered for every purpose as having withdrawn as a partner. It was also the Panel's decree that in the event Soward is not paid the value of his capital account within the sixty (60) days that, pursuant to Section 17-802 of the Delaware law applicable to limited partnerships, Cartesian shall be dissolved and, in the manner set forth in Section 17-803, wound up.

---

[1] Bosack testified that as to an accounting for Soward's other partnership interest in & Capital Partners "...we (Bosack and Lerner) should have provided it as soon as were able to provide an approximation of it, but certainly after he sued us, he wasn't going to get much. Somehow being sued disimproves one's mood with regard to these things..." It appears that Bosack and SLLB took the same approach as to an accounting for Soward's interest in Cartesian.

INTERIM AWARD #3                        - 3 -

In November, the parties filed separate accountings and expert reports relating to Soward's interest in Cartesian, together with replies addressing the differences in the accountings of the other side. The Panel has now considered the accountings, the expert reports, and the other evidence as set forth in our PRELIMINARY STATEMENT above.

We enter our findings and AWARD as to the value of Soward's interest in Cartesian as follows:

## II. THE VALUE OF THE CARTESIAN ASSETS

We must determine the value of the assets of Cartesian as of September 30, 2006. In his accounting, Bosack placed a value on those assets of $17,329,369.48.[2] On the other hand, Soward placed a value on the assets of $18,995,869.79.

The valuations were based on the reports of the respective experts. Their analysis differed, as did their methodology. We find the analysis and methodology used by Soward's expert, D. Paul Regan, CPA, CFE, more persuasive than the analysis and methodology used by respondent's experts, Penn Consulting Group P.C. and William J. Galbally, CPA, with three exceptions.

First, we find that the value of the Liberty stock should be determined as of September 30, 2006, as provided in INTERIM AWARD #1, not at some later date as urged by Soward. Soward contends that the value should be determined after the cut off date based on the argument that the stock increased in value after September 30. However, INTERIM AWARD #1 provided for this contingency by requiring that interest be paid on the value of Soward's interest in Cartesian (and hence on the value of the stock) for the period after September 30 until the value of Soward's interest was paid. It is not appropriate, in our view, to base the

---

[2] "Bozack" includes SLLB, the present general partner of Cartesian. SLLB is a partnership of Sandra Lerner and Leonard Bosack.

value of the interest in the stock on some later date, when the public market price may have fluctuated. We do not think it appropriate to speculate on the value of the stock at still other future dates. The accounting has to end sometime. We value the stock in Liberty as of September 30, 2006, at 2.75 English pounds.

Second, we find that the value of Cartesian's interest in Thomas Weisel should be based upon the financial statements of Weisel which recorded the value of its portfolio investments at "fair value." We find it speculative for Soward to base the value of the Weisel investments on unsworn estimates by the CFO of Tailwind Capital, the manager of Weisel, which are at variance with Weisel's financial records. Further, we find that the estimates of any future liquidated value of Weisel investments, as reported by Regan, are highly speculative. It is more likely, in our view, that any future liquidation value has already been factored into the "fair value" as recorded in Weisel's books.

Third, we find that the appropriate exchange rate to be applied in converting Cartesian's' investment in Liberty and Active Value into dollars is 1.8726 as used by Bosack, not 1.87649 as claimed by Soward. While both Bosack and Soward use public sources for their respective exchange rates, in our judgment the source used by Bosack is more reliable.

As to the other differences in valuations, we find that Bosack improperly failed to account for the effect of a distribution of $184,602 received by Cartesian from Thomas Weisel on September 29, 2006. This distribution was clearly material to the valuation of Cartesian as of September 30.

We also find that Bosack improperly failed to allocate the net losses of the partnership as required by Sections 3.3(a) and 3.3(b) of the Wood agreement, which we found in INTERIM AWARD #1 to be the applicable partnership agreement.

In all the circumstances, we find that the net value of the assets of Cartesian as of September 30, 2006, is $17,975,247.

David C. Soward et al and &Trust et al
American Arbitration Association #74 181 Y 00129 04 DEAR

### III. THE PERCENTAGE OWNERSHIP OF THE CARTESIAN ASSETS

To determine the percentage ownership by Soward and Bosack of the assets of Cartesian as of September 30, 2006, we proceed in two steps.

First, we start with the capital contributions of Soward and Bosack, which were $525,636 and $10,114,747 respectively[3]. We then add another $640,000 to the capital contribution of Bosack. This reflects a contribution by Bosack, discussed below, in response to a capital call by one of Cartesian's investments when Soward was no longer the general partner. It brings Bosack's total contribution to the capital of the partnership to $10,754,747.

Because the net value of the assets of Cartesian as of September 30, 2006, is $17,975,247, and because this value is more than the aggregate of the capital contributions by Soward and Bosack, i.e., $11,280,383 ($525,636 plus $10,114,747 plus $640,000), the partnership has sufficient assets to permit a return to Soward of his $526,636 contribution to capital. This leaves profits of $6,694,864 ($17,975,247 less $11,280,383), which must be allocated.

Second, we allocate a percentage of the profits of $6,694,864 to Soward from the time of his initial capital contribution to September 30, 2006. In INTERIM AWARD #1, we found that the partnership agreement provided that Soward was to receive 10% of the profits of Cartesian, together with 100% of the return on his own investment. We found that "The

---

[3] The contributions by Soward were $75,000, $263,135.85, $87,500, $75,000, and $25,000 (totaling $525,636.85).

The contributions by Bosack and SLLB were $950,000, $5,474,581.27, $1,662,500, $1,425,000, $475,000, and $127,666 (totaling $10,114,747).

INTERIM AWARD #3     - 6 -

economic consequence of that was to apportion profits of the Partnership 14.5% to Soward, 85.5% to Bosack" (INTERIM AWARD #1, page. 14).[4]

Following the entry of INTERIM AWARD #1, Bosack has requested the Panel to enter an award that Soward has only a 5% interest in the profits of Cartesian after the termination of Soward as general partner in November 2003.[5] Soward, on the other hand, contends that the interim award is final as to the determination of Soward's interest in the profits of the Partnership at 14.5%.[6]

We do not reach the arguments of the parties as to the finality of our prior AWARD # 1 as to the 14.5% interest of Soward in the profits of the partnership. If we were to reach this issue, we would rule for Soward. We would hold that Bosack failed to move to correct Interim Award #1, if Bosack believed there was error, within the 20 days permitted by Rule 46 of the Commercial Arbitration Rules of the American Arbitration Association.[7] Thus, we would find that Bosack waived his right, if any, to seek a redetermination of Soward's

---

[4] Bosack testified that he understood that the proposed financing of Cartesian was such that it would result in a 14.5% return on profits to Soward. (Bosack testimony, February 8, 2006, p. 212, lines 2-5.)

[5] Respondent/Counterclaimant Bosack's Memorandum Regarding the Panel's Authority to Enter an Award that Soward has a 5% Partnership Interest in Cartesian dated December 1, 2006.

[6] Claimant's Brief on Whether the Panel has the Power Under AAA Commercial Rules R-46 to Modify David Soward's 14.5% Percentage Interest in Cartesian Partners LP as Determined by Interim Award #1 dated December 1, 2006; Letter from Folger Levin & Kahn LLP to Panel dated December 4, 2006.

[7] Rule 46 provides:

"Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto."

David C. Soward et al and &Trust et al
American Arbitration Association #74 181 Y 00129 04 DEAR

percentage in the profits of the partnership, bifurcating the percentage interest to (a) 14.5% before termination in November 2003 and (b) 5% afterwards.

Bosack contends that he should not be penalized for listing Soward's interest at 14.5% in the Federal Tax Return for 2005 which was filed in October 2006. Bosack contends that he was only following the terms of INTERIM AWARD #1 filed September 7, 2006, which he interpreted (correctly) to provide that Soward had a 14.5% interest in the profits of the partnership. However, we do not base our finding of 14.5% on what Cartesian did in October 2006.

The Wood Agreement provides that on termination of the General Partner, the General Partner's interest in the net profits and losses of the partnership would remain unchanged. Section 8.4 provided:

> "Upon cessation of any General Partner's status as general partner for any reason other than as a result of a transfer of such General Partner's interest pursuant to Section 8.2, such General Partner's interest will be converted into a limited partner's interest. In the event of such a conversion, **such General Partner's interest in the net profits and losses of the Partnership will remain unchanged**, but such General Partner will lose those rights and obligations accorded to a General Partner under this Agreement and will assume the rights and obligations of a limited partner" (emphasis added).

The language of section 8.4 is consistent with our finding that Soward retained a 14.5% interest in the profits of the partnership after termination as general partner.

Finally, as to the argument by Bosack that Soward did nothing to earn the 10% carried interest after his termination as general partner, neither Bosack nor SLLB, the new general partner, changed the investment mix of the partnership after Soward's termination. Instead, they left the limited number of prior investments intact. Any change in the value of the investments, up or down, could be traced directly to the efforts of Soward who initially made

INTERIM AWARD #3         - 8 -

David C. Soward et al and &Trust et al
American Arbitration Association #74 181 Y 00129 04 DEAR

the investments. Because the status quo of the investments has been maintained for three years by Bosack and SLLB Partners, with no investment changes being made one way or the other except to answer a capital call, it would be inequitable to change the status quo as to Soward's 14.5% ownership in the profits and now reduce that interest to 5%.

The Panel finds that Soward continued to have a 14.5 % interest in the aggregate profits of the partnership from the date of his termination in November 2003 until September 30, 2006. We also find that the aggregate profits are $6,694,864 as of September 30, 2006. We thus find that dollar value of Soward's interest in the profits is $970,755 (14.5% times $6,694,864), but subject to the offset described in part IV below.

The value of Soward's capital contribution ($525,636), together with his 14.5% interest in the profits ($970,755), totals $1,496,391.

## IV. OFFSET FOR PERCENTAGE SHARE OF CAPITAL CONTRIBUTION OF $640,000 BY CARTESIAN

In the period following Soward's termination as general partner on November 24, 2003, Cartesian answered a capital call for one of the partnership investments in the amount of $640,000.[8] The partnership did not request Soward to respond to that capital call, having taken the position that Soward was not a partner for any purpose.

In INTERIM AWARD #1 we found that Soward remained a partner, albeit not the general partner. As such, in an accounting for the partnership, it would be inequitable to absolve Soward from liability for his proportionate share of the capital call. His interest in the capital of the partnership from the beginning was 5%, apart from his carried interest in the profits and losses of the partnership. Accordingly, we find that Soward owes the partnership

---

[8] It appears that Bosack paid the $640,000 from his personal funds. However, because he made payment on behalf of Cartesian, we treat the response to the capital call of $640,000 as having been made by Cartesian.

INTERIM AWARD #3                - 9 -

a sum equal to his proportionate share of the capital call. This sum, 5% of $640,000, is $32,000. Because no demand was made on Soward for a contribution to the capital call in view of Bosack's contention that Soward was no longer a partner, we do not award Cartesian interest on the $32,000.

## V. SUMMARY

We find that the value of the assets of Cartesian as of September 30, 2006, is $17,975,247. We further find that Soward has a (a) right to a return of his initial capital of $525,636, plus the (b) right to 14.5% of the profits of the partnership, whether earned before or after his termination to date, or $970,755. We find his total interest in the assets of the partnership is $1,496,391 ($970,755 plus $525,636). However, we also find that Cartesian is entitled to an offset of $32,000 against such interest, effective as of September 30, 2006, in order to recoup from Soward 5% of the capital call. Thus, we find that the net interest of Soward in the assets of Cartesian as of September 30, 2006, is $1,464,391 ($1,496,391 less $32,000).

We deny all other claims made by the parties as to the value of the assets of Cartesian as of September 30, 2006.

## VI. AWARD

Based on all of the Foregoing, the Panel herewith unanimously AWARDS as follows:

i. This is an INTERIM AWARD. Unlike INTERIM AWARDS 1 and 2, it is intended to be confirmable upon entry by the Panel.[9]

---

[9] This INTERIM AWARD #3 covers a discrete subject matter, i.e., an accounting for Cartesian. It is unlike INTERIM AWARDS #1 and #2 which later may, or may not, form the basis of an award of punitive damages against one or both parties. There is no good reason for further delaying payment to Soward of the value of his interest in Cartesian, Soward already having been deprived of the use of any funds from Cartesian for more than three years.

ii. Soward is entitled to payment of $1,464,391 as his share of the assets of Cartesian as of September 30, 2006, with interest on the $1,464,391 at 10% from October 1, 2006, until paid.

iii. Cartesian shall have sixty (60) days from the date of this AWARD to pay to Soward the sum of $1,464,391, plus accrued interest from September 30, 2006, to date of payment.

iv. Upon payment to Soward, it is the decree of this Panel that Soward shall no longer be a partner of Cartesian and shall be considered for every purpose as having withdrawn as a partner.

v. In the event that Soward is not paid the value of his capital account within sixty (60) days it is the decree of this Panel that, pursuant to section 17-802 of the Delaware law applicable to Limited Partnerships, Cartesian shall be dissolved, and in the manner set forth in section 17-803, wound up.

vi. This INTERIM AWARD #3 includes a full settlement and determination of all claims and counter-claims submitted to the Panel in this arbitration in connection with the valuation of Soward's interest in Cartesian, and incorporates by reference the prior determination of all claims and counterclaims relating to Cartesian covered by INTERIM AWARD # 1.

vii. This INTERIM AWARD #3 does not include a determination or settlement of (a) claims for punitive damages or (b) claims for attorney's fees and costs. This determination will be made later.

viii. All other claims and counterclaims relating to Cartesian not expressly granted in INTERIM AWARD #1 and this INTERIM AWARD #3 are hereby denied, except for claims relating to Cartesian for an award of punitive damages and attorney's fees and costs.

ix. The Panel reserves jurisdiction over this arbitration proceeding for all purposes until entry of the FINAL AWARD herein.

DATED: December 12, 2006

*[Signature Block on Next Page]*

David C. Soward et al and &Trust et al
American Arbitration Association #74 181 Y 00129 04 DEAR

_[signature]_
_____
Professor J. Lani Bader
Arbitrator

_[signature]_
_____
Zela G. Claiborne
Arbitrator

_[signature]_
_____
Thomas J. Klitgaard
Arbitrator