# TAB 4

**SUBJECT TO PROTECTIVE ORDER DATED MARCH 21, 2006**

*AMERICAN ARBITRATION ASSOCIATION*

**Commercial Arbitration Tribunal**

**DAVID C. SOWARD**, an individual; & **MANAGEMENT COMPANY**

Claimants and Counter Respondents

and

**THE & TRUST; SANDY LERNER,**
Individually and as Trustee on behalf of the & Trust and the Sandy Lerner Trust; **LEONARD BOSACK**, individually and as Trustee on behalf of the & Trust and The Leonard Bosack Trust; **RICHARD TROIANO**, as Trustee on behalf of **THE & TRUST; & CAPITAL PARTNERS, L.P.; CARTESIAN PARTNERS, L.P.; LEONARD BOSACK AND BETTE M. KRUGER FOUNDATION**, a California corporation; and **& CAPITAL, INC.**

Respondents and Counterclaimants

**INTERIM AWARD #4**
No. #74 181 Y 00129 04 DEAR

Seventh and Eighth Claims for Relief by Claimants David C. Soward and & Management Company

THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the

arbitration agreement contained in the Management Agreement ("Management

Agreement") entered into between the parties on January 30, 2001, and effective as

of January 1, 1999, having been duly sworn, and having duly heard the proofs and

allegations of the Parties, do hereby AWARD as follows:

## PRELIMINARY STATEMENT

This INTERIM AWARD #4 rules on Claimant David Soward's (hereinafter

"Soward") claims against Respondent Leonard Bosack ("Bosack") for breach of

fiduciary duty with respect to Cartesian Partners ("Cartesian") (claim 7) and Soward's

claims against Respondent Bosack and Respondent Sandy Lerner ("Lerner") for

conversion of Soward's interest in Cartesian (Claim 8).

This INTERIM AWARD #4 incorporates by reference the prior (a) findings by

the Panel as to Soward's claim for an accounting and distribution of his partnership

interest in Cartesian at pages 13-19 of INTERIM AWARD #1 and (b) AWARD to

Soward as to Cartesian at pages 56-57 of INTERIM AWARD #1 (claim 2).

This INTERIM AWARD #4 also incorporates by reference the prior (a) findings

by the Panel as to the value of the assets of Cartesian and Soward's net interest in

those assets as of September 30, 2006, and the (b) AWARD to Soward relating to his

interest in Cartesian at pages 10-11 of INTERIM AWARD #3.

David C. Soward et al and &Trust et al
American Arbitration Association #74 181 Y 00129 04  DEAR

In making our findings and award in this INTERIM AWARD #4, we have considered the credibility of the witnesses, the documentary evidence relating to Cartesian, our views of the weight to be given to the documentary evidence and testimony of the various witnesses, and the oral and written arguments of the parties. We have also considered the inferences that could, or could not, be drawn from the documents and the testimony.

## I.    **The Parties**:

Soward and & Management Company ("& Management") were the general partners of Cartesian from 1999 until purportedly terminated by Bosack on November 24, 2003.  Soward owned a 4% capital interest in Cartesian and & Management a 1% interest.  In the period 1999 to December 31, 2003, Soward's and & Management's capital interest in the partnership, as reported in Federal K-1s, increased from $332,863 in 1999, to $413,535 in 2000, $525,965 in 2001, $870,560 in 2002, and $1,001,101 in 2003.[1]

& Management is a company separate from Soward, incorporated in 1998, as shown by the records of the California Secretary of State.  In his demand for arbitration Soward incorrectly described & Management as a sole proprietorship.  In a complaint filed in the Washington Federal District Court, respondents Bosack and Lerner alleged that & Management is wholly owned by Soward and that there is such a unity of interest and ownership that the individuality, or separateness, of

---

[1] The K-1s referred to in this AWARD are for tax years ending December 31.

INTERIM AWARD #4                     - 3 -

Soward and & Management has ceased and that adherence to the fiction of the separate existence of the corporation "would, under these particular circumstances . . . promote injustice" (Washington Complaint, par. 6). The Panel accepts this allegation as true. It treats Soward's claims as incorporating the rights of & Management. Hereafter, Soward and & Management are referred to collectively and separately as "Soward."

Leonard Bosack, respondent, is an individual. He is a trustee of the Leonard Bosack Living Trust dated February 24, 2001 ("Bosack Trust"), which has been the limited partner in Cartesian from its formation to date. In the period 1999 to December 31, 2003, the Bosack Trust's capital interest in the partnership, as reported in Federal K-1's, increased from $6,393,486 in 1999, to $8,015,726 in 2000, $9,659,840 in 2001, $12,020,940 in 2002, and $12,638,141 in 2003. In the same period, the total capital of both Bosack and Soward in the partnership, as reported in Federal K-1's, increased from $6,726,349 in 1999, to $8,429,261 in 2000, $10,185,535 in 2001, $12,891,500 in 2002, and $13,766,908 in 2003.

Sandy Lerner, respondent, is an individual. She is a trustee of the Sandy Lerner Trust ("Lerner Trust"), which is the owner of an interest in SLLB, LLC, which became general partner of Cartesian effective as of November 24, 2003, when Soward was terminated as general partner.

SLLB, LLC ("SLLB"), is a Delaware limited liability company. It is owned jointly by Bosack and Lerner. It substituted itself as general partner of Cartesian effective as of November 24, 2003. As shown on the K-1 for Cartesian for the year ending

David C. Soward et al and &Trust et al
American Arbitration Association #74 181 Y 00129 04 DEAR

December 31, 2003, Bosack transferred $127,908 of the capital account of the Bosack Trust to SLLB in 2003.  SLLB's interest in the partnership, as reported in the Federal K-1s, was $127,666, as of December 31, 2003.  SLLB was the tax reporting partner for Cartesian for the years ending December 31, 2003, and December 31, 2004.

## II.    Cartesian

Cartesian is a limited partnership formed under Delaware law in 1999.  From its formation in 1999 until the purported termination of Soward and & Management as general partners on November 24, 2003, Soward and & Management were the general partners and the Bosack Trust was the sole limited partner.

Pursuant to an amended and restated partnership agreement, effective as of November 24, 2003, SLLB purportedly became the only general partner of Cartesian.  The Bosack trust remained the sole limited partner.

In Interim Award #1, the Panel found that an agreement prepared by attorney Robert Wood in 1999 and presented to Bosack ought to provide the relevant terms of the partnership agreement (page 16) and, accordingly, to provide the basis of Soward's rights as to Cartesian (page 17).

## III.    Background and Procedural History

In the fall, 2002, Soward asked Bosack and Lerner to extend his contract and increase his compensation as investment manager of the & Trust.  His contract was expiring the next year.

In the spring, 2003, Bosack and Lerner tasked an accounting firm, Clark Nuber in Seattle, to review Soward's performance in the & Trust and Bosack and Lerner-related entities.

In the fall of 2003, Bosack and Lerner decided to terminate Soward from all his positions with their entities. Bosack, as limited partner, also decided to terminate Soward as general partner of Cartesian.

On November 24, 2003, Bosack through his lawyers told Soward that he was terminating Soward as general partner of Cartesian. Bosack, through his lawyers, sent notice to the depositary bank that held Cartesian's account that (i) Soward and & Management were no longer authorized to take any action with the bank with respect to the Cartesian account, (ii) any powers of attorney, any appointments of Soward and & Management as agents of Cartesian, and any similar grants of authority, had also been revoked, and (iii) Soward was no longer the general partner of Cartesian (Ex. 3729). The notification instructed the bank to notify its staff of the revocation of authority and change of the general partner. A similar notice was sent to an investment house in England.

On February 5, 2004, Soward and & Management filed a demand for arbitration against, so far as here relevant, Lerner individually and on behalf of the Lerner Trust, Bosack individually and on behalf of the Bosack Trust, and Cartesian. Soward and & Management asserted claims for dissolution of Cartesian, an accounting, and compensatory damages.

In July 2004, Bosack and Lerner filed a complaint in the United States District Court for the Western District of Washington against Soward and & Management, alleging a number of causes of action, including as to Cartesian, that all funds that defendants contributed to Cartesian as capital were improperly taken from another partnership and that Soward had no lawful interest in Cartesian.

In September 2004, SLLB, the new general partner of Cartesian, filed a tax return for 2003 with the Internal Revenue Service showing that Soward had a capital account as of the end of 2003 of $1,001,101, with Bosack having a capital account of $12,638,141, and SLLB a capital account of $127,666.

In October 2005, without telling Soward, SLLB filed a tax return for 2004 with the Internal Service reducing Soward's capital account to $135,889 or in the alternative to zero, transferring $865,212 from the $1,001,101 Soward capital account to the Bosack Trust capital account.  The books and records of Cartesian showed that the capital account of Soward remained at $1,001,101.

At the same time, the SLLB return reduced the value of one of the three investments of Cartesian, SG Securities-Liberty, as reported to the IRS by $3,429,113, changing the value from fair market value to cost.

Cartesian, Bosack, Lerner and SLLB did not produce an accounting at any time for Cartesian until ordered  to do so by the Panel in its Interim Award #1 on September 7, 2006.  On December 12, 2006, the Panel found that the value of Soward's interest was $1,464,391 as of September 30, 2006.  The Panel is informed

that Bosack or SLLB, it is not clear which, paid $1,464,391, plus interest from October 1, 2006, to Soward on December 14, 2006.

In March 2006, the Panel allowed Soward to amend his claim for relief as to Cartesian, adding a claim for breach of fiduciary duty as to Bosack for failing to provide an accounting and converting Soward's interest in Cartesian (Seventh Claim) and a separate claim for conversion against Bosack and Lerner for converting Soward's interest in Cartesian to their own use (Eighth Claim). Soward also alleged claims for punitive damages relating to the Seventh and Eighth claims. The punitive damages issues are deferred until a later date, per the Panel's Hearing Order No. 40.

## IV.    Seventh Claim:  Breach of Fiduciary Duty

When Bosack decided to terminate Soward and & Management as General Partners of Cartesian (collectively "Soward"), he had no signed agreement which permitted him to do so. He was left with Delaware Limited Partnership law, which required a court order, or the Wood agreement, which provided that upon cessation of any general partner's status as general partner other than as a result of a transfer, such general partner' interest would be converted into a limited partner interest.

When Bosack nonetheless decided to terminate Soward immediately and to substitute himself and Lerner through SLLB as the general partner, and to expel Soward entirely from the partnership, he and Lerner were met within two months with a demand for arbitration. The demand sought an accounting for Soward's interest in Cartesian.

Before that time, Bosack and Lerner had hired Clark Nuber to investigate Soward. Clark Nuber did so for a period of approximately nine months. Bosack's and Lerner's lawyers were also involved from time to time in the investigation. Clark Nuber was the regular accounting firm for Cartesian and prepared its tax returns.

In July 2004, Clark Nuber asked the IRS for an extension of time to file the return and related schedules for the partnership, "in order to gather information necessary to assure preparation of a complete and accurate tax return" (Ex. 4370).

A short time later, also in July, Bosack and Lerner filed a lawsuit in the Federal District Court in Seattle alleging that Soward had improperly taken his capital contribution to Cartesian from another limited partnership, where he was the general partner and where the Bosack Trust and the Lerner Trust were the limited partners. The complaint alleged that the only capital ever contributed by Soward to Cartesian belonged to the plaintiffs and that Soward had no lawful interest in the partnership. This allegation was false, because Soward had contributed $25,000 of separate funds to the partnership, apart from funds transferred from his account with the other partnership.

In late September 2004, the accountants had completed their work and Cartesian filed its tax return for the year ending December 31, 2003, the year in which Soward was terminated. SLLB signed the tax return as general partner. The evidence does not show whether Bosack or Lerner signed for SLLB, but it is reasonable to infer from the way things were handled in the partnership that Bosack signed the return. The return contained the usual statement under penalty of perjury

by the general partner that the general partner had examined the return, including the accompanying schedules, and that to the best of its knowledge the return was true, correct, and accurate.  The Schedule K-1s for the return showed a total capital of $13,766,908 for the partnership, with $12,638,141 allocated to the Bosack Trust, $1,001,101 allocated to Soward, and $127,666 allocated to SLLB.

It was plain from the demand for arbitration filed seven months earlier that Soward wanted an accounting and to be paid for his interest in Cartesian.

In the summer of the next year, 2005, Clark Nuber began preparing the partnership return for the year ending December 31, 2004, the first full year in which Soward was no longer the general partner or, in Bosack's view, a limited partner. They prepared the return the same way as they had done the year before, carrying over the ending capital balance for the partners, adding in the profits or losses, and then computing the respective capital accounts.  As to Soward, they froze the value of his capital account as of the end of the prior year, to reflect that he was no longer sharing in the profits and losses.  The draft showed that the value of his account was unchanged from the prior year.

When Lerner's accountant in Virginia, Mr. Middleton, received the draft, he pushed back, telling the accounting firm that Cartesian's position was that Soward had no capital account.  He said that the funds that Soward had used to fund his account were almost all improperly withdrawn from the other partnership.  He came close to repeating the false statement in the Washington Federal Court suit that the "only" capital contributed to Cartesian belonged to Bosack and Lerner, but stopped short.

He tacitly admitted to the accountants that at least some funds were not improperly withdrawn and belonged to Soward.

At some point shortly thereafter, Bosack and his attorneys became personally involved in the preparation of the partnership return.  Middleton, acting for Bosack, told the accountants to move the amount that was previously recorded as Soward's capital account over to Bosack as of January 1, 2004.  The accountants did as they were told, sending a second draft of the tax return showing that the million plus dollars listed for Soward's capital account had been transferred to Bosack's capital account.  No funds were transferred to SLLB's capital account.

Apparently, this wholesale transfer to Bosack was too much.  Bosack's attorneys requested still another version of the tax return.  In an e-mail to Clark Nuber, Middleton wrote: "They now want to show Mr. Soward with $135,000 in his capital account" (Ex. 4385).  The balance of $866,101 was transferred to Bosack's account.

However, to protect Bosack and SLLB, Middleton or one of Bosack's attorneys, it is not clear who, told the accountants to attach a paragraph to the end of the tax return that said: "In the alternative Leonard Bosack has a capital account of $10,187,866 and David Soward has a capital account of $0.00.  The issue whether David Soward is entitled to a partnership interest in the partnership, and if so, the amount of his capital account, if any, is the subject of a pending arbitration proceeding" (Ex. 4370).  An accountant from the accounting firm testified that this note was highly unusual.  It put Cartesian and Soward at risk with the IRS.  The note

David C. Soward et al and &Trust et al
American Arbitration Association #74 181 Y 00129 04 DEAR

did not point out that Soward was claiming an interest of at least $1,000,101 in the capital of the partnership. More importantly, it did not point out that the books and records of the partnership had continued to show this amount as Soward's interest. Nor, according to Middleton, who took over preparation of the books and records, were they ever changed.

Bosack was kept personally apprised of the transfer of the $866,101 of Soward's capital interest on the tax return. He then signed the tax return, under oath, on behalf of SLLB. The evidence did not show whether Lerner personally knew of these events when they occurred. However, when they surfaced in the arbitration, she did not disavow them.

Middleton testified that he instructed Ms. Norgaard, Bosack's in-house bookkeeper in Seattle, to send the 2004 K-1, showing Soward's interest reduced to $135,889, to Soward. This instruction was contrary to the practice in prior years, where the accounting firm sent the K-1s to Soward. Norgaard testified that she never received the K-1 for 2004. Soward testified that he did not receive the K-1 showing his reduced interest for over a year and half until produced in the arbitration proceedings.

In addition to transferring Soward's interest to Bosack, SLLB reduced the value of SG Securities-Liberty, one of the three investments of Cartesian, on the tax return by $3,429,713, changing the value from fair market value to cost. This publicly traded company was one of the investments for which Soward was seeking payment in the accounting. It was also an investment for which his management judgment

was being challenged in the arbitration by Bosack. Over the five years that this investment, made by Soward as general partner, was recorded in Cartesian's returns, its fair market value had increased from $5,897,943 in 2001 to $8,137,887 in the year ending December 31, 2002, and to $9,020,962 in the year ending December 31, 2003, when Soward was terminated. There was no testimony showing that this change from fair market value to cost was consistent with generally-accepted accounting principles.

## Discussion

The claim for breach of fiduciary duty is made against Bosack individually and as trustee on behalf of the Leonard Bosack Trust, the limited partner in Cartesian.

The claim has two parts, one for alleged breach of fiduciary duty by failing to make an accounting of Soward's interest in Cartesian, the other for converting Soward's interest in Cartesian to his own without justification, without providing an accounting, and without legal authority.

### 1. First Part: Accounting

Under Delaware law, which the parties have stipulated is applicable to the Cartesian partnership, a limited partner has fiduciary duties to the general partner where, as here, the general partner is terminated and the limited partner assumes control of the assets of the partnership. A non-judicial termination effects a dissolution of the partnership. Here Bosack made a non-judicial termination of the partnership with Soward. He took over its assets, forbidding the principal bank holding those assets, and a large foreign investment house, to have any further

dealings with Soward on behalf of the partnership. At that point, Bosack, individually, and the Bosack Trust through which he acted, held the assets of the partnership in trust, as a fiduciary.

Under Delaware limited partnership law, under less extreme circumstances as where a general partner voluntarily withdraws from the partnership, the remaining limited partner or partners have a duty to account for, and pay over, to the withdrawing partner his or her share in the assets of the partnership within a reasonable time. Section 17-604 of the Delaware code provides guidance:

"... upon withdrawal any withdrawing partner ... is entitled to receive, within a reasonable time after withdrawal, the fair value of such partner's partnership interest in the limited partnership as of the date of withdrawal based upon such partner's right to share in distributions from the limited partnership."

The & Capital Partners, LLP, agreement, in which the Bosack Trust was a limited partner, and which Bosack claimed to be the applicable partnership agreement for Cartesian, though not reduced to writing, similarly provided for a prompt accounting to the general partner and distribution of his or her share of the assets on termination:

"After the ... removal of the General Partner [at any time with or without cause], there shall be distributed to the General Partner any positive balance in the Fair Value Capital Account of the General Partner, or nothing if such balance is zero or negative. All such

distributions shall be made no later than the later to occur of (i) the

end of the taxable year in which occurs the . . . removal of the General

Partner and (ii) 90 days after the date of such . . . removal, except that

reserves reasonably required to provide for liabilities may be retained

so long as such reserves are distributed as soon as practicable

thereafter.  The General Partner shall be entitled to no other

distribution or payment from the Partnership (including, without limit,

severance payment) at such time of termination of his management of

the Partnership, or at any time thereafter" (Ex. 3017, par. 5.8).

Here, Bosack did not provide a prompt accounting or distribution of Soward's

share of the assets in Cartesian.  In explaining why he and Lerner had not done so

with regard to the termination of Soward as General Partner of & Capital Partners, he

testified that "we [Bosack and Lerner] should have provided it as soon as were able to

provide an approximation of it, but certainly after he sued us, he wasn't going to get

much.  Somehow being sued disimproves one's mood with regard to these things

. . . ." The Panel finds that Bosack, individually and through the Bosack Trust,  took

the same approach in failing to provide an accounting and distribution to Soward for

his interest in Cartesian within a reasonable time.

As to Cartesian, the failure was aggravated by the fact that within ten months

of the termination, SLLB, the new general partner, filed a tax return with the Internal

Revenue Service, stating under penalty of perjury that Soward's capital interest in the

partnership was $1,001,101 as of December 31, 2003.  SLLB's accountants, Clark

Nuber, who had been the accountants for the former Cartesian partnership when Soward was acknowledged to be the general partner, had obtained additional time from the IRS for SLLB and Bosack to file the return, to assure preparation of a complete and accurate tax return. Unless Bosack was lying to the IRS, the Panel finds that Bosack and the Bosack Trust, as the limited partner, knew the value of Soward's interest in Cartesian as of September 29, 2004, the date that SLLB signed its return.

Bosack contends that he and the Bosack Trust were excused from making an accounting when Soward filed his demand for arbitration, which prayed for an accounting. Bosack contends that he could not know how much to pay, if anything, until the Panel made its ruling as to whether Soward ever had a legitimate interest in Cartesian. However, this assertion contradicts the representation in the Federal Tax return. The Panel finds that this assertion was both false and made in bad faith. It further finds that the failure by Bosack to provide an accounting to Soward was done for the purpose of making it as difficult as possible for Soward to receive his funds in Cartesian and to hurt him.

That breach of fiduciary duty is further exacerbated by Bosack's role in manipulating the tax returns filed for the succeeding fiscal year, reducing the amount Soward's interest in Cartesian as of December 31, 2003, from $1,001,101 to $135,889 as a maximum. Bosack caused this reduction to be made in the tax return, even though, as testified by Middleton, the underlying books and records of Cartesnian were never changed and continued to show Soward's interest at $1,001,101.

David C. Soward et al and &Trust et al
American Arbitration Association #74 181 Y 00129 04  DEAR

Bosack states that the change in the tax return was made to reflect Bosack's and the Bosack Trust's litigation position, and that he was damned no matter what he did: if he showed the interest at $1,001,101 claimed by Soward, this would benefit Soward in the litigation as to the value of his interest; if he did not, he, the Bosack Trust, and SLLB would not be telling the truth as to their view of the value of Soward's interest.  He pointed to an attachment to the SLLB tax return, prepared by Middleton or his attorneys (it is not clear which, both claimed credit), that in the alternative Soward had a capital account of zero and stating that the issue of whether Soward is entitled to partnership interest in the partnership and, if so, the amount of his capital account, if any, is the subject of a pending arbitration proceeding.

Bosack's disclosure to the IRS was disingenuous and a half truth.  Bosack did not disclose, nor cause SLLB to disclose, to the IRS that he had unilaterally caused over three quarters of a million dollars to be diverted from Soward's account on the tax return to his own account, while the books and records of Cartesian still showed that Soward's interest in Cartesian was the same as the year before.  Likewise, he did not disclose that Soward was claiming in the pending arbitration proceeding that his capital account was over $1 million dollars.  While Bosack went to expense and effort to file the addition to the tax return, he stopped short of telling the entire truth.  In doing so, he breached his fundamental fiduciary duty to Soward of being honest and straightforward.  Instead of letting the chips fall where they may, he used the tax return to advance a litigation position, regardless of what the underlying books and records of the partnership might show.

David C. Soward et al and &Trust et al
American Arbitration Association #74 1B1 Y 00129 04 DEAR

The failure to pay to Soward, within a reasonable time, the value of his capital interest in Cartesian was likewise an egregious, willful breach of fiduciary duty. This failure lies at the feet of Bosack and the Bosack Trust, through which he acted. We find that the value of Soward's capital as of December 31, 2003, was due and payable to him as of September 29, 2004—i.e., $1,001,101. This was the date of the Federal Tax Return signed by SLLB. The Panel finds that Soward is likewise entitled to interest on that amount from September 30, 2004, at the applicable rate under Delaware law, to December 14, 2006. To the extent that the total sum, including interest when computed, is less than the amount ultimately awarded to Soward by the Panel on the accounting and paid on December 14, the liability will be deemed satisfied.

Bosack contends that Soward was not damaged by the failure to make an accounting because Soward was ultimately paid in the end, after the Panel made its award on the accounting on December 12, 2006. We find this contention to be without merit. Soward was damaged from the time that he was entitled to receive the distribution of his interest in Cartesian. He was deprived of the use of those funds for the support of himself and his family, or for whatever other purposes he might choose put them. The fact the he received them in the end did not undo the damage from not having the funds in the meantime.

As a further illustration of Bosack's breach of fiduciary duty, it was clear that Soward had put $25,000 in cash into Cartesian in 1999, no matter what the source might have been of his other capital contributions. In the period ending December

31, 2003, that investment had grown to $135,889.  However, in the complaint filed in

the Washington Court, Bosack claimed that the only funds put into Cartesian had

come from Soward's capital account at & Capital Partners.  By October 2005, in the

preparation of the tax return, even Middleton, the accountant working with Bosack

and his team of attorneys, recognized that Soward had at least some interest in his

capital account through funds from independent sources.  In the end, the attorneys

directed that the tax returns show Soward with $135,889 in his capital account.

However, Bosack refused to pay even the $135,000 to Soward--an infinitesimal

amount compared to Bosack's wealth--making Soward spend time, effort and

resources for another year to prove his right to the money.  There could be no bona

fide dispute as to his right to the $135,889.  Bosack's position did not even pass the

smell test of his lawyers.  Bosack claimed that he was being conservative in even

allowing that Soward might have an interest in the $135,889, rather than zero.  If

anything, he was being duplicitous with funds held as a fiduciary.

Bosack's conduct fell far short of applicable standards under Delaware law,

wholly apart from the general standards articulated long ago by Chief Justice Cardozo

in the leading case of Meinhard v. Salmon (1928) 129 N.Y. 458, 464:

> "Many forms of conduct permissible in a workaday world, for those acting
>
> at arm's length, are forbidden to those bound by fiduciary ties.  A trustee
>
> is held to something stricter than the morals of the market place.  Not
>
> honesty alone, but the punctilio of an honor the most sensitive, is then
>
> the standard of behavior."

In summary, the Panel finds that Bosack, and the Bosack Trust, are liable for an intentional breach of fiduciary duty in failing both to account to Soward for the value of his interest in Cartesian within a reasonable time and to pay him the value of that interest. As noted, giving the benefit of the doubt to Bosack to allow for careful checking of the capital accounts, the Panel finds that a reasonable time was September 29, 2004.

### 2. **Second Part:  Conversion**

This part of the award addresses Soward's claim that Bosack breached his fiduciary duty to Soward by converting Soward's interest to his own without justification, without providing an accounting, and without legal authority.

Like claim 1, this claim of breach of fiduciary duty is subject to Delaware law. However, the Panel's ruling on this claim of breach of fiduciary duty is independent of, and separate from, its ruling on claim 1 on failure to make an accounting. It is a separate and independent ground for relief. The Panel therefore does not incorporate its ruling on claim 1 but starts afresh.

When Bosack terminated Soward as general partner of Cartesian, he took over all the assets of Cartesian. First, he instructed the bank principally holding those assets, as well as a European investment house, to have nothing to do with Soward. Second, Bosack and his wife, Lerner, formed SLLB, a corporation, to be the general partner. SLLB then took control of the assets.

The assets were not mere choses in action or book entries. They were existing properties reported as such on the tax returns of the partnership.

When Soward requested an accounting for his interest in the specific assets, Bosack and Lerner refused to provide one. They also refused to turn over any part of the assets to Soward, claiming them as their own. Bosack then went so far as to cause a false tax return to be filed with the IRS as to the amount of Soward's interest---reducing the amount from $1,001,101 to $135,889 at the maximum. This tax return reflected Bosack's and SLLB's litigation position with Soward in the present arbitration, rather than the underlying books and records of the partnership.

The tax return did not affect a transfer of the assets. However, it showed malice by Bosack and SLLB toward Soward. Bosack and SLLB did not even cause the books and records of Cartesian to be changed to reflect honestly their litigation position. They would have been expected to do so if they truthfully thought that the litigation position had any merit.

Further evidencing his breach of fiduciary duty to Soward, Bosack did not even tell Soward about the change in the tax return at the time, even though Bosack was sitting across the table from Soward, looking him in the face, at the arbitration proceeding. Bosack and SLLB claimed that they never told Soward about the false tax return because Soward never asked. But the evidence showed that Bosack and SLLB never sent the changed K-1 to him.

Here the breach of fiduciary duty was taking over the assets of Cartesian and treating them as belonging to Bosack and to SLLB, and then exercising dominion and control over them. Bosack and SLLB intentionally kept the assets from Soward.

Under Delaware law, conversion is the wrongful exercise of dominion over the property of another, in denial of his or her right, or inconsistent with it.

Bosack contends that there could be no conversion and thus no breach of fiduciary duty in failing to turn over to Soward his interest in the capital of the partnership, because his capital was only reflected in a book entry of the partnership. But the books only listed the assets of the partnership. The conversion was not of the book entries, but of the assets which were reflected in the books. Bosack never contended that such assets did not exist.

The Panel finds that Bosack breached his fiduciary duty as sole limited partner and as an owner of SLLB, the new general partner, in excising dominion and control over the assets of Cartesian, in derogation of Soward's rights. The Panel further finds that such breach of fiduciary duty was intentional.

As to damages, Panel finds that Soward was damaged by this breach of fiduciary duty and that the amount of the damage was the value of Soward's interest in the assets as of December 31, 2003--$1,001,101--plus interest from September 29, 2004, the date on which SLLB signed its Federal Tax Return for calendar year 2003, to December 14, 2006. The interest shall be calculated at the applicable rate under Delaware law. To the extent that the damage, plus interest, is less than the $1,464,391 paid to Soward on December 14, 2006, as a result of the accounting in Interim Award #3, the damage claim for breach of fiduciary duty for conversion shall be deemed satisfied as of December 14, 2006.

## V. Eighth Claim: Conversion

The Eighth Claim for relief asserts that Bosack and Lerner have taken possession of Soward's interest in Cartesian and converted it to their own interest, causing damage to Soward.

The Eighth Claim recites that it incorporates by reference the allegations of the Seventh Claim and all the other allegations of Soward's previously filed demand for arbitration. However, the Panel is deciding this claim separately from the Seventh claim and Soward's other claims. Pursuant to stipulation by the parties, this Eighth Claim is subject to California law.

When Bosack terminated Soward as general partner of Cartesian, he designated SLLB, a limited liability company, as the replacement general partner. Bosack and Lerner controlled SLLB.

Bosack and Lerner caused SLLB to become the general partner effective as of November 24, 2003, the date Bosack terminated Soward. Soward's demand for arbitration filed February 5, 2004, demanded an accounting for his interest in the property of Cartesian. At the time, the property consisted of three investments: stock in SG Securities, a limited partnership interest in T. Weisel Capital Partners, and an investment interest in Active Value Capital. Altogether, these three investments totaled $13,391,494. The balance of the assets consisted of cash and receivables, totaling an additional $375,414. The aggregate value of the assets was $13,766,908. Soward's share of the assets was $1,001,101.

David C. Soward et al and &Trust et al
American Arbitration Association #74 181 Y 00129 04 DEAR

When Bosack, through the Bosack Trust as limited partner and thorough SLLB, and when Lerner through SLLB, took over as of November 24, they appropriated these assets to their own use, denying Soward any control over them.  Bosack instructed two holders of the assets, including a bank, to have nothing to do with Soward.  Further, Bosack and Lerner, through SLLB, began to use the assets for paying the operating expenses of their new partnership, including attorney's fees.

When Soward demanded that Bosack and Lerner turn over to him his interest in the assets, they refused to do so.  SLLB went so far as to file a false partnership tax return with the Internal Revenue Service for calendar year 2004 which showed Soward's portion of the specified assets as being no more than $135,889, down from the $1,001,101 the year before.  The books and records of the new partnership continued to show Soward's interest in the same amount as before.  While filing of the false tax return did not itself constitute a conversion of Soward's interests in the assets, it showed a knowing and callous indifference to his rights in the property.

Under California law, a conversion is the wrongful exercise of dominion over the personal property of another, after a demand, accompanied by damage.  As long ago as 1948, the California Court of Appeal held that the refusal by a transfer agent to transfer ownership of shares of stock on the books of a corporation in derogation of the rights of the owner could be deemed a conversion (Mears v. Crocker First Nat. Bank (1948) 84 Cal. App. 2d 637, 644-645).  The Court referred to the long standing rule that "'[a]ny act of ownership or exercise of dominion over the property of another, in defiance of his rights, is a conversion of that property'" (p.

645).  The Court further noted that it is not necessary to a conversion that there should be a manual talking of the thing in question.  Other case law leads to a similar conclusion.

Here, Bosack and Lerner through SLLB did not just interfere with the dominion of Soward over a small part of his partnership interest in a small amount of specific property, but all of it.  We find that their actions, separately for Bosack and through SLLB for Bosack and Lerner, in failing to turn over to Soward his interest in the assets of Cartesian within a reasonable time was willful conversion.  We find each individually responsible for the actions of SLLB.

We find that a reasonable time to turn over the assets was no later than September 29, 2004.  This was the date when SLLB signed a tax return with the Internal Revenue Service identifying Soward's interest at $1,001,101.  This was the effective final date of the conversion.  We find that Soward is entitled to interest on that sum in the maximum amount permitted by California law, 10%, until paid.  To the extent that the aggregate of principle and interest is less than the $1,464,391, plus interest, paid to Soward on December 14, 2004, in settlement of the accounting, the award shall deemed satisfied.

## VI .  AWARD

Based on the foregoing, the Panel hereby unanimously AWARDS as follows.

1.  This is an interim award.  It is not intended to be confirmable until it is incorporated into a final award.

2. On Soward's Seventh Claim, part one, breach of fiduciary duty (failure to account), Claimants David Soward and & Management Company are hereby awarded against Leonard Bosack individually and as Trustee of the Leonard Bosack Trust, separately and collectively, the sum of $1,001,101, together with prejudgment interest at the maximum Delaware rate permitted by law from September 29, 2004, through December 14, 2006, or until paid, whichever is later. However, to the extent that such sum, plus interest, through December 14, 2006, is less than the sum of $1,464,391, plus interest, paid to Soward on December 14, 2006, pursuant to INTERIM AWARD #3 ("the accounting amount"), this award shall be deemed satisfied. If such amount of $1,001,101, plus interest through December 14, 2006, is greater than the accounting amount, Bosack individually and as Trustee, separately and collectively, shall pay the difference to Soward and & Management Company, with interest at the maximum rate permitted by Delaware law, until paid.

3. On Soward's Seventh Claim, part two, breach of fiduciary duty (conversion), Claimants David Soward and & Management Company are hereby awarded against Leonard Bosack individually and as Trustee of the Leonard Bosack Trust, separately and collectively, the sum of $1,001,101, together with prejudgment interest at the maximum Delaware rate permitted by law from September 29, 2004, through December 14, 2006, or until paid, whichever is later. However, to the extent that such sum, plus interest, through December 14, 2006, is less than the sum of $1,464,391, plus interest, paid to Soward on December 14, 2006, pursuant to INTERIM AWARD #3 ("the accounting amount"), this award shall be deemed

satisfied.  If such amount of $1,001,101, plus interest through December 14, 2006, is greater than the accounting amount, Bosack individually and as Trustee, separately and collectively, shall pay the difference to Soward and & Management Company, with interest at the maximum rate permitted by Delaware law, until paid.

4.  On Soward's Eighth Claim, conversion, Claimants David Soward and & Management Company are hereby awarded against Leonard Bosack individually and as Trustee of the Leonard Bosack Trust, and Sandy Lerner, individually and as Trustee on behalf of the Sandy Lerner Trust, separately and collectively, the sum of $1,001,101, together with prejudgment interest at the maximum rate permitted by California law from September 29, 2004, through December 14, 2006, or until paid, whichever is later.  However, to the extent that such sum, plus interest, through December 14, 2006, is less than the sum of $1,464,391, plus interest, paid to Soward on December 14, 2006, pursuant to INTERIM AWARD #3 ("the accounting amount"), this award shall be deemed satisfied.  If such amount of $1,001,101, plus interest through December 14, 2006, is greater than the accounting amount, Bosack individually and as Trustee, and Lerner individually and as Trustee, separately and collectively, shall pay the difference to Soward and & Management Company, with interest at the maximum rate permitted by California law, until paid.

5.  This Interim Award includes a full settlement and determination of all claims submitted to the Panel by the Seventh and Eighth claims of Soward and & Management Company in this arbitration, except for (1) claims for punitive damages

David C. Soward et al and &Trust et al
American Arbitration Association #74 1B1 Y 00129 04 DEAR

and (2) claims for attorney's fees and costs.  All other claims included in the Seventh

and Eighth claims submitted to this Panel are hereby denied.

6.  The Panel reserves jurisdiction over this arbitration proceeding for all

purposes until entry of the Final Award herein.

**DATED:** January 25, 2007

_____
Professor J. Lani Bader
Chair

_____
Zela G. Claiborne
Arbitrator

_____
Thomas J. Klitgaard
Arbitrator