# Exhibit B

Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LEONARD BOSACK, individually and as Trustee on behalf of The & Trust and as Trustee on behalf of the Leonard Bosack Trust; and SANDY LERNER, individually and as Trustee on behalf of The & Trust and as Trustee on behalf of the Sandra K. Lerner Trust,

Plaintiffs,

v.

DAVID C. SOWARD and & MANAGEMENT COMPANY,

Defendants.

No. CV-04-1664Z

DECLARATION OF LEONARD BOSACK IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO STAY PENDING ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS OR TRANSFER VENUE PURSUANT TO 28 U.S.C. §1406(a), OR TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404(a)

NOTE ON MOTION CALENDAR:
September 10, 2004

I, Leonard Bosack, declare as follows:

1. I am a resident of Redmond, Washington and, along with my wife, Sandy Lerner ("Sandy"), a plaintiff in this lawsuit. I have personal knowledge of the facts set forth in this declaration and if called as a witness I could and would testify competently thereto.

DECLARATION OF LEONARD BOSACK IN
SUPPORT OF PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO MOTION TO STAY ...
NO. CV-04-1664Z – Page 1

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

2. I submit this declaration in support of Plaintiffs' Memorandum In Opposition to Motion to Stay Pending Arabitration or, in the Alternative, to Dismiss or Transfer Venue Pursuant to 28 U.S.C. §1406(a), or to Transfer Venue Pursuant to 28 U.S.C. §1404(a).

**Summary and Background of Allegations**

3. In or about October 1991, Sandy and I sought a trustworthy individual, unaffiliated with any financial institution, who could provide financial advice and manage our assets and the assets of entities for which we were trustees or directors in a prudent manner unhampered by any conflicts of interest. Defendant Soward, who was at the time employed as an international tax accountant, represented that he was willing to provide such management, advice and consultation, and that he would do so exclusively for Sandy and me.

4. Since Sandy and I, along with all of our financial books and records, were located in Redmond, Washington, one of the conditions for entering into the deal with Soward was that he relocate to the Seattle area. Soward agreed to the deal, set up & Management Company, and moved to the Seattle area.[1]

5. Soward became an employee and officer of & Capital, Inc. ("& Capital"), a Delaware corporation with its offices in Redmond. At all relevant times, & Capital's employees included Soward and Dianne Norgaard, a resident of Bellevue who is the bookkeeper for & Capital. Soward received an annual salary of $120,000 from & Capital and remained an officer and employee of the company until his services were concluded in November 2003. Soward never had an arbitration agreement with & Capital.

6. & Capital's office is, and always has been, the repository of the books and records of four other separate and distinct investment entities — & Capital Partners, L.P.

---

[1] In or about 1995, Soward relocated from the Seattle area to San Francisco, but he remained an employee and officer of & Capital, which continued to maintain its headquarters in Redmond.

DECLARATION OF LEONARD BOSACK IN
SUPPORT OF PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO MOTION TO STAY ...
NO. CV-04-1664Z – Page 2

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

("Capital Partners"), Cartesian Partners, L.P. ("Cartesian"), the Leonard X. Bosack and Bette M. Kruger Foundation (the "Foundation") and the & Trust (collectively, the "Investment Entities"):

    a.    <u>& Capital Partners, L.P.</u> – Based on Defendants' advice, Capital Partners was formed as a limited partnership in 1995. Soward was the general partner and the limited partners were the Sandra K. Lerner Living Trust and the Leonard Bosack Living Trust. The Agreement of Limited Partnership for Capital Partners (the "Capital Partners Agreement") governs the relationship of the partners and sets forth their rights and duties with respect to Capital Partners. Under the Capital Partners Agreement, the limited partners contributed approximately $39 million to the partnership. Soward, as the general partner, was charged with investing the money on behalf of the partnership. The Capital Partners Agreement does not contain an arbitration clause.

    b.    <u>Cartesian</u> – Cartesian is a limited partnership formed on or about January 1, 1999. Defendants are the general partners and the Leonard Bosack Living Trust is the limited partner. The partnership agreement (the "Cartesian Agreement") governs the relationship of the partners and sets forth their rights and duties with respect to Cartesian. Under the Cartesian Agreement, The Leonard Bosack Living Trust contributed approximately $9.5 million to the partnership. Defendants, as the general partners, were charged with investing the money on behalf of the partnership. The Cartesian Agreement does not contain an arbitration clause.

    c.    <u>The Foundation</u> – The Foundation is a charitable foundation established under the laws of the state of Massachusetts. Kathy Savesky, Sandy and I are the directors of the Foundation. Defendants had a management agreement with the Foundation (the "Foundation Agreement") whereby they would receive a fee for managing the Foundation's assets. The Foundation Agreement governs the relationship

DECLARATION OF LEONARD BOSACK IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO STAY ...
NO. CV-04-1664Z – Page 3

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

between Defendants and the Foundation and sets forth the rights and duties of each party. The Foundation Agreement does not contain an arbitration clause.

    d. <u>The & Trust</u> – The & Trust is a charitable remainder trust. Sandy, Richard Troiano and I are its trustees. In January 2001, the & Trust entered into a management agreement (the "Trust Management Agreement") with Defendants, whereby Defendants would receive a fee for managing the assets of the & Trust. The Trust Management Agreement has an arbitration clause that provides: "In the event of any dispute between the parties concerning any provision in this Agreement, it shall be resolved by arbitration under the rules of the American Arbitration Association." The only parties to the Trust Management Agreement were Defendants and the & Trust.

  7. Soward performed separate investment management services for each of these Investment Entities and his relationship with each of the entities was governed by a separate contract. Sandy and I relied on Soward to faithfully carry out his duties and act in our best interest at all times.

  8. In 2003, Soward requested an increase in compensation. As part of the process of determining whether we would grant his request, we decided to engage Clark Nuber, a Bellevue-based accounting firm, to perform a review of Capital Partners, the Foundation and the & Trust.

  9. Much to our shock, in approximately July 2003, Clark Nuber began to provide us with preliminary reports showing possible abuses and outright fraud by Defendants. For instance, in late July, the accountants at Clark Nuber informed me that there was not any documentation for a $1 million loan from Capital Partners to Soward. Initially, I believed that the lack of documentation was attributable to sloppiness on the part of Soward. Only after Soward was removed as the general partner of Capital Partners, did I learn that the terms of the loan were different than Soward represented to me.

DECLARATION OF LEONARD BOSACK IN
SUPPORT OF PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO MOTION TO STAY ...
NO. CV-04-1664Z – Page 4

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

10. Later in the fall of 2003, Sandy and I received further preliminary reports from the accountants at Clark Nuber. We learned that Defendants had improperly withdrawn more than $5 million from Capital Partners. This revelation concerned us greatly. Not only had Soward already taken more than $5 million from Capital Partners, as the general partner he had control of the partnership's assets and the ability to withdraw the remaining funds and abscond with them.

11. While waiting final confirmation of the Clark Nuber reports, Sandy and I purposely restricted our communications with Soward to avoid giving him any indication of the initial results of the Clark Nuber audit. We did this because we were concerned that Soward may withdraw the remaining partnership assets and disappear if he discovered that we were aware of his misconduct. Thus, on November 21, 2003, when Soward called me at my Redmond home to ask if we intended to remove him as general partner of the partnerships or discontinue his services to the Foundation and the & Trust, I responded by saying only that we had made no decision and were waiting for the final results of the Clark Nuber report.

12. Approximately one day later, we determined that the results of the Clark Nuber report were correct. On November 24, 2003, our lawyers at Wilson Sonsini Goodrich & Rosati sent a letter to counsel for Defendants discontinuing Soward's engagement as investment adviser to the & Trust and the Foundation, removing him as general partner for Capital Partners and Cartesian, and concluding his employment with & Capital.

13. After removing Soward and discontinuing his services, we conducted a further investigation into his misconduct. That investigation revealed yet more misconduct in connection with Defendants' duties as general partners of Capital Partners and Cartesian.

DECLARATION OF LEONARD BOSACK IN
SUPPORT OF PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO MOTION TO STAY ...
NO. CV-04-1664Z – Page 5

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

**Soward's Actions in Washington**

14. As stated above, at the time Defendants began work for & Capital, they moved to Bellevue. In 1995, Soward relocated from Bellevue to San Francisco, but remained an employee and officer of & Capital, which continued to maintain its headquarters in Richmond.

15. As an employee and officer of & Capital, Soward maintained a direct line of communication with Diane Norgaard, & Capital's bookkeeper, who maintained the books and records of the Investment Entities at & Capital's office in Redmond. Defendant Soward and other & Management Company employees regularly communicated with, and provided instruction to, Ms. Norgaard.

16. Defendant Soward frequently contacted me at my residence in Redmond. For instance, on one occasion, Defendant Soward called me and represented that he wanted to borrow $1 million from Capital Partners. Soward represented that the loan was short-term, would be extended at a rate of interest consistent with the market rates for similar loans, and, during the short time it was outstanding, would be secured by a mortgage on the real property that Soward represented the loan would be used to purchase. In reliance on these misrepresentations, I orally approved the loan.

17. I later learned that, in reality, Soward had constructed the repayment schedule on 30-year, interest-only terms at a below-market rate of interest. Further, the loan was not secured by a mortgage on real property as Soward had represented it would be when he called me in Redmond. Instead, he purported to pledge his capital account in Capital Partners as security for the loan. Soward has not repaid the loan despite my demand that he do so.

18. On another occasion, Defendant Soward called me at my residence in Redmond and proposed that the two of us create an investment limited partnership — Cartesian — whereby Defendants would be the general partners and I would be the

DECLARATION OF LEONARD BOSACK IN
SUPPORT OF PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO MOTION TO STAY ...
NO. CV-04-1664Z – Page 6

YARMUTH WILSDON CALFO PLLC

THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

1  limited partner. Soward represented that the terms of the Cartesian Limited Partnership
2  Agreement would be the same as those in the Agreement of Limited Partnership for
3  Capital Partners. Soward represented that Cartesian and Capital Partners would be the
4  same, "except that Sandy will not be a limited partner" of Cartesian. In reliance on
5  Soward's representations, I contributed more than $9,500,000 to Cartesian.
6      I declare under penalty of perjury under the laws of the United States and
7  Washington that the forgoing is true and correct.
8      Executed this 3rd day of September, 2004, at Seattle, Washington.

*Leonard Bosack*

DECLARATION OF LEONARD BOSACK IN
SUPPORT OF PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO MOTION TO STAY ...
NO. CV-04-1664Z – Page 7

348.01 ei012003 9/3/04

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888