# Exhibit E

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

IN THE MATTER OF THE ARBITRATION
BETWEEN

LEONARD BOSACK, SANDY LERNER,
The Leonard Bosack Trust, The Sandy Lerner
Trust, Richard Troiano, The & Trust, & Capital
Partners, L.P., Cartesian Partners, L.P., The
Leonard X. Bosack and Bette M. Kruger
Charitable Foundation, Inc., and & Capital, Inc.

        Petitioners,

    -against-

DAVID C. SOWARD and
& MANAGEMENT COMPANY,

        Respondents.

No. CV - 0574 MAJ

**AMENDED PETITION TO VACATE
AND CONFIRM ARBITRATION
AWARDS PURSUANT TO FEDERAL
ARBITRATION ACT 9 U.S.C. §§ 9
AND 10**

      Petitioners Leonard Bosack, Sandy Lerner, Cartesian Partners, L.P., The Leonard Bosack

Trust, The Sandy Lerner Trust, Richard Troiano, The & Trust, & Capital Partners, L.P., Cartesian

Partners, L.P., The Leonard X. Bosack and Bette M. Kruger Charitable Foundation, Inc., and &

Capital, Inc. (collectively "Petitioners") hereby respectfully petition for an order vacating certain

arbitration awards and confirming others.

## INTRODUCTION

    1.      This petition arises out of arbitration proceedings between Petitioners and

Respondents David C. Soward and & Management Company.  Leonard Bosack ("Bosack") and

Sandy Lerner ("Lerner") hired David C. Soward ("Soward") to manage their investments in 1992.

For more than a decade, this relationship was amicable and quite profitable for all three.

However, in 2003 an audit uncovered evidence that Soward had engaged in serious breaches of his

fiduciary duties.  Accordingly, in November 2003, Bosack and Lerner terminated Soward as their

investment manager.

1    2.    As a result of his termination, Soward initiated an arbitration, asserting claims of

2 breach of contract, seeking dissolution of certain investment partnerships, and requesting an

3 accounting of his interest in those partnerships.  Just before the close of the evidentiary hearings,

4 the Panel allowed Soward to add claims for breach of fiduciary duty and conversion against

5 Bosack and Lerner, based upon their alleged failure to account for and distribute Soward's interest

6 in Cartesian Partners, L.P. ("Cartesian"), one of the investment partnerships.  These claims were

7 predicated upon the theory that a duty to distribute Soward's share in Cartesian arose in November

8 2003, when he was removed as the general partner of Cartesian.

9    3.    Pursuant to the agreement of the parties, the arbitration panel (the "Panel") issued

10 five separate interim awards dealing with discrete claims and issues.  In Interim Award Nos. 1, 2

11 and 3, the Panel found, among other things, that Soward had committed several serious breaches

12 of fiduciary duty requiring him to pay over $1.8 million in compensatory damages to Bosack and

13 Lerner.  In addition, the Panel found that Soward was entitled to management fees of more than

14 $1.5 million and another $1.7 million for his interest in Cartesian and another investment

15 partnership.

16    4.    In calculating Soward's interest in Cartesian, the Panel found in Interim Award

17 Nos. 1 and 3 that after his termination by Bosack as a general partner of Cartesian in November

18 2003, Soward became a limited partner.  The Panel further held that Soward was entitled to a

19 capital distribution of his partnership interest and ordered the parties to provide and accounting of

20 that interest, which was completed during the course of the arbitration.  However, in a later ruling

21 on Soward's breach of fiduciary duty and conversion claims regarding his termination from

22 Carteisan, the Panel reversed itself.  Directly contradicting its holdings in Interim Award Nos. 1

23 and 3, the Panel found that Soward had lost his partnership interest as a result of his 2003

24 termination, and that Bosack and Lerner had acted maliciously in refusing to pay Soward his

25 capital interest in Cartesian at that time.  On this basis, the Panel awarded, in Interim Award No. 5,

26 nearly $20 million in punitive damages against Bosack and Lerner.  Although Bosack and Lerner

27 moved for reconsideration of these findings, the Panel denied those motions without explaining

28 how its punitive damages rulings could be reconciled with its earlier awards.

1       5.      Because the Panel acted in excess of its authority, irrationally, and in manifest

2   disregard of law in finding Bosack and Lerner liable for breach of fiduciary duty and conversion in

3   Interim Award No. 4 and in imposing punitive damages in Interim Award No. 5, these arbitration

4   awards, together with the portions of the Panel's Final Award that incorporate these awards,

5   should be vacated under the Federal Arbitration Act, 9 U.S.C. § 10(a)(3) and (4).

6       6.      Because there are no grounds for vacating, modifying, or correcting Interim Award

7   Nos. 1, 2 and 3, these  awards should be confirmed under the Federal Arbitration Act, 9 U.S.C. §

8   9.

9                            **JURISDICTION AND VENUE**

10      7.      Subject matter jurisdiction over this proceeding exists in this Court pursuant to 28

11  U.S.C. § 1332 because there is complete diversity between the parties and because the amount in

12  controversy exceeds $75,000.

13      8.      Because Petitioners seek to confirm portions of an arbitration award totaling over

14  $1.8 million and to vacate an award of punitive damages of nearly $20 million, the amount in

15  controversy in this case exceeds $75,000.

16      9.      Respondents are both citizens of California.

17           a.      David Soward is domiciled in the state of California.

18           b.      & Management Company is a corporation organized and existing under the

19  laws of the state of California, and has its principal place of business in California.

20      10.      Petitioners are citizens of states outside of California.

21           a.      Leonard Bosack is domiciled in the state of Washington.

22           b.      Because the sole trustee of The Leonard Bosack Trust is Leonard Bosack,

23  the trust is domiciled in the state of Washington.

24           c.      Sandy Lerner is domiciled in the state of Virginia.

25           d.      Because the sole trustee of The Sandy Lerner Trust is Sandy Lerner, the

26  trust is domiciled in Virginia.

27           e.      Richard Troiano is domiciled in the state of Pennsylvania.

28

1          f.       Because the trustees of The & Trust are Leonard Bosack, Sandy Lerner, and

2   Richard Troiano, The & Trust is domiciled in Washington, Virginia, and Pennsylvania.

3          g.       The Leonard X. Bosack and Bette M. Kruger Charitable Foundation, Inc. is

4   organized under Massachusetts law and has its principal place of business in the State of Maine.

5   The Leonard X. Bosack and Bette M. Kruger Foundation, Inc. merged into the Leonard X. Bosack

6   and Bette M. Kruger Charitable Foundation, Inc. in 2002.

7          h.       & Capital, Inc. is a corporation organized under the laws of Delaware and

8   has its principal place of business in Washington.

9          i.       & Capital Partners, L.P. ("& Capital Partners") is a Delaware limited

10  partnership. The Leonard Bosack Trust and The Sandy Lerner Trust are the limited partners, and

11  the general partner is SLLB, LLC, a Delaware limited liability corporation whose members are the

12  Leonard Bosack Trust and the Sandy Lerner Trust. As a result, & Capital Partners, L.P. is

13  domiciled in Washington and Virginia.

14         j.       Cartesian is a limited partnership organized under the laws of Delaware.

15  The general partner of Cartesian is SLLB, LLC, and the sole limited partner is Leonard Bosack.

16  As a result, Cartesian is domiciled in Washington and Virginia.

17    11.    Venue is proper in this district and division pursuant to 28 U.S.C. § 1391 because a

18  substantial part of the events and omissions at issue in the arbitration occurred here, and because a

19  substantial part of the property that is the subject of the arbitration was situated here.

20    12.    The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, applies to this proceeding

21  pursuant to 9 U.S.C. § 2 because the arbitration arises out of contracts evidencing transactions

22  involving interstate commerce.

23                        **<u>BACKGROUND FACTS</u>**

24    13.    Bosack and Lerner are the founders of Cisco Systems, Inc. ("Cisco"). They left the

25  company in 1990.

26    14.    In or around 1992, Bosack and Lerner hired Soward and his company,

27  & Management, a corporation solely owned by Soward, as an investment manager to manage their

28  money.

15.    Shortly after being hired, Soward and & Management relocated to Redmond, Washington and began managing the investments of Bosack and Lerner.

16.    Bosack and Lerner entrusted Soward with signing authority over virtually all of their assets.

17.    Soward was compensated for his efforts by sharing the profits earned by the investments under his management. This arrangement earned Soward many millions during the course of his relationship with Bosack and Lerner.

18.    To help carry out their investment strategies, Bosack, Lerner and Soward created two partnerships during the term of their relationship: (i) Cartesian Partners LP ("Cartesian"), a limited partnership in which Soward served as the general partner and Bosack as a sole limited partner; and (ii) & Capital Partners LP ("& Capital Partners"), a limited partnership in which Soward served as the general partner and Bosack and Lerner as limited partners.

19.    The parties executed a written partnership agreement with respect to & Capital Partners. Cartesian was governed by an oral agreement. The parties created several drafts of a written agreement for Cartesian; however, the drafts were never finalized. As set forth herein, the Panel held that with respect to Cartesian, a draft agreement known as the "Wood Agreement" provided the "relevant terms" for the Cartesian agreement and "the basis of Soward's rights with respect to Cartesian."

20.    In early 2003, in the context of a request by Soward to Bosack and Lerner to increase his compensation, Bosack and Lerner hired the accounting firm of Clark Nuber to audit Soward's past performance as an investment manager.

21.    The audit conducted by Clark Nuber revealed significant irregularities in Soward's performance, including, among other misconduct: (i) a failed investment by Soward into a cosmetics company known as Passport Cosmetics, LLC ("Passport") in the amount of more than $180,000, without any written documentation or prior consent of Bosack or Lerner; (ii) a personal loan taken out by Soward to purchase a home in San Francisco in excess of $1 million, the terms of which were not honored by Soward; (iii) a $1.1 million loan from Cartesian which Soward

1  extended, interest free, to a close personal friend; and (iv) a loan of $150,000 extended by Soward

2  from & Capital Partnership funds without proper documentation.

3    22. In November 2003, Lerner and Bosack, after consulting with counsel, terminated

4  Soward as their investment manager and removed him as a general partner of & Capital Partners

5  and Cartesian, effective immediately.

6    23. In February 2004, Soward filed a demand for arbitration against Petitioners with

7  the American Arbitration Association in San Francisco, California. The arbitration was brought

8  pursuant to an arbitration clause of The & Trust Management Agreement, which provides:

9    In the event of any dispute between the parties concerning any provision in this
   Agreement, it shall be resolved by arbitration under the rules of the American Arbitration
10 Association. The arbitration shall be conducted in San Francisco, California, or in such
   other place as the parties may mutually agree. The arbitrator(s) shall have the authority to
11 make such an award based on the equities of the dispute, and such award may include
   attorneys' fees and costs to the party whom the arbitrator(s) determines to be equitably
12 entitled to such attorneys' fees as the party primarily prevailing in such dispute.

13

14   24. In the arbitration demand, Soward sought: (i) unpaid management fees and

15 incentive allocations from The & Trust, a charitable remainder trust into which Bosack and Lerner

16 had transferred the bulk of their assets; (ii) unpaid management fees from the Leonard Bosack and

17 Bette M. Kruger Foundation, Inc., a charitable organization whose assets he managed; (iii) an

18 accounting and distribution of his interest in & Capital Partners; and (iv) an accounting and

19 distribution of his capital interest in Cartesian.

20   25. On July 27, 2004, Bosack and Lerner filed suit against Respondents in the Western

21 District of Washington. The complaint in that action, *Bosack, et al. v. Soward, et al.*, 2:04-cv-

22 01664-TSZ, asserted claims for fraud, breach of fiduciary duty, negligent misrepresentation,

23 breach of contract and conversion. Following a motion by Soward to stay the action pending

24 arbitration or, alternatively, to dismiss or transfer the action for improper venue, this Court granted

25 the motions to stay but denied the motion to dismiss or transfer, finding venue in this district to be

26 proper.

27

28

1      26.    Following this decision, Bosack and Lerner waived their objection to the Panel's

2  jurisdiction and submitted their dispute with Soward to arbitration.  Bosack and Lerner recently

3  dismissed the district court action.

4      27.    The arbitration hearings began in August 2005 and eventually consumed more than

5  fifty days of hearing.  The hearing included testimony from more than thirty witnesses (including

6  five experts) and the submission of more than 500 exhibits.

7      28.    In April 2006, near the scheduled end of the arbitration hearings, the Panel allowed

8  Soward to amend his arbitration demand to add claims for breach of fiduciary duty and conversion

9  and a request for punitive damages.  These new claims were based upon the allegedly improper

10  failure by Bosack and Lerner to distribute to Soward his capital interest in Cartesian upon his

11  termination by Bosack as a general partner in November 2003.  The hearings were extended as a

12  result of this amendment.

13      29.    During the course of the hearings, the Panel issued five awards, Interim Awards

14  Nos. 1-5, and a number of hearing orders, including, significantly, Hearing Order No. 49.  The

15  Panel issued its Final Award on July 27, 2007, incorporating these rulings and awarding Soward

16  all of his attorneys' fees and costs.  The Panel explained the Final Award as follows:

> The purpose of this Final Award is to bring this matter to an end.
> The Panel decided all of the issues that have been raised by both
> parties, and which have been the subject of the Panel's five Interim
> Awards.  All five are attached to this Final Award, and all of those
> awards in their totality are incorporated herein by reference . . .
> This award does not change or modify in any manner any of the
> Panel's earlier determinations, but simply incorporates their
> substance.

(Final Award at 3).

## PETITION TO VACATE

51204/2179901

Case No. CV - 0574 MAJ

AMENDED PETITION TO CONFIRM AND VACATE ARBITRATION AWARDS

**I      INTERIM AWARD NOS. 4  AND 5 AND THE FINAL AWARD SHOULD BE VACATED BECAUSE THE PANEL EXCEEDED ITS POWERS IN FINDING BOSACK AND LERNER LIABLE IN TORT AND AWARDING PUNITIVE DAMAGES BASED ON THOSE FINDINGS**

30.      The Panel issued Interim Award No. 1 on September 7, 2006.  It covered most of the claims and counterclaims originally brought by the parties.  In part, the Panel found that: (i) Soward's conduct in connection with the Passport investment was "grossly negligent and reckless;" (ii)  a loan for $150,000 made by Soward from & Capital partnership funds without documentation was "reckless conduct;" and (iii)  Soward had breached his fiduciary duties to Cartesian and Bosack by extending a $1.1 million interest-free, undocumented loan to Soward's close friend.

31.      With respect to Cartesian, the Panel made two significant findings in Interim Award No. 1.  First, the Panel found that although Cartesian was governed by an oral agreement, a draft agreement for Cartesian prepared by Robert Wood ("the Wood Agreement") provided "the relevant terms" of the Cartesian agreement and the "basis of Soward's rights with respect to Cartesian."  Thus, the Panel held that whatever rights Soward had in connection with his termination from Cartesian as a general partner in November 2003 would be defined by the terms and conditions of the Wood Agreement.  As the Panel recognized, Section 8.4 the Wood Agreement provided that "upon cessation of any General Partner's status as a general partner <u>for any reason</u> other than as a result of the transfer of such General Partner's interest . . .such General Partner's interest will be converted into a limited partner interest."  (Emphasis added.)  Further, by relying on Section 8.4 to define Soward's rights upon his termination as a general partner, the Panel also held, as set forth in Section 8.4, that upon becoming a limited partner, Soward would "lose those rights and obligations accorded a general partner under this agreement and will assume the rights and obligations of a limited partner."

32.      Section 2.3 of the Wood Agreement, in turn, defines the rights of partners to capital distributions as follows:

1
2

> "[E]xcept as otherwise provided in this agreement no General
> Partner or Limited Partner shall have the right to (a) demand or
> receive a return of his or her capital contribution."

3

The only provision of the Wood Agreement permitting the distribution of a limited partner's

4

capital assets is Section 9.5, which provides for distribution of the partnership proceeds in a

5

liquidation following dissolution.  Thus, under the clear terms of the Wood Agreement, which the

6

Panel held determined Soward's rights with respect to Cartesian, Soward had <u>no</u> right to obtain

7

any distribution of his capital interest upon his termination as a general partner in November of

8

2003.  Consistent with these terms, Soward did not demand a simple distribution of his capital

9

interest in the arbitration.  Rather, he sought a dissolution of Cartesian, an accounting of Cartesian

10

assets, and then a distribution of his interest.

11

      33.    Second, the Panel held in Interim Award No. 1 that after an accounting and

12

determination of the value of Soward's capital interest, Cartesian would have sixty days in which

13

to pay that amount to Soward, and "upon payment to Soward it is the decree of this Panel that

14

Soward shall no longer be a partner of Cartesian and shall be considered for every purpose as

15

having withdrawn as a partner."  The Panel also held that if payment was not made within that

16

period, Cartesian would be dissolved and wound up in the manner provided by Delaware law.

17

The Panel's ruling confirmed that, consistent with the Wood Agreement that Soward would

18

remain a limited partner until such an accounting was performed and payment of Soward's capital

19

interest made, neither of which had occurred as of the date of Interim Award No. 1.

20

      34.    Following completion of the accounting ordered by Interim Award No. 1, the Panel

21

issued Interim Award No. 3, in which it awarded Soward $1,464,399, plus interest, as the value of

22

his capital interest in Cartesian.  In Interim Award No. 3, the Panel reiterated its findings in

23

Interim Award No. 1 that, as a result of Bosack's attempts to terminate Soward as a general

24

partner, "Soward is and continues to be a partner, albeit not the general partner, in Cartesian."  The

25

Panel then reiterated verbatim its decision in Interim Award No. 1 allowing Cartesian sixty days

26

from the date of Interim Award No. 3 to pay Soward the amount he was owed plus interest, failing

27

which Cartesian would be dissolved and wound up pursuant to Delaware law.

28

35.     The Panel also made clear that Interim Award Nos. 1 and 3, and its findings therein, were partial <u>final</u> awards.  The Panel defined Interim Award No. 1 as a "full settlement and determination of all claims and counterclaims submitted to the Panel in arbitration," with certain exceptions, including "claims for punitive damages."  However, none of the exceptions in any way suggested the reopening of the express factual findings made by the Panel in Interim Award No. 1 establishing Soward's continuing partnership interest in Cartesian.

36.     The Panel confirmed the finality of Interim Award No. 1 in Interim Award No. 2. In proceedings giving rise to Interim Award No. 2, Soward made claim to 10% of a recovery in bankruptcy proceedings relating to an investment in Westar Financial Services, Inc., which had been decided in Interim Award No. 1.  The Panel rejected that claim on the basis that "Interim Award No. 1 has now become final.  It will not be reopened."

37.     The Panel again confirmed the finality of Interim Award No. 1 in Interim Award No. 3.  First, the Panel expressly confirmed Interim Award No. 3 as a partial final award, stating that "it is intended to be confirmable upon entry by the Panel."  Interim Award No. 3 specifically incorporated the factual findings of Interim Award No. 1 concerning Soward's continuing partnership interest in Cartesian following his termination as a general partner in November 2003. In fact, these findings were reiterated verbatim in Interim Award No. 3.  Also, in Interim Award No. 3 the Panel addressed a challenge made by Bosack to the Panel's determination in Interim Award No. 1 setting Soward's interest in the profits of Cartesian at 14.5%.  The Panel rejected this challenge, holding that the issue had already been finally decided in Interim Award No. 1.  As authority, the Panel cited Rule 46 of the Commercial Arbitration Rules of the American Arbitration Association, the rules which governed the arbitration.  Rule 46 provides that "the arbitrator is <u>not empowered</u> to redetermine the merits of any claim already decided." (Emphasis added).

38.     In Interim Award No. 4, the Panel directly contradicted its findings in Interim Award Nos. 1 and No. 3 concerning Soward's continuing interest as a limited partner in Cartesian after his termination as general partner.  In Interim Award No. 4, the Panel held that Bosack's termination of Soward as a general partner in 2003 "effects a dissolution of the partnership" and

1   "terminates Soward's status as a partner." No mention or explanation was made by the Panel of its

2   contrary findings in Interim Awards Nos. 1 and 3 establishing Soward's continuing partnership

3   interest in Cartesian.

4        39.   The Panel also contradicted its findings in Interim Award No. 1 regarding the

5   Wood Agreement by applying the terms of the & Capital Partnership Agreement, rather than those

6   of the Wood Agreement, to determine Soward's right to a distribution of his capital interest in

7   Cartesian following his termination as a general partner.

8        40.   On the basis of its contradictory holdings in Interim Award No. 4, the Panel found

9   that Bosack had intentionally breached his fiduciary duties to Soward, and that Bosack and Lerner

10   had "converted" Soward's property, by failing to pay Soward his capital interest in Cartesian

11   within a reasonable time after his termination as a general partner. Also, the Panel held that Lerner

12   was personally liable for converting Soward's interest in Cartesian, despite any evidence that she

13   had any involvement in the decision to terminate Soward as the general partner of Cartesian, or

14   any decisions involving Cartesian. The undisputed evidence showed that Lerner was not herself a

15   partner in Cartesian, and was only indirectly connected to Cartesian through partial ownership of a

16   separate LLC company that was not a party to the arbitration.

17        41.   These findings of breach of fiduciary duty and conversion then became the basis

18   for the Panel's holding in Hearing Order 49 that Bosack and Lerner had acted with malice and

19   oppression and were therefore liable for punitive damages.

20        42.   These findings were also the basis for the Panel's assessment of punitive damages

21   in Interim Award No. 5. In that award, the Panel assessed punitive damages against Bosack in the

22   amount of $10,999,494, and against Lerner in the amount of $8,555,162, for a total of

23   $19,554,656. Unlike Interim Award Nos. 1-4, Interim Award No. 5 was not final when it was

24   initially issued. However, Interim Award No. 5 has since become final with the issuance of the

25   Final Award, and the express incorporation of Interim Award No. 5 as part of that award.

26        43.   The Panel's contradictory holdings in Interim Award No. 4 were absolutely

27   essential to its ultimate award of punitive damages. In Interim Award No. 4, the Panel cited

28   Delaware Law § 17-604 and the & Capital Partnership Agreement as the basis for its holding that

1    Bosack had intentionally breached his fiduciary duties to Soward, and that Bosack and Lerner had

2    converted Soward's property.  Delaware Code § 17-604 requires that any partner who has

3    withdrawn from the partnership shall be paid his interest in the limited partnership "within a

4    reasonable time after withdrawal."  Similarly, the provision of the & Capital Partnership

5    Agreement cited by the Panel provided that upon removal, a general partner is entitled to a

6    distribution of his "Fair Value Capital Account" in the Partnership.  The right to any capital

7    distribution under the Delaware Code is obviously dependent upon a finding that Soward was

8    removed entirely from the partnership – not converted into a limited partner – at the time of his

9    termination as a general partner.  Under the findings establishing Soward's continuing partnership

10    interest under the terms of the Wood Agreement made by the Panel in Interim Award No. 1 and

11    confirmed in Interim Award No. 3, Soward had no such rights under § 17-604 of the Delaware

12    Code.  Further, the terms of the & Capital Partnership Agreement were of no relevance.

13         44.    The Federal Arbitration Act provides for vacatur of an award "where the arbitrators

14    exceeded their powers. . . ."  9 U.S.C. § 10(a)(4).  Under federal case law interpreting this section

15    of the Federal Arbitration Act, once arbitrators have made a final decision on a particular claim or

16    issue, they are considered *functus officio* and are without authority or jurisdiction to redetermine

17    the merits of that decision.  *See, e.g., McClatchy Newspapers v. Cent. Valley Typographical Union

18    No. 46*, 686 F.2d 731, 734 (9th Cir. 1982) (court holds that it is a "fundamental common law

19    principal that once an arbitration has made and published a final award his authority is exhausted

20    and he is *functus officio* and can do nothing more in regard to the subject matter of the

21    arbitration.").  Moreover, Rule 46 of the Commercial Arbitration Rules of the American

22    Arbitration Association precludes an arbitrator from re-deciding issues already determined.  The

23    Panel thus exceeded its powers by reconsidering and reversing its findings in prior final awards in

24    order to find Bosack and Lerner liable in tort and to award punitive damages based on that tort

25    liability.  Accordingly, the Panel's finding of tort liability and the award of punitive damage

26    against Bosack and Lerner must be vacated.

27

28

**II.    THE PANEL'S PUNITIVE DAMAGE AWARD SHOULD BE VACATED BECAUSE IT IS COMPLETELY IRRATIONAL, AND THEREFORE BASED ON MISBEHAVIOR OF THE ARBITRATORS THAT HAS PREJUDICED THE RIGHTS OF BOSACK AND LERNER**

45.    The Panel's factual findings in Interim Awards Nos. 1 and 3, on the one hand, and Interim Award No. 4, on the other, regarding Soward's partnership interest in Cartesian cannot be reconciled.  If, as the Panel held in Interim Award Nos. 1 and 3, Soward became and remained a limited partner in Cartesian pending an accounting which was not completed until December 2006, he could not possibly have been entitled to a distribution of his capital interest prior to such an accounting on grounds that he was no longer a partner.  Further, if, as the Panel held in Interim Award No. 1, the Wood Agreement defined Soward's rights under Cartesian, the Panel could not ignore the terms of that Agreement and rely on Delaware law or the & Capital Partners agreement to find Bosack and Lerner liable in tort, as it did in Interim Award No. 4.

46.    The Panel also found Lerner personally liable for the tort of conversion even though there was no evidence regarding her personal involvement in the decision to terminate Soward as the general partner of Cartesian nor any other decisions regarding Cartesian.

47.    Under such circumstances, the Panel's award was completely irrational, and thereby subject to vacatur under the Federal Arbitration Act § 10(a)(3), which provides for vacatur where the arbitrators have been guilty of "other misbehavior by which the rights of any party have been prejudiced."  *See, e.g., Rivera v. Thomas*, 316 F. Supp. 2d 256, 262 (D. Md. 2004) (vacating an award that was "contradictory and irrational").  The severe prejudice caused to Bosack and Lerner by the Panel's irrational behavior - issuance of a punitive damage award of nearly $20 million -- is obvious.

**III.    THE PUNITIVE DAMAGE AWARD SHOULD BE VACATED BECAUSE THE PANEL MANIFESTLY DISREGARDED THE LAW BY ISSUING A $20 MILLION PUNITIVE DAMAGE AWARD AGAINST BOSACK AND LERNER**

48.    The U.S. Supreme Court, in *State Farm Mutual Auto Insurance Co. v. Campbell*, has indicated that punitive damages awards greater than four times a compensatory award are

1  constitutionally suspect, and that with large compensatory awards, such as those in issue here, a

2  ratio of 1:1 is normally appropriate.  *State Farm Mutual Auto Insurance Co. v. Campbell*, 538 U.S.

3  408, 425 (2003).  This admonition has been followed by federal and California courts.  *See, e.g.,*

4  *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 799 (8th Cir. 2004) (adhering to a 1.4:1 ratio

5  where lower court awarded $600,000 in compensatory damages); *Jet Source Charter, Inc. v.*

6  *Doherty*, 148 Cal. App. 4th 1, 4 (2007) (adhering to a 1:1 ratio where lower court awarded $6.5

7  million in compensatory damages).

8          49.     These general principles were submitted and argued by Bosack and Lerner to the

9  Panel in connection with the hearing that led to Interim Award No. 5.  They were reiterated in a

10  motion for reconsideration brought by Bosack and Lerner on June 28, 2007.  In neither case was

11  any contrary authority cited by Soward.  The Panel nonetheless manifestly disregarded this law by

12  issuing a punitive damage award almost twenty times the total amount of compensatory damages

13  awarded to Soward.

14          50.     The Panel also manifestly disregarded the law in apportioning the punitive damages

15  award against Bosack and Lerner.  The Panel was informed on multiple occasions that, it is well-

16  established under both California and federal law that in cases involving multiple defendants, the

17  ratio of punitive damages must first be calculated in the aggregate and then apportioned according

18  to each defendant's relative culpability.  *See, e.g., Planned Parenthood of Columbia/Willamette*

19  *Inc. v. American Coalition of Life Activists*, 422 F.3d 949, 964-65 (9th Cir. 2005); *Bardis v. Oates*

20  119 Cal.App.4th 1, 21 n.8 (2004).  No contrary authority was presented by Soward.  Nevertheless,

21  the Panel opted instead to determine proportionality by comparing the punitive damages awards

22  separately imposed against Bosack and Lerner to Soward's compensatory damages in order to find

23  that the punitive damages award was "consistent with the due process standards of *BMV v. Gore . .*

24  *. and State Farm. . .*"  (Final Award at 4.)  The Panel also utterly failed to separately assess the

25  reprehensibility of Lerner.  This omission was particularly egregious because it was repeatedly

26  demonstrated to the Panel that there was no evidence that Lerner was involved in any way with the

27  wrongdoing giving rise to the punitive damages award.

28

51.    The Supreme Court in *BMW v. Gore* also set forth "reprehensibility factors" to be considered in determining the amount of any punitive damage award. *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996). Bosack and Lerner also submitted and argued these factors to the arbitrators in connection with Interim Award No. 5 and their motion for reconsideration. Soward submitted no contrary authority suggesting that these factors were not to be applied. Nonetheless, the arbitrators manifestly disregarded these factors in the following ways:

(i)    The arbitrators disregarded the "financial vulnerability" factor, by finding Soward financially vulnerable despite undisputed evidence of his own wealth. Further, the arbitrators based their decision upon a dissipation of Soward's assets as a result of the litigation, despite uncontradicted case law -- also submitted and argued to the Panel by Bosack and Lerner -- that precludes an award of punitive damages based upon litigation misconduct or litigation costs. *De Anza Santa Cruz Mobile Estates Homeowners Ass'n v. De Anza Santa Cruz Mobile Estates*, 94 Cal. App. 4th 890, 919 (2001); *Palmer v. Ted Stevens Honda, Inc.*, 193 Cal. App. 3d 530, 540 (1987); *Goshgarian v. George*, 161 Cal. App. 3d 1214, 1230 (1984);

(ii)    The arbitrators disregarded the factor involving "repeated misconduct" by finding repeated misconduct to have occurred, despite undisputed evidence submitted to the contrary by Bosack and Lerner. The evidence was undisputed that Bosack and Lerner had not engaged in any improper conduct before the termination of Soward as a general partner in Cartesian;

(iii)    The arbitrators failed to apply the factor of "trickery and deceit" by a finding that Soward engaged in trickery and deceit despite complete lack of evidence that Bosack and Lerner either tricked or deceived Soward into doing anything. To the contrary, the evidence was undisputed that Bosack and Lerner consistently made their positions, and the basis therefor, regarding Soward's performance and termination clear to him; and

Case No. CV - 0574 MAJ
AMENDED PETITION TO CONFIRM AND VACATE ARBITRATION AWARDS

(iv)    The arbitrators ignored the factor of Soward's misconduct in assessing
punitive damages. In Interim Award No. 1, the Panel clearly found that
Soward had engaged in "gross and reckless" misconduct in a number of
transactions, and breached his fiduciary duties in connection with his
management of Cartesian itself. However, although Bosack and Lerner
raised these findings with the Panel at the hearing which led to Interim
Award No. 5, the Panel disregarded this factor in its award.

(v)    The Panel's award of punitive damages is grossly disproportional to
comparable civil penalties. Bosack and Lerner presented evidence that the
only analogous statutory award for breach of fiduciary duties was a 20%
enhancement of a compensatory award. They also showed the Panel that
the average ratio of compensatory to punitive damages in most civil awards
is less than 4:1. Soward presented no contrary evidence or authority.
Nonetheless the Panel manifestly disregarded this factor and issued a
punitive damage award greatly in excess of any analogous award.

52.    The Federal Arbitration Act, 9 U.S.C. § 10(a)(3) and (4), provides that an award
may be vacated where the arbitrators have committed "misbehavior by which the rights of any
party have been prejudiced." Case law has held that this standard is met where, as in this case, the
Panel has manifestly disregarded the law in connection with a material aspect of its award. *Carter
v. Health Net, Inc.*, 374 F.3d 830, 838 (9th Cir. 2004); *Montes v. Shearson Lehman Bros., Inc.*,
128 F.3d 1456, 1460 (11th Cir. 1997). Here, the Panel has clearly done so by issuing a punitive
damage award of more than twenty times the compensatory damage award, in manifest disregard
of the fundamental principles and criteria required for assessing punitive damages. The punitive
damage award should be vacated on this basis.

## PETITION TO CONFIRM

53.    On September 7, 2006, the Panel issued Interim Award No. 1, which addressed seventeen claims between the parties.  Because there are no grounds for vacating, modifying, or correcting Interim Award No. 1, this award should be confirmed under the Federal Arbitration Act, 9 U.S.C. § 9.

54.    On November 7, 2006, the Panel issued Interim Award No. 2.  In this award, the Panel addressed the various claims of the parties related to the Westar investment.  Because there are no grounds for vacating, modifying, or correcting Interim Award No. 2, this award should be confirmed under the Federal Arbitration Act, 9 U.S.C. § 9.

55.    On December 12, 2006, the Panel issued Interim Award No. 3.  In this award, the Panel reiterated that Soward remained a limited partner in Cartesian, and determined the value of his capital account in Cartesian.  Because there are no grounds for vacating, modifying, or correcting Interim Award No. 3, this award should be confirmed under the Federal Arbitration Act, 9 U.S.C. § 9.

## PRAYER

Wherefore, Petitioners request the following relief:

(i)    That Interim Award No. 4, Interim Award No. 5 and the portions of the Final Award that incorporate these awards be vacated in their entirety;

(ii)    That Interim Award Nos. 1, 2, and 3 be confirmed in their entirety; and

(iii)    Any further relief to Petitioners that the Court finds appropriate under the circumstances.

LANE POWELL, PC


By: s/Rudy A. Englund
    Rudy A. Englund, WSBA No. 04123
1420 Fifth Avenue, Suite 4100
Seattle, WA 98101
Telephone:   (206) 223-7000
Facsimile:   (206) 223-7107
Email: englundr@lanepowell.com

QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
Fred G. Bennett (CA Bar No. 059135) (admitted pro
hac vice)
Steven G. Madison (CA Bar No. 101006) (admitted
pro hac vice)
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100
Email: stevemadison@quinnemanuel.com
      fredbennett@quinnemanuel.com

Daniel H. Bromberg (CA Bar No. 242659) (admitted
pro hac vice)
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
Telephone:   (650) 801-5000
Facsimile:   (650) 801-5100
Email: danbromberg@quinnemanuel.com

Of Counsel:

O'MELVENY & MYERS LLP
Steven L. Smith (CA Bar No. 109942) (admitted pro
hac vice)
Scott T. Nonaka (CA Bar No. 224770) (admitted pro
hac vice)
275 Battery Street, Suite 2600
San Francisco, CA 94111
Telephone:   415.984.8700
Facsimile:   415.984.8701
Email: ssmith@omm.com
      snonaka@omm.com

YARMUTH WILSDON CALFO PLLC
Jeremy E. Roller, WSBA No. 32021
Fourth & Madison
925 Fourth Avenue, Suite 2500
Seattle, WA 98104
Telephone:   (206) 516-3800
Facsimile:   (206) 516-3888
Email: yarmuth@yarmuth.com
      jroller@yarmuth.com

-18-              Case No. CV - 0574 MAJ
AMENDED PETITION TO CONFIRM AND VACATE ARBITRATION AWARDS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attorneys for Petitioners Leonard Bosack, Sandy Lerner, and Cartesian Partners, L.P.

## CERTIFICATE OF SERVICE

Pursuant to RCW 9.A.72.085, the undersigned certifies under penalty of perjury under the laws of the State of Washington, that on the 30th day of July, 2007, the document attached hereto was presented to the Clerk of the Court for filing and uploading to the CM/ECF system.   In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to the following persons:

James Albert Oliver joliver@scblaw.com, tbackus@scblaw.com

Richard C Yarmuth yarmuth@yarmuth.com, cegan@yarmuth.com

Steven L Smith ssmith@omm.com

Jeremy E Roller jroller@yarmuth.com, smeyer@yarmuth.com

J Daniel Sharp jsharp@flk.com

Scott T Nonaka snonaka@omm.com

Executed on the  30th day of July, 2007, at San Francisco, California.

s/ Katherine H. Bennett
Katherine H. Bennett

51204/2179901

–20–

Case No. CV - 0574 MAJ

AMENDED PETITION TO CONFIRM AND VACATE ARBITRATION AWARDS