1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Daniel H. Bromberg (Bar No. 242659)
2      danbromberg@quinnemanuel.com
   555 Twin Dolphin Drive, Suite 560
3  Redwood Shores, California  94065

4      Fred G. Bennett (Bar No. 059135)
     fredbennett@quinnemanuel.com
5      Steven G. Madison (Bar No. 101006)
     stevemadison@quinnemanuel.com
6  865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017
7  Telephone:     (213) 443–3000
   Facsimile:     (213) 443–3100
8
   Attorneys for Respondents Leonard Bosack, The &
9  Trust, Richard Troiano, & Capital Partners, L.P.,
   Cartesian Partners, L.P., Leonard Bosack and Bette
10 M. Kruger Charitable Foundation, Inc. and &
   Capital, Inc.
11
   O'MELVENY & MYERS LLP
12     Steven L. Smith (Bar No.109942)
     ssmith@omm.com
13     Scott T. Nonaka (Bar No. 224770)
     snonaka@omm.com
14 275 Battery Street, Suite 2600
   San Francisco, California 94111
15 Telephone:     (415) 984–8700
   Facsimile:     (415) 974–8701
16
   Attorneys for Respondent Sandy Lerner
17
                 UNITED STATES DISTRICT COURT
18
              NORTHERN DISTRICT OF CALIFORNIA
19
                   SAN FRANCISCO DIVISION
20

| | |
|---|---|
| DAVID SOWARD, *et al.*, | CASE NO. C–07–3894 |
| Petitioners, | **NOTICE OF CROSS-MOTION AND CROSS-MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)** |
| v. | |
| THE & TRUST, *et al.*, | **[Declaration of Daniel H. Bromberg, Appendix of Cases Published in Unofficial Reporters, and proposed orders filed concurrently herewith]** |
| Respondents. | |
| | **DATE:      October 5, 2007** |
| | **TIME:      9:00 a.m.** |
| | **CTRM:     7, 19th Floor** |

51204/2179287.10

Case No. C-07-3894
NOTICE OF CROSS-MOTION AND MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Hon. Maxine M. Chesney**

**Removal Date:  July 30, 2007**
**Trial Date:  None Set**

# TABLE OF CONTENTS

**Page**

NOTICE OF CROSS-MOTION AND CROSS-MOTION ............................................................. 1

STATEMENT OF RELIEF SOUGHT ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

PRELIMINARY STATEMENT .................................................................. 1

STATEMENT OF FACTS ................................................................... 2

    A.    Background ....................................................... 2

    B.    The 2004 Action .................................................. 6

    C.    The April 2007 Action ............................................. 8

ARGUMENT ............................................................................. 9

    I.    THIS ACTION SHOULD BE STAYED SO THAT THE WESTERN DISTRICT OF WASHINGTON CAN DETERMINE THE APPROPRIATE VENUE ................................................... 9

    II.    ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF WASHINGTON BECAUSE OF THAT DISTRICT'S FAMILIARITY WITH THE PARTIES' DISPUTE ...................... 12

        A.    The Western District of Washington Is A Proper Venue Because The Parties' Relationship Was Centered There And The Conduct Underlying Soward's Punitive Damages Claims Occurred There ............. 12

        B.    The Interests of Justice Strongly Favor Transfer To The Western District Of Washington Because Of The Effort That District Already Has Spent Familiarizing Itself With The Parties' Dispute ......................... 13

        C.    Neither Convenience Nor Any Other Countervailing Factors Require The Court To Retain This Case. ................................... 15

CONCLUSION ........................................................................... 18

# TABLE OF AUTHORITIES

**Page**

## Cases

*A.J. Indus, Inc. v. United States District Court,*
503 F.2d 384 (9th Cir. 1974)..................................................................................14

*Alltrade, Inc. v. Uniweld Prods., Inc.,*
946 F.2d 622 (9th Cir. 1991)............................................................................10, 11

*Amazon.com v. Cendant Corp,*
404 F. Supp. 2d 1256 (W.D. Wash. 2005)...............................................................18

*Baird v. California Faculty Ass'n,*
No. C-00-0628-VRW, 2000 WL 516378 (N.D. Cal. June 26, 2000)......................18

*Baldwin v. Nat'l Safety Assoc., Inc., No. C 93-0571 BAC,*
1994 WL 139267 (N.D. Cal. Apr. 6, 1994) ............................................................17

*Bill Harbert Constr. Co. v. Cortez Byrd Chips, Inc.,*
No. 98-G-0117-S (N.D. Ala. June 12, 2000) ..........................................................17

*Cedars-Sinai Med. Ctr. v. Shalala,*
125 F.3d 765 (9th Cir. 1997).................................................................................10

*Continental Grain v. Barge FBL-585,*
364 U.S. 19 (1960) ...............................................................................................14

*Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.,*
529 U.S. 193 (2000) ........................................................................................13, 17

*Decker Coal Co. v. Commonwealth Edison Co.,*
805 F.2d 834 (9th Cir. 1986)..................................................................................16

*Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.,*
868 F. Supp. 1244 (D. Kan. 1994) .........................................................................17

*Durham Productions, Inc. v. Sterling Film Portfolio, Ltd.,*
537 F. Supp. 1241 (S.D.N.Y. 1982) ......................................................................14

*Eastman Med. Prods., Inc. v. E.R. Squibb & Sons,Inc.,*
199 F. Supp. 2d 590 (N.D. Tex. 2002) ..............................................................16, 17

*Effron v. Sun Line Cruises, Inc.,*
67 F.3d 7 (2d Cir. 1997) ........................................................................................16

*Ferens v. John Deere Co.,*
494 U.S. 516 (1990) ..............................................................................................14

*First Nat'l Bank of Shawnee Mission v. Roeland Park State Bank & Trust Co.,*
357 F. Supp. 708 (D. Kan. 1973) ...........................................................................15

NOTICE OF CROSS-MOTION AND MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a)

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3 *Flotsam of California, Inc. v. Huntington Beach Conf. & Visitors Bureau,*
No. C 06-7028, 2007 WL 1152682 (N.D. Cal. Apr. 8, 2007) ................................................. 16

4

*Fodor v. Berglas,*
5 No. 94-CV-4761, 1994 WL 822477 (C.D. Cal. Dec. 27, 1994) ............................................ 17

6 *Hoffman v. Blaski,*
363 U.S. 335 (1960) ........................................................................................................... 13

7

*Impervious Paint Indus., Inc. v. Ashland Oil, Inc.,*
8 444 F. Supp. 465 (E.D. Pa. 1978) ....................................................................................... 15

9 *Isle Capital Corp. v. Koch Carbon, Inc.,*
No. 06-00525, 2006 WL 823186 (N.D. Cal. Mar. 28, 2006) .......................................... 10,11

10

*Jolly v. Purdue Pharma L.P.,*
11 No. 05-CV-1452H, 2005 WL 2439197 (S.D. Cal. Sept. 28, 2005) ....................................... 14

12 *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,*
342 U.S. 180 (1952) ........................................................................................................... 10

13

*Nutrition & Fitness, Inc. v. Blue Stuff, Inc.,*
14 264 F. Supp. 2d 357 (W.D.N.C. 2003) ................................................................................. 15

15 *Pacesetter Sys., Inc. v. Medtronic, Inc.,*
678 F.2d 93 (9th Cir. 1982) ........................................................................................... 10, 11

16

*Papaleo v. Cingular Wireless Corp.,*
17 No. C-07-1234 MMC, 2007 WL 1238713 (N.D. Cal. Apr. 26, 2007) ............................. 14, 16

18 *Regents of the Univ. of California v. Eli Lilly & Co.,*
119 F.3d 1559 (Fed. Cir. 1997) ........................................................................................... 14

19

*Sutter Corp. v. P&P Indus., Inc.,*
20 125 F.3d 914 (5th Cir. 1997) ............................................................................................... 17

21 *Wham-O, Inc. v. SLB Toys USA, Inc., ,*
No. C 06-04551 JSW, 2006 WL 2827866 (N.D. Cal. Oct. 3, 2006) ................................. 16,17

22

*World Missions Ministries, Inc. v. Gen. Steel Corp., Civil No. RWT 06-13,*
23 2006 WL. 2161851 (D. Md. July 28, 2006) ..................................................................... 16, 17

24 *Z-Line Designs, Inc. v. Bell'o Int'l LLC,*
218 F.R.D. 663 (N.D. Cal. 2003) ................................................................................... 10, 11

25

26

### Statutes

27 28 U.S.C. § 1391(a)(2) ........................................................................................................ 13

28 28 U.S.C. § 1404(a) ............................................................................ 1, 12, 13, 14, 17, 18

-ii-                                                          Case No. C-07-3894

1    **NOTICE OF CROSS-MOTION AND CROSS-MOTION**

2    NOTICE IS HEREBY GIVEN that on October 5, 2007 at 9:00 a.m., or as soon thereafter

3    as counsel may be heard, Respondents[1] will and hereby do move for a stay of this action to permit

4    the United States District Court for the Western District of Washington to consider its

5    appropriateness as a venue for hearing the dispute between the parties.  Alternatively, Respondents

6    will and do hereby move pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Western

7    District of Washington.

8    Respondents' Cross-Motion is based upon this Notice, the Cross-Motion, the

9    Memorandum of Points and Authorities, the accompanying Declaration of Daniel H. Bromberg,

10    the Appendix of Cases Published in Unofficial Reporters, all pleadings and other records on file in

11    this action, and such further evidence and arguments as may be presented at or before the hearing.

12    Appropriate proposed orders are submitted herewith.

13    **STATEMENT OF RELIEF SOUGHT**

14    Respondents respectfully request that, if this Court determines it has jurisdiction and

15    denies the pending motion to remand of Petitioners David C. Soward and & Management

16    Company (collectively "Soward"), this matter be stayed pending resolution of parallel proceedings

17    in the Western District of Washington or, in the alternative, be transferred to that district.

18    **MEMORANDUM OF POINTS AND AUTHORITIES**

19    **PRELIMINARY STATEMENT**

20    This case should be stayed or transferred in light of the Western District of Washington's

21    prior familiarity with the parties and their dispute.  As frequently happens in the aftermath of

22    arbitration, a petition to confirm has been filed in one jurisdiction (here, where Soward lives) and a

23    parallel petition to vacate has been filed in another (the Western District of Washington, where

24    most of the Respondents reside).  It makes no sense for both actions to proceed simultaneously,

25

26

27    [1]   Leonard Bosack, Sandy Lerner, The Leonard Bosack Trust, The Sandy Lerner Trust,
Richard Troiano, The & Trust, & Capital Partners, L.P., Cartesian Partners, L.P., The Leonard X.
Bosack and Bette M. Kruger Charitable Foundation, Inc., and & Capital, Inc.

28

1  and therefore one of the actions must be stayed or transferred.  Because the Western District of

2  Washington already is familiar with the parties and their dispute, and because the petition in that

3  court was filed before the one here, the Western District should determine the proper venue for

4  hearing the petitions.  Alternatively, this case should be transferred to the Western District because

5  it can more efficiently and economically resolve the parties' dispute, given its familiarity with the

6  case.

7                               **STATEMENT OF FACTS**

8         This is the fourth proceeding in a dispute that has been raging for more than four years.

9  Two of the prior proceedings were brought before the Hon. Thomas S. Zilly in the Western

10  District of Washington, where a petition to vacate in part is currently pending.  The other prior

11  proceeding was the arbitration that is the subject of that petition to vacate as well as Soward's

12  petition to confirm before this Court.  In his motion to remand and the statement filed in response

13  to Respondents' notice of the pending action before Judge Zilly, Soward provides an inaccurate

14  and at times misleading description of both the arbitration and the proceedings in the Western

15  District of Washington.  Because an accurate understanding of these prior proceedings is helpful

16  in assessing the appropriate venue for the current phase of the parties' dispute, it is necessary to set

17  the record straight.

18         **A.      Background**

19         In his motion to remand, Soward describes the underlying facts of this case as if

20  Respondents Leonard Bosack and Sandy Lerner, after a decade-long, mutually beneficial

21  relationship with Soward, decided out of the blue to terminate him based upon trumped-up charges

22  that were summarily rejected in arbitration.  In fact, Bosack and Lerner terminated Soward after

23  uncovering evidence of serious misconduct, and the arbitration panel confirmed that Soward had

24  abused their trust in multiple ways.

25         *The 2003 Audit and Termination of Soward.*  In the early 1990s, Bosack and Lerner hired

26  Soward and entrusted him with the management of substantially all of their financial assets.

27

28

NOTICE OF CROSS-MOTION AND MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a)

1   Declaration of David C. Soward ¶¶ 3-9.[2]    Bosack and Lerner compensated Soward generously

2   for his effort, providing him not only with management fees but also with 10% of much of the

3   profits that their investments earned under him.  Interim Award No. 1 at 4-5, 10, 14, 20, 25.[3]  As a

4   result, Soward became a millionaire many times over.  Statement of Personal Finances (Bromberg

5   Decl., Ex. D).

6         In late 2002, Soward requested an increase in his compensation.  Claiming that he had

7   secured rates of return far higher than the market, Soward asked to increase his fees for managing

8   The & Trust, which holds the bulk of the assets of Bosack and Lerner, by more than 15%.

9   Memorandum from David Soward to Sandy Lerner et al., December 18, 2002 (Bromberg Decl.,

10  Ex. E).  Accordingly, in 2003, Bosack and Lerner asked a Seattle-area accounting firm, Clark

11  Nuber, to audit the records of The & Trust and other entities that Soward was managing and

12  evaluate his claims.  Declaration of Leonard Bosack ¶ 8 (Bromberg Decl., Ex. K).

13        Clark Nuber's audit uncovered startling evidence of misconduct.  It showed, for example,

14  that Soward had made a $1 million loan to himself from funds that he was managing with "no

15  formal, written loan documents" and loaned another $150,000 to a former business colleague

16  without proper documentation as well.  Audit Report, App. A at 3-4 (Bromberg Decl., Ex. M); *see

17  also* Interim Award No. 1 at 52-55 (discussing another improperly documented $1 million loan

18  made to a close friend of Soward).  The audit also revealed what appeared to be more than $5

19  million in excess distributions to Soward.  Audit Report, App. C at 2 (Bromberg Decl., Ex. M).

20  As Soward's control over most of their assets left Bosack and Lerner quite vulnerable, they were

21  both shocked and concerned.  Bosack Decl. ¶¶ 9-10 (Bromberg Decl., Ex. K).  Accordingly, in

22  November 2003 they decided to terminate Soward and remove his power over their funds in order

23  to prevent him from spiriting away their assets.  *Id.* ¶¶ 11-12; Interim Award No. 4 at 6.

24  _____

25     [2]  The Soward Declaration is attached as Exhibit J to the Declaration of Daniel H. Bromberg

26  in Support of Respondents' Motion to Stay Or, In The Alternative, To Transfer Venue
    ("Bromberg Decl.").

27     [3]  For the Court's convenience, Respondents are submitting along with this brief a bound
    appendix with all the arbitration awards.

28

1  Following Soward's termination, Bosack and Lerner later learned that Soward also had invested

2  more than $1 million in a cosmetics business run by two young women without any business

3  experience.  Complaint*, Bosack v. Soward*, No. 04-cv-01664-TSZ ¶¶ 31-43 (Bromberg Decl., Ex.

4  G); Interim Award No. 1 at 31-34.

5       *The Arbitration*.  In February 2004, Soward demanded arbitration over unpaid

6  management and incentive allocation fees, his interest in two limited partnerships, and damages

7  for what he claimed was a bad faith termination.  Statement of Claim (Bromberg Decl., Ex. A).  In

8  his motion to remand, Soward suggests that the arbitrators found in his favor on all claims and

9  found no wrongdoing on his part.  *See* Pet'rs Mot. at 2-3.[4]  In fact, the panel found that Soward

10  had violated the trust placed in him in multiple ways:

11       •    By investing more than $1.5 million in a cosmetics company run by two young
             women with no business experience, Soward acted in a "grossly negligent and
12           reckless manner" that was "tinged with personal interest."  Interim Award No. 1 at
             31-36.  In fact, the panel observed that after "lengthy consideration," it "cannot find
13           any rational business purpose for the Passport investment."  *Id*. at 34.

14       •    By making a $150,000 loan to a colleague without any security or any
             documentation concerning the terms of the loan, Soward had engaged in "reckless
15           conduct."  *Id*. at 39-43.

16       •    By loaning more than a million dollars to a close friend without any documentation
             concerning interest—and accepting repayment in dollars rather than pounds even
17           though the loan was made in pounds and the dollar had declined against the
             pound—Soward had once again acted in a "reckless manner."  *Id*. at 52-55.

18
         •    Soward was "remiss" in failing to properly document a $1 million loan to himself
19           and in failing to secure the loan with a mortgage on the property that he used the
             loan to purchase.  *Id*. at 36-39.  *But see id*. at 38-39 (finding any claim based upon
20           the loan waived by acceptance of payment of the loan during the arbitration).

21       •    Soward showed "an egregious lack of judgment" in allowing funds that he was
             holding for Cartesian to be commingled with his own funds and then using the
22           commingled funds.  Interim Award No. 2 at 5-7.

23

24

25       [4]  In the initial proceedings before the Western District of Washington, Soward was even

26  more explicit, representing in a declaration that he had "never knowingly done anything wrong or
    improper in managing Bosack and Lerner's assets," Soward Decl.¶ 20 (Bromberg Decl., Ex. J),

27  and "was sincere in his belief that he has done *nothing* wrong."  Supplemental Sharp Decl. ¶ 8
    (Bromberg Decl., Ex. N) (emphasis added).

28

1   All told, the panel found Soward liable for four separate breaches of fiduciary duty and one breach

2   of contract, and imposed over $2 million in damages upon Soward as a result. *See* Interim Award

3   No. 1 at 58-59; Interim Award No. 2 at 9.

4        The panel also rejected many of Soward's claims. Although it awarded Soward various

5   management fees, incentive allocations, and partnership interests, it did not find that he was

6   terminated in bad faith, claims that Soward apparently dropped before the arbitrators reached

7   them. Moreover, it awarded Soward only about $3.5 million out of the more than $8.4 million that

8   he claimed. (Bromberg Decl. ¶ 8).

9        The panel did, however, award Soward $20 million in punitive damages. Interim Award

10  No. 5 at 7. In the midst of the arbitration, which was long and hard-fought, Soward added claims

11  for breach of fiduciary duty and conversion against Bosack and Lerner. Hearing Order No. 24 ¶ 1

12  (Bromberg Decl., Ex. C). These claims were based upon Bosack's failure to distribute to Soward

13  his interest in the assets of Cartesian Partners, L.P. Cartesian was formed by Soward and Bosack

14  in 1999, with Bosack contributing approximately $9.5 million and Soward $500,000. Interim

15  Award No. 1 at 14. Soward initially served as the general partner, but Bosack removed him in

16  November 2003. Interim Award No. 4 at 4-6. In imposing punitive damages upon Bosack and

17  Lerner, the panel determined that when Bosack removed Soward as general partner of Cartesian,

18  he had effected a "non-judicial termination of the partnership," which gave rise to a duty to

19  distribute Soward's interest in Cartesian. Interim Award No. 13-15. Because Bosack did not do

20  so by September 2004, the panel concluded that he had breached a fiduciary duty that Bosack

21  owed to his former money manager and committed conversion. *Id*. at 15-17.

22       The premise of this ruling—that Soward was terminated by his removal as general partner

23  in 2004 and that a duty to distribute his interest in Cartesian arose at that time—directly conflicts

24  with panel's earlier ruling on Soward's claim for an accounting of his interest in Cartesian. In

25  connection with that claim, the panel found that Soward became a limited partner in Cartesian

26  upon his removal as general partner. Interim Award No. 1 at 13-15; *see also id*. at 56 ("Soward is

27  and continues to be a partner in Cartesian"); Interim Award No. 3 at 3 ("Soward is and continues

28  to be a partner, albeit not the general partner in Cartesian"). It therefore determined that Soward

1  was entitled to be paid the value of his capital account as of September 2006, the date on which

2  the panel found him entitled to an accounting.  Interim Award No. 1 at 56; Interim Award No. 3 at

3  10-11.  Respondents pointed out that the punitive damages award was incompatible with the

4  panel's earlier ruling and moved for reconsideration.  The panel, however, denied reconsideration

5  without explaining how its accounting and punitive damages claims could be reconciled.[5]

6      **B.      The 2004 Action**

7          The Western District of Washington first became acquainted with this case in July 2004,

8  before the arbitration proceedings had commenced in earnest, when Respondents sued Soward for

9  breach of fiduciary duty, breach of contract, fraud, and conversion.  Complaint, *Bosack v. Soward*,

10  No. CV-4-1664 (W.D. Wash. July 27, 2004) (Bromberg Decl., Ex. G).

11          The Western District of Washington was a natural venue for this complaint because

12  Bosack and most of the other Respondents reside in the Seattle area, *see* Bosack Decl. ¶¶ 1, 4-6

13

14  ───────────────────

15      [5]  Soward attempted to reconcile the panel's rulings on his tort claims with its earlier rulings
     on his accounting claims by suggesting that the earlier rulings were just hypothetical:

16

17          In Interim Award Number 1, you were determining Soward's rights as a partner.
           You were determining *what should have happened* under the Partnership
18          Agreement.  What should have happened is that Soward should have continued to
           be a partner until there was an accounting, and he's entitled to enforce that right as
           to what should have happened.

19
           In Interim Award Number 4, you looked at what did happen.  What actually
20          happened was Mr. Bosack threw him out and he committed a tort of breach of
           fiduciary duty and he committed a tort of conversion and Mr. Soward is entitled to
21          relief for that tort as well. So there's no inconsistency between the two awards.
           One determines what should have happened, and *Interim Award Number 4 looks at*
22          *what did happen* and awards relief accordingly.

23  Transcript, *Soward et al. v. The & Trust et al.*, March 23, 2007, at 23-24 (Bromberg Decl., Ex. F)
     (emphasis added).  This suggestion is obviously incorrect.  The panel's ruling in connection with
24  the accounting claim that Soward remains a partner was not hypothetical.  The panel explicitly
     determined that "Soward is an continues to be a partner, albeit not the general partner, in
25  Cartesian," and in light of that determination they provided that "[u]pon payment . . . Soward shall
     no longer be a partner."  Interim Award No. 3 at 3, 11.  Moreover, far from suggesting otherwise
26  before this Court, Soward contends in his motion to remand that he remains a partner in spite of
     the panel's clear and unequivocal determination that he would cease to be a partner upon payment
27  of his interest in Cartesian.

28

1  (Bromberg Decl., Ex. K), and because their relationship with Soward was centered there.  When

2  Bosack and Lerner hired Soward in 1992, one of the conditions of his employment was that he

3  relocate to Seattle, which he did, and remained there until 1995.  *Id*. ¶ 4 & n.1.[6]  Moreover,

4  Soward became an officer and employee of & Capital, Inc., which at all relevant times has had its

5  offices in the Seattle area and has served as the repository for the books and records of all the

6  entities whose investments Soward managed for Bosack and Lerner.  *Id*. ¶ 6.

7        Despite these contacts, Soward moved to dismiss on the grounds that the District was

8  improper venue or, in the alternative, to transfer to the Northern District of California based upon

9  convenience.  Mot. to Stay or Dismiss at 15-20 (Bromberg Decl., Ex. H).  As he has here, Soward

10  characterized Respondents' decision to file in the Western District of Washington as "forum

11  shopping," "gamesmanship," and "an attorney-contrived tactic to increase the burden on Soward."

12  *Id*. at 4; Reply Br. at 1, 2, 10, 11 (Bromberg Decl., Ex. I).  He asserted that it was an unfair burden

13  to require him to litigate in Seattle, that the attorneys for Bosack and Lerner were based in the Bay

14  Area, that some issues in the action would involve California law, and that the bulk of the

15  evidence and witnesses were in the Bay Area.  Mot. to Stay or Dismiss at 3-4, 18-20; Reply Br. at

16  11-12.  Judge Zilly, who was assigned the case, was not impressed.  He summarily dismissed

17  these contentions.  After the briefing was submitted, he issued an order finding that the Western

18  District of Washington was a proper venue "because a substantial part of the events or omissions

19  occurred in this District."  10/29/2004 Minute Order at 1 (Bromberg Decl., Ex. O).  He also denied

20  the motion to transfer, finding that "[b]oth private and public factors weigh in favor of the present

21  forum."  *Id*.

22        In addition to challenging venue, Soward also moved for a stay pending arbitration.  In

23  support of this request, Soward submitted over 200 pages of exhibits.  Bromberg Decl. ¶ 12.

24  These exhibits included documents from the arbitration such as Soward's statement of claims and

25  Respondents' answering statement.  *Id*.  He also submitted some of the 2003 audit reports that

26  _____

27        [6]  Soward carefully omits any mention of his years in Seattle.  *See* Motion to Remand at 1
   (noting that San Francisco is "where he has lived *almost* his whole life") (emphasis added).

28

NOTICE OF CROSS-MOTION AND MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a)

1   prompted Bosack and Lerner to terminated Soward as well as the Wood agreement, the

2   partnership agreement for & Capital Partners, the management agreement for The & Trust, and

3   correspondence between the parties relating to their dispute. *Id*. For their part, Respondents filed

4   another 150 pages of exhibits, and Soward filed supplemental declarations another 90 pages of

5   documents. *See id*. ¶¶ 13, 16. In total, the parties submitted 7 declarations with more than 450

6   pages of exhibits and at least 27 separate documents. *Id*. ¶ 18.

7          In November 2004 Judge Zilly conducted a hearing on Soward's motion to stay. During

8   that hearing, he informed counsel that he was "familiar with" the facts of the case, which he

9   characterized as "interesting," because "I've read every piece of paper you've submitted."

10  Transcript, *Bosack v. Soward*, No. 07-0574, at 6-7 (Bromberg Decl., Ex. P). Although Judge Zilly

11  rejected Soward's contention that all of Respondents' claims were subject to arbitration, in a

12  lengthy order issued from the bench at the end of the hearing, he found that some of them were

13  arbitrable and that the others were intertwined with the claims subject to arbitration, and therefore

14  stayed Respondents' claims pending arbitration. *Id*. at 35-42.

15         Respondents subsequently decided to submit all of the stayed claims to arbitration.

16  Amended Answering Statement ¶ 30 (Bromberg Decl, Ex. B). These claims were dealt with in

17  Interim Award No. 1. Because Respondents are not challenging that award, they voluntarily

18  dismissed the 2004 Action. Notice of Dismissal (Bromberg Decl., Ex. Q).

19         **C.     The April 2007 Action**

20         On April 19, 2007, fewer than ninety days after the panel issued Interim Award No. 4,

21  which found in favor of Soward on his breach of fiduciary duty and conversion claims on the

22  theory that Soward ceased being a partner in Cartesian upon his removal in September 2003,

23  Respondents Bosack, Lerner, and Cartesian filed a petition in the Western District of Washington

24  seeking to confirm in part and vacate in part the arbitrators' awards. Petition at 6 (Bromberg

25  Decl., Ex. R). In that petition, Respondents sought to vacate Interim Award No. 4 on the ground

26  that the panel exceeded its authority by changing its findings concerning Soward's interest in

27  Cartesian in violation of the rules of the American Arbitration Association and the common law

28  doctrine of *functus officio*. *Id*. ¶ 21. In addition, Respondents contended that it was completely

NOTICE OF CROSS-MOTION AND MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a)

1   irrational for the panel to award Soward $1.5 million on his accounting claim on the theory that he

2   continued to be a partner in Cartesian through September 2006, while at the same time finding that

3   Respondents committed torts on the ground that Soward ceased being a partner three years earlier

4   in November 2003.  *Id*.

5        Along with the petition, Respondents filed a motion and an accompanying declaration.

6   That declaration contained over 320 pages of exhibits, including Interim Award Nos. 1-4, several

7   orders from the panel, and a brief submitted in the arbitration.  Bromberg Decl. ¶ 23.

8        Soward moved to dismiss on the ground that the award was not final and that there was not

9   $75,000 in controversy.  Motion to Dismiss (Bromberg Decl., Ex. S).[7]  Judge Zilly stayed the

10  motions and ordered a status conference, which was held on June 28, 2007.  5/2/2007 Minute

11  Order (Bromberg Decl., Ex. T).  As he had done previously, Judge Zilly informed the parties that

12  he had read the materials submitted to him.  (Bromberg Decl. ¶ 26).  After the conference, Judge

13  Zilly ordered Respondents to file an amended petition within five days of the final award and the

14  parties to file a joint status report within five days after that.  6/28/07 Minute Order (Bromberg

15  Decl., Ex. U).  Both the amended petition and the joint status report have been filed, and on

16  August 20, 2007 in light of the motion to remand pending in this case, Judge Zilly continued the

17  stay, but ordered the parties to file a status report within ten days after the entry of an order

18  deciding that motion.  8/20/2007 Minute Order (Bromberg Decl., Ex. V).

19                                 **ARGUMENT**

20  **I.    THIS ACTION SHOULD BE STAYED SO THAT THE WESTERN DISTRICT OF
          WASHINGTON CAN DETERMINE THE APPROPRIATE VENUE**

21

22        As this Court has recognized, "when cases involving the same parties and issues have been

23  filed in two different districts, the second district court has discretion to transfer, stay, or dismiss

24  the second case in the interests of efficiency and judicial economy."  *Isle Capital Corp. v. Koch*

25  *Carbon, Inc.*, No. 06-00525, 2006 WL 823186, at *2 (N.D. Cal. Mar. 28, 2006) (quoting *Cedars-*

26  _____

27    [7]  Notably, Soward did not, move to dismiss for lack of diversity, the ground raised in his
      motion to remand.  *See* Mot. to Dismiss at 8-11 (Bromberg Decl., Ex. S).

28

-9-                    Case No. C-07-3894

1    *Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997)).  In light of Judge Zilly's familiarity

2    with the dispute, the interests of efficiency and judicial economy strongly favor a stay permitting

3    Judge Zilly to determine the appropriate venue for adjudicating the parties' respective petitions.

4           The "generally recognized doctrine of federal comity" requires deference to the court

5    where a dispute is first filed.  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir.

6    1982).  As this Court has recognized, this first-to-file rule avoids the waste of time, energy, and

7    money that occurs when two actions involving the same issues are pending simultaneously and the

8    potential embarrassment of conflicting decisions.  *See, e.g.*, *Isle Capital Corp.*, 2006 WL 823186,

9    at *2.  *See generally Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952).

10   Accordingly, this rule "should not be disregarded lightly."  *Alltrade, Inc. v. Uniweld Prods., Inc.*,

11   946 F.2d 622, 625 (9th Cir. 1991) (quotation omitted); *Pacesetter*, 678 F.2d at 95 (same).

12          The first-to-file rule is squarely applicable here.  In applying the rule, courts look at "three

13   threshold factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3)

14   the similarity of the issues."  *Z-Line Designs, Inc. v. Bell'o Int'l LLC*, 218 F.R.D. 663, 665 (N.D.

15   Cal. 2003).  Each of these factors is present here.  The petition to vacate in the Western District of

16   Washington was filed in April, months before Soward's petition to confirm, and both suits involve

17   the same parties and arise out the same arbitration.  In fact, the suits are almost mirror images of

18   each other, one seeking to confirm the awards in dispute and the other seeking to vacate portions

19   of them.

20          Because the suit in the Western District of Washington was filed first, comity and judicial

21   economy weight strongly in favor of staying this action and allowing Judge Zilly to determine the

22   proper venue for the parties' petitions.  Indeed, "arguments concerning the convenience of the

23   witnesses and the parties are properly addressed in the first instance, to the court in the first-filed

24   action."  *Isle Capital Corp.*, 2006 WL 823186, at *4; *see also Alltrade*, 946 F.2d at 628 (noting

25   that arguments concerning "the respective convenience of the two courts" normally "should be

26   addressed to the court in the first-filed action"); *Pacesetter*, 678 F.2d at 96 ("[N]ormally, the

27   *forum non conveniens* argument should be addressed to the court in the first-filed action."); *Z-Line*

28   *Designs*, 218 F.R.D. at 665 ("The balance of convenience should normally be weighed by the

1   court in the first filed action."). Application of this rule is especially warranted in this case where

2   Judge Zilly is already familiar with the parties' dispute and has considered the proper venue in a

3   closely-related action involving the same parties.

4        Anticipating Respondents' motion to stay, Soward has repeatedly accused Respondents of

5   "forum shopping." Pet. Response to Notice of Pendency of Other Action or Proceeding at 2; Pet.

6   Remand Motion at 3. It is, however, hardly forum shopping for Respondents to seek to litigate in

7   their home district where their relationship with Soward was centered. It should come as no

8   surprise then that, when Soward made similar accusations in 2004, *see* Mot. to Dismiss at 8-9

9   (Bromberg Decl., Ex. H), Judge Zilly summarily rejected them and found the Western District of

10  Washington the venue favored by both public and private factors. 10/29/2004 Minute Order at 1

11  (Bromberg Decl., Ex. O).

12       Nor is Soward helped by his accusation that the current action in the Western District of

13  Washington is a "pre-emptive" strike. Pet. Remand Motion at 3. Respondents did not file the

14  April 2007 action while Soward was attempting to engage in settlement negotiations. They filed

15  within three months of Interim Award No. 4 to preserve their right to challenge that award.[8]

16       The fact that Judge Zilly has continued the stay on the proceedings in Washington does not

17  help Soward either. This case could not be transferred to Washington and consolidated with the

18  proceedings there if this Court were to find it lacked subject matter jurisdiction. *See*, *e.g.*, 17

19  MOORE'S FEDERAL PRACTICE ¶ 111.14[1] (2007). As a consequence, it was only prudent for

20  Judge Zilly to continue the stay until this Court rules on Soward's diversity argument.

21  _____

22       [8]  Although the panel's first five awards were titled "[i]nterim," Respondents had good
    reason to believe that they were final for purposes of the Federal Arbitration Act's ninety-day
23  limitations period and that Soward would assert them to be final if a timely motion to vacate were
    not filed. Except for certain enumerated issues, each of the awards stated that it was "a full
24  settlement and determination of all claims and counterclaims submitted to the panel." Interim
    Award No. 1 at 59; Interim Award No. 2 at 10; Interim Award No. 3 at 11; Interim Award No. 4 at
25  27-28. In addition, in Interim Award No. 2, the panel refused to entertain a claim concerning the
    valuation of an investment because that valuation "was decided in Interim Award No. 1" and
26  "[t]hat Interim Award has now become final." Interim Award No. 2 at 8. Similarly, in Interim
    Award No. 3, the panel indicated that Interim Award No. 1 was final as to the determination of
27  Soward's interest in Cartesian Partners. *See* Interim Award No. 3.

28

NOTICE OF CROSS-MOTION AND MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a)

1    Accordingly, once this Court has determined that there is diversity jurisdiction, it should

2  stay these proceedings and permit the Western District of Washington, as the first-filed court and

3  the court most familiar with the parties' dispute, to determine the right venue for the dispute.

4

5  **II.    ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE**
       **WESTERN DISTRICT OF WASHINGTON BECAUSE OF THAT DISTRICT'S**
6      **FAMILIARITY WITH THE PARTIES' DISPUTE**

7    If this Court does stay this action, it should transfer the action to the Western District of

8  Washington in light of Judge Zilly's prior familiarity with the parties' disputes.  Under 28 U.S.C.

9  § 1404(a), an action may be transferred "in the interest of justice" to "any other district or division

10 where it might have been brought."  As Judge Zilly already has held, the Western District of

11 Washington is a district in which the claims brought by Respondents in the arbitration may have

12 been brought, and it is in the interest of justice to transfer the current action there because Judge

13 Zilly already is familiar with the parties and their dispute.  It would therefore be wasteful and

14 inefficient for this Court to duplicate the work already done by Judge Zilly and familiarize itself

15 with the parties' long and complicated dispute.

16    **A.    The Western District of Washington Is A Proper Venue Because The Parties'**
          **Relationship Was Centered There And The Conduct Underlying Soward's**
17         **Punitive Damages Claims Occurred There.**

18    For purposes of Section 1404(a), an action "might have been brought" in a district if that

19 district would have been a proper venue and would have personal jurisdiction over the defendants.

20 *See*, *e.g.*, *Hoffman v. Blaski*, 363 U.S. 335, 342-43 (1960).  As Judge Zilly already has found, the

21 Western District of Washington is such a district.

22    First, the Western District of Washington plainly would have had personal jurisdiction

23 over Respondents because they are either domiciled in that district or have close connections to it.

24 *See* Notice of Removal ¶ 4(b)-(i); Bosack Decl. ¶¶ 4-6 (Bromberg Decl., Ex. K).

25    Second, the Western District would have been a proper venue for Soward's petition to

26 confirm.  Where, as here, there is diversity jurisdiction, a petition to confirm may be brought in

27 any district in which "a substantial part of the events or omissions giving rise to the claim

28 occurred."  28 U.S.C. § 1391(a)(2).  *See generally Cortez Byrd Chips, Inc. v. Bill Harbert Constr.*

-12-
Case No. C-07-3894
NOTICE OF CROSS-MOTION AND MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a)

1   *Co.*, 529 U.S. 193 (2000).  And where, as here, the enforcement of an arbitration award is at issue,

2   courts look to the "events giving rise to the claims resolved in the arbitration."  *Id.* at 198.  As

3   Judge Zilly already has found, *see* 10/29/2004 Minute Order at 1 (Bromberg Decl., Ex. O), a

4   substantial part of Bosack's claims against Soward arose in the Western District of Washington

5   because the relationship between Soward and Respondents was based in Seattle where most of the

6   Respondents reside, Bosack Decl. ¶¶ 1, 6 (Bromberg Decl., Ex. K), where Soward lived for

7   several years, *id.* ¶ 4 n.1, where his employer & Capital, Inc. was located, *id.* ¶ 5, and where the

8   books and records of the investments he was managing were located, *id.* ¶ 6.

9   Even more important, for the same reasons, a substantial part of the events underlying

10   Soward's breach of fiduciary duty and conversion claims occurred in the Western District of

11   Washington.  Those claims are based upon Bosack's failure to promptly account for and distribute

12   Soward's interest in Cartesian.  *See* Interim Award No. 4 at 13-25.  As Bosack lives and works in

13   the Western District of Washington, a substantial part, if not all, of the events underlying those

14   claims necessarily occurred in Washington.  Moreover, as the punitive damages award is, with the

15   sole exception of the attorneys' fees and costs predicated upon it, the only aspect of the arbitration

16   awards in dispute, the Western District of Washington plainly is a district in which a substantial

17   part of Soward's tort claims occurred and therefore a proper venue for reviewing the arbitration

18   awards based on those claims.

19   **B.    The Interests of Justice Strongly Favor Transfer To The Western District Of Washington Because Of The Effort That District Already Has Spent Familiarizing Itself With The Parties' Dispute.**

20

21   The interests of justice strongly favor transferring this action to the Western District of

22   Washington because Judge Zilly has reviewed hundreds of pages of documents submitted by the

23   parties and therefore is already familiar with both their dispute and much of the arbitration panel's

24   treatment of it.

25   It is unmistakably in the interests of justice to consolidate parallel actions and avoid

26   wasteful, duplicative proceedings.  As the Supreme Court has repeatedly emphasized, "to permit a

27   situation in which two cases involving precisely the same issues are simultaneously pending in

28   different District Courts leads to wastefulness of time, energy, and money that § 1404(a) was

1  designed to prevent." *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (quoting *Continental*

2  *Grain v. Barge FBL–585*, 364 U.S. 19, 26 (1960)).   As a consequence, the opportunity to

3  consolidate parallel suits and avoid such waste "weighs heavily in favor of transfer."  *Papaleo v.*

4  *Cingular Wireless Corp.*, No. C-07-1234 MMC, 2007 WL 1238713, at *1 (N.D. Cal. Apr. 26,

5  2007); *see also A.J. Indus, Inc. v. United States District Court*, 503 F.2d 384, 389 (9th Cir. 1974)

6  (holding that "feasibility of consolidation" with an action in the transferee district is a "significant

7  factor in a transfer decision"); *Jolly v. Purdue Pharma L.P.*, No. 05-CV-1452H, 2005 WL

8  2439197, at *2 (S.D. Cal. Sept. 28, 2005) ("The pendency of related actions in the transferee

9  forum is a significant factor in considering the interest of justice factor."); *Durham Prods., Inc. v.*

10  *Sterling Film Portfolio, Ltd.*, 537 F. Supp. 1241, 1243 (S.D.N.Y. 1982) ("Litigation of related

11  claims in the same tribunal is strongly favored because it facilitates efficient, economical and

12  expeditious pre–trial proceedings . . . and avoid[s] duplicitous litigation and inconsistent results.").

13      For similar reasons, the interests of justice favor consolidation in the forum that is most

14  familiar with the dispute in question.  *See, e.g., Regents of the Univ. of California v. Eli Lilly &*

15  *Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (finding that the interests of justice "may favor transfer

16  to a court that has become familiar with the issues"); *Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*,

17  264 F. Supp. 2d 357, 363 (W.D.N.C. 2003) (holding it "expedient to allow a court that is already

18  familiar with [the defendant's] essential arguments to adjudicate this case as well"); *Impervious*

19  *Paint Indus., Inc. v. Ashland Oil, Inc.*, 444 F. Supp. 465, 468 (E.D. Pa. 1978) (finding transfer in

20  the interests of justice in light of "transferee court's familiarity with the facts of the case"); *First*

21  *Nat'l Bank of Shawnee Mission v. Roeland Park State Bank & Trust Co.*, 357 F. Supp. 708, 712

22  (D. Kan. 1973) (refusing to transfer case in part because court was "more familiar with the factual

23  background of the Comptroller's decision").

24      Judge Zilly is familiar with this case from the papers submitted to him in both the 2004

25  Action and the April 2007 Action.  Although Soward claims that Judge Zilly has "not  . . . done

26  any 'extensive work,'"  Response to Notice of Pendency at 3 (Bromberg Decl., Ex. W), the record

27  belies this claim.  In the 2004 action, Soward alone submitted over 250 pages of documents for the

28  judge to review, including his statement of claim in the arbitration, Respondents' answering

1  statement, the management agreement for The & Trust, the partnership agreements for & Capital

2  Partners, the unsigned partnership agreement for Cartesian, other agreements, draft complaints,

3  and correspondence between the parties.  Bromberg Decl. ¶¶ 11-18.  All told, Judge Zilly received

4  seven declarations with twenty-seven different documents totaling hundreds of pages, *see id.* ¶ 18,

5  and he "read every piece of paper submitted."  Transcript at 6-7 (Bromberg Decl., Ex. P).  Thus,

6  contrary to Soward's assertion, Judge Zilly plainly has done extensive work in familiarizing

7  himself with the parties' dispute.

8       In addition, Judge Zilly is also familiar with the arbitration proceedings and most of the

9  awards that have been issued.  As noted above, in connection with the petition to vacate filed in

10  April of this year, Respondents submitted nearly 350 pages of documents, including Interim

11  Award Nos. 1-4 and several orders issued by the panel.  Bromberg Decl. ¶ 23.  When Judge Zilly

12  met with the parties in late June, he indicated that he had once again reviewed the papers

13  submitted to him.  *Id*. ¶ 26.  As Judge Zilly also reviewed the statement of claim and answering

14  statements in the earlier proceedings, he is already familiar with much of the arbitration

15  proceedings at issue in the parties' respective petitions.

16       It would be wasteful for this Court to duplicate the time and effort that Judge Zilly already

17  has invested in becoming familiar with this case.  As a consequence, the interests of justice

18  strongly favor transfer of this case to the Western District of Washington where it can be

19  consolidated with the petition pending before Judge Zilly.

20  **C.    Neither Convenience Nor Any Other Countervailing Factors Require The Court To Retain This Case.**

21

22  Although Soward contends that it would be inconvenient for him to litigate in Seattle, his

23  arguments are even less persuasive now than they were in 2004, when Judge Zilly found that

    public factors and private factors—which include convenience (*see, e.g.*, *Decker Coal Co. v.*

24  *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)—favor the Western District of

25  Washington.  10/29/2004 Minute Order at 1 (Bromberg Decl., Ex. O).

26

27  In 2004, Soward could at least point to several witnesses from the Bay Area that might

28  have been forced to fly up to Seattle for a hearing.  Now, the convenience of third party witnesses,

1   which "often is the most significant factor" in deciding a transfer motion, *Papaleo*, 2007 WL

2   123871, at *2; *Flotsam of California, Inc. v. Huntington Beach Conf. & Visitors Bureau*, No. C

3   06-7028, 2007 WL 1152682, at *3 (N.D. Cal. Apr. 8, 2007), is inapplicable because there are no

4   evidentiary hearings to conduct in determining whether to vacate or confirm an arbitration award.

5   *See, e.g.*, *World Missions Ministries, Inc. v. Gen. Steel Corp.*, Civil No. RWT 06-13, 2006 WL

6   2161851, at *2 n.1 (D. Md. July 28, 2006) (noting that "the confirmation of an arbitration award is

7   unlikely to require any witness testimony at all"); *Eastman Med. Prods.*, *Inc. v. E.R. Squibb &*

8   *Sons, Inc.*, 199 F. Supp. 2d 590, 596-97 (N.D. Tex. 2002).

9        Nor can Soward claim any significant inconvenience to the parties.  Because Soward lives

10   in San Francisco and Bosack in the Seattle area, one of them will be forced to litigate in the other's

11   city.  More importantly, the parties would need only to take a plane to attend the proceedings,

12   which is not a significant inconvenience.  *See Flotsam*, 2007 WL 1152682, at *2; *see also Effron*

13   *v. Sun Line Cruises, Inc.*, 67 F.3d 7, 10 (2d Cir. 1997) (holding that a forum is not inconvenient

14   simply because of its distance "if it is readily accessible in a few hours of air travel").  Moreover,

15   in light of the more than $480,000 Respondents are about to make available to Soward in

16   satisfaction of the unchallenged portions of the arbitration awards, *see* Bromberg Decl. ¶ 29,

17   Soward cannot claim to be unable to afford the cost of sending his counsel to whatever hearings

18   the Western District of Washington may hold.  And it does not matter that counsel are located in

19   the Bay Area.  As this Court has repeatedly recognized, the convenience of counsel has little or no

20   relevance under Section 1404(a).  *See, e.g.*, *Baldwin v. Nat'l Safety Assoc., Inc.*, No. C 93-0571

21   BAC, 1994 WL 139267, at *4 (N.D. Cal. Apr. 6, 1994) ("[T]he convenience of plaintiffs' counsel

22   is entitled to no consideration in the analysis."); *Fodor v. Berglas*, No. 94-CV-4761, 1994 WL

23   822477, at *8 (C.D. Cal. Dec. 27, 1994) ("This is not a proper factor for the Court to consider in

24   deciding whether transfer is warranted.") (citations omitted).

25        It also makes no difference that the arbitration took place in San Francisco.  Indeed, the

26   Supreme Court has specifically recognized that the district in which an arbitration is held will not

27   always be the proper district in which to seek to consider a petition to confirm or vacate the award,

28   *see Cortez Byrd Chips*, 529 U.S. at 201, and lower courts have therefore frequently heard petitions

-16-                                                        Case No. C-07-3894

1  to confirm or vacate an arbitration award in other districts.  *See, e.g.*, Transfer Order, *Bill Harbert*

2  *Constr. Co. v. Cortez Byrd Chips, Inc.*, No. 98-G-0117-S (N.D. Ala. June 12, 2000) (transferring

3  petition to confirm from district in which arbitration was conducted to district in which petition to

4  vacate was pending); *see also World Missions Ministries*, 2006 WL at 2168151 (denying motion

5  to transfer petition to confirm to district in which arbitration conducted); *Eastman Med. Prods.*,

6  199 F. Supp. 2d at 593-99 (same); *Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 868

7  F. Supp. 1244, 1250-51 (D. Kan. 1994) (holding venue was proper for motion to vacate arbitration

8  award, even though arbitration was held in another district); *Sutter Corp. v. P&P Indus., Inc.*, 125

9  F.3d 914, 920 (5th Cir. 1997) (holding that under "first to file rule," motion to enforce arbitration

10  award should have been transferred from district in which arbitration was conducted to district in

11  which motion to vacate was pending).

12      Finally, Soward is not saved by the deference afforded to a plaintiff's choice of forum.

13  Where, as here, another party has sued in a different forum, that presumption is given little weight.

14  *See, e.g.*, *Wham-O, Inc. v. SLB Toys USA, Inc.*, No. C 06-04551 JSW, 2006 WL 2827866, at *2

15  (N.D. Cal. Oct. 3, 2006); *Baird v. California Faculty Ass'n*, No. C-00-0628-VRW, 2000 WL

16  516378, at *1 (N.D. Cal. June 26, 2000) (holding that less deference should be given to plaintiff's

17  choice of forum where there are multiple related class actions involving different named

18  plaintiffs); *Amazon.com v. Cendant Corp*, 404 F. Supp. 2d  1256, 1260 (W.D. Wash. 2005)

19  (noting that less deference is accorded plaintiff's choice of forum "where there is little connection

20  to the chosen forum," and where there is a pending related case between the parties).

21      In short, there is no justification for retaining this case in light of the strong public interest

22  that favors consolidating the parallel cases before Judge Zilly, who has already familiarized

23  himself with the parties and their dispute.  *See, e.g., Amazon.com*, 404 F. Supp. 2d at 1261

24  (quoting *Regents of the Univ. of Cal.*, 119 F.3d at 1565) ("Consideration of the interest of the

25  justice, which includes judicial economy, 'may be determinative to a particular transfer motion,

26  even if the convenience of the parties and witnesses might call for a different result.'").

27  Accordingly, if this action is not stayed, then in the interests of justice it should be transferred to

28

NOTICE OF CROSS-MOTION AND MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a)

1    the Western District of Washington where it can be consolidated with the petition pending before

2    Judge Zilly.

3    **CONCLUSION**

4    For the foregoing reasons, the Court should stay this case in light of the action pending

5    before Judge Zilly in the Western District of Washington.  In the alternative, the Court should

6    transfer this case to the Western District of Washington in the interests of justice pursuant to 28

7    U.S.C. § 1404(a).

8    DATED:  August 31, 2007                QUINN EMANUEL URQUHART OLIVER &
                                            HEDGES, LLP
9

10                                          By  /s/  Daniel H. Bromberg
                                            _____
11                                          Daniel H. Bromberg
                                            Attorneys for Respondents Leonard Bosack, The &
12                                          Trust, Richard Troiano, & Capital Partners, L.P.,
                                            Cartesian Partners, L.P., Leonard Bosack and Bette
13                                          M. Kruger Charitable Foundation, Inc. and &
                                            Capital, Inc.
14
      DATED:  August 31, 2007                O'MELVENY & MYERS LLP
15

16                                          By  /s/  Scott T. Nonakada
                                            _____
17                                          Scott T. Nonaka
                                            Attorneys for Respondent Sandy Lerner
18

19

20

21

22

23

24

25

26

27

28

NOTICE OF CROSS-MOTION AND MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a)