# Exhibit A

FOLGER LEVIN & KAHN LLP
Michael A. Kahn (SB# 057432)
J. Daniel Sharp (SB# 131042)
Lynne S. Bourgault (SB# 180416)
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 986-2800

Attorneys for Claimant David C. Soward

RECEIVED

FEB 0 5 2004

WILSON SONSINI
GOODRICH & ROSATI

## AMERICAN ARBITRATION ASSOCIATION

|  |  |
|---|---|
| DAVID C. SOWARD, an individual; & MANAGEMENT COMPANY,<br><br>Claimants,<br><br>v.<br><br>THE & TRUST; SANDY LERNER, individually and as Trustee on behalf of The & Trust and the Sandy Lerner Trust; LEONARD BOSACK, individually and as Trustee on behalf of The & Trust and the Leonard Bosack Trust; RICHARD TROIANO, as Trustee on behalf of The & Trust; & CAPITAL PARTNERS, L.P.; CARTESIAN PARTNERS, L.P.; LEONARD BOSACK AND BETTE M. KRUGER FOUNDATION, a California corporation,<br><br>Respondents. | Case No. _____<br><br>**STATEMENT OF CLAIM** |

## I. NATURE OF THIS DISPUTE

1.     Respondents Leonard Bosack ("Bosack") and Sandy Lerner ("Lerner"), husband

and wife, are extraordinarily wealthy individuals.  In 1984, they founded the internet networking

company Cisco Systems, Inc. ("Cisco").  In 1990 they retired and liquidated their Cisco stock,

realizing a gain of over $120 million.

2.    In 1992, Bosack and Lerner sought out Claimant David C. Soward ("Soward") and entered a series of agreements, partly written and partly oral, to induce Soward to leave his position at KPMG Peat Marwick and to devote his energies to managing Respondents' wealth. These agreements included both a partnership with Soward as well as fee-based management agreements. Bosack and Lerner were sophisticated business persons, and entered these agreements with Soward after receiving independent legal and professional advice, fully aware that Soward was a Certified Public Accountant specializing in international tax, who had not previously acted as an investment manager.

3.    Over the next eleven years, Soward achieved excellent results, generating returns of approximately thirteen percent (13%) per annum, for an overall return of over $220 million. At all times, Soward communicated regularly and frequently with Bosack and Lerner, and maintained appropriate external controls. For example, the bookkeeper for all relevant accounts was located in Bosack's office in Redmond, Washington, rather than in Soward's office in San Francisco. The tax returns were prepared by KPMG Peat Marwick and PricewaterhouseCoopers.

4.    As of November 24, 2003, Soward was owed approximately $1.6 million in fee-based compensation under the parties' agreements. In addition, Soward had an equity interest in two partnerships with Respondents. The aggregate amount of Soward's interest is unknown at the present time, but believed to be in excess of $1.6 million.

5.    On November 24, 2003, without any advance warning or discussion, Respondents (through their attorneys) abruptly terminated Soward's employment and partnership status, and issued letters to various financial institutions that Respondents had revoked Soward's authority. In taking these steps, Respondents falsely accused Soward of "fraud," claimed that he had "looted the assets" of the parties' partnerships, breached various duties, and acted "oppressively,

fraudulently, and with malice" toward Bosack and Lerner. Respondents' allegations were made recklessly, without adequate investigation, and without any reasonable factual basis for believing that Soward had engaged in intentional wrongdoing. Respondents wrongfully terminated Soward's employment and partnership status for the ulterior purpose of avoiding their obligation to pay him the compensation he is due under the parties' agreements, and depriving Soward of the benefits of investments that will come to fruition in the near future.

6.     Soward brings this arbitration proceeding to compel Respondents to pay the compensation he is due under the parties' agreements; to obtain an accounting of his interest in the parties' partnerships, and to obtain damages for Respondents' breach of their agreements.

## II. THE PARTIES

7.     Claimant David Soward is an individual residing in San Francisco, California. Soward. Soward operates a sole proprietorship called & Management Company (& Management").

8.     Respondent  Leonard Bosack is an individual residing in the State of Washington. Bosack is trustee and beneficiary of the Leonard Bosack Living Trust (the "Bosack Trust").

9.     Respondent Sandy Lerner is an individual residing in the Commonwealth of Virginia. She is a trustee and beneficiary of the Sandy Lerner Trust (the "Lerner Trust")

10.     Respondent Richard Troiano is an individual residing in Pennsylvania.

11.     Respondent The & Trust (pronounced "Ampersand" Trust) is a Delaware charitable remainder trust. The & Trust has three trustees (Respondents Bosack, Lerner and Troiano) and two life beneficiaries (the Bosack Trust and the Lerner Trust) as well as various remainder beneficiaries.

12.     Respondent & Capital Partners, L.P., (pronounced "Ampersand" Capital Partners)

is a limited partnership consisting of David Soward as general partner and the Lerner Trust and the Bosack Trust as limited partners.

13.    Respondent Cartesian Partners, L.P., is a limited partnership consisting of David Soward and & Management as general partners and the Bosack Trust as limited partner.

14.    Respondent Leonard X. Bosack and Bette M. Kruger Charitable Foundation, Inc. ("the Foundation") is a charitable foundation established by Respondents Bosack and Lerner.

## II. ARBITRABILITY

15.    The disputes alleged herein arise out of a series of agreements, partly written and partly oral. The majority of the assets managed by Soward were held by The & Trust, as to which a written Management Agreement was signed by Soward, Bosack, and Lerner in January 2001. A true copy of the Management Agreement is attached hereto as Exhibit A. Arbitration of Claimants' claims is appropriate under Section 9 of the Management Agreement, which states:

> Arbitration: In the event of any dispute between the parties concerning any provision in this Agreement, it shall be resolved by arbitration under the rules of the American Arbitration Association. the arbitration shall be conducted in San Francisco, California, or in such other place as the parties may mutually agree. The arbitrator(s) shall have the authority to make an award based on the equities of the dispute, and such award may include attorneys' fees and costs to the party whom the arbitrator(s) determines to be equitably entitled to such attorneys' fees as the party primarily prevailing in such dispute.

### III. FACTUAL ALLEGATIONS

**A.     Bosack and Lerner Retain Soward to Manage Their Assets**

16.     In 1984, Bosack and Lerner founded Cisco Systems, Inc.  In 1990, Bosack and Lerner severed their relations with Cisco and sold substantially all of their stock, reportedly receiving proceeds of over $120 million.

17.     In connection with the liquidation of their Cisco stock, Bosack and Lerner sought tax advice from KPMG Peat Marwick ("KPMG") in San Francisco.  Soward was a CPA and international tax accountant at KPMG and provided tax advice to Bosack and Lerner.

18.     In late 1991, Bosack and Lerner approached Soward about managing their assets. They asked Soward to fly to Boston for an interview with the consultant Robert Goode of Cambridge Associates in January 1992, which Soward did.  At the time, Bosack and Lerner were aware that Soward was a CPA and international tax accountant, who had no prior professional experience as an asset manager or investment banker.

19.     Lerner contacted Soward again in August 1992, and arranged a meeting to discuss retaining him to manage their assets, most of which were held by The & Trust.  Lerner asked Soward to come to the meeting prepared to discuss the specific terms that would be required to entice him to leave his position at KPMG.  In meeting and negotiating with Soward, Respondents Bosack and Lerner received legal advice from their attorneys at Latham & Watkins, as well as professional advice from Cambridge Associates.

20.     Soward met with Bosack and Lerner on August 13, 1992, and presented terms as requested by Bosack and Lerner.  Respondents agreed to Soward's terms with only one condition: that Soward relocate from San Francisco to Redmond, Washington.  Soward agreed. Respondent's attorneys (Latham & Watkins) prepared a term sheet of the deal.  In due course, formal written agreements were prepared based on the 1992 term sheet.  Over time, each of these

agreements were modified by the parties by mutual agreement.

21.    Soward began working for Bosack and Lerner in October, 1992. He left his position at KPMG to work exclusively for Bosack and Lerner managing their assets, and he moved to Redmond, Washington, where he lived until January, 1995.

### B. The & Trust

22.    Beginning in 1992, Bosack and Lerner retained Soward to manage and invest the assets held in a charitable remainder trust called The & Trust (pronounced "Ampersand" Trust). At that time, there were two trustees of the & Trust: a personal friend of Bosack and Lerner, Richard Troiano, and an attorney at Latham & Watkins, Christopher L. Kaufman.

23.    The parties entered into a Management Agreement dated January 1, 1993, that covered the period from 1992 through 1998. The agreement provided for payment of a management fee based on an "Average Excess Return Percentage."

24.    A new Management Agreement was executed for the period from January 1, 1999, through December 31, 2003, by and between The & Trust, Bosack, Lerner, Troiano, Soward and & Management Company. A true copy of the Management Agreement is attached hereto as Exhibit A ("the Trust Management Agreement").

25.    Under the Trust Management Agreement, Soward was entitled to a Base Management Fee of 30 Basis Points (0.30%) of the net assets of the Trust as of the beginning of each year. The Base Management Fee was to be reduced by the amount of any salary "properly allocable to the Trust (and agreed by the parties to be so allocable)" that was paid to Soward by & Capital Inc., a company owned by Bosack and Lerner. Additionally, the Trust Management Agreement entitled Soward to an "incentive allocation" of 10% of the profits of two particular

portfolios of assets within The & Trust, "The Hedge Fund" and the "Private Equity Fund."

26.    Soward has not been paid the "incentive allocation" due under the Trust Management Agreement for the year 2001. The amount due is approximately $532,263.

27.    Soward has not been paid the "incentive allocation" due under the Trust Management Agreement for the year 2002. The amount due is approximately $190,043.

28.    Soward has not been paid the Base Management Fee for the year 2003. The amount due is approximately $339,453, less the amount of salary paid by & Capital, Inc. that is properly allocable to the & Trust, as agreed by the parties.

29.    Soward has not been paid the "incentive allocation" for the year 2003. The determination of the amount of "incentive allocation" due requires information about the year-end profits realized for the "Hedge Fund" and "Private Equity Fund" portfolios of The & Trust. This information is not available to Soward at the present time, and will be proven at the hearing.

30.    The Base Management Fee that Soward received under the Trust Management Agreement for 1999 and 2000 was incorrectly reduced by (a) 100% of the salary received from & Capital, Inc. (and not merely the portion of the salary properly allocable to the & Trust, as agreed by Soward and Respondents) and (b) 100% of the reimbursable expenses that Soward had incurred during those years, and for which he had received reimbursement from & Capital, Inc. Soward is entitled to an adjustment to the Base Management Fee for 1999 and 2000, in that (a) less than 100% of the salary received from & Capital, Inc. is properly allocable to The & Trust, and (b) the Management Agreement does not provide for the Base Management Fee to be reduced by the amount of expense reimbursements that Soward received from & Capital, Inc. In making these adjustments, Soward acknowledges that the Base Management Fee that he was paid for the years 2001 and 2002 was not reduced by any portion of the salary received from &

Capital, Inc., and that an adjustment is appropriate based on the amount of salary "properly allocable to the Trust (and agreed by the parties to be so allocable)."

31.    Soward and & Management have performed all of their obligations under the Trust Management Agreement, except for those obligations that have been waived or excused. In particular, Soward at all times acted in conformity with the instructions of the trustees, where possible.

**D.    The Leonard X. Bosack and Bette M. Kruger Foundation**

32.    In 1992, Bosack hired Soward to manage the assets held in a California charitable foundation called the Leonard X. Bosack and Better M. Kruger Foundation ("the Foundation"). Respondents Bosack and Lerner are Directors of the Foundation.

33.    The Foundation and Soward entered into a Management Agreement dated January 1, 1993 and covering the years 1992 through 1998 which provided for payment of a management fee based on an "Average Excess Return Percentage."

34.    The parties agreed to the terms of a new management agreement beginning as of January 1, 1999. The terms of this new management agreement were reduced to writing by Soward in or about November 2000. A true copy of this writing ("the Foundation Management Agreement") is attached hereto as Exhibit B. Although Bosack and Lerner neglected to sign the Foundation Management Agreement, the parties proceeded in accordance with its terms at all times through November 23, 2003.

35.    The Foundation Management Agreement provided for a term of two years from January 1, 1999 through December 31, 2000, followed by additional one-year terms at the discretion of the Foundation. It further provided that Soward was to be paid a Management Fee

of 30 Basis Points (0.30%) of the net assets of the investable assets of the Foundation as of the beginning of each year.

36.    The Foundation renewed the Foundation Management Agreement for the year 2001, and paid Soward a management fee of $89,038 pursuant to the contract.

37.    The Foundation renewed the Foundation Management Agreement for the year 2002 and paid Soward a management fee of $80,248 pursuant to the contract.

38.    The Foundation renewed the Foundation Management Agreement for the year 2003, but did not pay Soward any portion of the management fee that is due and owing under the contract. Soward is due $62,287 pursuant to the Foundation Management Agreement.

39.    Soward has performed all of his obligations under the Foundation Management Agreement, except for those obligations that have been waived or excused.

**C.    & Capital Partners, L.P.**

40.    In 1992, Soward began managing assets held in individual trusts for the benefit of Bosack and Lerner (the Leonard Bosack Trust and the Sandy Lerner Trust). Soward managed these trust assets under a written fee agreement which provided for payment of a management fee based on an "Average Excess Return Percentage."

41.    Based upon independent legal and financial advice, Bosack and Lerner decided to create a limited partnership as a vehicle to hold their assets and provide compensation to Soward for his management activities.

42.    In 1995, the parties executed a written partnership agreement for & Capital Partners, L.P., a Delaware Limited Partnership consisting of Soward as the only general partner and the Bosack Trust and the Lerner Trust as the only limited partners. Bosack and Lerner were

represented by counsel at Latham & Watkins in structuring the partnership, and the partnership agreement was drafted by Respondents' attorneys at Latham & Watkins. (Soward was not represented by counsel.) A true copy of the partnership agreement is attached hereto as Exhibit C ("the & Capital Partnership Agreement").

43. Under the & Capital Partnership Agreement, Soward had the responsibility of managing and investing the assets of the partnership. Over the years, he had numerous discussions with Bosack and Lerner regarding how the funds were being invested. Bosack and Lerner did not object to any of the investments made by Soward on behalf of & Capital Partners. Soward managed the assets held by & Capital Partners, L.P. without complaint from either Bosack and Lerner from 1992 until the date of his termination as general partner in November 2003. In particular, Soward obtained the approval of Respondents Bosack and Lerner prior to taking a loan from the partnership in connection with the purchase of his personal residence. Respondents agreed that the loan was favorable to the partnership. The partnership has not lost any money as a result of the loan, and interest has been fully and timely paid.

44. Under the & Capital Partnership Agreement, Soward was entitled to a 10 percent partnership interest. Thus, Soward shared 10 percent of the profits and losses. (Under the formal written agreement, initial income distributions were weighted 99% toward Soward, to reflect the delay between October 1992 and the formal documentation of the & Capital Partnership in 1995.) The & Capital Partnership maintains a capital account for Soward's 10% interest, and the partnership tax returns prepared by PriceWaterhouseCoopers reflect Soward's 10% interest.

45. Between 1998 and 2002, Soward made withdrawals from his capital account at various times. Such withdrawals were contemplated by the parties at the time of the formation

and documentation of the & Capital Partnership. It was the intent of the parties that Soward would be limited in his right to withdraw funds from his capital account only until December 31, 1997, and that he would thereafter be entitled to the benefit of any positive balance held in his capital account. Soward understands that Respondents now contend that his withdrawal of funds from his capital account constituted "looting" of & Capital Partners, L.P., and that Soward's 10% partnership interest is "excessive," despite their longstanding written agreement acknowledging Soward's 10% interest in the partnership; Soward disagrees with these contentions.

46.    Soward demands a full accounting of the assets of & Capital Partnership, L.P., and the distribution to him of any positive Balance in his capital account based on his 10% partnership interest. Such an accounting should take into account the value of the assets held by the & Capital Partnership, and any assets and opportunities that rightfully belong to the & Capital Partnership.

E.    **Cartesian Partners L.P.**

47.    Effective as of January 1, 1999, Soward and Bosack entered into a Limited Partnership Agreement called Cartesian Partners, L.P. ("Cartesian Partners"). Cartesian Partners was comprised of Soward as general partner, and the Bosack Trust as the sole limited partner.

48.    At the time of the formation of Cartesian Partners, the Respondents had ended their relationship with Latham & Watkins. San Francisco attorney Robert W. Wood had acted as counsel for The & Trust and & Capital Partners, L.P., in a number of matters and transactions, and Soward asked Wood to prepare a partnership agreement to document the formation of Cartesian Partners, L.P. Wood prepared an Agreement of Limited Partnership of Cartesian Partners, L.P., which was forwarded to Bosack and Soward for comment and signature. A true copy of the Agreement of Limited Partnership of Cartesian Partners, L.P. is attached hereto as

Exhibit D ("the Cartesian Partnership Agreement"). Bosack neglected to sign the Cartesian Partnership Agreement, or otherwise comment on it. Nevertheless, the parties proceeded in accordance with its material terms at all times through November 23, 2003. Partnership tax returns consistent with the draft agreement were prepared and filed by an independent accounting firm in Bellevue, Washington.

49.    Pursuant to the Cartesian Partnership Agreement, Soward and & Management contributed $525,205 in capital, and were entitled to a 5 percent partnership interest based on his capital contribution. The Bosack Trust contributed $9,978,874 in capital, and was entitled to a 95% partnership interest. In addition, Soward was entitled to an interest of ten percent (10%) in any net profits from partnership operations as compensation for his services as manager, *i.e.*, the same percentage interest that the parties had established for Soward under the & Capital Partnership.

50.    Soward managed the assets of Cartesian Partners without complaint from Bosack and had numerous discussions with Bosack discussing placement of the partnership's assets. Bosack expressed no objection or disagreement to any investment made by Soward on behalf of Cartesian Partners. Cartesian Partners has not realized a loss on any of the investments made by Soward.

51.    Neither in the Cartesian Partnership Agreement that is attached as Exhibit D nor in any oral discussions did the parties agree that Soward could be removed as the General Partner of Cartesian Partners without just cause. To the contrary, Soward made a significant contribution of capital to Cartesian Partners, and did not agree that he could be removed as general partner without cause. Respondents' termination of Soward's status as general partner, and his ouster from the partnership, was wrongful and in violation of the parties' agreement.

52. Soward is entitled to an accounting for his 5% capital interest and 10% carried interest in the net profits of Cartesian Partners. Such an accounting should take into account the value of the assets held by Cartesian Partners, and any assets and opportunities that rightfully belong to the Cartesian Partners. Soward is entitled to any damages resulting from his wrongful removal from the partnership.

## F. Respondents' Wrongful Termination of Soward

53. Throughout the time that Soward managed the assets and investments of the Respondent entities, neither Bosack nor Lerner expressed dissatisfaction with Soward's performance or his investment decisions.

54. In the fall of 2002, Soward approached Bosack and Lerner about his status with The & Trust and the Foundation following the expiration of his Management Agreements at the end of 2003. Soward expressed interest in continuing the agreements, but requested that they consider an increase in Soward's compensation in light of the outstanding performance that Soward had achieved for the investments had had made and managed. Bosack and Lerner agreed to consider such an increase. They told Soward that they wished to have an audit performed of the financial results of the various entities, and retained the accounting firm of Clark Nuber to perform such an audit. During the course of 2003, Soward fully cooperated with the Clark Nuber personnel, answered any questions that were put to him, and provided all documentation requested. At no point did anyone from Clark Number suggest that Soward had done anything inappropriate.

55. As the year went on, Bosack and Lerner failed to engage Soward in any discussion or negotiation concerning the parties' agreements, despite inquiries from Soward. On Friday, November 21, 2003, Soward spoke on the telephone with Bosack. Soward told Bosack

that, if he wished to make a change in management, Soward would be helpful and cooperative in transitioning all of Respondents' financial affairs to a new manager. Bosack responded that he had no plans of making a change, and that he was waiting to learn the results of the Clark Nuber audit before engaging Soward in a discussion over the parties' agreements.

56. On Monday, November 24, 2003, Soward received a letter from Leo P. Cunningham of the law firm of Wilson, Sonsini, Goodrich & Rosati. The letter was directed to Soward's personal attorney, Michael Kahn, of Folger Levin & Kahn LLP. The letter advised that Bosack and Lerner were terminating "Mr. Soward's engagement as their investment manager effective immediately," because an "audit of his activities in managing the assets for our clients have revealed a number of irregularities and apparent illegalities." The Wilson Sonsini letter included a draft complaint against Soward and & Management that accused Soward of "looting" the & Capital Partnership, and acting "oppressively, fraudulently, and with malice" toward Bosack and Lerner. A true copy of the November 24, 2003, letter from Wilson Sonsini is attached hereto as Exhibit E ("the Wilson Sonsini Letter"). The Wilson Sonsini Letter purports to be in part a settlement communication, and the portions of the letter dealing with settlement have been redacted from Exhibit E.

57. None of the allegations leveled in the Wilson Sonsini Letter had been communicated to Soward previously. As set forth above, Soward at all times acted in a manner that he believed to be in the best interests of Respondents, and engaged in no acts of intentional wrongdoing. Had Respondents asked Soward for an explanation of any transaction, he would have willingly provided the information necessary to dispel any suggestion of intentional misconduct.

58. On December 1, 2003, Soward's attorneys at Folger Levin & Kahn LLP

responded to the Wilson Sonsini Letter, and requested an explanation of the allegations of

intentional misconduct against Soward.  A true copy of the Folger Levin & Kahn letter is

attached hereto as Exhibit F.  Wilson Sonsini responded by telephone, indicating that the

requested explanation could be gleaned from a review of reports prepared by Clark Nuber, which

Wilson Sonsini agreed to provide.  However, Clark Nuber was engaged merely to verify the

historic investment return achieved by The & Trust and & Capital Partners.  The Clark Nuber

reports do not support the allegations made against Soward in the Wilson Sonsini Letter.

The allegations made in the Wilson Sonsini Letter were made recklessly, without adequate

investigation, and without any reasonable factual basis for believing that Soward had engaged in

intentional wrongdoing.  The circumstances suggest very strongly, and Claimants therefore

allege, that Respondents wrongfully terminated Soward's employment and partnership status for

the ulterior purpose of avoiding their obligation to pay him the compensation he is due under the

parties' agreements, and depriving Soward of the benefits of investments that will come to

fruition in the near future.

## IV.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### BREACH OF CONTRACT (THE & TRUST)
(By Soward and & Management Against The & Trust and
Bosack, Lerner and Troiano as Trustees of The & Trust)

59.    The allegations set forth in Paragraphs 1 to 58 are hereby incorporated by

reference.

60.    Respondents have materially breached the Trust Management Agreement by

failing to perform their obligations under the agreement, and failing, *inter alia*, to pay Soward

and/or & Management for amounts owing pursuant to the agreement, including $339,453 for the

Base Management Fee for 2003, $532,263 for the Incentive Allocation for 2001 and $190,043 for the Incentive Allocation for 2002.

61.     Respondents have also materially breached the terms of the Trust Management Agreement by failing to pay Soward and/or & Management the Incentive Allocation for 2003 which is due pursuant to the terms of the agreement.

62.     As a result of Respondents' material breaches, Soward and & Management have sustained damages in an amount which is not yet known, which will be proved at the hearing. Soward and & Management are entitled to recover such damages together with interest thereon at the legal rate from Respondents.

## SECOND CLAIM FOR RELIEF

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (THE & TRUST)

**(By Soward and & Management Against The & Trust and
Bosack, Lerner and Troiano as Trustees of The & Trust)**

63.     The allegations set forth in Paragraphs 1 to 62 are hereby incorporated by reference.

64.     Implied in the Trust Management Agreement was a covenant by Respondents that they would act in good faith and deal fairly with Soward and & Management.

65.     Respondents breached this implied covenant of good faith and fair dealing by terminating Soward and & Management from their duties under the & Trust Agreement for pretextual and bad faith reasons, and for exclusive advancement of their own interests, as described above.

66.     As a result of Respondents' breaches of the covenant of good faith and fair dealing, Soward and & Management have suffered damages in an amount now unknown.

Soward and & Management reserve the right to amend this claim to allege in particularity the damages which have been caused by Respondents' breaches of covenant.

### THIRD CLAIM FOR RELIEF

### BREACH OF CONTRACT
### (THE LEONARD X. BOSACK AND BETTE M. KRUGER FOUNDATION)

**(By Soward and & Management against the Foundation,
and against Bosack and Lerner, as directors of the Foundation)**

67.    The allegations set forth in Paragraphs 1 to 66 are hereby incorporated by reference.

68.    Soward and & Management have performed all of their obligations under the Foundation Management Agreement, except for those obligations that have been waived or excused.

69.    Respondents have materially breached the Foundation Management Agreement by failing to perform their obligations under the agreement, and failing, *inter alia*, to pay Soward and/or & Management for amounts owing pursuant to the agreement, including $62,287.00 for the Management Fee for 2003.

70.    As a result of Respondents' material breaches, Soward and & Management have sustained damages in the amount of $62,287. Soward and & Management are entitled to recover such damages together with interest thereon at the legal rate from Respondents.

### FOURTH CLAIM FOR RELIEF
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (THE LEONARD X. BOSACK AND BETTE M. KRUGER FOUNDATION)

**(By Soward and & Management against the Foundation,
and against Bosack and Lerner, as directors of the Foundation)**

71.    The allegations set forth in Paragraphs 1 to 70 are hereby incorporated by reference.

72.    Implied in the Foundation Management Agreement was a covenant by Respondents that they would act in good faith and deal fairly with Soward and & Management.

73.    Respondents breached this implied covenant by terminating Soward and & Management from their duties under the Foundation Management Agreement for pretextual and bad faith reasons, and for exclusive advancement of their own interests, as described above.

74.    As a result of Respondents' breaches of the covenant of good faith and fair dealing, Soward and & Management have suffered damages in an amount now unknown. Soward and & Management reserve the right to amend this claim to allege in particularity the damages which have been caused by Respondents' breaches of covenant.

### FIFTH CLAIM FOR RELIEF

### DISSOLUTION AND ACCOUNTING
### (& CAPITAL PARTNERS, L.P.)

**(By Soward against Bosack, as trustee of the Bosack Trust,
and Lerner, as trustee of the Lerner Trust, and & Capital Partners)**

75.    The allegations set forth in Paragraphs 1 to 74 are hereby incorporated by reference.

76.    Respondents have materially breached the & Capital Partnership Agreement by failing to perform their obligations under the agreement, and failing, *inter alia*, to distribute to Soward the positive balance in his capital account, the amount of which is currently unknown.

77.    Implied in the & Capital Partnership Agreement was a covenant by Respondents that they would act in good faith and deal fairly with Soward.

78.    By virtue of their relationship as partners in & Capital Partners, Bosack, as trustee of the Leonard Bosack trust, and Lerner, as trustees of the Sandra Lerner trust, had a fiduciary

duty to Soward to exercise the highest degree of good faith and fair dealing, loyalty and honesty, to avoid self-dealing and acting out of self-interest to the disadvantage of Soward.

79. Respondents, and each of them, violated their fiduciary obligations and the covenant of good faith and fair dealing under the partnership by, *inter alia*, terminating Soward as general partner for pretextual, bad faith reasons to advance their own interests to the disadvantage of Soward, as described above.

80. As a result of Respondents' breaches of fiduciary duty and breaches of the & Capital Partnership Agreement, Soward has sustained damages in an amount which is not yet known. Soward is entitled to recover such damages together with interest thereon at the legal rate from Respondents.

81. Soward is entitled to an accounting of the & Capital partnership to determine the positive balance of his capital account for & Capital Partners and all damages owed to him by Respondents. Respondents are obligated to account to Soward for all assets of the partnership, including partnership opportunities in existence on or before the date of dissolution. It is proper to combine all causes of action against Respondents relating to & Capital Partners in a single action in equity, under the authority of *Prince v. Harting*, 177 Cal. App. 2d 720 (1960) and similar cases.

## SIXTH CLAIM FOR RELIEF

### DISSOLUTION AND ACCOUNTING
### (CARTESIAN PARTNERS, L.P.)

**(By Soward against Cartesian Partners, L.P., and
Bosack as trustee of the Bosack Trust)**

82. The allegations set forth in Paragraphs 1 to 81 are hereby incorporated by reference.

83.    Bosack has materially breached the Cartesian Agreement by failing to perform his obligations under the agreement, and failing, *inter alia*, to distribute to Soward the positive balance in his capital account, the amount of which is currently unknown.

84.    Implied in the Cartesian Partnership Agreement was a covenant by Respondents that they would act in good faith and deal fairly with Soward.

85.    By virtue of their relationship as partners in Cartesian Partners, Bosack, as trustee of the Leonard Bosack trust, had a fiduciary duty to Soward to exercise the highest degree of good faith and fair dealing, loyalty and honesty, to avoid self-dealing and acting out of self-interest to the disadvantage of Soward.

86.    Respondents, and each of them, violated their fiduciary obligations and the covenant of good faith and fair dealing under the partnership by, *inter alia*, terminating Soward as general partner for pretextual, bad faith reasons to advance their own interests to the disadvantage of Soward, as described above.

87.    As a result of Respondents' material breaches, Soward has sustained damages in an amount which is not yet known.  Soward is entitled to recover such damages together with interest thereon at the legal rate from Bosack.

88.    Soward is entitled to an accounting of the Cartesian partnership to determine the positive balance of his capital account for Cartesian Partners and all damages owed to him by Respondents.  Respondents are obligated to account to Soward for all assets of the partnership, including partnership opportunities in existence on or before the date of dissolution.  It is proper to combine all causes of action against Respondents relating to Cartesian Partners in a single action in equity, under the authority of *Prince v. Harting*, 177 Cal. App. 2d 720 (1960) and similar cases.

### V.  DEMAND FOR RELIEF

Wherefore, Claimants pray for the following relief:

a. From The & Trust, and from Bosack, Lerner, and Troiano as trustees of the & Trust: compensatory damages under the terms of the Trust Management Agreement;

b. From The Leonard X. Bosack and Bette M. Kruger Foundation and Leonard Bosack: for compensatory damages under the Foundation Management Agreement;

c. From & Capital Partners, L.P., Bosack and Lerner: for dissolution of the partnership, an accounting of all assets including Soward's capital account, and for compensatory damages under the & Capital Partnership Agreement;

d. From Cartesian Partners, L.P. and Bosack: for dissolution of the partnership, an accounting of all assets including Soward's capital account, and for compensatory damages under the Cartesian Partnership Agreement;

e. From all Respondents:  Attorneys' fees and costs in an amount to be determined and proved at the hearing of this matter;

f. Pre-judgment interest on the foregoing amounts;

g. Such other relief as may be demanded and granted in the Arbitration.


Dated: February 3, 2004

FOLGER LEVIN & KAHN LLP

Michael A. Kahn
J. Daniel Sharp
Lynne S. Bourgault
Attorneys for Claimant
David C. Soward

86083\2001\380854.2

-21-