# Exhibit G

1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
9                            AT SEATTLE

10   LEONARD BOSACK, individually and as
     Trustee on behalf of The & Trust and as        No.
11   Trustee on behalf of the Leonard Bosack
     Trust; and SANDY LERNER, individually      **COMPLAINT FOR DECLARATORY**
12   and as Trustee on behalf of The & Trust and **RELIEF, FRAUD, CONSTRUCTIVE**
     as Trustee on behalf of the Sandra K. Lerner **FRAUD, BREACH OF FIDUCIARY**
13   Trust,                                     **DUTY, NEGLIGENT**
                                                **MISREPRESENTATION, BREACH**
                    Plaintiffs,                 **OF CONTRACT AND CONVERSION**
14
            v.
15
     DAVID C. SOWARD and &
16   MANAGEMENT COMPANY,

17                  Defendants.

18

19

20          Plaintiffs Leonard Bosack, Individually and as Trustee on behalf of The & Trust,[1]

21   and as Trustee on behalf of the Leonard Bosack Trust; and Sandy Lerner, Individually and

22   as Trustee on behalf of The & Trust, and as Trustee on behalf of the Sandra K. Lerner

23   Trust (collectively, "Plaintiffs"), allege the following complaint against Defendants David

24   C. Soward and & Management Company (collectively, "Defendants") on personal

25

26   _____
     [1] All references to entities containing "&" are pronounced "Ampersand."

COMPLAINT – Page 1

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1  knowledge as to their own actions and on information and belief with respect to other

2  matters alleged:

3  ## NATURE OF THE ACTION

4      1.    This is an action against an investment adviser for betraying the trust and

5  confidence Plaintiffs placed in him.  Defendants David C. Soward and & Management

6  Company, of which Soward is sole owner, were entrusted with the control and the

7  responsibility to manage hundreds of millions of dollars of Plaintiffs' assets.  In accepting

8  that control, responsibility, and generous compensation from Plaintiffs, Defendants entered

9  into a fiduciary relationship with Plaintiffs.  Defendants breached their fiduciary duties, as

10  well as other statutory and common law duties, and defrauded Plaintiffs through a pattern of

11  misconduct that included the following:

- Defendants improperly withdrew assets from an investment partnership and concealed those withdrawals from Plaintiffs;

- Defendants misrepresented the value of various investments held by an investment partnership and thereby fraudulently inflated amounts they were entitled to withdraw from that entity;

- Defendants borrowed money from Plaintiffs on terms that were misrepresented, inadequately documented and which placed Defendants' financial interests in conflict with, and ahead of, Plaintiffs' financial interests;

- Defendants invested Plaintiffs' money based on Defendants' personal relationships and in a manner that placed the financial interests of Defendants' friends ahead of Plaintiffs' financial interests;

- Defendants loaned Plaintiffs' money to Defendants' friends on terms that were inadequately documented and which were detrimental to Plaintiffs;

- Defendants deceived Plaintiffs' in setting up investment vehicles, the terms of which allowed Defendants to receive excessive compensation; and

- Defendants placed Plaintiffs' assets in investments that were unsuitable and failed to invest in a manner that would have been suitable.

As a result of Defendants' misconduct, Plaintiffs have been injured in an amount in excess

of $10,000,000.

COMPLAINT – Page 2

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

## THE PARTIES

2.    At the time of the events complained of herein, Plaintiff Leonard Bosack ("Bosack"), an individual, was a limited partner of Cartesian Partners L.P., a member of the Board of Directors of the Leonard X. Bosack and Bette M. Kruger Charitable Foundation, Inc., a trustee of The & Trust, a trustee of the Leonard Bosack Trust ("Bosack Trust"), and a shareholder of & Capital, Inc. He works and resides in Redmond, Washington.

3.    Plaintiff Sandy Lerner ("Lerner"), an individual, is a member of the Board of Directors of the Leonard X. Bosack and Bette M. Kruger Charitable Foundation, Inc., a trustee of The & Trust, a trustee of the Sandra K. Lerner Trust ("Lerner Trust"), and a shareholder of & Capital, Inc. She works and resides in the Commonwealth of Virginia.

4.    Defendant David C. Soward ("Soward") is an individual residing in San Francisco, California, and an investment adviser within the meaning of the Securities Act of Washington and the Investment Advisors Act of 1940. He was a general partner of & Capital Partners, L.P. and Cartesian Partners L.P., an officer of & Capital, Inc., and is the sole owner of & Management Company.

5.    Defendant & Management Company is a company that is owned and operated by Defendant Soward with its principal place of business in San Francisco, California.

6.    & Management Company is not only owned, influenced and governed by Soward, but there is such a unity of interest and ownership that the individuality, or separateness, of Soward and & Management Company has ceased. Adherence to a fiction of separate existence for & Management Company would, under these particular circumstances, sanction a fraud or promote injustice.

7.    Soward and & Management Company are the agents, alter egos, accessories, accomplices, aiders, abettors, confederates, and co-conspirators of one another, and Soward is an employee of & Management Company.

COMPLAINT – Page 3

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred there, and because a substantial part of the property that is the subject of the action is situated. & Capital, Inc., the entity that houses the majority of the books and records for the transactions and entities in dispute, is located in Redmond, Washington.

## COMMON ALLEGATIONS

## BACKGROUND

10.     In or about October 1991, Plaintiffs sought a trustworthy individual, unaffiliated with any financial institution, who could provide financial advice and manage their assets and the assets of entities for which they were trustees or directors in a prudent manner unhampered by any conflicts of interest.  Soward, who was then employed as an international tax accountant at a prestigious accounting firm, represented that he was able and willing to provide such management, advice and consultation, and that he would do so exclusively for Plaintiffs and certain entities in which their assets were held and/or for which they served as trustees or directors.

11.     In 1992, Defendants relocated to Redmond, Washington and became Plaintiffs' investment advisers.  As such, Defendants entered into a fiduciary relationship with Plaintiffs.  As fiduciaries, Defendants owed the Plaintiffs more than honesty and good faith alone.  Defendants had an affirmative duty to act solely in the best interest of the Plaintiffs and to make full and fair disclosure of all material facts, particularly when their interests conflicted with those of Plaintiffs'.  Defendants were obligated to exercise

COMPLAINT – Page 4

1    reasonable and prudent supervision over the management, policies, practices, and control of

2    four of Plaintiffs' investment entities as would an ordinary prudent person in a like position.

3    Because of this fiduciary relationship, Defendants were required at all times to be loyal to

4    Plaintiffs and act in their best interests.  Defendants did not do so.

5         12.    Instead, Defendants have oppressively, fraudulently, and with malice

6    breached these duties and defrauded Plaintiffs by engaging in transactions that were

7    intended to, and did, enrich themselves and their friends at the expense of Plaintiffs.

8         13.    Defendants' fraudulent conduct arose from their purported advice and

9    expertise in the creation, management and operation of at least four different investment

10   entities:

11        a.    & Capital Partners, L.P. – Based on Defendants' advice, & Capital Partners,

12   L.P. ("Capital Partners"), was formed as a Delaware limited partnership in December 1995.

13   Soward was the general partner.  The capital for the partnership came exclusively from the

14   limited partners, which were the Bosack Trust and the Lerner Trust.  Soward was entrusted

15   with administering the distributions from the partnership pursuant to a formula in the

16   partnership agreement.  Under the Agreement of Limited Partnership of & Capital Partners,

17   L.P. (the "Capital Partners Agreement"), executed in 1995 between Soward and the Bosack

18   and Lerner Trusts, Soward's share of the distribution was 10% of the partnership's net

19   income.  Soward was also given authority to manage the assets of the partnership, but was

20   not allowed to acquire or dispose of an investment without the consent of the limited

21   partners.  A copy of the Capital Partners Agreement is attached as Exhibit 1.

22        b.    The & Trust – The & Trust is a charitable remainder trust formed under the

23   laws of the State of California.  Plaintiffs are two of its trustees.  In January 2001, based on

24   the advice of Defendants, the & Trust entered into a management agreement with

25   Defendants which provided, *inter alia*, that in compensation for investment advice and

26   management, Defendants would receive a base management fee of 0.30% per year of the

COMPLAINT – Page 5

YARMUTH WILSDON CALFO PLLC

THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1  net assets of the trust (less salary paid to Soward by & Capital, Inc.) and an incentive

2  allocation of 10% of the profits of the trust's designated portfolio.  A copy of the & Trust

3  management agreement is attached as Exhibit 2.

4        c.    <u>& Capital, Inc.</u> – & Capital, Inc., is a Delaware corporation with its offices in

5  Redmond, Washington.  The offices of & Capital, Inc. currently house the books and

6  records of Capital Partners, The & Trust and Cartesian Partners, L.P. ("Cartesian").

7  Plaintiffs are the only shareholders and directors and Soward was an officer.  In 2001 and

8  2002, Soward received an annual salary of $120,000 from & Capital, Inc., but Soward

9  failed to deduct the salary and reimbursements in the calculation of his fee from The &

10  Trust.  During 2003, & Capital, Inc. also paid the salaries of Soward's secretary and of his

11  assistant.  Soward promised to reimburse & Capital, Inc. for payment of these amounts and

12  has failed to do so.

13        d.    <u>Cartesian Partners</u> – Cartesian is a limited partnership formed on or about

14  January 1, 1999, when Defendants fraudulently induced Bosack to agree to the relationship.

15  Without adequately documenting the formation of the partnership, Defendants made

16  themselves the general partners and Bosack the limited partner.  Under the draft partnership

17  agreement, which was never signed and never disclosed to Bosack, Defendants were

18  entitled to 14.5% of the profits of Cartesian and Bosack, who contributed 95% of the

19  capital, was entitled to 85.5%.  Defendants also gave themselves unbridled authority to

20  manage the assets of the partnership.

21        14.    Defendants' misconduct began to be uncovered in mid 2003 as a result of

22  certain agreed-upon audit procedures performed by Plaintiffs' accounting firm in

23  connection with a request by Soward for an increase in his compensation.  Specifically, in

24  or around early 2003, Soward requested that Plaintiffs renew Defendants' contract as

25  investment advisers and increase their compensation.  As part of the process of determining

26  whether they would grant Soward's request, Plaintiffs engaged an accounting firm to

COMPLAINT – Page 6

1    perform a review under certain agreed-upon auditing procedures of, among other things, the

2    investment returns for the entities managed and advised by Defendants.

3        15.    In approximately July 2003, the accounting firm began to provide Plaintiffs

4    with preliminary reports showing possible abuses, breaches of duty, and outright fraud by

5    Defendants. By the time the review was complete, it was clear that Defendants had

6    engaged in a pattern of fraudulent and abusive acts that caused substantial injury to

7    Plaintiffs. Additional evidence of misconduct has been discovered since the completion of

8    the accounting firm's review.

9        16.    Prior to July 2003, Plaintiffs, who relied on Defendants to faithfully and

10    loyally invest and manage their assets and accurately report on Defendants' performance,

11    were never provided with any information by which they could discover Defendants'

12    abuses.

13                        **Misconduct at Capital Partners**

14        17.    As the investment advisers to Capital Partners, Defendants owed Plaintiffs

15    the highest degree of care, candor, good faith and diligence. Defendants had an obligation

16    to put Plaintiffs' interests above all others, including themselves, and to fully and fairly

17    disclose to them all facts that were material to the management of their assets. Defendants

18    failed to live up to these obligations by, among other things, improperly withdrawing funds

19    from Capital Partners, misrepresenting the value of partnership assets, investing partnership

20    funds based on Soward's personal relationships and contrary to specific instructions given

21    by the limited partners, and using partnership assets as a source for loans to Soward and his

22    friends.

23        The Improper Withdrawals

24        18.    The Capital Partners Agreement required that any distributions be made to

25    all partners in proportion to the positive balances in their capital accounts and only from

26    cash that was in excess of the reasonably foreseeable cash needs of the partnership.

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

19. Beginning no later than 1998, and continuing through the date that Soward was removed as the General Partner, Defendants willfully and intentionally withdrew cash from Capital Partners in violation of the Capital Partners Agreement. From 1998 through 2002, Defendants knowingly caused themselves to be paid excessive distributions to which they were not entitled in an amount exceeding $5,000,000.

20. From on or about September 16, 1998, through December 23, 1998, Defendants distributed to themselves $459,464, which was at least $413,518 more than allowed under the Capital Partners Agreement.

21. From on or about January 6, 1999, through November 23, 1999, Defendants distributed to themselves $707,386, which was at least $586,647 more than allowed under the Capital Partners Agreement.

22. From on or about January 5, 2000, through December 12, 2000, Defendants distributed to themselves $2,575,747, which was at least $1,768,172 more than allowed under the Capital Partners Agreement.

23. From on or about January 18, 2001, through November 28, 2001, Defendants distributed to themselves $3,142,207, which was at least $2,437,986 more than allowed under the Capital Partners Agreement.

24. On or about June 17, 2002, and July 1, 2002, Defendants distributed to themselves $26,617, which was at least $23,955 more than allowed under the Capital Partners Agreement.

Improper Recording of Investment Values

25. In order to increase Soward's capital account balance and allow him to take larger withdrawals from Capital Partners (while concealing that the withdrawals violated the terms of the Capital Partners Agreement), Defendants fraudulently inflated the value of certain partnership investments in 2001 and 2002.

COMPLAINT – Page 8

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1    26.    In 2001, Capital Partners' investment return spreadsheet falsely recorded

2    Capital Partners' year-end market value at $82,788,846. Based on this valuation, the

3    partnership made an annual return of 1.38%. Plaintiffs' accounting firm determined that the

4    partnership's 2001 year-end market value was overstated by $2,142,356. The actual market

5    value was $80,646,490 and the annual return was –2.92%.

6    27.    Part of the 2001 overstatement was based on the inflation of an investment in

7    Madison Investment Partners. As recently as October 2001, Soward gave a presentation to

8    Plaintiffs in which he represented that the value of this investment was $3,000,000 when, in

9    fact, the investment was worth only $500,000.

10    28.    In 2002, Defendants falsely recorded Capital Partners' year-end market

11    value at $88,062,109. Based on this valuation, the partnership made an annual return of

12    2.13%. In reality, the 2002 year-end market value was overstated by $7,577,880. The

13    actual market value was $80,484,229 and the annual return was –4.28%.

14    29.    Part of the 2002 overstatement resulted from the Defendants falsely

15    recording the value of an investment in Madison Investment Partners II, L.P. Defendants

16    recorded the value of that investment at $3,984,756 when, in fact, its true value was

17    $1,877,670.

18    30.    Also in 2002, Defendants falsely recorded the value of an investment in

19    Westar, a bankrupt private equity company. Defendants recorded the value of that

20    investment at $4,126,865 when, in fact, its true value was $0. Indeed, Defendants caused

21    the value of Westar to be reported to the Internal Revenue Service as $0 during the same

22    period.

23    <u>The Investment in Passport Cosmetics</u>

24    31.    In 1995, Capital Partners made a substantial investment in a cosmetics

25    company founded by Lerner called Urban Decay. In or about 1999, pursuant to a reference

26    from one of his close friends, Brian Myerson, Soward hired Malcolm Kemp to be the CEO

COMPLAINT – Page 9

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1  of Urban Decay.  In 2000, Urban Decay was sold to LVMH, a French company, and

2  Capital Partners made a substantial profit on its investment.

3         32.     After the sale of Urban Decay, Soward contacted Lerner and told her that he

4  had a new "cosmetics company" in which he wanted to invest Capital Partners' funds.

5  Soward was referring to Passport Cosmetics L.L.C. ("Passport"), although he did not tell

6  Lerner the name of the company. He did, however, inform her that Kemp, who acted as

7  Passport's CEO, was going to be involved in the operation of this new company.  Lerner

8  clearly and unequivocally told Soward that he was not to invest Capital Partners' funds in

9  any other cosmetics companies or in any company in which Kemp was a CEO, consultant

10 or otherwise had any interest.

11        33.     Plaintiffs have recently discovered that, notwithstanding Lerner's clear

12 directive not to invest in Passport, and notwithstanding a provision in the Capital Partners

13 Agreement prohibiting the general partner from acquiring an investment without the

14 approval of the limited partners, Defendants caused Capital Partners to invest more than

15 $1,500,000 in Passport from late 2001 to mid-2003.  The investment is now worthless.

16        34.     Capital Partners' investment in, and eventual withdrawal from, Passport,

17 typifies Defendants' fraudulent and deceitful conduct and willingness to put the interests of

18 Defendants ahead of those of Plaintiffs.

19        35.     Passport was organized on or about November 27, 2001, by two

20 acquaintances of Soward, Meredith McGann and Erin Kotter, neither of whom had any

21 significant business experience prior to organizing Passport.  Indeed, because of the lack of

22 experience of McGann and Kotter, Defendants retained Malcolm Kemp as Passport's CEO.

23        36.     During 2001, Capital Partners contributed $185,000 to Passport.  Defendants

24 did not formally document this contribution.  Moreover, Capital Partners received nothing

25 in return for the $185,000.  It did not receive a promissory note or any other documentation

26

COMPLAINT – Page 10

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1  evidencing a creditor/borrower relationship.  Neither did it receive equity in Passport in

2  return for its investment.

3       37.    On or about May 20, 2002, the parties purported to document their

4  relationship by drafting a formal operating agreement.  Pursuant to the operating agreement,

5  which was never signed by a representative of Capital Partners, Capital Partners agreed to

6  and did contribute $715,000 to Passport in exchange for a 60% equity interest.  McGann

7  and Kotter, neither of whom were capable of running the company, each contributed $1 in

8  return for a combined 40% equity stake in the company.

9       38.    During the course of 2002, Capital Partners contributed an additional

10  $360,000 to Passport, bringing its total capital contributions for 2002 to $1,075,000.  As

11  with the other contributions, Defendants failed to formally document this transaction and

12  received no documented interest in Passport, either as a creditor or equity holder, in return

13  for the contribution.

14       39.    During the time that Defendants were throwing huge sums of Plaintiffs'

15  money at Passport, the company was going nowhere.  Indeed, as early as 2002, it was

16  obvious to Defendants that Passport was a failure.  Malcolm Kemp left the company in or

17  about late 2002, and Defendants' only hope to realize any value on its investment was by a

18  sale of the company.  Nevertheless, in further violation of their fiduciary and other

19  obligations owed to Plaintiffs, Defendants caused Capital Partners to contribute an

20  additional $296,510 to Passport in 2003.  As with the other transfers, the contribution was

21  not formally documented and Defendants received nothing in return.

22       40.    In July 2003, Defendants caused Capital Partners to withdraw from Passport.

23  Upon its withdrawal, Capital Partners contributed an additional $100,000 to Passport and

24  surrendered any and all equity interest it purported to have in the company.  In return,

25  Capital Partners received from Passport a Nonrecourse Contingent Promissory Note for

26  $700,000 (the "Note").

COMPLAINT – Page 11

41.     Interest on the Note accrues at 5% annually, but no interest payments are due to Capital Partners unless (1) Kotter and McGann receive aggregate distributions from Passport in excess of $250,000 in one calendar year; (2) Kotter and McGann receive aggregate distributions from Passport in excess of $500,000 in any consecutive three calendar years; or (3) Passport is sold for more than $250,000, in which case the first $250,000 of the amount realized is allocated to Kotter and McGann.  In short, interest is due and payable to Capital Partners only after Kotter and McGann are allocated at least $250,000.

42.     The Note also subordinated Capital Partners' interests to those of Kotter and McGann in the event of a sale of Passport.  In that event, the first $250,000 of the amount realized is allocated to Kotter and McGann.  Capital Partners only gets paid on the Note if Passport is sold for more than $250,000, an event that Soward knew was unlikely at the time he negotiated the withdrawal because less than two months earlier a potential buyer walked away from a deal to pay $100,000 for the company.

43.     By withdrawing from Passport and accepting the Note, Defendants caused Capital Partners to pay an additional $100,000 to subordinate its interest to the interests of Kotter and McGann and to reduce the amount to which Capital Partners would be entitled in the event Passport was thereafter sold.  In fact, Defendants contributed $100,000 in additional funds at the time of withdrawal not because it was in the best interest of Capital Partners, but because, as Soward communicated to an acquaintance, it gave Kotter and McGann "a chance."

The Improper Loans

44.     Defendants engaged in further fraud and self-dealing by causing Capital Partners to make substantial loans to Soward and his friends.  On or about April 12, 2001, Defendants engaged in self-dealing by causing Soward to receive $1,000,000 of partnership assets purportedly as a loan.

COMPLAINT – Page 12

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1    45.    Defendants represented that the loan was short-term, would be extended at a

2    rate of interest consistent with the market rates for similar loans, and, during the short time

3    it was outstanding, would be secured by the real property that Soward represented the loan

4    would be used to purchase.  In reliance on these misrepresentations, Bosack orally approved

5    the loan.

6    46.    In reality, Defendants unreasonably constructed the repayment schedule on

7    30-year, interest-only terms at a below-market rate of interest.  Further, the loan was not

8    secured by real property.  Instead, Defendants purported to pledge Soward's capital account

9    in Capital Partners as security for the loan.  However, at the time the loan was extended, as

10    Soward knew, his capital account had a negative balance because he had made substantial

11    withdrawals from the account on April 12, 2001.  Since the date of the loan, Soward has

12    improperly withdrawn funds from Capital Partners that have reduced his capital account

13    balance even further.

14    47.    Defendants also failed to provide to Plaintiffs documentation of the terms of

15    the loan and the security arrangement.  It was only during performance of the review under

16    the agreed-upon procedures by Plaintiffs' accounting firm that Plaintiffs first discovered a

17    draft note and pledge agreement setting forth the terms of the fraudulently induced loan.

18    Subsequently, Plaintiffs have located what appears to be a final note and pledge agreement,

19    copies of which are attached as Exhibit 3.  Notably, these documents were not prepared and

20    signed by Soward until August 2003 — the period during which Plaintiffs' accounting firm

21    was performing its review.   As of August 2003, Soward's capital account in Capital

22    Partners had a balance of approximately –$1,300,000.

23    48.    The only signatures on the note and pledge agreement belong to David

24    Soward.  He signed the pledge agreement in his individual capacity (as the borrower) and in

25    his capacity as the general partner of Capital Partners (as the lender).  He has also been in

26    default on the note and pledge agreement from inception — the note mandates that Soward

COMPLAINT – Page 13

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

1   make quarterly interest payments beginning in 2002, but he made only annual payments in

2   2002 and 2003, and has made no payments thus far in 2004.

3        49.    In July 2003, when Plaintiffs' discovered that the loan was still outstanding

4   and that the terms were other than as represented by Defendants, Bosack demanded

5   payment from Defendants. That demand was refused.

6        50.    Defendants caused Capital Partners to improperly loan money not only to

7   Soward, but also to Soward's friends. On or about February 26, 2002, in violation of the

8   Capital Partners Agreement and their fiduciary obligations to Plaintiffs, Defendants caused

9   Capital Partners to make an unauthorized $150,000 loan to Soward's friend Malcolm

10  Kemp. The loan is unsecured and has never been formally documented. Kemp has made

11  no interest or principal payments on the loan and no such payments were sought by Soward.

12  **Misconduct at Cartesian**

13       51.    As the investment advisers for Bosack, Defendants owed him a duty to

14  exercise the highest degree of due care, good faith, candor, loyalty and diligence.

15  Defendants breached that duty by willfully and intentionally deceiving Bosack in

16  connection with the creation, management and administration of Cartesian.

17  Fraud in the Creation of Cartesian

18       52.    In late 1998, Defendants became aware that Bosack had additional funds he

19  wanted to invest. Soward contacted Bosack and proposed that the two of them create an

20  investment limited partnership — Cariesian — whereby Defendants would be the general

21  partners and Bosack would be the limited partner. Soward represented to Bosack that the

22  terms of the Cartesian Limited Partnership Agreement (the "Cartesian Agreement") would

23  be the same as those in the Capital Partners Agreement. Soward represented that Cartesian

24  and Capital Partners would be the same, "except that Sandy will not be a limited partner" of

25  Cartesian. Soward knew, however, that this was not true. In fact, he caused Capital

26

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1   Partners' lawyer to draft a limited partnership agreement for Cartesian that was very

2   different from the Capital Partners Agreement.

3     53. Under the unsigned, draft Cartesian Agreement, the general partners, who

4   are the Defendants, are allocated the first 10% of profits.  The remaining 90% of profits are

5   allocated 5% to the general partners and 95% to the limited partner.  This provision

6   allocates 14.5% of the total profits to the general partners and 85.5% to the limited partner.

7   Under the Capital Partners Agreement, however, 10% of the profits are allocated to the

8   general partners and 90% to the limited partners.

9     54. The unsigned, draft Cartesian Agreement, in contrast to the Capital Partners

10  Agreement, (a) gave the general partners exclusive control over the partnership's business,

11  including the power to make investments and execute agreements without the limited

12  partner's consent; and (b) allowed the general partners to engage in business for their own

13  profit or advantage, even if in direct competition with Cartesian, without the consent of the

14  limited partner.

15    55. In order to conceal from Bosack the actual terms of the Cartesian

16  Agreement, Defendants never disclosed it to him and Bosack never saw, received or signed

17  a copy of the agreement.

18    56. In reliance on Defendants' representations, Bosack contributed more than

19  $9,500,000 to Cartesian.  Defendants purported to contribute $525,636 to Cartesian, but all

20  of the contributions were made with funds that Defendants improperly withdrew from

21  Capital Partners.  Thus, the only capital ever contributed to Cartesian belonged to Plaintiffs

22  and Defendants have no lawful interest in that entity.

23    The Improper Investments in Myerson Controlled Entities

24    57. After Defendants had deceived Bosack in setting up Cartesian, Defendants

25  used the partnership's assets as a source of funds for Soward's friends and in disregard of

26  the best interests of Bosack and Cartesian and prudent investing practices.

COMPLAINT – Page 15

YARMUTH WILSDON CALFO PLLC

THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

58.     Defendants caused Cartesian Partners to invest in Liberty of London ("Liberty"), a clothing retailer in Great Britain that was also an investment of Brian Myerson, a personal friend to Soward and the Best Man in Soward's 2001 wedding.

59.     Myerson was the principal of a family of funds operating under the name U.K. Active Value.  Through U.K. Active Value and various other companies he controlled, Myerson held approximately 17% of Liberty's outstanding shares throughout the 1990s.  Myerson had been attempting to gain control of Liberty, and Defendants caused Cartesian to help him do so.  Defendants aided Myerson in three ways.  First, Defendants caused Cartesian to purchase shares in Liberty.  As Liberty shareholders, Defendants could then act in concert with Myerson in pursuit of his quest for control of the company.  Second, Defendants caused Cartesian to invest directly in U.K. Active Value.  This provided Myerson with additional cash to pursue his objective.  Third, Defendants caused Cartesian to loan funds directly to Myerson.

60.     On or about October 7, 1998, Myerson wrote to Soward and suggested that it was a good time to purchase stock in Liberty.  Almost immediately — even before Defendants had induced Bosack to agree to the creation of Cartesian — Defendants began to purchase Liberty shares for Cartesian's account, eventually acquiring more than 10% of the company's outstanding stock.

61.     Once they had purchased the large block of stock, Defendants pursued Myerson's interests and acted in disregard of the best interest of Bosack and Cartesian.  For instance, to assist Myerson in his quest for control of Liberty, Defendants agreed to exchange Cartesian's shares in Liberty for shares in Retail Stores Plc ("Retail"), the Myerson-controlled entity that was used as an acquisition vehicle for, and was eventual successor to, Liberty.  At the time Defendants agreed to the share exchange, it would have been much better for Bosack and Cartesian to sell the shares for the significant cash premium that was also available to Liberty shareholders.

COMPLAINT – Page 16

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

62.    Defendants also caused Cartesian to invest in Myerson's U.K. Active Value, which itself owned a substantial interest in Retail (and prior to that, in Liberty).  On or about December 9, 2002, Defendants invested approximately $759,203 of Cartesian funds in U.K. Active Value and, on or about April 17, 2003, Defendants invested approximately $158,670 of Cartesian funds in U.K. Active Value.

63.    Plaintiffs have recently learned that, as of year-end 2003, Cartesian owned in excess of 2 million shares, or more than 11%, of Retail, and that 76% of Cartesian's assets were invested directly in Retail.  In addition, more than 10% of Cartesian's assets were invested in U.K. Active Value.  Thus, no less than 86% of Cartesian's assets were made available to Myerson by investing directly in Liberty/Retail and U.K. Active Value.

The Loan from Cartesian to Myerson

64.    Defendants also used Cartesian funds to loan Myerson over $1 million at a below-market interest rate.  Defendants failed to properly document the loan or set forth terms upon which the loan would be repaid.  In fact, Defendants initially attempted to conceal the loan by recording the payment to Myerson as a "Liberty Share Purchase."

65.    Specifically, on or about January 18, 2001, Defendants authorized the transfer of $1,109,400 (750,000 British Pounds) from Cartesian to a Myerson controlled company called Second Concerto Corporation ("Second Concerto").  In connection with the transfer, Cartesian received 250,000 shares in Retail with an option to put the shares back to Second Concerto at the price paid for shares any time up to April 1, 2001.

66.    On March 23, 2001, Soward wrote Myerson and informed him that Defendants intended to exercise the put right.  Retail's share price had dropped significantly and the Retail shares Defendants caused Cartesian to "purchase" from Second Concerto were worth less than Cartesian paid.  By exercising the put right, Cartesian could recover the full amount paid to Second Concerto.

COMPLAINT – Page 17

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

67.    But, the put right was never exercised. Instead, about one week later, Soward met with Myerson in Europe. Shortly after returning from his trip, Soward had changed his mind. He instructed Cartesian's bookkeeper to change the description of the transaction on Cartesian's books from an investment in shares of Retail to a loan to Second Concerto.

68.    It was not until late-July 2002 that Defendants sought any repayment of interest and principal from Second Concerto and Myerson, and it was not until November 2002 that the loan was finally repaid. At all times, Defendants placed the financial interest of Myerson above that of Cartesian and Bosack. On July 29, 2002, Soward telecopied a note to Myerson showing a calculation of the total amount due on the loan using a below-market rate of interest. Soward noted that Myerson should be happy that, on a British Pound basis, the note was practically interest-free for Myerson. The note also goes on to thank Myerson for "all the hospitality you showed us at Shawford and in Venice."

69.    The hospitality on the trip to Shawford and Venice was not the only benefit Defendants received as a result of putting Myerson's interest ahead of the interests of Bosack and Cartesian. Soward was appointed to Retail's Board of Directors and sat on an advisory board for U.K. Active Value. Myerson and his companies also made sure that Soward traveled in style, arranging for Soward to take expensive, first-class vacations in Europe with his family. On one occasion Myerson secured for Soward a chalet for a skiing trip in Courcheval because Soward offered to make certain funding available to Myerson in connection with a business deal.

### Defendants Skimmed Assets From the & Trust and & Capital, Inc.

70.    Defendants were investment advisors to The & Trust and Soward was an officer of & Capital, Inc. As a result, they owed Plaintiffs the duties of loyalty, good faith, due care and diligence in connection with the management and administration of those entities. Defendants breached those duties by, among other things, improperly calculating

COMPLAINT – Page 18

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1    their compensation from the & Trust and by failing to make required reimbursements to &

2    Capital, Inc.

3        71.    Under the Trust Management agreement between Defendants and the &

4    Trust, Defendants were required to deduct Soward's $120,000 salary from & Capital, Inc.

5    in the calculation of his base management fee.  However, in 2001 and 2002, Defendants

6    purposely calculated the management fee without making the deduction.  Defendants

7    thereby improperly   misappropriated fees of approximately $240,000.

8        72.    In or about January 1999, Defendants calculated Soward's bonus payment

9    from the & Trust at an excessive level by improperly including a hedge fund dispute

10   settlement as profit.  The settlement, which totaled $18,762,000, comprised both

11   compensatory and punitive damages.  Although Plaintiffs only approved of using the

12   compensatory award as profit for purposes of determining the bonus payment, Defendants

13   willfully and intentionally violated their fiduciary duties by basing the bonus on the entire

14   settlement.

15       73.    Each year & Capital, Inc. paid the salaries of Soward's secretary and of his

16   assistant.  Soward agreed to reimburse the company for making the payments and, in fact,

17   did so every year through 2002.  However, in 2003, Soward failed to make the promised

18   reimbursement to & Capital, Inc. for the $70,512.739 it paid to his secretary and the

19   $79,626.34 it paid to his assistant.  & Capital, Inc. is entitled to be reimbursed for these

20   amounts.

21                    **FIRST CAUSE OF ACTION**

22            **(Declaratory Relief Pursuant to 28 U.S.C. § 2201)**

23       74.    Plaintiffs incorporate by reference each of the allegations contained in

24   paragraphs 1 through 73.

25       75.    On November 24, 2003, Plaintiffs, through their lawyers, sent to

26   Defendants' lawyer a letter enclosing a draft complaint against Defendants that that was

COMPLAINT – Page 19

YARMUTH WILSDON CALFO PLLC

THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1 | substantially similar to this complaint. Plaintiffs informed Defendants' lawyer that that
2 | they would not immediately file and serve the complaint.

3 | 76. In response, Defendants requested a copy of the audit report setting forth the
4 | results of the agreed-upon audit procedures performed by Plaintiffs' accounting firm.
5 | Defendants indicated that a review of the report was necessary to help them formulate a
6 | response to Plaintiffs' letter and draft complaint. Plaintiffs provided Defendants with a
7 | copy of that report.

8 | 77. Defendants, however, did not directly respond to Plaintiffs' letter and draft
9 | complaint. Instead, on February 5, 2004, Defendants initiated an arbitration proceeding
10 | before the American Arbitration Association against Plaintiffs, The & Trust, Capital
11 | Partners, Cartesian, the Leonard Bosack and Better M. Kruger Foundation (the
12 | "Foundation"), and Richard Troiano, a trustee of the & Trust. Defendants allege they are
13 | entitled to their capital account balances in Capital Partners and Cartesian, and other
14 | amounts from the & Trust and the Foundation. A copy of Defendants' Statement of Claim,
15 | with accompanying exhibits, is attached as Exhibit 4.

16 | 78. On July 14, 2004, Plaintiffs, along with the other respondents in the
17 | arbitration, filed a response objecting to the jurisdiction of the American Arbitration
18 | Association.

19 | 79. Defendants allege that the dispute is arbitrable because a majority of the
20 | assets managed by Soward are held by the & Trust and the & Trust Management
21 | Agreement contains an arbitration provision.

22 | 80. However, the only parties to the & Trust Management Agreement are
23 | Defendants and the & Trust. None of the other respondents in the arbitration are parties to
24 | the agreement. Further, the arbitration provision in the & Trust Management Agreement
25 | governs only matters related to interpretation of the agreement, not disputes related to
26 | Defendants' conduct as investment advisers.

COMPLAINT – Page 20

YARMUTH WILSDON CALFO PLLC

THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800    F 206.516.3888

1    81.    As a result of Defendants' decision to file their arbitration claim, a valid,

2    actual and justiciable controversy exists between Plaintiffs and Defendants as to the

3    arbitrability of the claims asserted by Defendants.

4    82.    By this cause of action, Plaintiffs seek a declaration that the American

5    Arbitration Association does not have jurisdiction to hear the matter Defendants seek to

6    bring before it.

7                    **SECOND CAUSE OF ACTION**

8                            **(Fraud)**

9    83.    Plaintiffs incorporate by reference each of the allegations contained in

10   paragraphs 1 through 82.

11   84.    Defendants, while acting with scienter, made false or misleading material

12   statements and omissions to Plaintiffs about Capital Partners.  Defendants made

13   misstatements or omissions about the excessive income distributions from Capital Partners

14   from 1998 through 2002 that violated the terms of the Capital Partners Agreement; the

15   year-end market value of Capital Partners' assets; the receipt of $1,000,000 of partnership

16   assets in 2001 purportedly as a loan on terms that were disadvantageous to the partnership

17   and the limited partners and the failure of Defendants to provide Plaintiffs with

18   documentation of the terms; the authorization of a $150,000 loan to a personal friend in

19   February 2002 from partnership assets on terms that were disadvantageous to the

20   partnership and the limited partners and the failure of Defendants to document the terms;

21   and the undocumented investments in Passport, an entity partly owned by acquaintances of

22   Soward, for which Defendants failed to secure sufficient financial interest for Capital

23   Partners.

24   85.    Defendants, while acting with scienter, made false or misleading material

25   statements and omissions to Plaintiffs about Cartesian.  Defendants made misstatements or

26   omissions about the material terms of the Cartesian Partnership Agreement, stating that its

COMPLAINT – Page 21

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

1    terms were the same as the terms of the Capital Partners Agreement when, in fact, those

2    terms were not the same and served only to unjustly enrich Defendants at Bosack's

3    expense. Defendants also misrepresented and omitted to disclose that the funds they

4    contributed to Cartesian to set up their capital accounts were directly and improperly

5    withdrawn from Capital Partners.

6        86.    Plaintiffs reasonably and justifiably relied on Soward's intentionally false or

7    misleading statements and omissions.

8        87.    As a result of Defendants' conduct, Plaintiffs have been harmed and suffered

9    damages in an amount to be determined at trial. Defendants oppressively, fraudulently, and

10    with malice breached their duties and defrauded Plaintiffs by engaging in transactions that

11    were intended to, and did, enrich themselves and their friends at the expense of Plaintiffs.

12                    **THIRD CAUSE OF ACTION**

13                        **(Constructive Fraud)**

14        88.    Plaintiffs incorporate by reference each of the allegations contained in

15    paragraphs 1 through 87.

16        89.    Defendants assumed a fiduciary position in relation to Plaintiffs as

17    investment adviser, limited partner, general partner and officer. By reason of the fiduciary

18    relationship, Defendants owed Plaintiffs the highest duties of good faith, fair dealing,

19    loyalty and due care.

20        90.    Defendants, while acting with intent to deceive, made false or misleading

21    material statements and omissions to Plaintiffs about Capital Partners. Defendants made

22    misstatements or omissions about the excessive income distributions from Capital Partners

23    from 1998 through 2002 that violated the terms of the Capital Partners Agreement; the

24    year-end market value of Capital Partners' assets; the receipt of $1,000,000 of partnership

25    assets in 2001 purportedly as a loan on terms that were disadvantageous to the partnership

26    and the limited partners and the failure of Defendants to provide Plaintiffs with

COMPLAINT – Page 22

1   documentation of the terms; the authorization of a $150,000 loan to a personal friend in

2   February 2002 from partnership assets on terms that were disadvantageous to the

3   partnership and the limited partners and the failure of Defendants to document the terms;

4   and the undocumented investments in Passport, an entity partly owned by acquaintances of

5   Soward, for which Defendants failed to secure sufficient financial interest for Capital

6   Partners.

7           91.     Defendants, while acting with scienter, made false or misleading material

8   statements and omissions to Plaintiffs about Cartesian. Defendants made misstatements or

9   omissions about the material terms of the Cartesian Partnership Agreement, stating that its

10  terms were the same as the terms of the Capital Partners Agreement when, in fact, those

11  terms were not the same and served only to unjustly enrich Defendants at Bosack's

12  expense. Defendants also misrepresented and omitted to disclose that the funds they

13  contributed to Cartesian to set up their capital accounts were directly and improperly

14  withdrawn from Capital Partners.

15          92.     Plaintiffs reasonably and justifiably relied on Soward's intentionally false or

16  misleading statements and omissions.

17          93.     As a result of Defendants' conduct, Plaintiffs have been harmed and suffered

18  damages in an amount to be determined at trial. Defendants oppressively, fraudulently, and

19  with malice breached their duties and defrauded Plaintiffs by engaging in transactions that

20  were intended to, and did, enrich themselves and their friends at the expense of Plaintiffs.

21                          **FOURTH CAUSE OF ACTION**

22                          **(Breach of Fiduciary Duty)**

23          94.     Plaintiffs incorporate by reference each of the allegations contained in

24  paragraphs 1 through 93.

25          95.     Defendants assumed a fiduciary position in relation to Plaintiffs as

26  investment adviser, limited partner, general partner and officer. By reason of the fiduciary

COMPLAINT – Page 23

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1    relationship, Defendants owed Plaintiffs the highest duties of good faith, fair dealing,

2    loyalty and due care.

3        96.    Defendants breached their fiduciary duties.

4        97.    As a result of Defendants' conduct, Plaintiffs have been harmed and suffered

5    damages in an amount to be determined at trial. Defendants oppressively, fraudulently, and

6    with malice breached their duties and defrauded Plaintiffs by engaging in transactions that

7    were intended to, and did, enrich themselves and their friends at the expense of Plaintiffs.

8    **FIFTH CAUSE OF ACTION**

9    **(Negligent Misrepresentation)**

10        98.    Plaintiffs incorporate by reference each of the allegations contained in

11    paragraphs 1 through 97.

12        99.    Defendants, without reasonable grounds for believing their truth and while

13    acting with the intent to induce Plaintiffs' reliance, made false or misleading material

14    statements and omissions to Plaintiffs about Capital Partners. Defendants made

15    misstatements or omissions about the excessive income distributions from 1998 through

16    2002 that violated the terms of the Capital Partners Agreement; the year-end market value

17    of the partnership's assets; the receipt of $1,000,000 of partnership assets in 2001

18    purportedly as a loan on terms that were disadvantageous to the partnership and the limited

19    partners and the failure of Defendants to provide to Plaintiffs documentation of the terms of

20    the loan; the authorization of a $150,000 loan to a personal friend in February 2002 from

21    partnership assets on terms that were disadvantageous to the partnership and the limited

22    partners and the failure of Defendants to document the terms; and the undocumented

23    investments in Passport, an entity partly owned by acquaintances of Soward, for which

24    Defendants failed to secure sufficient financial interest for Capital Partners.

25        100.    Defendants, without reasonable grounds for believing their truth and while

26    acting with intent to induce Plaintiffs' reliance, made false or misleading material

COMPLAINT – Page 24

YARMUTH WILSDON CALFO PLLC

THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800    F 206.516.3888

statements and omissions to Plaintiffs about Cartesian. Defendants made misstatements or omissions about the material terms of the Cartesian Partnership Agreement, stating that its terms were the same as the terms of the Capital Partners Agreement when, in fact, those terms were not the same and served only to unjustly enrich Defendants at Bosack's expense. Defendants also misrepresented and omitted to disclose that the funds they contributed to Cartesian to set up their capital accounts were directly and improperly withdrawn from Capital Partners.

101.   Plaintiffs, ignorant of the truth, reasonably and justifiably relied on Defendants' false or misleading material statements or omissions.

102.   As a result of Defendants' conduct, Plaintiffs have been harmed and suffered damages in an amount to be determined at trial. Defendants oppressively, fraudulently, and with malice breached their duties and defrauded Plaintiffs by engaging in transactions that were intended to, and did, enrich themselves and their friends at the expense of Plaintiffs.

### SIXTH CAUSE OF ACTION

### (Breach of Contract)

103.   Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 102.

104.   A valid management agreement for The & Trust, executed in or about January 2001, existed between Defendants and the & Trust.

105.   Plaintiffs performed their obligations under the management agreement.

106.   Defendants materially breached the management agreement by, among other actions, failing to deduct Soward's salary from & Capital, Inc. from his base management fee in 2001 and 2002. In addition, Defendants engaged in conduct separate and apart from the performance of the obligations under the agreement without good faith and fair dealing and for the purpose of depriving Plaintiffs of rights and benefits under the management agreement.

COMPLAINT – Page 25

107.   As a result of Defendants' conduct, Plaintiffs have been harmed and suffered damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### (Breach of Contract)

108.   Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 107.

109.   A valid contract exists whereby Defendants promised to reimburse & Capital, Inc. for paying the salaries of Soward's secretary and of his assistant.

110.   Plaintiffs and & Capital, Inc. performed their obligations under the contract.

111.   Defendants materially breached the contract by refusing to reimburse & Capital, Inc. for its payment of approximately $150,000 in salary to Soward's secretary and to his assistant. In addition, Defendants engaged in conduct separate and apart from the performance of the obligations under the agreement without good faith and fair dealing and for the purpose of depriving Plaintiffs of rights and benefits under the agreement.

112.   As a result of Defendants' conduct, Plaintiffs have been harmed and suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### (Breach of Contract)

113.   Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 112.

114.   The Capital Partners Agreement, which was executed on or about January 1, 1995 and existed between Soward and the Bosack and Lerner Trusts, is a valid limited partnership agreement.

115.   Plaintiffs performed their obligations under the Capital Partners Agreement.

116.   Soward materially breached the Capital Partners Agreement by taking income distributions from 1998 through 2002 in excess of the amount allowed under the

COMPLAINT – Page 26

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

1    agreement; by causing Capital Partners to extend him a $1,000,000 loan in 2001 and to

2    make an unauthorized $150,000 loan to a friend in February 2002; and by making an

3    investment in Passport that was contrary to the specific directions of a limited partner not to

4    make such an investment.  Soward also engaged in conduct separate and apart from the

5    performance of the obligations under the agreement without good faith and fair dealing for

6    the purpose of depriving Plaintiffs of rights and benefits under the agreement.

7          117.    As a result of Defendants' conduct, Plaintiffs have been harmed and suffered

8    damages in an amount to be determined at trial.

9                            **NINTH CAUSE OF ACTION**

10                              **(Breach of Contract)**

11          118.    Plaintiffs incorporate by reference each of the allegations contained in

12    paragraphs 1 through 117.

13          119.    To the extent the court finds the existence of a valid secured promissory note

14    and/or pledge agreement issued by Soward to Capital Partners (or any other binding loan

15    agreement between Soward and Capital Partners), Soward is in material breach of those

16    agreements.

17          120.    Soward has not fulfilled his promise to pay interest each quarter and has paid

18    no interest in 2004.  Accordingly, he is in default on the note and has materially breached

19    any agreements that may exist.

20          121.    As a result of Defendants' conduct, Plaintiffs have been harmed and suffered

21    damages in an amount to be determined at trial.

22                            **TENTH CAUSE OF ACTION**

23                                 **(Conversion)**

24          122.    Plaintiffs incorporate by reference each of the allegations contained in

25    paragraphs 1 through 121.

26

COMPLAINT – Page 27

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

123.    Plaintiffs were the owner of personal property, namely assets in five investment entities.

124.    Defendants interfered with Plaintiffs' ownership of this property by taking the property from Plaintiffs' possession.

125.    Defendants' interference was knowing and intentional.

126.    Plaintiffs demanded return of the property.

127.    As a result of Defendants' conduct, Plaintiffs have been harmed and suffered damages in an amount to be determined at trial.  Defendants oppressively, fraudulently, and with malice breached their duties and defrauded Plaintiffs by engaging in transactions that were intended to, and did, enrich themselves and their friends at the expense of Plaintiffs.

## REQUEST FOR JURY TRIAL

Plaintiffs request trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs request entry of judgment against defendant as follows:

1.  For compensatory damages to plaintiffs in an amount to be determined at trial;

2.  For a declaratory judgment that the American Arbitration Association does not have jurisdiction to hear the matter Defendants seek to bring before it;

3.  For the establishment of a constructive trust;

4.  For the forfeiture of all salary and management fees to which Defendants claim to be entitled;

5.  For the forfeiture of all partnership capital account balances in which Defendants claim to have an interest;

6.  For restitution according to proof;

7.  For costs of suit, including reasonable attorneys' fees to the extent permitted by law;

COMPLAINT – Page 28

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

8.  For interest on all damage amounts; and

9.  For such other and further relief as the Court deems just and proper.

Dated: July 2<sup>7</sup> 2004

YARMUTH WILSDON CALFO PLLC

By: _____
     Richard C. Yarmuth

WSBA No. 4990
The IDX Tower
925 4th Avenue, Suite 2500
Seattle, WA 98104
Telephone: (206) 516-3800
Fax: (206) 516-3888
Email: yarmuth@yarmuth.com

and

Leo P. Cunningham
Kyle A. Wombolt
WILSON SONSINI GOODRICH &
ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Plaintiffs LEONARD
BOSACK and SANDY LERNER

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888