# Exhibit H

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

9

10    LEONARD BOSACK, individually and as
      Trustee on behalf of The & Trust and as       Case No.  CV-4-1664-TSZ
11    Trustee on behalf of the Leonard Bosack
      Trust; SANDY LERNER, individually and
12    as Trustee on behalf of the Sandra K.
      Lerner Trust,                                 **MOTION TO STAY PENDING
13                                                  ARBITRATION, OR IN THE
                   Plaintiffs,                      ALTERNATIVE TO DISMISS OR
14                                                  TRANSFER FOR IMPROPER VENUE
             v.                                     PURSUANT TO 28 USC §1406(a), OR TO
15                                                  TRANSFER VENUE PURSUANT TO 28
      DAVID C. SOWARD and &                         USC §1404(a)**
16    MANAGEMENT COMPANY,
                                                    NOTE ON MOTION CALENDAR:
17                 Defendants.                      September 10, 2004

18          PLEASE TAKE NOTICE THAT on Friday, September 10, 2004, Defendants David C.

19    Soward and & Management Company (collectively "Defendants") will and hereby do move the

20    above-referenced court for an order staying the action until the resolution of arbitration currently

21    pending in San Francisco, California.  In the alternative Defendants will and hereby do move the

22    court for an order dismissing this action pursuant to 28 USC §1406(c), or transferring this action

23    to the Northern District of California pursuant to 28 USC §1406(a), or 28 USC §1404(a).

24          This motion is made on the grounds that (1) this controversy is subject to an arbitration

25    currently pending in San Francisco, California; (2) venue in this action is improper; and (3) even

26    if venue is proper, the action should be transferred to the District in the interest of justice.  This

1  motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the

2  Declarations of David C. Soward and J. Daniel Sharp filed and served herewith, and upon the

3  papers, records and pleadings on file herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

6         This action arises out of Plaintiffs' abrupt and unilateral termination in November 2003 of

7  a set of contracts between themselves and Defendant David Soward of San Francisco, California.

8  The contractual relationship had lasted over 10 years, during which Soward had managed

9  Plaintiffs' assets and generated returns of over $220 million.   At the time of termination,

10  Plaintiffs Leonard Bosack ("Bosack") and Sandy Lerner ("Lerner") owed Soward over $1.6

11  million in fee-based compensation under one of the contracts ("the Management Agreement"),

12  and Soward held partnership interests with Bosack and Lerner worth at least another million

13  dollars.  Bosack and Lerner have refused to pay Soward, and appear intent on making it

14  burdensome and expensive for Soward to recover what he is owed.

15         This will not be a fair fight.  Bosack and Lerner (husband and wife) are among the

16  wealthiest people in the nation, with hundreds of millions of dollars at their disposal.  Although

17  Lerner lives in Virginia and Bosack in Redmond, Washington, they hired one of the largest law

18  firms in the San Francisco Bay Area to terminate Soward's contracts and cut off his partnership

19  interests.  Their tactics appear calculated to besmirch Soward's reputation and force him to

20  endure delay and unnecessary expense in order to vindicate his rights.  One such tactic is the

21  filing of this lawsuit, in contravention of the arbitration clause in the Management Agreement.

22         In February 2004, Soward initiated AAA arbitration in San Francisco.  The Management

23  Agreement, which was signed by Bosack and Lerner, contains an unambiguous arbitration clause

24  providing that "arbitration shall be conducted in San Francisco, California." It states that the

25  arbitrators shall "make an award based on the equities of the dispute," and thus empowers the

26  arbitrators to hear all matters either party may wish to raise as having an equitable impact on their

Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 2 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

1   rights and obligations.  Accordingly, Soward seeks an order staying this action pending the

2   arbitration.

3          The tactic of forcing Soward into litigation imposes a double burden.  Not only is Soward

4   being required to litigate in contravention of an arbitration clause, but he is being required to

5   litigate over 800 miles from his home, with the additional expenses of inter-state travel and hiring

6   a second set of lawyers.  Plaintiffs' ulterior motives for filing this action in Washington (as

7   opposed to submitting to the pending arbitration or filing an action in a court in San Francisco)

8   are made clear by the following facts:

9          ▪   The Management Agreement contains an arbitration provision stating that

10             arbitration of controversies "shall take place in San Francisco, California," and an
               arbitration is already pending in San Francisco.  Declaration of David C. Soward

11             ("Soward Dec.") ¶¶ 9(A), 24; *id.* Exhs. 1, 4.

12         ▪   The Management Agreement contains a choice of law provision stating that "This
               Agreement shall be governed by California law." *Id.* Exh. 1.

13         ▪   The & Trust was formed under the laws of California. *Id.* ¶ 9(A).

14         ▪   In terminating their contracts with Soward, Plaintiffs sent a draft complaint to be

15             filed in California Superior Court in San Francisco. *Id.* Exh. 2.

16         ▪   Plaintiffs' November 2003 draft complaint states that the San Francisco Superior
               Court "has jurisdiction over the parties and subject matter of this lawsuit because

17             the defendant resides in California and many of the acts constituting the tortious
               conduct arose or were carried out in California." *Id.* Exh. 2.

18         ▪   Plaintiffs' draft complaint states, "Venue is proper in San Francisco. . . because

19             Defendants' acts, and the failures to act, upon which each cause of action is based
               occurred in San Francisco County and Defendant & Management Company's

20             principal place of business is situated in San Francisco County." *Id.* Exh. 2.

21         ▪   Plaintiffs' law firm, Wilson Sonsini Goodrich & Rosati, has offices in San
               Francisco and the individual attorneys are in the firm's Palo Alto, California,

22             headquarters, less than 35 miles from the state and federal courts in San Francisco.
               Sharp Dec. ¶¶ 3, 16.

23         ▪   Soward has lived in San Francisco for almost all his life, and continuously since

24             January 1995.  Soward Dec. ¶¶ 2, 8.

25         ▪   Soward entered into the Management Agreement in San Francisco, and entered his
               other agreements with Plaintiffs in San Francisco. *Id.* ¶¶ 6-8, 25(A).

26         ▪   Soward performed the Management Agreement, and all his other agreements with

1   Plaintiffs, in California, operating and controlling the investment entities from his San Francisco office until Plaintiffs unilaterally terminated the contracts in
2   November 2003. All relevant pre-litigation conduct by Soward occurred in San Francisco. *Id.* ¶¶ 8, 10-11, 25.
3
4   Plaintiffs themselves regard California as the locus of their investments. In an interview in June
5   2003, Plaintiff Lerner put it this way:
6           <u>My money is in California somewhere in a big pile</u> and I pay
            someone to keep sweeping it up and doing things to it . . . I don't
7           really know much about it. It simultaneously frightens me and
            doesn't interest me. I made a solemn vow that my money wasn't
8           going to run my life and be my life and, to this day, I can't tell you
            where it is or how much I have.
9
10  Sharp Dec. Exh. M (emphasis added). Plaintiffs' choice of venue is an attorney-contrived tactic
11  to increase the burden on Soward. If the Court declines to stay this action pending arbitration,
12  Defendants request that the Court dismiss this action on the ground or improper venue or
13  alternatively transfer this action to the District Court for the Northern District of California
14  pursuant to 28 U.S.C. § 1406(a) or § 1404(a).

15                          **II.    FACTS**

16      **A.    Bosack and Lerner Sought Out Soward to Manage Their Substantial Assets**

17          Bosack and Lerner founded Cisco Systems, Inc. ("Cisco") in Palo Alto, California in
18  1984. Six years later, after Cisco went public, they severed their ties with Cisco and sold their
19  Cisco stock, realizing a gain of over $170 million. Soward Dec. ¶¶ 3-6. Before cashing in their
20  stock, Plaintiffs sought advice on minimizing their taxes from KPMG Peat Marwick ("KPMG")
21  in San Francisco, California, where Soward worked as an international tax accountant. *Id.* ¶ 4.
22          In August 1992, Bosack and Lerner approached Soward about managing their assets. *Id.*
23  ¶¶ 5-6. Bosack and Lerner were aware that Soward had no prior experience as an investment
24  professional, and in fact were interested in hiring him because of his lack of affiliation with a
25  bank or financial institution. *Id.* In their discussions with Soward, Bosack and Lerner were
26  represented by attorneys at Latham and Watkins, in San Francisco, and received professional

1    advice from Cambridge Associates in Boston, Massachusetts. *Id.* ¶ 7.

2         Eventually, the parties agreed on terms, and Soward gave up his career as an accountant at

3    KPMG in order to devote his professional life to Bosack and Lerner.[1]  The parties executed

4    written agreements setting forth the terms of Soward's engagement.  Soward Dec. ¶ 9.  Over time,

5    the parties modified and renewed their agreements, as set forth below.

6    **B.    Soward Managed Plaintiffs' Assets for Eleven Years with Great Success**

7         Over the next eleven years, Soward managed Plaintiffs' assets and achieved excellent

8    results, generating returns of approximately thirteen percent (13%) per annum, for an overall

9    return of over $220 million.  Soward Dec. ¶ 12.  Plaintiffs' assets were held in four different

10   investment vehicles:

11       The & Trust:  The majority of Plaintiffs' assets are held in "The & Trust," a trust formed

12   under California law.  Soward Dec. ¶ 9(A).  Soward's engagement and compensation are

13   memorialized in the Management Agreement.  *Id.* Exh. 1.

14       &Capital Partners L.P.:  Plaintiffs placed some of their assets in a limited partnership

15   called & Capital Partners, L.P. Soward Dec. ¶ 9(B).  Soward acted as general partner and made

16   investment decisions.  As compensation, Soward was assigned a partnership interest, receiving

17   10% of the net return of the partnership (and being responsible for 10% of any loss).  *Id.*

18       Cartesian Partners:  In 1999, Bosack and Soward created a new limited partnership as a

19   vehicle for investments Bosack wished to make separate and apart from Lerner, upon terms

20   similar to & Capital Partners, L.P. (*i.e.,* assigning Soward a 10% partnership interest in lieu of

21   direct compensation).  Soward Dec. ¶ 9(C).  Soward participated as a principal, contributing 5%

22   of the initial capital, approximately $525,205.  *Id.*

---

23   [1] Before cashing in their Cisco stock, Bosack and Lerner moved to Washington, which has
24   no personal income tax.  Soward Dec. ¶ 8.  When they hired Soward, they required that he
     relocate to Washington temporarily.  *Id.*  Soward rented an apartment in Bellevue from 1992
25   through 1994.  *Id.*  In January 1995, he moved back to California and has lived in San Francisco
     ever since.  *Id.*  All of Soward's activities in managing Plaintiffs' assets (other than out-of-town
26   business trips) have been undertaken from San Francisco since January 1995.  *Id.* ¶¶ 10, 25.

1    The Foundation:  Since he was hired in 1992, Soward has also managed the assets of a

2    charitable foundation set up by Bosack and Lerner called the Leonard X. Bosack and Bette M.

3    Kruger Foundation ("the Foundation").  Soward Dec. ¶ 9(D).  Soward was paid a management

4    fee based on the net investable assets of the Foundation as of the beginning of each year.  *Id.*

5    **C.    Soward Approached Plaintiffs to Extend the Management Agreement**

6        The Management Agreement covering the majority of Plaintiffs' assets was for a term

7    ending December 31, 2003.  Soward Dec. Exh. 1.  In late 2002, Soward approached Bosack and

8    Lerner about extending his contract, and suggested that his compensation be increased based on

9    the excellent returns realized under his management.  Soward Dec. ¶ 14.  Bosack and Lerner

10   indicated that they wanted to have an outside accounting firm verify the historic investment return

11   achieved by Soward.  *Id.*  They hired the accounting firm of Clark Nuber to verify the returns, and

12   Soward fully cooperated with the accountants.  *Id.*

13       Months passed with no action from Bosack and Lerner.  Soward Dec. ¶ 15.  During this

14   time, Soward was not paid the compensation he was owed under the Management Agreement—

15   an amount in excess of $1.6 million.  *Id.* ¶ 22.  Eventually, on November 21, 2003, Soward called

16   Bosack and told him that if Bosack and Lerner did not want to renew the Management

17   Agreement, Soward would be helpful and cooperative in transitioning all of his responsibilities to

18   a new manager.  *Id.* ¶ 16.  Bosack responded that he had no plans on replacing Soward, but that

19   he was waiting for the results of the Clark Nuber audit before discussing the renewal of the

20   Management Agreement.  *Id.*

21   **D.    Plaintiffs Hired Lawyers to Terminate the Management Agreement, Oust
            Soward from the Partnerships, and Withhold Payment of His Compensation**
22
         On Monday, November 24, 2003—just three days after Soward's telephone call to
23
     Bosack—the law firm of Wilson, Sonsini, Goodrich & Rosati (in Palo Alto, California) sent a
24
     letter to Soward's attorney (in San Francisco) stating, "our clients have discontinued Mr.
25
     Soward's engagement as their investment manager effective immediately, removed him as the
26

1   general partner for the limited partnerships, and concluded his employment with & Capital, Inc."

2   Soward Dec. ¶ 19, Exh. 2 ("the Termination Letter"). The Termination Letter included a draft

3   complaint, prepared for filing in San Francisco Superior Court, accusing Soward for the first time

4   of various bad acts, including fraud, conversion, negligent misrepresentation, breach of fiduciary

5   duty, violation of California Corporations Code § 25235 and California Civil Code § 3372. *Id.*

6         Soward was flabbergasted by the actions and accusations leveled by Wilson, Sonsini.

7   Soward Dec. ¶ 20, Exh. 3. However, Bosack and Lerner would not engage in any discussion with

8   Soward, and their lawyers at Wilson Sonsini appeared intent on litigating, as they failed to offer

9   any accounting for Mr. Soward's partnership interests, or to acknowledge his right to

10  compensation under the Management Agreement. *Id.* ¶ 21, 23; Sharp Dec. ¶ 5-7, 9 Exhs. B-G.

11        **E.    Soward Initiated Arbitration in San Francisco**

12        On February 3, 2004, Soward filed a Statement of Claim with the AAA in San Francisco,

13  pursuant to paragraph 9 of the Management Agreement. Sharp Dec. ¶ 8; Soward Dec. Exh. 4. In

14  the Statement of Claim, Soward seeks the compensation he is owed under the Management

15  Agreement for The & Trust and also for the Foundation, as well as amounts due under the related

16  partnerships agreements, *i.e.* & Capital Partners and Cartesian Partners. *Id.* Exh. 4.

17        **F.    Bosack and Lerner Resisted Arbitration and Filed Suit in Seattle**

18        Bosack and Lerner filed a response to Soward's arbitration claim, purporting to dispute

19  that the arbitration clause in the Management Agreement applies to any part of Soward's claims.

20  Sharp Dec. ¶ 11, Exh. H. However, they also purported to "reserve . . . their right to file any

21  counterclaims in the future." *Id.*, Exh. J. The AAA has initiated the process of arbitrator

22  selection. *Id.* Exh. K.

23        Five months after Soward initiated arbitration, Plaintiffs filed their complaint in this Court

24  in Seattle, over 800 miles from Soward and his attorneys, and similarly distant from Wilson

25  Sonsini. Sharp Dec. ¶ 16. Plaintiffs' Complaint concerns the same subject as Soward's

26  arbitration claim, alleging, for example, that Soward improperly calculated his compensation

1    under the Management Agreement.  Complaint ¶¶ 70-73.

2          Notably, for purposes of venue, all of the alleged misconduct by Soward that is set forth in

3    the Complaint occurred in San Francisco, California.  Soward Dec. ¶ 25.

4    **III.    THIS ACTION SHOULD BE STAYED UNTIL THE COMPLETION OF ARBITRATION**

5

6          **A.    A Stay Is Mandatory As to All Claims that Fall Within the Scope of the Arbitration Clause, and Discretionary as to All Other Claims**

7          Under the Federal Arbitration Act, a written arbitration provision in a contract "shall be

8    valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

9    revocation of any contract." 9 U.S.C. § 2.  Any doubts concerning the scope of arbitrable issues

10   is to be resolved in favor of arbitration.   *Moses H. Cone Memorial Hosp. v. Mercury Const.*

11   *Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983).

12          If a suit is brought in federal court upon "any issue referable to arbitration under an

13   agreement in writing for such arbitration . . . the court . . . *shall* on application of one of the

14   parties stay the trial of the action until such arbitration has been had in accordance with the terms

15   of the agreement." 9 U.S.C. § 3 (emphasis added).  The language of the act is mandatory.

16   *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 719 (9th Cir. 1999) ("[T]he FAA leaves no place for

17   the exercise of discretion by a district court, but instead mandates that district courts direct the

18   parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

19          Even if the action involves claims that fall outside the scope of the arbitration provision, a

20   stay of the entire action should be ordered for reasons of economy and efficiency in the court's

21   discretion. *Bischoff v. DirecTV, Inc,* 180 F.Supp.2d 1097, 1114 (C.D. Cal. 2002) ("a stay of all

22   issues, and as to all parties, is warranted when questions of fact common to all would be involved

23   in both the litigation and arbitration") (citations omitted).

24

25

26

Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 8 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

1.    **A Stay Is Mandatory Here Because All the Claims at Issue Are Arbitrable Under The Management Agreement**

a.    **The Arbitration Clause Is Broad**

The standard for demonstrating arbitrability is not high. *Simula,* 175 F.3d at 719. The first step in the analysis is to determine the breadth of the arbitration agreement. *Id.* If the arbitration agreement is "broad" in scope, arbitration is required if Plaintiffs' factual allegations "touch matters" covered by the contract containing the arbitration provision. *Id.* All doubts are to be resolved in favor of arbitrability. *Id.*

Broad arbitration clauses are characterized by phrases such as "arising out of or relating to this agreement," *Mediterranean Enterprises, Inc. v. Ssangyong,* 708 F.2d 1458, 1464 (9th Cir. 1983); "[a]ll disputes arising in connection with this Agreement," *Simula,* 175 F.3d at 720; "any and all disputes arising under the arrangements contemplated hereunder," *Republic of Nicaragua v. Standard Fruit Co.,* 937 F.2d 469, 479 (9th Cir. 1991),and "concerning the validity, interpretation, performance, termination and/or breach of this Agreement," *Ever-Gotesco Resources v. PriceSmart, Inc.,* 192 F.Supp.2d 1040, 1042 (S.D. Cal. 2002). Broad arbitration clauses cover claims independent or collateral to the contract. *Homestake Lead Co.,* 228 F.Supp.2d at 1142.

The arbitration provision in the Management Agreement states in relevant part:

> 9. <u>Arbitration</u>. In the event of <u>any dispute between the parties concerning any provision in this Agreement</u>, it shall be resolved by arbitration under the rules of the American Arbitration Association. The arbitration shall be conducted in San Francisco, California, or in such other place as the parties may mutually agree. <u>The arbitrator(s) shall have the authority to make an award based on the equities of the dispute</u>, and such award may include attorneys' fees and costs to the party whom the arbitrator(s) determines to be equitably entitled to such attorneys' fees as the party primarily prevailing in such dispute.

Soward Dec., Exh. 1, § 9 (emphasis added). This is a broad arbitration clause. The phrase "concerning any provision in this Agreement" is at least as broad as the phrase "arising in connection with," and "[e]very court that has construed the phrase 'arising in connection with' in

Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 9 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

1    an arbitration clause has interpreted that language broadly."[2] *Simula,* 175 F.3d at 721.

2         The broad scope of the arbitration clause is further expanded by the explicit grant of

3    equitable authority to the arbitrators "<u>to make an award based on the equities of the dispute</u>." The

4    power of the arbitrators to consider all the "equities" demonstrates an intent to have all claims

5    between the parties decided by arbitration. When a court is granted jurisdiction in equity:

> 6    It may act so as to adjust and reconcile competing claims and so as to accord full justice to all the real parties in interest; if necessary, persons not originally connected with the litigation may be brought before the court so that their rights in the subject matter may be determined and enforced. In addition, the court may go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances. Only in that way can equity do complete rather than truncated justice.

11    *Porter v. Warner Holding Co.,* 328 U.S. 395, 398 (1946); *see also Reebok Int'l v. Marnatech*

12    *Enters.,* 970 F.2d 552, 559-60 (9th Cir. 1992) (discussing equitable powers); *see also Crouser v.*

13    *Boice,* 51 Cal. App.2d 198, 2003 (1942) ("equity having taken jurisdiction over a portion of a

14    particular controversy it will proceed to decide the whole issue and award complete relief").[3] By

15    specifically conferring equity jurisdiction on the arbitrators in the Management Agreement, the

16    parties indicated a desire to have all issues between the parties decided by arbitration in San

17    Francisco, California.

18         Plaintiffs in their Complaint concede that a valid arbitration exists, but attempt to "plead

19    around" the breadth and equity jurisdiction conferred by the clause. Plaintiffs allege that "the

20    arbitration provision in the & Trust Management Agreement governs only matters related to

21    interpretation of the agreement, not disputes related to Defendants' conduct as investment

22    advisers." Complaint ¶ 80. However, nothing in the Management Agreement limits the

23

24       [2] "Concern" is a broad term that means "to pertain or relate to; be of interest or importance to; affect." American Heritage Dictionary (1981). "Connection" means "an association, alliance, or relation" *Id.*

25       [3] The Management Agreement is governed by California Law. Management Agreement (Soward Dec. Exh. 1) § 12 at p. 6.

26

Motion to Stay or Dismiss              - 10 -         Short Cressman & Burgess PLLC
Case No. CV-4-1664-TSZ                        999 Third Avenue, Suite 3000
                                         Seattle, Washington 98104-4083
                                       (206) 682-3353

1    arbitrators to simply construing the contract.  They are empowered to hear any dispute

2    "concerning" any provision of the agreement, and to make an award based on "the equities of the

3    dispute."  Even if there were a doubt as to the breadth of the arbitration clause, "Any doubts

4    concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H.*

5    *Cone*, 460 U.S. at 24-25.

6              **b.**     **Plaintiffs' Complaint Alleges Claims "Concerning" the**

7                    **Management Agreement and "the Equities" of the Parties'**
                **Disputes**

8          Because the Management Agreement contains a broad arbitration clause, Plaintiffs' claims

9    are arbitrable if they "touch matters" covered by the Management Agreement. *Simula*, 175 F. 3d

10    at 721.  In *Simula*, a broad arbitration clause was included in a set of agreements licensing the

11    technology for certain automotive components. *Id.* at 718-19.  Reviewing numerous Ninth

12    Circuit decisions on arbitrability, the court in *Simula* held that <u>all</u> of the plaintiffs claims

13    (including antitrust claims, Lanham Act claims, defamation claims and misappropriation claims

14    based on conduct that occurred prior to the execution of the relevant agreements) were subject to

15    the arbitration provision even though they did not directly relate to the performance of the

16    agreements. *Id.* at 721-25.

17          Here, the fundamental nature of the parties' relationship was Soward's management of

18    Plaintiffs' assets.  Plaintiffs allege that they retained Soward to "provide financial advice and

19    manage their assets," and that by agreeing to do so he "entered into a fiduciary relationship."

20    Complaint ¶ 10.  This relationship was partly memorialized in the Management Agreement for

21    The & Trust, which contains the majority of Plaintiffs' assets.  Soward Dec. ¶ 9(A), Exh. 1.

22    Plaintiffs' first, third, fourth, sixth, seventh, and tenth causes of action directly involve the

23    Management Agreement.  Complaint ¶¶ 74-82, 88-99, 94-97, 103-112, 122-127.  Thus, the

24    Management Agreement is at the very core of these claims and they must be arbitrated. *Simula*,

25    175 F.3d at 721; 9 USC § 3.

26          Plaintiffs' remaining claims concerning the & Capital and Cartesian partnerships are

Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 11 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

clearly within "the equities of the dispute" between the parties under the Management

Agreement. The remaining claims overlap with matters in the Management Agreement in the

following ways:

- The Complaint alleges a single, unitary relationship between Soward and Plaintiffs as "investment adviser" and "fiduciary." Complaint 10-11.

- Plaintiffs sent a single, unitary letter terminating their relationship with Soward as to all investment vehicles. Soward Dec. Exh. 2. The termination was prompted by Soward's request to extend the Management Agreement. *Id.* ¶ 14.

- Plaintiffs justified their termination of their relationship with Soward based on the same alleged "misconduct" by Soward, which Soward disputes. Soward Dec. Exh. 2. The propriety of the termination is an arbitrable dispute, and it is the same dispute under all the investment vehicles.[4]

- Soward's compensation from the investment vehicles is interrelated. In order to determine the fee owed to Soward under Paragraph 4 of the Management Agreement, it is necessary to determine the proper allocation of Soward's & Capital, Inc. salary between the Trust and the other investment vehicles. Soward Dec. ¶ 9(A).

All of the claims in Plaintiffs' complaint "touch matters" that are also covered by the

Management Agreement. *Simula,* 175 F.3d at 721; *see also Ever-Gotesco Resources,* 192

F.Supp.2d at 1043 ("Regardless of the parties' labeling of this dispute's nature, this Court finds

that the *entire dispute* 'touches matters' covered by the parties' Agreement and corresponding

arbitration provision.") Therefore, all of the claims are arbitrable.

### 2. Bosack and Lerner Are Signatories to the Arbitration Agreement and Are Bound by It

Plaintiffs allege that they are "not parties" to the Management Agreement, apparently

because the signature blocks contain the word "Trustee" next to their names. Complaint ¶ 80.

This argument is disingenuous and wrong as a matter of law.

---

[4] The Management Agreement could only be terminated for (1) gross negligence, (2) conviction of a felony, and (3) conviction of any other crime involving moral turpitude. (Soward Dec. Exh. 1.) Neither applicable partnership law nor the written agreements for & Capital Partners and Cartesian Partners allow Plaintiffs to expel Soward from the partnership at their unfettered discretion. *See* Soward Dec. Exh. 4(C) and 4(D); Cal. Corp. Code § 16601.

Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 12 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

1    Bosack and Lerner are parties to the Management Agreement, even if they signed it in

2   their capacity as trustees of their own trust.  They are properly named as parties to litigation over

3   the trust obligations.  *See* Fed. R. Civ. P. 17(a); *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-

4   64 (1980) (trustee is real party in interest for purposes of both pleading and jurisdiction.)  There is

5   no authority suggesting that a trustee can sue in court (as Plaintiffs are doing here) but cannot be

6   compelled to arbitrate.[5]

7    Additionally, signatories to a contract are bound by the arbitration provision, even if they

8   are not technically "parties" to the contract (as Bosack and Lerner are here).  *Boston Telecomm.*

9   *Group v. Deloitte Touch Tohmatsu*, 278 F.Supp.2d 1041, 1048 (N.D. Cal. 2003).  The arbitration

10   provision at issue in *Boston Telecomm.* was included in a partnership agreement.  The defendant

11   was not a party to the agreement but was the parent company of a party.  The court found that,

12   notwithstanding the fact that the defendant was not a party, it was both benefited and burdened by

13   the arbitration provision in the agreement because the agreement had been signed by a person

14   who was a director of the subsidiary, who was a party, as well as the defendant, who was not.  *See*

15   *also Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2nd Cir. 1995); *DuPont de*

16   *Nemours & Co. V. Rhone Poulene Fiber & Rsin Intermediaries, S.A.S.*, 269 F.3d 187, 195 (3rd

17   Cir. 2001).

18    Finally, even if they had not signed the Management Agreement, Bosack and Lerner

19   would be bound by the arbitration provision because they agreed that the arbitrators would be

20   empowered to "make an award based on the equities of the dispute."  Soward Dec, Exh. 1 at p. 4.

21   Equitable jurisdiction allows the tribunal to resolve the entire dispute, even if it involves parties

22   who were not originally named in the proceedings.  *See Porter v. Warner Holding Co.*, 328 U.S.

23   at 398.

24   _____

[5] Under California law, trustees are personally liable for the obligations of the trust where
25   they are personally at fault.  Cal. Prob. Code § 18001; *Haskett v. Villas at Desert Falls*, 90
Cal.App.4th 864, 877-888 (2001).  The arbitration provision must be interpreted in light of this
26   applicable law.  *See Empire Fire & Marine Ins. Co. v. Bell* 55 Cal.App.4th 1410, 1415 (1997).

**B.      The Court Should Stay This Action Because the Scope of the Arbitration Provision Should be Determined by the Arbitrator**

Soward believes that all of Plaintiffs' claims are arbitrable; Plaintiffs undoubtedly will argue that at least some of their claims are outside the scope of the arbitration clause in the Management Agreement. It would be appropriate for the Court to grant a stay, leaving the entire controversy to the arbitrators, <u>including the question of what claims are arbitrable</u> (*i.e.*, the first cause of action for declaratory relief in Plaintiffs' complaint).

The arbitration clause confers power on the arbitrator to resolve "any dispute between the parties <u>concerning any provision in this agreement</u>." Soward Dec., Exh. 1. The arbitration clause is a "provision in this agreement." The use of the phrase "concerning any provision in the agreement" has been held to give the arbitrator the power to decide the scope of the arbitration provision. *United Brotherhood of Carpenters v. Desert Palace, Inc.*, 94 F.3d 1308, 1310 (9th Cir. 1996) (provision requiring all disputes "regarding the interpretation or application of the provisions . . . or a violation of the terms and provisions of the Agreement" required that the arbitrator, not the court, decide question of arbitrability); *Brotherhood of Teamsters v. Interstate Distributor Co.*, 832 F.2d 507, 510-511 (9th Cir. 1987) (clause that covered "any grievance or controversy" gave arbitrator authority to resolve arbitrability issue).

In addition, the arbitration clause incorporates the rules of the AAA, which provide that "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Rule R-8(a) (copy at Sharp Dec. Exh. L). The parties are bound by this rule. *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F. 3d 1010, 1012 (9th Cir. 2004) (reference to AAA rules in agreement incorporated rules, including rule recognizing the arbitrator's discretion to interpret the scope of their authority). Thus, the parties are deemed to have intended to give the arbitrator the authority to determine arbitrability in the first instance. *Id.*

Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 14 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

**C.    Even If Some Claims Are Not Arbitrable, The Court Should Stay the Entire Proceeding for Reasons of Economy and Efficiency**

As discussed in section IIIA, the court must stay Plaintiffs' claims that are within the scope of the arbitration clause. If the court finds that some of Plaintiffs' claims are not within the scope of the arbitration agreement, it has the discretion to stay the entire proceeding for reasons of economy and efficiency. *U.S. v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985) (staying non-arbitrable third party complaint, pending arbitration for reasons of "economy and efficiency"); *DirecTV*, 180 F.Supp.2d at 1114 (stay appropriate where there are common issues of fact in both proceedings).

Without a stay, the parties will be required to proceed with an arbitration in San Francisco, and simultaneously with this action in federal court, either here or in San Francisco, depending on how the Court rules on this motion regarding venue. A comparison of Soward's arbitration claim (Soward Dec. Exh. 4) and Plaintiffs' Complaint shows that there will be extensive overlap in evidence and witnesses if there are two proceedings. The arbitration will resolve the parties' dispute regarding Soward's compensation under the Management Agreement. Because the arbitrators will have the authority to decide the equities of the dispute, the arbitration will likely resolve all of Plaintiffs' claims, which would be raised by way of counterclaim and set-off. *See* Sharp Dec. Exh. J. If any claims remain between the parties after the arbitration, those claims could then be litigated in the proper court.

**IV.    THE ACTION SHOULD BE DISMISSED FOR IMPPROPER VENUE OR TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA**

**A.    Venue Is Improper in the Western District of Washington**

Venue "serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred." *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1576 (Fed. Cir. 1990), *cert. denied*, 499 U.S. 922 (1991). The plaintiff bears the burden of proving that venue is proper. *Piedmont Label Co. v. Sun Garden*

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

1    *Pack. Co.,* 598 F.2d 491, 496 (1979).

2          Venue is proper in a diversity action only in (1) a judicial district where any defendant

3    resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part

4    of the events or omissions giving rise to the claims occurred, or a substantial part of property that

5    is the subject of the action is situated. *See* 28 U.S.C. § 1391.  Plaintiffs admit that the Defendants

6    reside in the Northern District of California, and not in Washington.  Complaint ¶¶ 4-5.

7    Plaintiffs, however, allege that venue is proper because a substantial part of the events and

8    omissions giving rise to Plaintiffs claims and a substantial part of the subject property is located

9    in Washington.  Complaint ¶ 9.  Plaintiffs' allegation is contradicted by the facts.  Plaintiffs

10   cannot sustain their burden of showing that venue is proper in this Court.

            **1.**    **Plaintiffs' First Cause of Action for Declaratory Relief Is Not Properly Brought in the Western District of Washington**

12         If there are multiple claims, venue must be proper for each cause of action. *International*

13   *Patent Dev. Corp. v. Wyomont Partners,* 489 F. Supp. 226, 229 (D. Nev. 1980).  In an action for

14   breach of contract, venue is proper where the contract is negotiated, executed, and performed.

15   *Shropshire v. Fred Rappoport Company,* 294 F.Supp.2d 1085, 1094 (9th Cir. 2003).  The place of

16   performance is likely to have a close nexus to the underlying events.  *See Decker Coal Company*

17   *v. Commonwealth Edison Company,* 805 F.2d 834, 842 (9th Cir. 1986).

18         Plaintiffs' first cause of action seeks declaratory relief that the arbitration claim Soward

19   filed in San Francisco is not within the jurisdiction of the AAA.  (Complaint ¶ 70-82)  The

20   Management Agreement was negotiated at Lerner's residence in Virginia, drafted in San

21   Francisco, executed in San Francisco, and was performed by Soward in San Francisco.  Soward

22   Dec. ¶¶ 11,  25(A).  The arbitration proceeding that is the subject of the claim is pending in San

23   Francisco.  Sharp Dec. ¶¶ 11-14.  The other events alleged in the first cause of action also

24   occurred in California, such as Plaintiffs' delivery of the Termination Letter.  Complaint ¶ 75;

25   Soward Dec. Exh. 2.  Nothing connected with the arbitration occurred in Washington.

26

Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 16 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

**2.    The Acts of Alleged "Misconduct" by Soward Did Not Occur in the Western District of Washington**

Since venue rules protect a defendant from having to defend in a distant forum, the focus of the analysis under 28 U.S.C. 1391(a)(2) is on the defendant's activities. "[B]y referring to 'events or omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (emphasis added). Moreover, the defendant's acts or omissions on which the claim is based must be more than tangentially connected to qualify as "substantial" under the statute. *Loeb v. Bank of Am.*, 254 F. Supp. 2d 581, 587 (E.D. Pa. 2003) (defendant's correspondence and telephone calls are "woefully insufficient to establish venue in this district.").

Plaintiffs' Complaint alleges a "pattern of misconduct" by Soward. Complaint ¶ 2:10-11. However, Plaintiffs' claims all relate to Soward's performance as their asset manager from 1998 through November 23, 2004, when Soward was in San Francisco. Soward Dec. ¶¶ 8, 11, 25; *see id.* Exh. 1, § 11 (Notices to Soward at 345 California Street, San Francisco). The Complaint does not allege any act that occurred in the Western District of Washington. Soward Dec. ¶ 25 (paragraph-by-paragraph location of the events alleged in the complaint).

In short, none of the events or omissions alleged in the complaint occurred in this District. Plaintiffs appear to have chosen a forum distant from the true locus of the dispute to gain a tactical advantage, by forcing Soward to incur the burden and expense of litigating on two fronts, and in a different state.

**3.    There Is No Subject Property In the Western District of Washington**

Plaintiffs' contention that a substantial part of the property that is the subject of this action is located in this district is also wrong. *See* Complaint ¶ 9. As is illustrated by the Commentary on the 1998 and 1990 Revisions of Section 1391, the reference to "substantial part of the property" in section 1391(a)(2) means tangible property. "This is the alternative offered by the second part of clause (2). It manifest that the physical presence of property can ground venue

Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 17 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

1   when the property is the very subject of the suit." 28 U.S.C.A § 1391 Commentary on the 1998

2   and 1990 Revisions. This is an action for money. There is no subject property within the

3   meaning of 28 USC § 1391.

4       Plaintiffs' reference to the "books and records for the transactions and entities in dispute"

5   Complaint 9 is not an allegation pertinent to the criteria of 28 U.S.C. 1391. Though the books

6   and records may be evidence, they are not subject property and cannot provide a basis for venue.

7   *See Bassili v. Chu,* 242 F.Supp.2d 223, 231 (W.D. N.Y. 2003) (location of inventory was too

8   tenuous a connection with form to require a California resident to defend a product disparagement

9   claim in New York.) Moreover, the books and records were maintained at Soward's office in

10   San Francisco until <u>after</u> Plaintiffs' wrongful termination of Soward's contracts, when they were

11   transferred to Washington at the request of Wilson Sonsini. Sharp Dec. ¶ 18, Exh. C.

**B.    Even If Venue Is Proper, this Action Should be Transferred to the Northern District of California Pursuant to 28 U.S.C. 1404(a)**

       28 U.S.C. § 1404(a) allows the court to transfer an "action for the convenience of the

parties and witnesses." Courts should weigh the balance between the preference accorded the

plaintiffs choice of forum against the burden to the defendant of litigating in an inconvenient

forum. *See Shropshire, supra,* 294 F.Supp.2d at 1095. The court should consider the private and

public interest factors affecting the convenience of the forum. *Decker Coal,* 805 F.2d at 843.

Private factors include the relative ease of access to sources of proof, availability of compulsory

process for attendance of unwilling witnesses, the cost of obtaining attendance of willing

witnesses, and all other practical problems that make trial of a case easy, expeditious, and

inexpensive. *Id.* Public factors include the administrative difficulties flowing from court

congestion, the interest in having localized controversies decide at home, the interest in having

the trial of a diversity case in a forum that is at home with the law that must govern the action, the

avoidance of unnecessary conflict in laws, and the unfairness of burdening citizens in an

unrelated forum with jury duty. *Id.*

Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 18 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

1         Here the private and public factors support transferring this action to the Northern District

2    of California for the following reasons:

3        •  Most of the documentary evidence is or will be located in the San Francisco Bay

4            Area because (1) Soward managed Plaintiffs' assets from his office in San

5            Francisco California since 1995[6], (2) Plaintiffs' former attorneys, who were

6            involved in the formation of the agreements at issue, are located in San Francisco,

7            (3) Plaintiffs are represented in this action by attorneys from Wilson Sonsini, who

8            are located approximately 35 miles from San Francisco, and (4) any relevant

9            documents not currently in the Northern District will likely be brought there for

10           the arbitration pending with AAA.  Sharp Dec. ¶¶ 16, 18.

11       •  Most of the witnesses are located in the Northern District of California.  Sharp

12           Dec. ¶ 17.  Bosack is the only likely witness who resides in Washington, and as a

13           party he can be compelled to attend trial in California, where he still owns a car

14           and condominium.  Soward Dec. ¶ 26.  Attorneys Kaufman and Wood, who

15           drafted the key documents, are both in San Francisco and their attendance can be

16           compelled in California but not in Washington.

17       •  Both Plaintiffs' and Defendants' lead attorneys are located in the Northern District

18           of California.  Sharp Dec. ¶ 16.  Transfer to the Northern District of California

19           would minimize the expense for all the parties because it would obviate the need

20           for frequent travel to Washington State, as well as the need for local counsel.

21       •  An arbitration is currently pending before AAA in San Francisco, as contemplated

22           by the Management Agreement.  A transfer would allow the related court

23           proceedings to take place in the same geographical region.  Sharp Dec. ¶ 11-15.

24

25       [6] & Capital Inc., employs a bookkeeper in Redmond, Washington, who regularly received

26   copies of financial documents related to The & Trust and & Capital Partners.

Motion to Stay or Dismiss          - 19 -          Short Cressman & Burgess PLLC
Case No. CV-4-1664-TSZ                              999 Third Avenue, Suite 3000
                                                    Seattle, Washington 98104-4083
                                                    (206) 682-3353

1    • The issues in this action will be decided under California or Delaware law because

2    the Management Agreement is governed by California law and the partnership

3    agreements are governed by Delaware law.  Soward Dec. Exhs. 1, 4(C) § 11.1.

4  Accordingly, a transfer of this action to the Northern District of California would further the

5  interests of justice.

6                              **V.    CONCLUSION**

7    For the foregoing reasons, Defendants respectfully request that this Court stay this action

8  pending the completion of arbitration with AAA in San Francisco.  In the alternative, Defendants

9  request that this court dismiss this action on the ground of improper venue or transfer this action

10  to the District Court for the Northern District of California.

11  Dated: August___, 2004                    Respectfully submitted,

12

13                                        /s/ Scott A.Smith

14                                        Scott A. Smith (WSBA No. 11975)
                                          Short Cressman & Burgess PLLC
15                                        999 Third Avenue, Suite 3000
                                          Seattle, WA 98104
16                                        Phone:  (206) 682-3333
                                          Fax: ( 206) 340-8856
17
                                          Michael A. Kahn (Cal. Bar No. 57432)
18                                        J. Daniel Sharp (Cal. Bar No. 131042)
                                          Casey McNamara (Cal. Bar No. 209205)
19                                        FOLGER LEVIN & KAHN LLP
                                          275 Battery Street, 23rd Floor
20                                        San Francisco, CA 94111
                                          Phone:  (415) 986-2800
21                                        Fax:  (415) 986-2827

22                                        Attorneys for Defendants
                                          David C. Soward
23                                        and & Management Company

24

25

26

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on a August 18, 2004, I electronically filed the foregoing to the Clerk

3

of the Court using the CM/ECF system which will send notification of such filing to the

following:  Leo P. Cunningham, Alyson N. Dinsmore, Kyle A. Wombolt, and Richard C.

4

Yarmuth.

5

6

SHORT CRESSMAN & BURGESS PLLC

7

8

By    /s/ Scott A. Smith

9

    Scott A. Smith, WSBA No. 11975

    999 Third Avenue, Suite 3000

10

    Seattle, WA 98104-4088

    Phone: (206) 682-3333

11

    Fax: (206) 340-8856

    ssmith@scblaw.com

12

    Attorneys for Defendant

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 1 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353