# Exhibit I

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LEONARD BOSACK, individually and as Trustee on behalf of The & Trust and as Trustee on behalf of the Leonard Bosack Trust; SANDY LERNER, individually and as Trustee on behalf of the Sandra K. Lerner Trust,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID C. SOWARD and & MANAGEMENT COMPANY,<br><br>Defendants. | Case No. CV-4-1664-TSZ<br><br>**DEFENDANT DAVID C. SOWARD'S REPLY BRIEF IN SUPPORT OF MOTION TO STAY PENDING ARBITRATION, OR IN THE ALTERNATIVE TO DISMISS OR TRANSFER FOR IMPROPER VENUE PURSUANT TO 28 USC §1406(a), OR TO TRANSFER VENUE PURSUANT TO 28 USC §1404(a)**<br><br>NOTE ON MOTION CALENDAR:<br>September 10, 2004 |

Reply Brief in Support of
Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4088
(206) 682-3333

## II. INTRODUCTION

The Opposition of Plaintiffs Leonard Bosack ("Bosack") and Sandy Lerner ("Lerner") shows that Plaintiffs (or their lawyers) are intent on besmirching Defendant David Soward's reputation, and forcing him to endure unnecessary expense and delay in order to vindicate his rights. The gamesmanship of Plaintiffs' position is evident from the untenable propositions that are espoused in the Opposition:

- It is untenable to assert that Soward, by filing a claim for arbitration in February 2003, was seeking "to avoid – or at least delay—being held responsible" for anything. (Opp. at 2:15). Soward has sought a speedy and efficient resolution of all disputes. That is what arbitration is for.

- It is untenable to assert that the arbitration clause in the Management Agreement is totally ineffective to require arbitration of <u>any</u> dispute between the parties. (Opp. at 2:25 – 3:4, 16-18). Plaintiffs' argument that the clause applies "only to issues of interpretation" (Opp. at 16:4) is contrary to the language of the agreement (which does not use the word "interpretation" or any other such limitation), and contrary to the settled law that arbitration clauses are to be interpreted in favor of arbitrability. Plaintiffs' position is also unreasonable and impractical. Under Plaintiffs' view, the arbitrators have no power to award monetary relief, and are limited to making pronouncements as linguistic gurus about the meaning of the words in the Management Agreement.

- It is untenable to assert that "there would be no overlap" (Opp. at 19:5) between an arbitration regarding the Management Agreement and litigation concerning the parties' other agreements. Plaintiffs abruptly terminated the Management Agreement as well as their other contracts with Soward based on unsubstantiated accusations of Soward's untrustworthiness and misconduct. (Opp. at 8:10-26). Plaintiffs will have to prove these allegations in the arbitration to justify their early

3Reply Brief in Support of
Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 1 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4088
(206) 682-3333

termination of the Management Agreement. If there is no stay, they will have to prove the same allegations in court. Moreover, Soward is owed $1.6 million under the Management Agreement, and a roughly equivalent amount under the partnerships. Soward Dec. ¶ 22. Plaintiffs have not disputed the amounts owed to Soward, but obviously feel themselves entitled to set off the amounts owed to Soward against their own claims. *See, e.g.,* Cunningham Decl. ¶¶ 5, 11, Exh. 1. Plaintiffs have expressly reserved "their right to file any counterclaims" in the arbitration. Sharp Dec. ¶ 11, Exh. J. It is disingenuous to argue that having two sets of proceedings will not require any overlap of evidence or issues.

Thus, it is clear that there <u>will</u> be an arbitration between the parties to this case that <u>will</u> raise all of the allegations made by Plaintiffs against Soward. The interests of efficiency and economy strongly support a stay of this litigation pending the completion of the arbitration.

With respect to venue, the gamesmanship of Plaintiffs' attorneys is revealed more by what their Opposition does <u>not</u> address or attempt to explain: Plaintiffs do not explain why they sent Soward <u>two</u> draft complaints for filing in San Francisco Superior Court, but are now seeking to force him to litigate in Washington. *See* Supp. Sharp Dec. Exhs. A, B. They do not explain why it is "easier, less expensive and more convenient" (Opp. at 23:7) for lawyers in Palo Alto, California, to litigate in Seattle. Plaintiffs' silence is a tacit acknowledgement that their choice of venue was a tactical decision to increase the burden and expense on Soward.

To sustain their burden of proving that venue is proper, Plaintiffs must show that "a substantial part of the events or omissions giving rise to the claim" occurred in the Western District of Washington. 28 U.S.C. § 1391(a). However, Plaintiffs merely point to activities that were normal and customary business practices, such as Soward's maintaining a "direct line of communication" with the bookkeeper and "regularly communicat[ing]" with one of the Plaintiffs. Bosack Dec. ¶ 15. These activities do not give rise to any claims against Soward. Plaintiffs' claims arise out of Soward's actions in San Francisco, such as Plaintiffs' repeated references to

3Reply Brief in Support of
Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 2 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4088
(206) 682-3333

the alleged "improper withdrawal" of $5 million from & Capital Partners. (Opp. at 1:23, 2:16, 8:5, 8:9; Bosack Dec. ¶ 10, Cunningham Dec. ¶ 3) and an allegedly improperly documented loan made from & Capital Partners (in San Francisco) to Soward (in San Francisco). (Opp. at 8:1; Bosack Dec. ¶ 16). The totality of the events actually related to the claims against Soward that Plaintiffs point to as having occurred in the Western District of Washington consist of exactly two telephone calls *received* by Bosack in Redmond. Bosack Dec. ¶ 16, ¶ 18. The receipt of telephone calls is an "incidental" event that is "woefully insufficient to establish venue in this district." *Loeb v. Bank of America*, 254 F. Supp. 2d 581, 587 (E.D. Pa. 2003).

### III. RESPONSE TO FACTUAL INACCURACIES

#### A. Plaintiffs Agreed to Arbitrate Disputes with Soward

Plaintiffs' Opposition falsely states that Bosack and Lerner "never agreed to arbitrate anything" with Soward. (Opp. at 12:9-12). In fact, <u>all</u> of the initial agreements between Plaintiffs and Soward contained provisions requiring arbitration of disputes. Soward Supp. Dec. ¶ 3, Exhs. A-C. These initial agreements were drafted by Plaintiffs' attorneys at Latham & Watkins in San Francisco in 1992 and governed their relations for six years. *Id.* Because Plaintiffs fired Latham & Watkins, the later agreements were drafted by different counsel. *Id.* In documenting the new agreements, the parties simply did not discuss the arbitration provisions. *Id.* ¶ 5-7. Contrary to the Opposition, there is no evidence or inference that Bosack and Lerner have somehow expressed a preference for avoiding arbitration in favor of court, and never agreed to arbitrate with Soward. (*E.g.*, Opp. at 2:18).

#### B. The Clark Nuber Reports Do Not Support Plaintiffs' Version of Events, and Do Not Show that the Clark Nuber Accountants Will Be Important or Necessary Witnesses

Plaintiffs attempt to foster an impression that they were required to terminate their relationship with Soward abruptly, after misleading him about their intentions, because of an "enormity of improprieties" that was "revealed" by an audit conducted by accountants at Clark Nuber. (Bosack Dec. ¶¶ 8-12; Cunningham Dec. ¶¶ 3-4; *see* Opp. at 7-8). Plaintiffs contend that

3Reply Brief in Support of
Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 3 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4088
(206) 682-3333

they were "shocked to learn from the accountants at Clark Nuber that Defendants had improperly withdrawn more than $5 million from & Capital Partners." (Opp. at 8:3-6, citing Bosack Dec. ¶ 10). They suggest Bosack was justified in lying to Soward about his intentions on November 21, 2003, because they thought Soward would "abscond with their funds." (Cunningham Dec, ¶ 4, p. 2:18; Bosack Dec. ¶ 11, p. 5:10) On the basis of this story, Plaintiffs suggest that they have acted reasonably, and that the accountants from Clark Nuber will be important witnesses. (*See* Opp. at 1:25- 2:2, 7:23-25). However, the evidence offered by Plaintiffs does not support this story, or suggest that the Clark Nuber accountants are relevant witnesses on the merits.

The Declaration from Robert Fleming, the Clark Nuber accountant, is devoid of any allegation of wrongdoing by Soward. He merely avers that "Clark Nuber performed agreed-upon procedures <u>to verify the investment return</u>" for Plaintiffs' various investment entities. Fleming Dec. ¶ 2 (emphasis added). Fleming's Declaration does not state that he unearthed any hidden defalcations or other "misconduct" by Soward.

Soward's supposedly "shocking" withdrawals of $5 million from & Capital Partners were referenced in the Clark Nuber report of **July 1, 2003**. Fleming Dec. Exh. B at pp. 23-26. This report compares distributions from the partners' capital accounts reflected on the partnership's IRS Schedule K-1, prepared by PriceWaterhouseCoopers, with amounts "recalculated by Clark Nuber." *Id.*, Exh. B at 25; *see* Soward Dec. ¶ 20. The report does not state that the amounts withdrawn by Soward were from any source other than his own capital account. *Id.* Thus, if Soward was "absconding" with partnership funds, he was doing it under a claim of right, from his own capital account, and reporting it to all other partners as well as the IRS on the annual Schedule K-1.

Moreover, the Clark Nuber report on & Capital Partners was nearly <u>five months</u> before Plaintiffs abruptly terminated Soward's contracts in November 2003, based on their supposed fear that he would "abscond" with the money. If Plaintiffs were really concerned that Soward--after 11 years on the job and in the middle of renegotiating the Management Agreement--would

3Reply Brief in Support of
Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 4 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4088
(206) 682-3333

abscond with embezzled funds, why did they wait nearly five months after receiving the Clark Nuber report before terminating Soward's control over their accounts? Plaintiffs ask the Court to believe that they acted promptly after "the validity of the reports was confirmed" (Cunningham Dec. ¶ 4, at page 2:14; *see* Bosack Dec. ¶ 12 at page 5:16-17), but Plaintiffs point to no new or additional "validating" information that they received in the five-month delay between the report and November 2003.[1] Certainly, the declaration of the Clark Nuber accountant, Robert Fleming, offers nothing to justify the delay.

Plaintiffs' failure to explain the five-month delay between the Clark Nuber report and their supposed need to terminate Soward so as to prevent him from "absconding" with funds suggests rather strongly that plaintiffs' attorneys seized on this pretext as a tactic to intimidate Soward and besmirch his reputation. In any event, nothing in the evidence from Clark Nuber indicates that these accountants will be important or necessary witnesses.

### C. Plaintiff Lerner Has No Connection to the Western District of Washington

Certain statements in the Bosack Declaration appear calculated to suggest that Sandy Lerner has some connection to the State of Washington. *E.g.*, Bosack Dec. ¶ 1, 4. In fact, Lerner has lived in Virginia since 1997, and before moving to Virginia she maintained a large home with resident staff in Los Altos, California. Soward Supp. Dec. ¶ 8-9. Soward had many meetings and telephone conversations with Lerner and her employees while she was in California and in Virginia, but not in Washington. *Id.* ¶ 9.

### IV. REPLY ON MOTION TO STAY PENDING ARBITRATION

A court that is asked to stay an action pending arbitration must consider four issues: (1) whether the parties have made an agreement to arbitrate; (2) the scope of the arbitration agreement; (3) if federal statutory claims are involved, whether they are non-arbitrable; and (4) whether to separate any arbitrable claims from those that are non-arbitrable. *Genesco, Inc. v. T.*

---

[1] Defendants have separate filed Evidentiary Objections to these statements in the Plaintiffs' Declarations.

3Reply Brief in Support of
Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 5 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4088
(206) 682-3333

*Kakiuchi & Co. Ltd.,* 815 F.2d 840, 844 (2d Cir. 1987); *Topf v. Warnaco,* 942 F. Supp. 762, 765 (D. Conn. 1996). Here, Plaintiffs are parties to an arbitration agreement, and that the scope of the agreement includes at least some of the claims raised against Soward. There are no federal statutory claims. If there are any non-arbitrable claims, they should be stayed pending the arbitration because the issues and evidence will be duplicative.

**A.  Plaintiffs Are Parties to the Management Agreement and Are Bound by Its Arbitration Clause**

Plaintiffs argue that Bosack and Lerner are not parties to the Management Agreement, and that "[t]he only parties to the Trust Management Agreement are Defendants and the & Trust." (Opp. at 13). Plaintiffs are wrong as a matter of law, and it is telling that none of the cases they cite involve a trust.

Under California law[2], a trust is not a distinct legal entity in the way a corporation is distinct from its stockholders. *Ziegler v. Nickel,* 64 Cal. App. 4th 545, 548. A trust is "not a person but rather 'a fiduciary relationship with respect to property,'" whereby a trustee agrees to hold title to property for the benefit of another. *Id.* (emphasis and citation omitted); *accord* RESTATEMENT (SECOND) OF TRUSTS, § 2. For this reason, an ordinary express trust such as the & Trust "is not an entity separate from its trustees." *Id.* (emphasis added; citing *Moeller v. Superior Court,* 16 Cal. 4th 1124, 1132 n.3 (1997)).

Because a trust is not an entity separate from its trustees, "the trustee, rather than the trust, is the real party in interest in litigation involving trust property." *Moeller,* 16 Cal. 4th at 1132 n.3; *see* Cal. Probate Code.§ 16249 ("The trustee has the power to prosecute or defend actions, claims, or proceedings for the protection of trust property and of the trustee in the performance of the trustee's duties."); *Hershel California Fruit Products Co. v. Hunt Foods, Inc.,* 119 F. Supp. 603, 607 (N.D. Cal. 1954) ("Under both the Federal Rules of Civil Procedure and the law of

---

[2] The Management Agreement is governed by California Law. Soward Dec. Exh. 1, § 12, p.6 ("This Agreement shall be governed by California law.").

3Reply Brief in Support of
Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 6 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4088
(206) 682-3333

California, the trustee, rather than the trust itself, is the proper party to a legal action.")

Clearly, Bosack and Lerner are signatories and parties to the Management Agreement as trustees of The & Trust. They cannot avoid arbitration by claiming to be "non-parties" to the Management Agreement.

B. **The Arbitration Clause Is Not Limited to Interpretation of Provisions of the Agreement, and All of Plaintiffs' Claims Are Within the Equities of the Dispute over Plaintiffs' Wrongful Termination of the Management Agreement and Refusal to Pay Soward's Compensation**

Once it is determined that an arbitration clause exists, all doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983). Put somewhat differently, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[an] order to arbitrate the particular grievance should not be denied <u>unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.</u>'" *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 651, 106 S.Ct. 1415, 1419 (1986) (emphasis added; citation omitted).

Here, the arbitration clause in the Management Agreement not only requires arbitration of disputes "concerning any provision in this Agreement," but further provides that the arbitrators are empowered with "<u>the authority to make an award based on the equities of the dispute.</u>" Soward Dec. Exh. A. Plaintiffs do not attempt to demonstrate that "it may be said with positive assurance" that none of their claims are within "the equities of the dispute" so as to be within the arbitration clause.[3] They argue that it is "obvious" that the phrase "the equities of the dispute" means "fairness," and is a directive that the arbitrators are "to be fair." (Opp. at 15:6-9). It is unclear, though, why a mandate "to be fair" should be regarded as a limitation on the arbitrators that is any more restrictive than the jurisdiction of a court of equity, which likewise is concerned

---

[3] Plaintiffs' argument that arbitration is limited to disputes over "interpretation" lacks any textual support and is so far contrary to the settled law by which a court construes arbitration agreements that it does not require further rebuttal.

3Reply Brief in Support of
Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 7 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4088
(206) 682-3333

with being fully and completely fair. *See Federal Min. & Smelting Co. v. Bunker Hill & Sullivan Mining*, 187 F. 474, 476-77 (9th Cir. 1909) (citing rule that "requires a court of equity to decide upon and finally determine the entire controversy, and to do complete justice by adjusting all the rights involved in it . . . . 'equity delights to do justice, and not by halves.'") (citations omitted).

Plaintiffs make much of the fact that "& Capital Partners, Cartesian, The Foundation and & Capital" are not parties to the arbitration clause in the Management Agreement, arguing that non-parties cannot be compelled to arbitrate. (Opp. at 13:21-23). But none of those entities are a party to <u>this</u> case. The parties to <u>this</u> case are Bosack and Lerner, and those two individual <u>are</u> parties to an arbitration agreement that authorizes the arbitrators to make an award based on "the equities of the dispute." The arbitrators, in considering the equities, may take account of the fact that Bosack and Lerner own and control the various entities that they claim are non-parties. As one District Court has stated:

> This court's role is limited to determining whether the parties to an arbitration agreement have submitted the subject matter of a particular dispute to arbitration. [citation] Any attendant procedural issues, including procedural defenses, are for the arbitrator's consideration. [citation] <u>Whether an [additional] entity is a proper party to the arbitration is a procedural question</u>. [citation] It affects how the arbitration should be conducted, but it does not determine whether the dispute itself is arbitrable.

*Daiei, Inc. v. U.S. Shoe Corp.*, 755 F. Supp. 299, 303 (D. Hawaii 1991) (citations omitted).

Clearly, all of Bosack and Lerner's claims touch upon "the equities of the dispute" between Plaintiffs and Soward concerning the Management Agreement. The different investment vehicles are not "unrelated entities" (Opp. at 12:20), but rather related aspects of Plaintiffs' overall wealth management, for which they hired Soward in 1992. Bosack and Lerner terminated all of the agreements at the same time, based on the same allegations of misconduct. In order to justify their premature termination of the Management Agreement, Plaintiffs will be required to prove their allegations of misconduct.

3Reply Brief in Support of
Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 8 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4088
(206) 682-3333

### C. In Any Event, this Litigation Should Be Stayed in the Interests of Efficiency and Economy

Contrary to Plaintiffs' Opposition, there is no "strong preference for proceeding with non-arbitrable claims, even if one of the claims in the case is arbitrable." (Opp. at 18:10-11). Plaintiffs' "authority" for this supposed "strong preference" is a footnote in an unpublished decision that simply quotes Justice Byron White's <u>concurring</u> opinion in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 225 (1985) (stating that "the heavy presumption <u>should be</u> that the arbitration and the lawsuit will each proceed in its normal course.") (emphasis added). Of course, the law of the Ninth Circuit is not found in aspirational statements in minority opinions of the Supreme Court that are quoted in footnotes of unpublished opinions. *See* Ninth Circuit Rule 36-3 (prohibiting citation of unpublished opinions "to or by the courts of this circuit" except for purposes of res judicata, double jeopardy, etc.).

A stay is mandatory where the claims fall within the arbitration clause. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) If there are non-arbitrable claims, the grant or denial of a stay under 9 U.S.C. § 3 is "a matter largely within the district court's discretion to control its docket." *Genesco, supra*, 815 F.2d at 856. Here, reasons of efficiency and economy, and overlapping factual issues, compel the conclusion that a stay of the entire case is appropriate. *See U.S. v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985) (staying non-arbitrable third party complaint, pending arbitration for reasons of "economy and efficiency").

## IV. REPLY ON MOTION TO DISMISS OR TRANSFER VENUE

### A. Plaintiffs Fail to Show that Any Substantial Part of the Acts Giving Rise to their Claims Occurred in the Western District of Washington

Plaintiffs bear the burden of proving that venue is proper. 28 U.S.C. § 1391(a); *Piedmont Label Co. v. Sun Garden Pack. Co.*, 598 F.2d 491, 496 (9th Cir. 1979). Nevertheless, in the moving papers, Soward demonstrated that all of the acts alleged in the Complaint took place in San Francisco. Soward Dec. ¶ 25. Plaintiffs' Opposition does not dispute Soward's declaration. Plaintiffs do not point to <u>any</u> allegedly wrongful acts by Soward in the State of Washington.

3Reply Brief in Support of
Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 9 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4088
(206) 682-3333

Plaintiffs point to activities that were normal and customary business practices, such as Soward's maintaining a "direct line of communication" with the bookkeeper and "regularly communicat[ing]" with one of the Plaintiffs. Bosack Dec. ¶ 15; *see* Opp. at 20:21-22:16. However, these routine business activities are not the basis of Plaintiffs' claims against Soward.

Plaintiffs do not carry their burden of establishing proper venue by alleging that Soward's out-of-state conduct caused them to "suffer injury" in this district. (Opp. at 20:12). "[B]y referring to 'events or omissions giving rise to the claim,' [in 28 USC § 1391] Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995). "[I]f Congress had wanted to lay venue where the plaintiff was residing when he was injured, it could have said so expressly." *Id.*

Plaintiffs' claims arise out of Soward's actions in San Francisco, such as Plaintiffs' repeated references to the alleged "improper withdrawal" of $5 million from & Capital Partners. (Opp. at 1:23, 2:16, 8:5, 8:9; Bosack Dec. ¶ 10, Cunningham Dec. ¶ 3) and an allegedly improperly documented loan made from & Capital Partners (in San Francisco) to Soward (in San Francisco). (Opp. at 8:1; Bosack Dec. ¶ 16).

The Bosack declaration identifies exactly two telephone calls *received* by Bosack in Redmond that were related to the claims against Soward. Bosack Dec. ¶ 16, ¶ 18. As against the alleged commission of over $10 million in damages, these two telephone calls do not meet anyone's definition of "substantial" activities. *See Loeb*, 254 F. Supp. 2d at 587.

**B.     Plaintiffs Should Not Be Entitled to Deference in their Choice of a Forum**

Plaintiffs' gamesmanship in their choice of venue is made clear by the facts that led up to the filing of the complaint: A <u>California</u> law firm (Wilson Sonsini) sent a letter to a <u>California</u> resident (Soward) terminating a set of contracts that were entered in <u>California</u> and were being performed in <u>California</u>, accompanied by a draft complaint for filing in a <u>California</u> Court, alleging jurisdiction and venue in <u>California</u>. When Soward legitimately initiated arbitration in California, Plaintiffs (who have far greater financial resources) suddenly decide to file their

3Reply Brief in Support of
Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 10 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4088
(206) 682-3333

complaint 800 miles away in Seattle, claiming it is more "convenient."

Plaintiffs' primary argument against transferring venue to California is a demand for deference to their choice of forum. (Opp. at 22) However, while a plaintiffs choice of forum is ordinarily entitled to deference, it is not so under all circumstances. *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64,70 (2nd Cir. 2003) *cert. denied* 124 S.Ct. 1145 (2004). Greater deference to a plaintiff's forum choice is accorded to the extent that it was motivated by legitimate reasons, and diminishing deference to the extent that the choice of forum was motivated by a tactical advantage. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74 (2d Cir. 2001). Where a plaintiff is engaging in forum shopping, the plaintiffs choice of forum is entitled to little deference. *See Pollux Holding*, 329, F.3d at 70. For example, when a foreign plaintiff sues in a United States forum such choice is entitled to less deference because one may not easily presume that choice is based on convenience. *See id.* Similarly, less deference is given to the plaintiffs' choice of forum where the forum lacks meaningful ties to the controversy. *See Southern Utah Wilderness Alliance v. Norton*, 315 F.Supp.2d 82, 86 (D.D.C. 2004)

Without extreme deference to plaintiffs, a transfer of venue would be a matter of course. The private and public factors clearly support transferring the action to the Northern District of California. Most of the percipient witnesses live in San Francisco. Besides Bosack, Plaintiffs only cite one possible percipient witness who lives in Washington, i.e. Diane Norgaard.[4] Even Plaintiffs concede that at least three non-party percipient witnesses live in San Francisco, California (*see* Cunningham Dec. ¶13) , which is the location of the events and actions that are the subject of the Complaint. *See* Soward Dec. ¶ 25.

The location of the relevant documents also supports transfer to the Northern District of

---

[4] Plaintiffs attempt to buttress their venue argument by claiming that Clark Nuber's Robert Fleming and Rick Starkenburg will be witnesses at trial is without merit. Clark Nuber was not retained until 2003, after Soward's alleged misconduct took place. If anything, they may be expert witnesses, but according to Plaintiffs, the location of expert witnesses is not a factor the court can consider for purposes of venue. *See* Memorandum in Opposition, p. 23, n. 13.

3Reply Brief in Support of
Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 11 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4088
(206) 682-3333

California because most of the documents are in San Francisco. Plaintiffs claim that "all of the relevant documentary evidence is located in [the Western District of Washington]," (Opp. at 24:10) is not true. Soward's files and records are located in San Francisco. Other witnesses in San Francisco likely possess relevant documents, including Christopher Kaufman, the San Francisco attorney who represented Plaintiffs during the formation of the initial agreements, Robert Wood, the San Francisco attorney who represented Plaintiffs when the Management Agreement was drafted, the founders of Passport Cosmetics, and the accountants at PricewaterhouseCoopers..

Other practical concerns also support a transfer, such as that there is an arbitration proceeding between the parties currently pending in San Francisco, the parties attorneys are in the San Francisco Bay Area, and the issues are to be decided under California law or Delaware law. Accordingly, the Court should transfer venue to the Northern District of California.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion.

Dated: September 9, 2004        Respectfully submitted,

s / J. Daniel Sharp
Scott A. Smith (WSBA No. 11975)
Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, WA 98104
Phone: (206) 682-3333
Fax: (206) 340-8856

Michael A. Kahn (Cal. Bar No. 57432)
J. Daniel Sharp (Cal. Bar No. 131042)
Casey McNamara (Cal. Bar No. 209205)
FOLGER LEVIN & KAHN LLP
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Phone: (415) 986-2800
Fax: (415) 986-2827

Attorneys for Defendants

86083\2001\408857.1

3Reply Brief in Support of
Motion to Stay or Dismiss
Case No. CV-4-1664-TSZ

- 12 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4088
(206) 682-3333