# Exhibit J

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LEONARD BOSACK, individually and as Trustee on behalf of The & Trust and as Trustee on behalf of the Leonard Bosack Trust; SANDY LERNER, individually and as Trustee on behalf of the Sandra K. Lerner Trust,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID C. SOWARD and & MANAGEMENT COMPANY,<br><br>Defendants. | Case No. CV-4-1664-TSZ<br><br>DECLARATION OF DEFENDANT DAVID C. SOWARD IN SUPPORT OF MOTION FOR A STAY PENDING ARBITRATION, OR ALTERNATIVELY TO DISMISS OR TRANSFER FOR IMPROPER VENUE (28 USC §1406(a) OR 1404(a)<br><br>NOTE ON MOTION CALENDAR: SEPTEMBER 10, 2004 |

I, David C. Soward, declare as follows:

1. I am a defendant in this action and the owner of a sole proprietorship called & Management Company, which is also named as a defendant in this action. I have personal knowledge of the facts set forth in this declaration and if called as a witness I could and would testify competently thereto.

2. In this declaration, I set forth my background and how I came to manage the assets of Leonard Bosack and Sandy Lerner. I then describe generally my activities in managing these assets, and how I conducted such activities from my office in San Francisco, California, where I

Declaration of David C. Soward  -1-  Short Cressman & Burgess PLLC
Case No. CV-4-1664-TSZ                          999 Third Avenue, Suite 3000
                                                Seattle, Washington 98104-4083
                                                (206) 682-3353

have lived nearly my whole life, and where my family has lived for five generations. Next, I describe the abrupt termination of my contracts with Bosack and Lerner in November 2003, which was done through their attorneys, without speaking to me and without giving me an opportunity to respond to the accusations made by the attorneys. Finally, I describe my initiation of arbitration in San Francisco in February 2004 under the Management Agreement for The & Trust, which encompasses all areas of dispute between me and Bosack and Lerner.

**Bosack and Lerner Hired Me to Manage Their Assets In Late 1992**

3.  I am a Certified Public Accountant (CPA). In August 1990, I was three years out of college and employed as a partnership-track accountant in the area of international tax advice and planning at KPMG Peat Marwick ("KPMG") in San Francisco, California.

4.  I first met Len Bosack and Sandy Lerner in August 1990 while working at KPMG. They were married and had founded the networking company Cisco Systems, Inc. ("Cisco") in Palo Alto, California. They were in the process of liquidating their Cisco stock and were seeking tax advice with respect to preserving and enhancing their newfound wealth. I was part of a team of accountants that that provided tax advice to Bosack and Lerner.

5.  In late 1991, Bosack and Lerner approached me about managing their assets. They told me they wanted someone who was not affiliated with a bank or financial institution. They asked me to fly to Boston, Massachusetts, for an interview with Robert Good of Cambridge Associates, a firm that provides financial consulting services to endowments, pension funds, and individuals with substantial assets. I went to Boston for the interview with Mr. Good. After the interview, Mr. Good sent a letter reporting on the interview to Bosack and Lerner, of which I received a copy, advising them that I did not have the experience or qualifications for the position. I did not hear from Bosack or Lerner again until the summer of 1992.

6.  In August of 1992, Lerner called me and asked me again if I would be interested in managing their assets, which at the time I understood to be approximately $170 million. She

Declaration of David C. Soward                    -2-                   Short Cressman & Burgess PLLC
Case No. CV-4-1664-TSZ                                                  999 Third Avenue, Suite 3000
                                                                        Seattle, Washington 98104-4083
                                                                        (206) 682-3353

1  asked me to meet with her and Bosack in San Francisco to discuss the matter. We met shortly
2  thereafter in San Francisco and reached a tentative agreement.

3      7.    After Bosack and Lerner and I reached a tentative agreement, I worked with their
4  attorney, Christopher Kaufman of Latham & Watkins in San Francisco, to finalize the details.
5  During discussions over my contract, Kaufman conveyed proposals that had been made by
6  Cambridge Associates regarding the terms of my compensation.

7      8.    One of the conditions that Bosack and Lerner insisted on was that I relocate
8  temporarily to the State of Washington. They told me that they had left California to avoid
9  paying state income tax on the sale of their Cisco stock and they thought that it would be most
10 consistent with their tax strategy to have their assets managed outside California for a period of
11 time. I moved to Bellevue in early 1993 and rented an apartment there until January 1995, when I
12 moved back to San Francisco, where I have lived nearly my whole life.

13 **Bosack and Lerner's Investments**

14     9.    For the next eleven years, between October 1992 and November 2003, I managed
15 substantially all of the financial assets of Bosack and Lerner. In the subparagraphs below, I
16 describe the different investment vehicles used in managing the assets, and the terms of my
17 compensation that Bosack and Lerner agreed to:

18     A. <u>The & Trust</u>: The & Trust was in existence in 1992 when Bosack and Lerner first
19 engaged me, and it held the majority of their assets. The & Trust is a charitable
20 remainder trust formed under California law. The trustees are Bosack and Lerner
21 and their friend Richard Troiano, who had also worked at Cisco. Over the years,
22 Bosack and Lerner have revised the contract pursuant to which I manage the assets
23 of The & Trust. Attached hereto as **Ex. 1(pgs. 15-21)** is a true and correct copy of
24 the Management Agreement executed in January 2001 with respect to the & Trust,
25 which was the agreement in effect at the time of my termination. The

26

Declaration of David C. Soward    -3-    Short Cressman & Burgess PLLC
Case No. CV-4-1664-TSZ    999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

1  Management Agreement was prepared by Rob Wood, an attorney in San
2  Francisco, and I entered into the agreement in San Francisco. Under the
3  Management Agreement, I receive two components of compensation: a "base"
4  management fee based on the size of the investment portfolio, and an "incentive"
5  fee based on the performance of the portfolio. We agreed in paragraph 4 of the
6  Management Agreement that I would be paid a salary during the year, and later
7  offset the portion of the salary allocable to The & Trust against my management
8  fees. To date, The & Trust has never paid any portion of my salary. Bosack and
9  Lerner set up a corporate entity called & Capital, Inc., as a vehicle for paying this
10 salary and other overhead expenses.

11 B. <u>& Capital Partners L.P.</u>: When I was hired in 1992, Bosack and Lerner told me
12 that they wanted to place some of their assets in a limited partnership. For this
13 purpose, we formed & Capital Partners, L.P. The formal documentation was
14 prepared by Bosack and Lerner's attorneys at Latham & Watkins in San Francisco,
15 and was not executed until late 1995, although the partnership had begun in 1992.
16 A true and correct copy of the & Capital Partners agreement is attached at tab C to
17 my arbitration claim, which is **Ex. 4 (pgs. 53-74)** to this declaration. I acted as
18 general partner and made investment decisions. As compensation, I was assigned
19 a partnership interest, receiving 10% of the net return of the partnership (and being
20 responsible for 10% of any loss).

21 C. <u>Cartesian Partners</u>: In 1999, Bosack and I discussed the creation of a new limited
22 partnership, Cartesian Partners, as a vehicle for investments he wished to make
23 separate and apart from Lerner, upon terms similar to & Capital Partners, L.P. (*i.e.*,
24 assigning me a 10% partnership interest in lieu of direct compensation for
25 managing the assets). I suggested that I participate as a principal by investing

26

Declaration of David C. Soward         -4-        Short Cressman & Burgess PLLC
Case No. CV-4-1664-TSZ                             999 Third Avenue, Suite 3000
                                                   Seattle, Washington 98104-4083
                                                   (206) 682-3353

some of my own money in the partnership, and Bosack agreed. I contributed 5% of the initial capital of Cartesian Partners, approximately $525,205. An attorney in San Francisco named Rob Wood prepared a partnership agreement for Cartesian Partners. Mr. Wood prepared an Agreement of Limited Partnership of Cartesian Partners, L.P., and forwarded it to me and to Bosack for comment and signature. To my knowledge, Bosack never signed the Cartesian Partnership Agreement, and never conveyed any comments about the agreement to me or Mr. Wood. Nevertheless, we have proceeded as partners consistent with the draft agreement, including the preparation and filing of partnership tax returns by outside accountants.

    D.   <u>The Leonard X. Bosack and Bette M. Kruger Charitable Foundation, Inc. (the "Foundation")</u>: The Foundation is a nonprofit corporation within the meaning of section 501(c)(3) of the Internal Revenue Code. Bosack and Lerner are directors of the Foundation. Since 1992 I have managed the assets of the Foundation and been paid a management fee based on the net investable assets of the Foundation as of the beginning of each year.

**My Activities Managing the Assets**

10.    From the outset and throughout my relationship, I regarded Bosack and Lerner as my clients and principals. My primary activity was finding and evaluating potential investment opportunities, and managing the investments once they were made. In looking at investment opportunities I routinely considered each of the investment vehicles that we had established for Bosack and Lerner's assets. The people and companies with whom we invested accepted money for investment regardless of which vehicle it came from. I used outside accountants (initially at KPMG Peat Marwick in San Francisco, more recently at PricewaterhouseCoopers in San Francisco) to prepare tax returns for each of the investment vehicles. In addition, when I

Declaration of David C. Soward
Case No. CV-4-1664-TSZ

-5-

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

communicated with Bosack and Lerner, I routinely reported on the status of all of their investment vehicles, except that on occasion I separately reported to Bosack regarding Cartesian Partners, and I made separate reports to Kathy Savesky, who Bosack and Lerner had hired as director of the Foundation. In general, though, I worked for Bosack and Lerner, and they acted as my clients with respect to each of the investment vehicles as part of their overall wealth management.

11. From January 1995 until my termination in November 2003, I conducted my management activities for all of Bosack and Lerner's assets from my office in San Francisco, California. I formed a sole proprietorship called & Management Company to provide a business name for my activities. The only operations of & Management Company are my own activities and, again, except for occasional business trips, all of my activities on behalf of Bosack and Lerner were conducted from my office in San Francisco.

12. From 1992 through the end of 2002, I achieved excellent results for Bosack and Lerner in managing their assets. I generated returns of approximately thirteen percent (13%) per annum, for an overall return of over $220 million. I have not been provided access to the records for 2003, but I believe my performance in 2003 was consistent with, or better than, the performance I had achieved in the prior 10 years. At all times, I communicated regularly and frequently with Bosack and Lerner, although often they were not interested in the details of my activities.

**My Sudden Termination**

13. The term of the most recent Management Agreement (referenced above in Paragraph 9(A) and attached hereto as Exhibit 1) was to expire on December 31, 2003. Prior to that date, I could be terminated for only three reasons: (1) gross negligence, (2) conviction of a felony, and (3) conviction of any other crime involving moral turpitude. Paragraph 3 states,

> This Agreement may be extended or renegotiated by mutual written consent of the parties. This Agreement may be terminated by the

> Trust prior to December 31, 2003 upon written notice to Manager in the event it has been demonstrated that any of the following occurred: (a) Manager has been grossly negligent in the performance of his duties under this Agreement; (b) Manager has been convicted of a felony; or (c) Manager has been convicted of any other crime involving moral turpitude.

Thus, I had no expectation that my contractual relationship with Bosack and Lerner would be terminated before December 31, 2003.

14. In the fall of 2002, I approached Bosack and Lerner about extending and renegotiating the Management Agreement beyond the end of 2003. In view of the excellent returns realized under my management, I suggested that an increase in my compensation should be appropriate. Bosack and Lerner indicated to me that they wanted to have an outside accounting firm verify the historic investment return I had achieved in order to evaluate the compensation component of the agreement. They retained the accounting firm of Clark Nuber to verify the historic return realized on each of the investment vehicles. I cooperated completely with Clark Nuber to facilitate their review.

15. For the rest of 2002 and most of 2003, neither Bosack nor Lerner would engage in any discussions with me about the negotiation of my contract, although I occasionally raised the subject in telephone calls with each of them.

16. On Friday, November 21, 2003, I spoke to Bosack on the telephone. In view of the long delay in responding to my request for an extension of my contract, which was to expire in a little over a month, I told him that if he and Lerner wished to replace me with another asset manager, I would cooperate transitioning all of my responsibilities to a new manager. Bosack responded that he had no plans to replace me but that he was waiting for the results of the Clark Nuber audit before discussing the renewal of the Management Agreement.

17. Three days later, on Monday, November 24, 2003, Bosack telephoned me to tell me that I would be "transitioned out" as asset manager. He asked me to me to call his attorney, Tom Klein at the law firm of Wilson Sonsini Goodrich & Rosati ("Wilson Sonsini") in Palo Alto,

Declaration of David C. Soward
Case No. CV-4-1664-TSZ
- 7 -
Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

1. California. I told him that I did not believe it was appropriate for me to call his attorney.

18. That same day, I received a call from Mr. Klein at Wilson Sonsini. I gave him the name of my attorney, Michael Kahn of Folger Levin & Kahn in San Francisco.

19. Later that day (Monday, November 24, 2003), my attorneys received a letter, which enclosed a draft complaint from Wilson Sonsini. A true and correct copy of this letter and draft complaint is attached hereto as **Ex. 2 (pgs. 22-48)** (with portions of the letter redacted by my attorneys as a "settlement" offer). The letter announced that the Management Agreement was terminated, and that I was removed as a partner, "effective immediately." The letter and draft complaint stated that I had engaged in "apparent illegalities" and "skimmed assets" and "looted" from Bosack and Lerner.

20. The accusations made in the Wilson Sonsini letter were stunning and profoundly disappointing to me. Neither Bosack nor Lerner, nor any of their attorneys, accountants or other representatives had spoken to me about the accusations made in the Wilson Sonsini letter, which were outright wrong or greatly exaggerated. For example, the claim that I "looted" from the & Capital partnership was a reference to withdrawals I had made <u>from my own capital account</u> that were reported on the tax returns prepared by PriceWaterhouseCoopers and sent to Bosack and Lerner. <u>I have never knowingly done anything wrong or improper in managing Bosack and Lerner's assets.</u>

21. On November 26, 2003, I wrote to Bosack and Lerner expressing my shock and disappointment at the Wilson Sonsini letter. A true and correct copy of this letter is attached hereto as **Ex. 3 (pgs. 49-52)** Neither Bosack nor Lerner responded to my letter. Since I received the Wilson Sonsini letter of November 24, 2003, neither Bosack nor Lerner has spoken to me about the accusations made in the letter, or about accounting for my partnership interests, or about paying me the fees that were due under Management Agreement when I was terminated.

Declaration of David C. Soward
Case No. CV-4-1664-TSZ

\- 8 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

**My Unpaid Compensation and Arbitration Claim**

22.     Since 1992, my entire professional career has been devoted to managing Bosack and Lerner's assets. My personal net worth is derived almost entirely from the compensation I have received, and am owed, by them. At the time of my termination in November 2003, I was owed the following amounts of compensation, which represent a substantial portion (well over half) of my net worth:

   A. <u>The & Trust</u>: Under the Management Agreement, I am supposed to be paid a "base" fee and an "incentive" fee each year. I have not been paid the "incentive" fee since 2000, and have not been paid any portion of either fee for 2003. The total amount owing to me under the Management Agreement is approximately $1.6 million.

   B. <u>& Capital Partners, L.P.</u>: As set forth above, Bosack and Lerner have not accounted to me for the value of my partnership interest. I estimate that my partnership interest is worth at least $1 million net of all distributions I received over the years (including the distributions from my capital account that Plaintiffs' attorneys' have claimed were "looting").

   C. <u>Cartesian Partners</u>: Likewise, there has been no accounting of my interest in Cartesian Partners. I contributed initial capital of $525,205 in 1999. I estimate that my partnership interest is worth substantially more than that amount today.

   D. <u>The Foundation</u>: Under my agreement for the Foundation, I am paid a base fee based on the assets of the Foundation. I have not been paid the management fee for 2003. The amount due is approximately $62,287.00.

23.     Since the Wilson Sonsini letter of November 24, 2003, Bosack and Lerner have not engaged in any discussion with me about payment of the amounts I am owed, despite my requests. Bosack and Lerner's attorneys likewise have not offered any accounting for my partnership interests or management fees.

Declaration of David C. Soward                - 9 -                Short Cressman & Burgess PLLC
Case No. CV-4-1664-TSZ                                             999 Third Avenue, Suite 3000
                                                                   Seattle, Washington 98104-4083
                                                                   (206) 682-3353

24. On February 3, 2004, through my attorneys at Folger Levin & Kahn, I filed a Claim with the American Arbitration Association (AAA) in San Francisco, California. A true and correct copy of the Statement of Claim that I caused to be filed with the AAA is attached hereto as **Ex. 4 (pgs. 53-74).**

**Bosack and Lerner's Complaint Does Not Allege any Events or Omissions in Washington**

25. I have read the complaint filed July 27, 2004 by Bosack and Lerner, and none of the events or omissions that are the subject of the complaint took place in the state of Washington. Specifically:

    A. The terms of my original contracts with Bosack and Lerner were negotiated in San Francisco. The terms of the most recent modifications to my contract, including the current Management Agreement that is Exhibit 1 to this Declaration, were negotiated at Lerner's residence in Virginia in late 1998. The Management Agreement was drafted by Rob Wood, an attorney in San Francisco. I executed the Management Agreement in San Francisco.

    B. Paragraphs 18-24 of the complaint allege that I made "improper withdrawals" from & Capital Partners. These withdrawals were from my own capital account, based on my 10% partnership interest; I did not believe the withdrawals to be improper, and I believe my capital account has a net positive balance today. I made the withdrawals by sending a facsimile request from my office in San Francisco to the Copper Mountain Trust Corporation, located in Portland, Oregon, which holds the accounts of & Capital Partners, L.P.

    C. Paragraphs 25-30 of the complaint allege that I committed improper "recording" of the values of certain investments. The term "recording" apparently refers to my internal and ongoing estimates of the market value of various investments, which I

Declaration of David C. Soward  
Case No. CV-4-1664-TSZ

- 10 -

Short Cressman & Burgess PLLC  
999 Third Avenue, Suite 3000  
Seattle, Washington 98104-4083  
(206) 682-3353

did not report to third parties, such as our outside accountants. These amounts were my own personal working estimates, which were sometimes high and sometimes low. The complaint mentions only occasions when my estimates were higher than later valuations made by outside accountants; there were many other investments where my estimates were on the low side. In any event, my "recording" of investment values was done in my office in San Francisco.

D. Paragraphs 31-43 of the complaint relate to the investment in Passport Cosmetics by & Capital Partners. Passport Cosmetics was started in San Francisco and its founders, Erin Kotter and Meredith McGann, reside in or around San Francisco. I managed this investment from my office in San Francisco. None of the activities occurred in Washington.

E. Paragraphs 44-50 of the complaint relate to loans taken out by myself and Malcolm Kemp from & Capital Partners. These loans were made in my office in San Francisco. Bosack pre-approved the loan that I took out, which was for the purchase of my house in San Francisco, and approved the interest rate.

F. Paragraphs 51-56 of the Complaint relate to the formation of Cartesian Partners. My discussions with Bosack concerning the formation of Cartesian Partners took place by telephone from my office and home in San Francisco. The draft Cartesian Partners partnership agreement was drawn up by Robert Wood, an attorney in San Francisco.

G. Paragraphs 57-69 of the complaint allege "improper investments in Myerson controlled entities" and a loan to Bryan Myerson. Myerson is a resident of England and the principal of a family of funds called U.K. Active Value. I met him through my investment activities on behalf of Bosack & Lerner, who have held investments in U.K. Active Value since 1993. There is nothing improper

Declaration of David C. Soward
Case No. CV-4-1664-TSZ

- 11 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

about these investments, or about the loan to Myerson, which was fully documented, secured by investment property, and repaid in full with interest. In any event, the investments in "Myerson controlled entities" and the loan to Myerson took place from my office in San Francisco and Great Britain, not Washington.

H. Paragraphs 70-73 of the complaint allege that I improperly calculated my management fee from The & Trust, and "improperly" included a punitive damage settlement award as income to the Trust for 1998. The amount of my management fee is set by the Management Agreement, and as set forth in Paragraph 22 above, I am owed in excess of $1.6 million for back management fees. My communications with Bosack and Lerner about my management fee have taken place from my office in San Francisco. The settlement payment referenced in paragraph 72 of the complaint was made in 1998 in connection with an arbitration that occurred in San Francisco.

26. It would be a hardship to me, and wasteful, to require me to pay my attorneys to pursue the arbitration claim in San Francisco as well as court litigation in Seattle, Washington. All of the matters raised by Bosack and Lerner in their complaint are matters that relate to my claim for compensation in the arbitration, and my activities in San Francisco. Potential witnesses, including Christopher Kaufman (who represented Bosack and Lerner when they first engaged me in 1992, and also served as a trustee of The & Trust) and Robert Wood (who prepared the Cartesian Partners partnership agreement) are located in San Francisco. The only party in Washington is Bosack, and he used to live in the San Francisco Bay Area and is a regular visitor; he owns a condominium and car in Palo Alto, California, that he uses when he visits. It would be more efficient, faster, less expensive, and less disruptive to all concerned to allow the arbitrators to resolve the dispute. At a minimum, it would be more efficient to require any litigation to take

Declaration of David C. Soward
Case No. CV-4-1664-TSZ

- 12 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

place in San Francisco, where the arbitration is already pending.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 17 day of August, 2004 at San Francisco, California.

_____
David C. Soward

86083\2001\405971.2

Declaration of David C. Soward
Case No. CV-4-1664-TSZ

- 13 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353

## CERTIFICATE OF SERVICE

I hereby certify that on a August 18, 2004, I electronically filed the foregoing to the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Leo P. Cunningham, Alyson N. Dinsmore, Kyle A. Wombolt, and Richard C. Yarmuth.

SHORT CRESSMAN & BURGESS PLLC

By   /s/ Scott A. Smith
Scott A. Smith, WSBA No. 11975
999 Third Avenue, Suite 3000
Seattle, WA 98104-4088
Phone: (206) 682-3333
Fax: (206) 340-8856
ssmith@scblaw.com
Attorneys for Defendant

86083\2001\405971.2

Declaration of David C. Soward
Case No. CV-4-1664-TSZ

- 14 -

Short Cressman & Burgess PLLC
999 Third Avenue, Suite 3000
Seattle, Washington 98104-4083
(206) 682-3353