# Exhibit P

1

```
 1              IN THE UNITED STATES DISTRICT COURT FOR
               THE WESTERN DISTRICT OF WASHINGTON
 2                          AT SEATTLE

 3   LEONARD BOSACK, et al.,        )
                                    )    Case No. C04-1664Z
 4                  Plaintiffs,     )
                                    )    Seattle, Washington
 5           v.                     )    November 9, 2004
                                    )
 6   DAVID C. SOWARD, et al.,       )
                         Defendants.)
 7                                  )
     _____)
 8
                    TRANSCRIPT OF PROCEEDINGS
 9          BEFORE THE HONORABLE THOMAS S. ZILLY
                 UNITED STATES DISTRICT JUDGE
10
     For the Plaintiffs:     Richard C. Yarmuth
11                           Yarmuth Wilsdon Calfo PLLC
                             The IDX Tower
12                           925 Fourth Avenue, Suite 2500
                             Seattle, Washington  98104
13
                             Kyle A. Wombolt
14                           Wilson, Sonsini, Goodrich & Rosati
                             650 Page Mill Road
15                           Palo Alto, California 94304

16   For the Defendants:     J. Daniel Sharp
                             Folger, Levin & Kahn LLP
17                           Embarcadero Center West
                             275 Battery Street, 23rd Floor
18                           San Francisco, California  94111

19                           Scott A. Smith
                             Short, Cressman & Burgess PLLC
20                           999 Third Avenue, Suite 3000
                             Seattle, Washington 98104-4088
21
     Joseph F. Roth
22   Official Court Reporter
     600 U.S. Courthouse
23   Seattle, Washington 98104
     (206) 553-1899
24
     Proceedings recorded by computer-aided stenography.
25
```

1          THE COURT:  Would the clerk please call the calendar.

2          THE CLERK:  C04-1664Z, Leonard Bosack versus David

3   Soward.  Counsel, please stand and make your appearances for the

4   record.

5          MR. YARMUTH:  Your Honor, for the plaintiffs Richard

6   Yarmuth.

7          MR. WOMBOLT:  Your Honor, for the plaintiffs also, Kyle

8   Wombolt.

9          MR. YARMUTH:  Mr. Wombolt is of the Palto Alto law firm

10  of Wilson, Sonsini, Goodrich & Rosati, and he's admitted in this

11  Court pro hac vice.

12         THE COURT:  Thank you.

13         MR. SMITH:  Scott Smith, Short, Cressman & Burgess,

14  local counsel.

15         MR. SHARP:  Good afternoon, Your Honor.  Dan Sharp,

16  Folger, Levin & Kahn, for the defendant David Soward, who is here

17  present in the courtroom.

18         THE COURT:  All right.  Good afternoon.  This matter

19  comes before the Court in connection with the motion of the

20  defendant to stay pending arbitration or, in the alternative,

21  dismiss or transfer, docket number five.

22      By minute order on October 29, I denied the motion for

23  dismissal for improper venue and I also denied the motion to

24  transfer venue.  So those matters have been resolved.

25      The remaining portion of the defendants' underlying motion is

3

1   before the Court today for oral argument.  The Court is going

2   to -- the defendants' objections to evidence in support of

3   plaintiffs' memorandum, I'm going to strike, I believe it's

4   improper argument and exceeds the scope of what's permitted under

5   the rules.

6       So that gets us down to the basic question of what, if

7   anything, needs to go to arbitration, and what, if anything,

8   should the Court do with what remains.  I'm going to give you

9   each about 20 minutes aside, but let me tell you generally where

10  I think I believe the Court is going to be at the end of the day.

11  You can perhaps persuade me that I'm wrong.

12      But I think it's pretty clear that there was an arbitration

13  clause in the management agreement.  I believe the plaintiffs are

14  bound by that arbitration agreement.  I believe that the

15  plaintiffs' sixth cause of action falls within the scope of that

16  management agreement arbitration clause.

17      I believe that the plaintiffs' first cause of action, which

18  is basically a cause of action for declaratory relief by them

19  saying that there is no right or obligation to arbitrate,

20  basically goes along with plaintiffs' sixth cause of action.

21      And it's just not clear to me, but I think that the breach of

22  fiduciary duty claim, it looks like it cuts across all of the

23  causes of actions and all of the claims.  Thus, some portion of

24  breach of fiduciary duty claim needs to be arbitrated as well.

25      I think that the arbitration clause incorporates or picks up

1    the rules of the arbitration association, the AAA commercial

2    arbitration rules.  And I believe, upon my review of the record,

3    other than what I've indicated I think needs to go to

4    arbitration, everything else really is independent, separate from

5    and not part of any commitment or obligation to arbitrate.

6         That's kind of where I am.  And because I believe these

7    claims are different and really severable, it would be my

8    tentative conclusion that I would send to arbitration the sixth

9    cause of action, the first cause of action, and bifurcate and

10   send to the arbitrators, with regard to that management

11   agreement, the breach of fiduciary duty claim, keep everything

12   else, and not stay everything else, because I think most

13   everything else is pretty much independent of that management

14   agreement.

15        So with that, let's hear from Mr. Smith or Mr. Sharp to tell

16   me why I should do something different, if you think I should.

17        MR. SHARP:  Thank you, Your Honor.  I will try to

18   persuade you that you should either send the entire case to

19   arbitration, or that you should stay this matter pending the

20   completion of the arbitration.

21        There are basically two sides to this dispute.  On the

22   plaintiffs' side, there's two individuals, Len Bosack and Sandy

23   Lerner.  They're the sole shareholders of the corporation, sole

24   directors.  They're the trustees and beneficiaries of the trust.

25   They're the only partners, other than my client, of the

1   partnerships.  It's their money and they call the shots.  So

2   there's basically two sides here.

3        THE COURT:  Well, but it's not quite that simple,

4   because they did undertake, with probably good lawyers, to create

5   a number of different entities, and why shouldn't the Court give

6   effect to those legal entities?  I mean, you have a management

7   agreement that covers only the & Trust, isn't that true?

8        MR. SHARP:  In part it's true.  The arbitration clause

9   does give the arbitrators authority to make a decision -- make an

10  award based on the equities of the dispute, and that does go

11  beyond strictly the management agreement.

12       THE COURT:  Well, I have a tough time with that

13  argument, frankly.  Let's just look at the language contained in

14  the arbitration clause.

15       MR. SHARP:  It's on page 4 of the management agreement,

16  which is Exhibit 1 to the complaint -- or, excuse me, Exhibit 2

17  to the complaint.

18       THE COURT:  Well, "In the event of any dispute between

19  the parties concerning any provision in this agreement," that is

20  the management agreement, "it shall be resolved by arbitration."

21  And down below it says, "Arbitrators shall have authority to make

22  an award based on the equities of the dispute."

23      But hasn't the arbitration clause itself in the management

24  agreement limited it to any dispute between the parties

25  concerning any provision in this agreement?  What does that refer

6

1   to, "this agreement"?

2          MR. SHARP:  Well, "this agreement" obviously refers to

3   the management agreement, Your Honor.  What the question that I

4   would pose for the Court is what is the dispute between the

5   parties.  And let me address that.

6       How did this matter arise?  It arose over a year ago -- well,

7   in 2002 Mr. Soward, who had been working for Mr. Bosack and Ms.

8   Lerner for over 10 years in a unified relationship -- if you read

9   the complaint, they allege it as a unified relationship.  They

10  said we looked for someone to hire to manage our wealth.  We

11  looked for a trustworthy individual that we could hire to manage

12  our wealth.

13      They hired Mr. Soward.  He worked for over 10 years.  Earned

14  over a $220,000,000 return for them.  In 2002 -- the management

15  agreement is set to terminate at the end of 2003 -- he approaches

16  them, and says, "I'd like to extend the management agreement.

17  Would you please consider that?"

18      They respond, "We'd like to have our accountants verify the

19  historic return that you've gotten on our different investment

20  vehicles."  And so for the next year they had the accountants

21  look at the return that Mr. Soward has earned on all of the

22  plaintiffs' wealth.

23      And then out of the blue, in November 2003 --

24          THE COURT:  Well, these are all interesting facts that

25  the Court is familiar with, because I've read every piece of

1    paper you've submitted, but how does it change what you've said

2    in the management agreement paragraph dealing with arbitration?

3            MR. SHARP:  Because the management agreement -- to get

4    in the door to arbitration, there has to be a dispute concerning

5    the management agreement, to get in the door.  Once you're in the

6    door, the arbitrators have authority to make an award based on

7    the equities of the dispute.

8            THE COURT:  I mean, let me give you an absurd example.

9    Let's assume the parties had also gone in and agreed to share in

10   Mariners tickets and they had a dispute as to who was going to

11   get what games.

12       Now, are you telling me that because the management agreement

13   has this arbitration clause about any dispute between the parties

14   that somehow they'd have to arbitrate that Mariner dispute?

15           MR. SHARP:  If -- this is what happened in this case --

16           THE COURT:  Well, answer my question.

17           MR. SHARP:  It depends on how it arises, Your Honor.  It

18   entirely depends.  In this case, in this dispute, the plaintiffs

19   came to Mr. Soward and said -- in November 2003 they said, "We're

20   terminating your management agreement because you did all these

21   bad things with respect to all our investment vehicles.  You

22   misrepresented the values of the partnership assets.  You looted

23   money from the partnership.  You did all these bad things, and,

24   therefore, we're terminating the management agreement."

25           THE COURT:  Let me ask you this:  Did the management

1    agreement have anything to do with these other partnerships?

2           MR. SHARP:   Yes.   They were --

3           THE COURT:   In what way?   Where in the management

4    agreement can you show me that they have any -- he had any

5    obligation to do anything but manage the & Trust.

6           MR. SHARP:   The & Trust was one of three vehicles for

7    the plaintiffs' wealth, and Mr. Soward was in charge of the

8    plaintiffs' wealth.   He had -- when an investment comes along, he

9    has to decide is this appropriate for the trust, or is it

10   appropriate for the & Capital Partnership, is it appropriate for

11   Cartesian.

12       These people for 11 years did not put things in buckets and

13   say this activity is confined to this bucket and we're not going

14   to look at anything else.   This was part of a unified

15   relationship, and that's how they treated it at the time of

16   termination.

17       And the management agreement has a termination clause in it

18   that says he can only be terminated for gross negligence,

19   conviction of a felony, or other crime involving moral turpitude.

20   But they abruptly, prematurely, terminated the management

21   agreement based on allegations of misconduct having to do with

22   the partnerships, as well as with the management agreement.

23          THE COURT:   Well, let me just refer you to the

24   foundation agreement.   It's a different agreement.   Apparently a

25   charitable foundation.   Does the management agreement relate to

1    the foundation?

2         MR. SHARP:  The dispute relates to the foundation, Your

3    Honor.  In order -- when I get to arbitration, when I get to

4    arbitration, I'm going to put Mr. Soward on the stand, and I'm

5    going to say the plaintiffs terminated you because they say you

6    misrepresented the value of the partnership accounts.  Is that

7    true?  What were the value of the partnership accounts?  Did you

8    make a misrepresentation that justified their termination of the

9    management agreement?

10        And the plaintiffs' termination of the management agreement,

11   that's the dispute.  The basis of the dispute included their

12   entire relationship for 11 years.  The only basis on which they

13   get Mr. Soward's status as an investment adviser is through the

14   management agreement.  Otherwise it's a partnership dispute.  And

15   he's a general partner of partnerships.  He's not an investment

16   adviser.  The only way that he's an investment adviser is through

17   this management agreement.

18        And they terminated it based on allegations of misconduct

19   that cut across the entire relationship.  And in order to

20   vindicate himself and prove that this termination of this

21   management agreement was improper, Mr. Soward is going to be

22   required to disprove all of their allegations.

23        If you look at the complaint that they attached in November

24   of 2003 to their termination letter, it's virtually identical to

25   the complaint that is before this Court.  Excuse me, Your Honor,

1    there was an amended complaint filed at five o'clock yesterday

2    afternoon.

3            THE COURT:  And I haven't seen that.

4            MR. YARMUTH:  Your Honor, it's because of the -- excuse

5    me, because of the on-line nature of filing, the rule is that we

6    don't give you anything, unless it's germane to the motion.  I

7    did bring it up today.  The only difference is it added three

8    more plaintiffs, those entities you just named a moment ago.

9    That is the only change in the complaint.  I'm sorry if it didn't

10   get to you before this.

11       But none of the --

12           THE COURT:  The Cartesian Limited Partnership, the

13   Capital Partners, Limited Partnership, and the & Capital, Inc.?

14           MR. YARMUTH:  Yes, that's the only change.  The first 29

15   pages of the complaint are the remainder of the exhibits.  The

16   exhibits are all the same as the original complaint.

17           THE COURT:  I want to come back to your argument.  The

18   only document, as I understand it, that has an arbitration

19   clause, is the management agreement, is that true?

20           MR. SHARP:  That is true as up to the documents that are

21   currently in force.

22           THE COURT:  And the management agreement is entered into

23   between the & Trust, a charitable remainder trust, and the three

24   individuals as its trustees, is that right?

25           MR. SHARP:  Correct.

1         THE COURT:  On the one hand, and Mr. Soward and the

2    Management Company, the manager, on the other.  The management

3    services agreement, paragraph one of this management agreement,

4    says, "The manager shall render management services to the trust

5    of an investment advisory and investment management nature."

6         Is there anything in this management agreement that deals

7    with services that David Soward, or his company, would be doing

8    for any other entity or person other than the trust?

9         MR. SHARP:  Excuse me, it's Soward, Mr. Soward.  Yes,

10   there is, Your Honor.

11        THE COURT:  Mr. Soward.  Thank you.

12        MR. SHARP:  The termination provision refers to gross

13   negligence, conviction of a felony or crime involving moral

14   turpitude.  So it limits the ability or the bases upon which the

15   plaintiffs can terminate the agreement.  And if they terminate it

16   on the basis of allegations of misconduct having to do with

17   partnerships, that brings those activities within the scope of

18   the dispute under the management agreement.

19        THE COURT:  Well, let me ask it a different way.  In

20   paragraph four of the management agreement, there's a base

21   management fee.  Is there anything in the fee arrangement, either

22   the base management fee or any incentive, where the manager would

23   receive a fee based on other than the performance of the trust?

24        MR. SHARP:  Well, there is -- in paragraph four, Your

25   Honor, you see there's a reference to a salary paid to David

1    Soward by & Capital, Inc.  It's one of the newly added plaintiffs

2    in the amended complaint.  Which salary is properly allocable to

3    the trust.

4        And there's a dispute between the parties over the amount of

5    salary that should be allocated to Mr. Soward's activities on

6    behalf of the trust.  The other activities would, of course, be

7    on behalf of the partnerships, or on behalf of plaintiffs in

8    their individual capacities.

9        Mr. Soward did other things for the plaintiffs, such as

10   assisting them in personal real estate transactions, personal

11   employment matters.  He did other things besides the partnerships

12   and the trust.  It was a relationship that was partly written in

13   these agreements, but also partly course of dealing over 11

14   years, providing personal wealth management to the two

15   plaintiffs.

16       There are two issues --

17            THE COURT:  I want to just focus on that last argument,

18   because it says, "Any salary paid to David Soward by & Capital,

19   Inc., which salary is properly allocable to the trust and agreed

20   by the parties to be so allocable, will reduce the base

21   management fee."

22       Was there an allocation and a reduction of the base

23   management fee based on this & Capital, Inc., salary?

24            MR. SHARP:  In part, yes.  In part, no.  The salary --

25   or the compensation that Mr. Soward was due under the management

1  agreement has not been paid since, I believe, 2001.  Part of

2  our -- Mr. Soward's claim in the arbitration is for his unpaid

3  compensation.

4      There is an allegation in the complaint that Mr. Soward

5  failed to allocate 100 percent of his salary to the trust.  The

6  plaintiffs claim that Mr. Soward was required to allocate 100

7  percent of his salary to the trust, and we dispute that.

8          THE COURT:  So Soward is getting a salary from &

9  Capital, Inc.?

10         MR. SHARP:  Right.

11         THE COURT:  And there's a dispute then as to what

12 portion of -- all or what portion of that salary should be

13 allocable to the trust for purposes of calculating this base

14 management fee, is that what you're saying?

15         MR. SHARP:  That's correct, Your Honor.

16         THE COURT:  And is & Capital, Inc. -- that's different

17 than Capital Partners, Limited Partnership?

18         MR. SHARP:  Yes, Your Honor.

19         THE COURT:  I guess I'm not familiar with Capital, Inc.

20 -- & Capital, Inc.  I gather it's just a new entity that has just

21 been joined.

22         MR. SHARP:  It is an entity that has existed for a

23 number of years as a -- a vehicle for paying overhead, a vehicle

24 for paying salaries.  It doesn't make investments the way the

25 partnerships do or the trust does.

1          THE COURT:  Have you had a chance to review this amended

2     complaint?

3          MR. SHARP:  I received it yesterday afternoon at 5:00

4     p.m.  I did look at it.  It appears that the only changes are to

5     add three paragraphs naming the two partnerships and the

6     corporation as additional plaintiffs.  And then a modification of

7     a paragraph later in the complaint referencing Mr. Soward's

8     repayment of a $1,000,000 loan that plaintiffs had complained

9     about, and Mr. Soward has subsequently repaid.

10         I do have to confess, Your Honor, that I was troubled to

11     receive the amended complaint, because it raises questions about

12     diversity jurisdiction, in that the limited -- the rule in

13     diversity cases for a limited partnership is that diversity is

14     determined by the citizenship of each of the partners, including

15     the limited partners.

16         Mr. Soward is a partner in the two partnerships.  Certainly

17     with respect to Cartesian Partners, where there's a dispute over

18     whether there's even a written partnership agreement, he's still

19     a partner.  He invested $500,000 in that partnership.  There's

20     been no accounting of either partnership.  And it raises

21     troubling questions of diversity jurisdiction.

22         On the other hand, I don't want us to get too bogged down

23     about that, because I'm certain that, as I said at the outset,

24     this is all run by Mr. Bosack and Ms. Lerner and they call the

25     shots, and if there was a problem with jurisdiction, they could

1    withdraw those plaintiffs and dismiss the claims and preserve

2    jurisdiction.  But it does raise an issue, a jurisdictional

3    issue.

4         THE COURT:  Let me ask:  Do you have a copy of that

5    amended complaint with you?

6         MR. SHARP:  Yes.

7         THE COURT:  Would you take a look at it?  If you would

8    take a look at page 26, the seventh cause of action.  I just want

9    to orient you.  This is the seventh cause of action.  And then if

10   you'd go to the next page, paragraph 113 alleges "Plaintiffs and

11   & Capital, Inc., performed their obligations under the contract."

12      Now, & Capital, Inc., wasn't a party before, is that what

13   you're telling me?  So is this new?  Well, it's the same

14   apparently.  So let me ask how this -- when they allege in

15   paragraph 114, and perhaps I just didn't focus on the original

16   language, and now I am more focused, perhaps.  But when they say

17   that the "Defendants materially breached the contract by refusing

18   to reimburse & Capital, Inc., for its payment of approximately

19   $150,000 in salary," and the "Defendants engaged in conduct

20   separate and apart from the performance of obligations," et

21   cetera, is that the salary that's supposed to be allocated in the

22   management agreement?

23        MR. SHARP:  Yes, Your Honor.

24        THE COURT:  So really it would be difficult to resolve

25   the dispute under the management agreement without resolving this

1    claim, isn't that true?

2          MR. SHARP:  Yes.  That's --

3          THE COURT:  That's perhaps what you're trying to

4    demonstrate to me, and I'm just now understanding that issue.

5          MR. SHARP:  The point I was making, Your Honor.

6          THE COURT:  Is there anything else in the -- let's go to

7    the breach of the fiduciary duty.  As I read this complaint and

8    amended complaint, which I guess is no different, that breach of

9    fiduciary duty cuts across everything the defendant was doing in

10   connection with managing or working for the plaintiffs, is that

11   fair?

12         MR. SHARP:  Yes.  That's not only true in fact, it's

13   also the allegation in the complaint.

14         THE COURT:  Was the defendant also -- he was managing

15   the Capital Partners agreement as well?

16         MR. SHARP:  He was the general partner of & Capital

17   Partners, L.P., and as the general partner had management

18   authority.  Your Honor, if I might -

19         THE COURT:  Yes, go ahead.

20         MR. SHARP:  -- I'd like to perhaps reorient the

21   analysis.

22         THE COURT:  All right.

23         MR. SHARP:  It's natural, I believe, when you get a

24   complaint to look through the causes of action in the complaint.

25   This is obviously drafted after the arbitration claim was filed

1    in a manner most calculated to avoid revealing the arbitrability

2    of the dispute.

3       The Federal Arbitration Act, 9 USC, Section 2, doesn't refer

4    to causes of action in the governing statute.  It says, if the

5    Court determines that any issue raised by the complaint is

6    referable to arbitration, then the Court must grant a stay, and

7    then there's also a discretionary stay if the arbitration would

8    involve overlap, potentially inconsistent rulings and deter

9    efficiency.

10      So under the Federal Arbitration Act the Court looks at the

11   issues that are in a real dispute between the parties, which is

12   what I was getting at at the outset.  This dispute arose when the

13   plaintiffs terminated the management agreement based on

14   allegations of misconduct by Mr. Soward.  And that's the

15   fundamental dispute that Mr. Soward brought to the AAA in San

16   Francisco, that is, the dispute raised under the management

17   agreement.

18      Now, under the Federal Arbitration Act, the interpretation of

19   that arbitration clause that we were looking at, it's not simply

20   a matter of state law contract interpretation, the way you'd read

21   a normal contract, as a matter of federal substantive law there's

22   a presumption in favor of arbitrability, such that any disputes

23   must be resolved in favor of arbitration.

24      And the arbitration clause empowers the arbitrators to make

25   an award based on the equities of the dispute.  And giving that

1    clause a broad reading, it's for the arbitrators to decide what

2    are the equities here.

3       You've got two individuals who are the alteregos of all their

4    entities, essentially.  It's pretty much admitted by this amended

5    complaint we got last night adding the entities.  They're the

6    sole shareholders of their corporation, the sole partners of the

7    partnerships.

8       What are the equities here?  It's the for the arbitrators to

9    make that call.  Under the Federal Arbitration Act, as a matter

10   of substantive law the Court is not supposed to substitute its

11   judgment for what the parties have given authority to the

12   arbitrators to decide.

13      And the arbitrators may decide that some things are not

14   within the equities of the dispute, and they may decide that some

15   things should be decided in Court.  But under the arbitration

16   clause as it is drafted that call is for the arbitrators to make,

17   not for the Court to make.

18            THE COURT:  All right.  I think I understand your

19   argument.  Let's hear from the other side.

20            MR. YARMUTH:  Thank you, Your Honor.  With respect to

21   those comments you made initially, that is, that the arbitration

22   clause and the management agreement would require that plaintiffs

23   claim for relief number six be arbitrated, we agree.

24      With respect to Your Honor's comments that to the extent the

25   breach of fiduciary duty claims in the complaint cut across lines

1    and require arbitration, that is, have to do with -- which is

2    really the first and second claim in the arbitration which are

3    against the & Trust based on the management agreement, we agree,

4    they should be arbitrated as well.

5        However, everything else should be before Your Honor.

6            THE COURT:  Well, let's go to the seventh cause of

7    action, Mr. Yarmuth.

8            MR. YARMUTH:  Let's talk about the seventh.  The reason

9    the seventh does not go to arbitration, Your Honor, is the

10   difference between evidence and the presence of a party.  What

11   that cause of action says is that & Capital, Inc., is asking for

12   reimbursement from the defendants for a portion of the salaries

13   that are allocable to -- under the management agreement.

14       That doesn't require the corporation to be a party to the

15   arbitration.  In fact, it requires the party, the corporation,

16   rather, which has never signed an arbitration agreement, to

17   pursue its remedies in this Court.

18           THE COURT:  All right.  Let's go back to paragraph 106

19   of the original -- I don't know if it's the same numbering

20   system, and perhaps it's not.  So let's look at your original

21   complaint.

22           MR. YARMUTH:  We can look at the new one, Your Honor.

23   It's the same -- it's the same exact wording.

24           THE COURT:  Is it the same numbering?

25           MR. YARMUTH:  The numbering I guess is plus two -- plus

1    three.  I'm looking at the amended complaint as well.  If you'll

2    tell me what you're looking at, the original or amended.

3        THE COURT:  Let's go to the sixth cause of action and

4    paragraph 109 of the amended complaint.  The "Defendants --"

5        MR. YARMUTH:  The sixth cause of action, we agree, Your

6    Honor, is --

7        THE COURT:  Let me just read paragraph 109 to you.  The

8    "Defendants materially breached the management agreement by,

9    among other actions, failing to deduct his salary from & Capital

10   from the base management agreement."

11     So you say that he breached his agreement by not handling

12   that salary correctly, correct?

13       MR. YARMUTH:  Correct.

14       THE COURT:  Okay.  Now, let's go to the seventh cause of

15   action, because in paragraph 114 you say that "Defendants

16   materially breached the contract by refusing to reimburse &

17   Capital, Inc, for its payment of approximately 150,000 salary."

18     Isn't that the same salary?  Aren't we talking about the same

19   thing?

20       MR. YARMUTH:  Yes, Your Honor, it's the same salary, but

21   that is a claim.  The seventh cause of action is a claim by the

22   corporation, & Capital, Inc., saying that we were entitled to a

23   deduction, which we didn't receive, and so we, not a party to any

24   arbitration agreement, are coming into this Court to assert our

25   rights against Mr. Soward for not having made a proper deduction.

```
 1        That would be no different, Your Honor, than if I employed
 2   someone to perform a service and I told them I would pay them a
 3   hundred thousand dollars to perform the service, but if they were
 4   reimbursed for any part of that service by a third party, I would
 5   want a credit.
 6        THE COURT:  All right.  Well, let's go to paragraph 112
 7   of this amended complaint.  "A valid contract exists whereby
 8   defendants promise to reimburse & Capital, Inc."  What is that
 9   valid contract?
10        MR. YARMUTH:  That's a contract between & Capital, Inc.
11   and Mr. Soward.  It has nothing to do with the trust management
12   agreement.
13        THE COURT:  Is it a written contract or an oral
14   contract?
15        MR. YARMUTH:  An oral agreement that's been performed
16   for nine years.
17        THE COURT:  Well, but it's the same -- it's all wrapped
18   up in the problem of whether or not the defendant breached the
19   management agreement by failing to deduct this same salary, isn't
20   that right?
21        MR. YARMUTH:  But that is entirely a matter that the
22   arbitrator can decide.  Again, Your Honor, I'm an arbitrator and
23   I have this claim in front of me.  It's a claim that -- well, let
24   me go back a step.
25        The claim -- the affirmative claim that the corporation has,
```

1    which is in this complaint, is not going to be in front of the

2    arbitrator, because the arbitrator doesn't have jurisdiction over

3    & Capital, Inc.

4        I think one way of looking at it, and I believe Your Honor

5    began, is that there are five different entities, three separate

6    agreements.  The arbitration -- arbitration is a matter of

7    contract.  The law is clear that if you don't agree to arbitrate

8    you can't be compelled to arbitrate.

9        The only party that's agreed to arbitrate among the entities

10   formed by the plaintiffs -- and the entities, Your Honor, were

11   formed over a period of nine years.  One is a Massachusetts

12   limited partner.  One is a Delaware corporation.  One is a

13   Massachusetts charitable trust.  One is a California remainder --

14   a charitable remainder trust.

15       These were formed over a period of nine years for a variety

16   of different purposes, and they do have a common nucleus of

17   owners.  But the only one who ever agreed to arbitrate anything

18   was The & Trust through the trust management agreement.

19           THE COURT:  Well, let me go back to breach of contract,

20   the sixth cause of action, which you say should be arbitrated.

21   Let's assume it is arbitrated and the arbitrator concludes that

22   there was no breach of the management agreement and that the

23   defendant did not fail to deduct salary from the & Capital, Inc.,

24   from his base management fee.

25           MR. YARMUTH:  Then it would be collateral estoppel

1    against the plaintiff in the lawsuit to prove that case.

2            THE COURT:  How would that impact the seventh cause of

3    action, which says the defendants materially breached some oral

4    agreement that you have that I don't know the terms of by

5    refusing to reimburse Capital, Inc., for payment of approximately

6    150,000?  Aren't those related?

7            MR. YARMUTH:  I'm advised by co-counsel that they

8    represent -- one is a secretary and assistant's salary, Your

9    Honor, in the seventh cause of action.  The other is his salary

10   in the sixth cause of action.  So they're both reimbursement

11   claims.  But I'm sorry I was not sufficiently apprised that they

12   are not the same claim.

13           THE COURT:  You are conceding, as I understand, that

14   some portion of the breach of fiduciary duty claim needs to go to

15   arbitration because it cuts across the sixth cause of action, is

16   that right?

17           MR. YARMUTH:  Yes.

18           THE COURT:  All right.  And that's because when you

19   allege a breach of fiduciary relationship and duties between

20   plaintiff and defendants to the extent it impacts the management

21   agreement, that's something that needs to be arbitrated.

22           MR. YARMUTH:  Yes.

23           THE COURT:  All right.  Now, let's take a look at the

24   third cause of action, constructive fraud.  You've alleged there

25   that the "Defendants, while acting under scienter, made false or

1 misleading material statements and omissions," and breached

2 their -- they assumed a fiduciary duty, and then they breached

3 it.

4  Wouldn't constructive fraud, at least some portion of it,

5 dealing with the management agreement, have to go to arbitration?

6   MR. YARMUTH:  Excuse me, Your Honor.  That claim does

7 not relate to the trust management agreement, Your Honor.

8   THE COURT:  Well, but wasn't one of the reasons for

9 terminating the management agreement the breach of the Cartesian

10 relationship as well?  Didn't your client, in terminating the

11 management agreement, rely on all of these various items for

12 purposes of justifying the termination?

13   MR. YARMUTH:  Yes.

14   THE COURT:  All right.  And so you've said basically in

15 terminating that the defendant was guilty of fraud, constructive

16 fraud, breach of fiduciary duty.  All of these things seem to cut

17 across the relationship between the parties, do they not?

18   MR. YARMUTH:  They do in some respects, Your Honor, and

19 they don't in others.  And now if I may explain.  The issue of --

20 there are five different entities, Your Honor.  There's Capital

21 Partners, Limited Partnership.  There's the & Capital, Inc.

22 corporation.  There's the Leonard X. Bosack and Bette Kruger

23 Foundation.  There's the Cartesian Partners and there's The &

24 Trust.

25  Only the fifth, The & Trust, has an arbitration clause.  And

1    that clause says that the disputes that are subject to

2    arbitration must arise from that agreement.  There will be an

3    overlap, Your Honor, inevitably in the evidence that goes before

4    the arbitration panel and the evidence that is going to be

5    presented to this Court.  Yes, there will be an overlap.

6        But, for example, when the Capital Partners makes a claim in

7    claim two that Soward made false and material statements to it in

8    taking a $5,000,000 payment from Capital Partners, L.P., that to

9    which he was not entitled, that's a claim, Your Honor, that is

10   affirmative in this Court and has nothing whatever to do with the

11   management agreement.

12       Capital Partners, L.P., does not have an arbitration clause.

13   It brings a claim against Mr. Soward and says, Mr. Soward, you

14   took $5,000,000 from the limited partnership that you're not

15   entitled to and we want it back.  That's what is in the second

16   claim for relief.

17       Similarly, Cartesian and the Capital, Inc. corporation make

18   claims for payments from Mr. Soward, that is, these parties were

19   not in arbitration agreements, asked Mr. Soward to return monies

20   to them that are owed.

21       Those entities, Capital Partners, L.P., Cartesian Partners, &

22   Capital, Inc., are not parties to any arbitration agreement.

23   They've not agreed to arbitrate anything.  They cannot be

24   compelled to arbitrate anything.  Arbitration is a matter of

25   contract.

1          THE COURT:  Let me ask you this:  When the defendant was

2    entering into this management service agreement, in what capacity

3    was he acting?  Was he acting as an investment adviser, or a

4    limited partner, or a general partner, or officer, or any and all

5    of those?

6          MS. YARMUTH:  As an investment adviser in that

7    particular agreement.

8          THE COURT:  All right.  Let's go to your third cause of

9    action, constructive fraud.  "Defendants assumed a fiduciary

10    position in relation to plaintiffs as an investment adviser."  So

11    don't we need to sort through that constructive fraud claim as an

12    investment adviser in the arbitration?

13          MR. YARMUTH:  We could be more clear in the complaint to

14    the extent that we need now to decide which claims go to

15    arbitration and which ones go to litigation.  But Your Honor's

16    initial analysis, that is, that the breach of fiduciary duty

17    claims cuts across all claims, and to the extent that they relate

18    to the management agreement should go to arbitration, is equally

19    true of other claims, like constructive fraud.

20         It's the plaintiffs' obligation, I believe, given Your

21    Honor's position, to craft a document that makes clear what are

22    the claims that are by parties not subject to the trust

23    management agreement, that is, those parties not subject to

24    arbitration, and to articulate those claims more clearly.

25         Because what we've done here is in a more undifferentiated

1    sense described general claims, breach of fiduciary duty,

2    constructive fraud, breach of contract, without differentiating

3    between those which now should go to arbitration, that is, those

4    related to the management agreement, and those which belong in

5    this Court.  But I think the analysis that Your Honor gave a

6    moment ago at the beginning of the hearing is absolutely correct.

7        I think where we're getting somewhat aside is on the question

8    of whether there's going to be an evidence overlap between the

9    arbitration and the Court, a Court proceeding, and I think

10   inevitably there will be some evidence overlap.

11       But that doesn't change the fact that & Capital, Inc., for

12   example, which is not a party to any arbitration agreement, comes

13   into this Court seeking relief against Mr. Soward for claims

14   against it.  Or Capital Partners, Inc. -- I'm sorry, Capital

15   Partners, L.P., for the $5,000,000 that was taken from it.  Those

16   are claims that can only be heard in this Court, because those

17   parties are not parties and do not agree to arbitrate.

18       THE COURT:  Well, let me ask you a couple of questions.

19   As I understand it -- correct me if I'm wrong -- the arbitration

20   clause in the management agreement incorporated the rules of the

21   American Arbitration Association, is that right?

22       MR. YARMUTH:  Yes.

23       THE COURT:  All right.  And the rules of the American

24   Arbitration Association, as I understand it, provide that the

25   arbitrator shall have the power to rule on his or her own

1    jurisdiction, including any objections with respect to the

2    existence, scope, or validity of the arbitration agreement.

3        Now, did the parties by incorporating that rule into their

4    agreement clearly agree that the arbitrator gets to decide the

5    scope of the arbitration?

6        MR. YARMUTH:  Well, I think, Your Honor, there are two

7    answers to that.  First of all, the arbitrators -- well,

8    arbitration is a contractual right, or obligation.  It's not

9    statutory, like Your Honor's jurisdiction in the Court.

10       So the only parties that the arbitrators can decide -- or the

11   only claims that they can decide have to do with those that are

12   before it, properly before it.

13       THE COURT:  That's the question.  That's why we've had

14   an argument -- almost 45 minutes worth of argument as to what's

15   before me and what gets arbitrated and what doesn't, and I'm

16   suggesting to you that maybe the parties said the arbitrators get

17   to decide the scope of that arbitration.

18       And am I not under the -- I think it's the Lifescan, Inc.,

19   versus Premier Diabetic Services, Inc., 2004, Ninth Circuit case,

20   doesn't the Court hold in almost an identical situation, where

21   the parties there had incorporated the AAA rules into the

22   agreement?

23       MR. YARMUTH:  Well, Your Honor, I believe that the only

24   -- the question of arbitrability is to be decided by a Court, and

25   that's at page 10 of our brief, and that an arbitration panel may

1    address the arbitrability issue only when the contract in

2    question, quote, clearly and unmistakenly, close quote, states

3    that arbitrability, it will -- in this case it does -- is to be

4    determined by the panel.

5        THE COURT:  How do you distinguish Lifescan versus

6    Premier Diabetic Services?

7        MR. YARMUTH:  Well, I can't, Your Honor, because I'm not

8    familiar with it.

9        THE COURT:  Well, let me just help you.  It's a case

10   almost on all fours, because in this case, decided this year,

11   Judge Kozinski writing, the Court was concerned with an agreement

12   which said that the -- well, the Court said that the Court must

13   order the parties to proceed to arbitration only in accordance

14   with their agreement.  But then the agreement incorporated the

15   AAA rules of arbitration.  The Court went on to say that those

16   rules say that the arbitrators get to decide the scope of the

17   arbitration.

18       Here's what the Court says:  Unlike the more flexible federal

19   rules of civil procedure, the AAA rules allow the arbiters to

20   adjust in this case payment of costs and so forth.  And the Court

21   says the arbitrators get to decide first what gets arbitrated if

22   the parties incorporate these rules.

23       Well, I'm hard pressed to understand why in this case,

24   particularly where there's such an interlocking of all these

25   different claims, that the arbitrators aren't the people who get

1      to decide in the first instance what gets arbitrated under the

2      agreement of the parties.

3              MR. YARMUTH:  Your Honor, the arbitrators met last week

4      and deferred their rulings to this hearing.

5              THE COURT:  Well, they can meet next week.

6              MR. YARMUTH:  And they are planning to meet -- there's a

7      telephonic hearing on the 29th.  But, Your Honor, there's a

8      difference between the parties and the claims.  Arbitrators can

9      have the ability to decide whether a particular claim touches on

10     the matters of the arbitration.

11         The plaintiffs have -- I'm sorry, the moving parties, the

12     defendants, have cited several cases that go to the liberal

13     construction of arbitration agreements, the fact that they should

14     be liberally construed.  But they've cited no cases, because

15     there are no cases, that say that a party that has not agreed to

16     arbitrate can be compelled to arbitrate.

17             THE COURT:  What party has not agreed to arbitrate?

18             MR. YARMUTH:  Well, Your Honor, every party except &

19     Trust has not agreed to arbitrate.

20             THE COURT:  Well, is a trust a separate entity under

21     California law?

22             MR. YARMUTH:  Under California law -- there's been

23     briefing on the question -- there's an argument about whether the

24     trust is the -- whether the trustee is the party or whether the

25     individual who signs the trust agreement, and in this case Mr.

1   Bosack and Ms. Lerner signed in a representative capacity as

2   trustees, not individually.

3       But even if, Your Honor, you were to say it doesn't make any

4   difference, that they're there and, therefore, individually

5   they're responsible, it still does not answer the question, Your

6   Honor, because --

7           THE COURT:  But California law is pretty clear, is it

8   not, Ziegler versus Nickel, 64 Cal.App.4th, a trust is not a

9   legal personality.  The trustee is the proper person to sue, be

10  sued, enter into deals.  If you're taking the position that they

11  didn't sign individually this management agreement and, thus,

12  can't be forced to arbitrate, doesn't that also mean that those

13  people individually would have no cause of action against the

14  defendants for breach of the management agreement, because they

15  didn't enter into the management agreement?

16          MR. YARMUTH:  That's why they have sued in a

17  representative capacity, as well as an individual capacity.

18          THE COURT:  All right.

19          MR. YARMUTH:  But, Your Honor, even if you decided in

20  fact individually they could be held responsible, it still does

21  not answer the question that these -- these entities -- let's go

22  through them, Your Honor.  & Capital, Inc., is a corporation

23  formed under the laws of the state of Delaware.  Whether Mr.

24  Bosack may have signed an arbitration agreement involving the

25  trust management does not make & Capital, Inc., a Delaware

1   corporation, subject to arbitration.

2       The Leonard X. Bosack and Bette Kruger Foundation is a

3   charitable foundation chartered under Massachusetts law.  It's a

4   separate legal entity.  It never signed an arbitration agreement.

5   Even if Mr. Bosack did, the foundation, a separate legal entity,

6   did not.

7       Cartesian Partners is a separate legal entity, and it did not

8   sign an arbitration agreement.  And the law is absolutely clear

9   -- and the arbitrators are not the ones who decide that issue.

10  They decide the scope of the arbitration -- arbitrable issues

11  before them.

12      Your Honor read, exactly as I had, the scope of the

13  arbitration agreement.  Any dispute between the parties

14  concerning any provision in this agreement, not in the agreement

15  with & Capital, Inc., or the agreement with & Capital Partners,

16  or the agreement with the charitable foundation, the only

17  arbitration arises out of this agreement.

18      To the extent that there are issues and facts which cross

19  borders, that will be relevant to both cases, we can sort that

20  out as able litigants and jurists.  But it still does not mean

21  that this Court, or anyone else, can compel someone to arbitrate

22  a claim that they did not agree to arbitrate.

23      These are not six separate -- sorry, five separate entities

24  created to create an artifice or a device, they were created over

25  a period of nine years in four different jurisdictions for

1  legitimate business and charitable purposes, and only one of them

2  included an arbitration clause.

3      Your Honor, what I suggest is that we identify those claims

4  involving The & Trust that are subject to arbitration, as you did

5  a moment ago, we make clear what's going in front of this Court,

6  and then we coordinate the two schedules, pick a trial date in

7  the near term that coordinates with the arbitration.  All

8  discovery taken in one case is equally applicable to the other.

9  So that if I take a deposition, or Mr. Sharp takes a deposition,

10  it's equally admissible in either proceeding, because there is

11  going to be an overlap of evidence.

12      But, Your Honor, this -- Your Honor, if I had come before you

13  today saying that there was some way in which this litigation was

14  somehow going to be made unnecessary because everything was

15  arbitrable, then I acknowledge, Your Honor, that I would not be

16  on sound footing.  But there will be a litigation, because these

17  parties and these claims are not.

18      When we claim that for & Capital Partners that Mr. Soward

19  withdrew improperly $5,000,000, that has nothing, nothing to do

20  with The & Trust agreement and nothing to do with that

21  arbitration clause, that is a claim which belongs in this Court

22  and has no other home.  It's by a party that did not sign an

23  arbitration agreement and it has nothing to do with the

24  management agreement.

25          THE COURT:  Well, let me ask you -- your conversion

34

1   language, which is the tenth cause of action, alleges that

2   "Plaintiffs were the owners of personal property, namely assets

3   in five investment entities."

4        Is one of those entities the & Capital, Inc., entity?

5             MR. YARMUTH:  Yes.

6             THE COURT:  Well --

7             MR. YARMUTH:  And we need to separate that out.

8             THE COURT:  Okay.  So we've got it in the conversion

9   plan.  Basically don't we have -- well, let's just take a moment.

10  All right.  I think I understand your position.

11            MR. YARMUTH:  Your Honor, if I may just conclude one

12  more.

13            THE COURT:  Go ahead.

14            MR. YARMUTH:  Whether it's a cause of action of breach

15  of fiduciary duty, breach of contract or conversion, the claims

16  have to do with individual parties.  For example, & Capital

17  Partners that have a claim against Mr. Soward for having

18  wrongfully taken money.  Those claims have nothing to do with the

19  arbitration.

20       We can do a better job as plaintiffs in giving you a

21  complaint that says claim one by & Capital Partners against Mr.

22  Soward for monies taken unlawfully under the following

23  circumstances, and that will make absolutely clear that those are

24  claims that have nothing to do with the arbitration.  And if Your

25  Honor would like, we'll do that.

1    And that's the spirit of what your opening instruction to us

2    was, was that those claims, be it breach of fiduciary duty,

3    you've mentioned that, perhaps it's others, it definitely is

4    others, that cut across the lines, that the extent to which they

5    raise questions that are arbitrable it should go to arbitration.

6    And as I said to you in the first statement I made when I got

7    up here, is, yes, I agree that those claims should be arbitrated,

8    to the extent they arise under the trust management agreement,

9    they should be arbitrated.

10    But all the other claims, for all the unrelated parties that

11    have nothing to do with an arbitration agreement, that were

12    formed years before this ever happened, they should not and

13    cannot legally be mandated to arbitrate.

14    Thank you, Your Honor.

15    THE COURT:  All right.  The Court has heard enough.  I'm

16    going to enter my order now and explain to you my reasoning.  Let

17    me say first that I won't be issuing any further order other than

18    what I say on the record here.  So let me give you some

19    background, as I understand the facts.

20    The plaintiffs, Leonard Bosack and Sandy Lerner, apparently

21    were very successful with Cisco Systems, Inc., and ultimately

22    realized millions of dollars when they sold their Cisco stock,

23    and as a result created a number of various entities to manage

24    their assets.  A nice problem for anyone to have.

25    The assets were so involved that they asked the  defendant to

1    become an officer and employee of & Capital, Inc., and provide

2    financial management investment advice and consultation to the

3    plaintiffs.

4        I think it's undisputed that the defendant managed a variety

5    of investment vehicles.  The first was & Capital Partners,

6    Limited Partnership, a limited partnership formed in about 1995.

7    That limited partnership agreement does not contain an

8    arbitration clause.

9        They also formed Cartesian Partners, Limited Partnership, in

10   1999, and the defendant served as a general partner, I believe,

11   and was responsible for investing that money.  That agreement

12   itself does not contain an arbitration clause.

13       There was a foundation, a charitable foundation, formed by

14   the plaintiffs, and they were the directors of the foundation.

15   The defendants entered into a management agreement, the

16   foundation agreement, where they would receive a fee for managing

17   the assets.  That foundation agreement does not contain an

18   arbitration clause.

19       The & Trust is a charitable remainder trust.  It is in

20   connection with that trust that Bosack and Lerner signed the

21   management agreement as trustees.

22       Through these and various investment entities, the defendant

23   managed the majority of the plaintiffs' assets for over 10 years,

24   until a dispute arose, and ultimately a termination of the

25   management agreement resulted.

1    As a result of that, the defendant filed a claim for

2    arbitration in San Francisco under the AAA rules in February of

3    this year.   The defendant alleges that the plaintiff owes

4    compensation under the Capital Partners agreement, the  Cartesian

5    agreement, the foundation agreement, the management agreement.

6       In July of this year the plaintiffs filed their present

7    complaint, and apparently just yesterday amended that complaint

8    to allege a variety of claims, declaratory relief, fraud,

9    constructive fraud, breach of fiduciary duty, negligent

10   misrepresentation, breach of contract, breach of contract, one is

11   for the management agreement, one is for the & Capital agreement,

12   breach of contract for the Capital Partners agreement, breach of

13   contract for the Capital Partners agreement, and conversion.  A

14   lawyer's dream, in terms of the complexity of all the claims that

15   are being brought.

16      In September the defendants filed the motion to stay, which

17   is presently before the Court.   The defendant desires to stay the

18   present action until a resolution of the arbitration.   In the

19   alternative, they seek dismissal for improper venue.  I've

20   already dealt with that.

21      So, first, is there an arbitration clause?  Clearly there is.

22   The management agreement contains a written arbitration clause.

23   It says, in part, that "in the event of any dispute between the

24   parties concerning any provision in this agreement it shall be

25   resolved by arbitration under the rules of the American

1    Arbitration Association."

2        It also says that "The arbiters shall have the authority to

3    make an award based on the equities of the dispute."  I don't

4    know exactly what that means.  I have my own views.  But that's

5    what it says.

6        As a written arbitration clause, the Court must enforce it

7    under Ninth Circuit law.  So the first question is who's bound by

8    this arbitration clause.  Well, plaintiffs make a rather

9    interesting, but meritless, claim that the individuals signed as

10   trustees and, therefore, they're not themselves personally bound.

11   That is not the law in California, which would govern.

12       The fact of the matter is that under the clear law of

13   California a trust is not a legal personality.  So even though

14   they signed as trustees, they were individually signing and being

15   bound by that management agreement, thus agreeing to arbitration.

16   So the individuals are bound.

17       Then the question is who decides the scope of the arbitration

18   clause.  It is true that ordinarily that's a duty and job for the

19   courts, not the arbiters, to decide.  PowerAgent, Inc. versus

20   Electronic Data Systems, 358 F.3rd 1187, Ninth Circuit, 2004,

21   stands for that proposition, which has been long the law in  the

22   Ninth Circuit.

23       However, this arbitration clause is a little different,

24   because it provides that any dispute shall be resolved by

25   arbitration under the rules of the American Arbitration

1    Association.

2        And in a recent case, decided just this year, <u>Lifescan, Inc.</u>

3    <u>versus Primary Diabetic Services</u>, at 363 F.3d 1010, Ninth

4    Circuit, 2004, the Court held that parties who had incorporated

5    AAA rules into their agreement thus incorporated the then current

6    rules of the AAA, of the American Arbitration Association.

7        Now, the rules of the American Arbitration Association state

8    -- I think the prior rule was 8(a), the current rule is 7(a).

9    The language is identical.  And it says that, "The arbitrator

10   shall have the power to rule on his or her own jurisdiction,

11   including any objections with respect to the existence, scope or

12   validity of the arbitration agreement."  By incorporating this

13   rule, the AAA rule, into their agreement, the parties clearly

14   intended and agreed to allow the arbiters to decide the scope of

15   the arbitration.

16       The question then is what should be referred to arbitration.

17   The plaintiff has conceded basically, as they must, that the

18   sixth cause of action, breach of contract, deals with the  &

19   Capital, Inc., agreement, the management agreement, the breach of

20   that agreement.  It clearly needs to be referred to arbitration.

21       The plaintiff pretty much concedes that the first cause of

22   action, which deals with a declaratory judgment -- that

23   declaratory judgment says that there's no right to arbitrate.

24   That clearly is an issue that needs -- perhaps I can decide that

25   right now.  That says that they want a declaration that the

1  American Arbitration Association does not have jurisdiction to

2  hear the matter, and I rule as a matter of law they do.   The

3  question is not whether they have jurisdiction, but what is the

4  nature and extent of their jurisdiction.

5     Interestingly, the remainder of this almost entire complaint

6  and amended complaint, the claims cut across all of these in the

7  following instance: The second cause of action is fraud.   The

8  plaintiffs allege that the defendant was fraudulent in the

9  various activities.   The third cause of action, constructive

10  fraud.   They allege that the defendants assumed a fiduciary duty

11  in relation to plaintiffs as an investment adviser.   He was an

12  investment adviser under the management agreement.

13     They allege in the fourth cause of action a breach of

14  fiduciary duty, and I understand that the plaintiffs pretty much

15  concede that some portion of the fiduciary duty claim needs to go

16  to arbitration.

17     The fifth cause of action is negligent misrepresentation.

18  The same thing can be said about this, because these claims are

19  against the defendants.

20     Clearly what is decided ultimately in arbitration will be

21  collateral estoppel with respect to any remaining claims that

22  might exist and that aren't decided in arbitration.   We've talked

23  about the sixth cause of action.

24     The seventh cause of action, breach of contract, alleges that

25  plaintiffs and & Capital, Inc., performed their obligations under

1    the contract.  It's the same & Capital, Inc., that's the subject

2    of the sixth cause of action.

3        The conversion cause of action, 10, alleges in part that the

4    defendants interfered with the plaintiffs' ownership of property

5    by taking property, and that plaintiffs were the owners of assets

6    in five investment entities, one of which was & Capital, Inc.

7        Clearly the disputes between the parties are interwoven to a

8    point where it is clear that the Court, first, rules that there

9    are substantial portions of the complaint brought in this case

10   which will be required to be arbitrated.  The Court rules that it

11   is, in accordance with the parties' agreement, up to the

12   arbitrators to decide.

13       In the words of the AAA arbitration rules, "The arbitrator

14   shall have the power to rule on his or her own jurisdiction,

15   including any objections with respect to the existence, scope or

16   validity of the arbitration agreement."  As I've indicated, the

17   parties, by incorporating that, incorporated and permitted the

18   arbitrators to decide exactly what gets arbitrated and what

19   remains.

20       The Court is going to grant the defendants' motion to stay

21   this action, direct that the parties proceed to arbitration.  As

22   soon as the arbiters decide their own jurisdiction with respect

23   to existence, scope or validity of the arbitration agreement, the

24   Court will then entertain whether or not to lift the stay, or

25   whether or not to keep the stay in place until the arbitration

1     proceedings are complete.  So it will depend in part, at least,

2     on what the arbiters decide should be arbitrated,  and the timing

3     and duration necessary to accomplish all of that in arbitration.

4         But I'm satisfied that the dispute between the parties is --

5     the management agreement is an integral part of the entire

6     agreement between the parties, the parties have agreed to have

7     the arbitration, and the arbiters should, and will, have the

8     right and ability to decide the existence, scope o r validity of

9     the arbitration agreement.

10        So this case is stayed pending further order of the  Court,

11     and the parties are directed to proceed to arbitration to

12     determine what gets arbitrated and what does not.

13        Any questions?

14           MR. SHARP:  No, Your Honor.

15           MR. YARMUTH:  Nothing, Your Honor.

16           THE COURT:  All right.  We'll be in rece ss.  We'll have

17     a status conference in the admiralty case in chambers in a couple

18     minutes.

19        (Recess.)

20

21

22

23

24

25

43

CERTIFICATE

1
2
3
4
5
6
7    I, Joseph F. Roth, Official Court Reporter, do hereby
certify that the foregoing transcript is correct.
8
9                                    S/Joseph F. Roth
10                                   Joseph F. Roth
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25