# TAB 4



Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1994 WL 822477 (C.D.Cal.), 23 Media L. Rep. 1498
**(Cite as: Not Reported in F.Supp.)**

H
Fodor v. Berglas
C.D.Cal. 1994

United States District Court,C.D. California.
EUGENE FODOR, Plaintiff,
v.
Steven BERGLAS, et al., Defendants.
**No. 94-CV-4761.**

Dec. 27, 1994.

John Michael Adsit, Ko & Adsit, Los Angeles, CA, for plaintiff.
Robert S. Gutierrez, Leopold Petrich & Smith, Los Angeles, CA, for Steven Berglas, Roy F. Baumeister, Harpercollins Publishers, Inc., Basic Books Inc.
James E. Lyons, Robert Edward Dugdale, Harriet Spaulding Posner, Skadden Arps Slate Meagher & Flom, Los Angeles, CA, for Boardroom Reports, Inc.

ORDER TRANSFERRING VENUE
BAIRD, District Judge.

I. INTRODUCTION

*1 Defendants have moved this Court for summary judgment on plaintiff's complaint, or in the alternative, for an order transferring venue. Pursuant to Local Rule 7.11, the Court cancelled oral argument on these motions and took the matters under submission.

For the reasons set forth below, the Court hereby ORDERS that VENUE BE TRANSFERRED to the United States District Court for the Southern District of New York.

II. FACTUAL BACKGROUND

Plaintiff Eugene Fodor is a classical violinist of considerable renown. [FN1] On July 27, 1989, plaintiff was arrested on Martha's Vineyard, Massachusetts, while attempting to enter a hotel room. (Pl.'s Resp. Req. Admis. nos. 1, 8 (Metcalf Decl., Ex. E, at 0036, 0039).) At the time of his arrest, plaintiff was in possession of approximately twenty grams of cocaine and a hypodermic needle, which may or may not have contained traces of heroin. (Id. nos. 9, 10 (Metcalf Decl., Ex. E, at 0039).) In October 1989, Fodor was indicted for various crimes in connection with this incident, including possession of heroin and cocaine in violation of Mass. Gen. L. ch. 94C, § 34, possession of a hypodermic needle or syringe in violation of Mass. Gen. L. ch. 94C, § 34, and breaking and entering in violation of Mass. Gen. L. ch. 266, § 16A. (Indictments of Oct. 1989 (Metcalf. Decl., Ex. F, at 0057-63).) In accordance with a plea agreement relating to these charges, plaintiff was placed on probation for a term of three years and appears to have been required to submit to random drug testing. (Pl.'s Resp. Req. Admis. nos. 22-25 (Metcalf Decl., Ex. E, at 0042).)

Defendants Steven Berglas and Roy F. Baumeister are coauthors of a book entitled *Your Own Worst Enemy: Understanding the Paradox of Self-Defeating Behavior*. (Berglas Decl. ¶ 1; Baumeister Decl. ¶ 1.) *Your Own Worst Enemy* was published in 1993 by defendant HarperCollins Publishers Inc. and its division, Basic Books. The authors make reference to plaintiff in chapter one of the book, which is entitled "Snatching Defeat from the Jaws of Victory."[FN2] (Baumeister Decl. ¶¶ 2-3; Berglas Decl. ¶¶ 3-4.) Defendant Berglas was also quoted with respect to plaintiff in an article entitled "Avoid Sabotaging Your Own Success ... Or Else," which appeared in the September 15, 1993 issue of the magazine *Bottom Line/Personal*. [FN3] (Id. ¶ 8.)

III. PROCEDURAL HISTORY

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 2
Not Reported in F.Supp., 1994 WL 822477 (C.D.Cal.), 23 Media L. Rep. 1498
**(Cite as: Not Reported in F.Supp.)**

Plaintiff brought suit against the co-authors and publishers of the above-described works in the Los Angeles County Superior Court. Plaintiff's complaint, which was filed April 1, 1994, alleges claims for relief sounding in defamation.

On May 25, 1994, defendants removed this action to the district court pursuant to 28 U.S.C. § 1441, based on diversity of citizenship. Pursuant to this Court's order of June 9, 1994, the case was remanded based on the absence of complete diversity. After the non-diverse defendant was dismissed in state court, the action was again removed to the district court.[FN4] Defendants thereafter answered plaintiff's complaint. Defendant Boardroom Reports, Inc., publisher of *Bottom Line/Personal* magazine, was voluntarily dismissed with prejudice by way of a stipulation entered on December 6, 1994.

*2 Presently before the Court is defendants' motion for summary judgment or, alternatively, to transfer venue pursuant to 28 U.S.C. § 1404(a). As it appears to the Court that transfer of venue is required, defendants' motion for summary judgment will not be addressed herein.[FN5]

### IV. ANALYSIS

#### A. STANDARD FOR TRANSFER OF VENUE

The United States Code provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The propriety of transfer under § 1404(a) is within the sound discretion of the trial judge. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 279 (9th Cir. 1979); *Arley v. United Pac. Ins. Co.,* 379 F.2d 183, 185 n.1 (9th Cir. 1967), *cert. denied,* 390 U.S. 950 (1968). Although the statute sets forth three broad categories for the district court to consider, both courts and commentators have noted that the statute itself "does not give specific guidance as to when transfer should be granted." *Dworkin v. Hustler Magazine, Inc.,* 647 F. Supp. 1278, 1279 (D. Wyo. 1986); *see also* 15 Charles A. Wright et al., *Federal Practice and Procedure* § 3847, at 370 (2d ed. 1986 & Supp. 1994) ("[T]he statute gives no hint about how these broad categories are to be weighed against each other."). The moving party, however, does shoulder the burden of showing that transfer should be ordered. *Savage,* 611 F.2d at 279.

In exercising their discretion to transfer venue under § 1404(a), courts often balance some or all of the following practical considerations: (1) the convenience of the parties and witnesses, *see Van Dusen v. Barrack,* 376 U.S 612, 616 (1964); (2) judicial economy, *id.* at 643; (3) the relative ease of access to proof, *Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949, 953 (9th Cir. 1968); (4) the availability of compulsory process, *Supco Automotive Parts, Inc. v. Triangle Auto Spring Co.,* 538 F. Supp. 1187, 1191 (E.D. Pa. 1982); (5) the courts' respective familiarity with the governing law, *Van Dusen,* 376 U.S. at 645-46; (6) the length of time that the action has been pending in the forum, *Kasey v. Molybdenum Corp. of America,* 408 F.2d 16, 20 (9th Cir. 1969). Courts also generally give weight to plaintiff's original choice of forum, although the amount of weight afforded this factor varies depending on the circumstances. *See* 15 Wright et al., *supra,* § 3848, at 375-94 (noting "bewildering variety of formulations on how much weight is to be given to plaintiff's choice of forum").

#### B. DISCUSSION

#### 1. DISTRICT WHERE ACTION MIGHT HAVE BEEN BROUGHT

It is clear from the statutory language of § 1404(a) that, as a threshold issue, the district to which the case is to be transferred must be one in which the action "might have been brought." 28 U.S.C. § 1404(a); *see also Van Dusen,* 376 U.S. at 616. Essentially, this means that the action may not be transferred to a district or division that would be an improper venue, that would lack subject matter jurisdiction, or in which defendants would not be subject to process and within the personal

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1994 WL 822477 (C.D.Cal.), 23 Media L. Rep. 1498
**(Cite as: Not Reported in F.Supp.)**

jurisdiction of the transferor court. *See Hoffman v. Blaski,* 363 U.S. 335 (1960) (venue); *Whittier v. Emmet,* 281 F.2d 24 (D.C. Cir. 1960) (subject matter jurisdiction), *cert. denied,* 364 U.S. 935 (1961); *Foster-Milburn Co. v. Knight,* 181 F.2d 949 (2d Cir. 1950) (process and personal jurisdiction).

*\*3* Here, moving defendants urge the Court to transfer this action to the district court for the Southern District of New York. This would appear to be a proper transferor court since plaintiff's case might have initially been brought there. First, pursuant to 28 U.S.C. § 1391(a), plaintiff might have laid venue in that district since, inter alia, a substantial part of the events giving rise to plaintiff's claim occurred there; to wit, the authors contracted with the publishers in New York, all editorial work and related tasks were performed there, and all documentation between the parties generated during the editorial process was generated and is maintained in that state. (Mazur Decl. ¶ 4.)

Second, subject matter jurisdiction also might have been properly vested in the referenced New York court under 28 U.S.C. § 1332; to wit, the complete diversity that exists in this forum would have, of course, existed in the transferor forum.

Lastly, the defendants would have been subject to process and within the transferor court's personal jurisdiction. Defendants HarperCollins and Basic Books are residents of New York by virtue of maintaining their principal places of business in that state. (Mazur Decl. ¶ 3.) As defendants Berglas and Baumeister contracted with HarperCollins in New York, (Mazur Decl. ¶ 4), they too are subject to process and within the personal jurisdiction of the courts of that state, N.Y. Civ. Prac. L. & R. 302(a)(1) (providing for jurisdiction over non-domiciliaries who "transact any business within the state").

Based on the foregoing, the Southern District of New York is a district in which plaintiff's action might have been brought, and the threshold criteria for transfer under § 1404(a) is thus satisfied.

### 2. BALANCE OF OTHER FACTORS

The additional factors, *see supra,* considered and balanced by this Court also favor transfer of venue.

### a. CONVENIENCE OF WITNESSES AND PARTIES

It is clear from the statutory language that the Court must consider the convenience of the witnesses who may be called to testify at trial. 28 U.S.C. § 1404(a). Courts and commentators have suggested that this factor is "[p]robably the most important" to the Court's analysis. 15 Wright et al., *supra,* § 3851, at 415; *see also Viacom Int'l, Inc. v. Melvin Simon Productions, Inc.,* 774 F. Supp. 858, 868 (S.D.N.Y. 1991) (describing factor as "key test"); *Rose v. Franchetti,* 713 F. Supp. 1203, 1214 (N.D. Ill. 1989) (describing factor as "most important"); *Saminsky v. Occidental Petroleum Corp.,* 373 F. Supp. 257, 259 (S.D.N.Y 1974) (describing factor as "most significant").

Defendants contend that the Southern District of New York is a more convenient forum for most of the anticipated witnesses in this action than is the Central District of California. This is certainly true with respect to the employees of HarperCollins who might be called as witnesses, as they reside and work in New York. These potential witnesses include: (1) Marilyn Mazur, Counsel for HarperCollins, who appears to have knowledge of, inter alia, the contract between HarperCollins and the authors and the business and editorial practices of that defendant, (Mazur Decl., *passim*); (2) Jo Ann Miller, Vice President and Senior Editor of Basic Books, who was responsible for overseeing production of *Your Own Worst Enemy* and who reviewed the sources upon which the authors based their work, (Miller Decl. ¶¶ 2-5); and (3) Dan Holod, Vice President of Customer Services of HarperCollins, who has knowledge of how and to whom the company distributes its publications, (Holod Decl., *passim*). Additionally, the outside editor retained directly by Berglas and Baumeister is also a resident of New York. (Baumeister Decl. ¶ 4.)

*\*4* Defendants also intend to call several non-employee witnesses who would appear to be

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1994 WL 822477 (C.D.Cal.), 23 Media L. Rep. 1498
**(Cite as: Not Reported in F.Supp.)**

less inconvenienced by attending trial in New York. Specifically, defendants intend to call the police officers from Martha's Vineyard who were responsible for plaintiff's arrest in July 1989, as well as witnesses who were in the company of Fodor immediately before his arrest and who apparently reside in Massachusetts or New York. (Mazur Decl. ¶ 5.) Defendants further intend to call New-York-based witnesses to testify as to plaintiff's reputation within the classical music community, both before and after publication of *Your Own Worst Enemy*. (*Id.* ¶ 7.)

Additionally, defendants intend to call Thomas F. Parker, who is apparently plaintiff's former agent, to testify both as to plaintiff's reputation and to the truth or falsity of defendant's statements. (*Id.* ¶ 6.) As it appears that Parker maintains his office or home in New York City, (*Id.* ¶ 6; *id.* Ex. A), it would also be less inconvenient for him to attend trial in New York.

Lastly, the co-author defendants Berglas and Baumeister, residents of Massachusetts and Ohio respectively, have both indicated that New York would be a more convenient forum for them. (Berglas Decl. ¶ 9; Baumeister Decl. ¶ 4.)

In opposition, plaintiff first contends that many of the witnesses identified by defendants are not necessary. This assertion is not well taken, as each witness identified above appears to have personal knowledge of facts necessary or helpful to defendants' defense or position on damages.

Plaintiff also states that "many of my character witnesses are here in this area [California] and those that are not, I am confident would be willing to travel here." (Fodor Decl. ¶ 15.) This is not terribly persuasive: First, plaintiff does not specifically identify any witness whom he intends to call. Second, several declarations submitted by plaintiff in opposition to this motion, which would appear to emanate from potential witnesses, belie this assertion.

James Vrettos, who is plaintiff's present manager, states that his offices are in New York, but that he would not consider it a "great inconvenience" to testify in California. (Vrettos Decl. ¶ 5.) John McCann, who appears to have knowledge of certain damages alleged by plaintiff, maintains his office in New Jersey but states that "it would not be any more of an inconvenience ... to testify in Los Angeles than it would in New York." (McCann Decl. ¶ 4.) Mark Muheim, who also appears to have knowledge of damages claimed by plaintiff, works in Washington, D.C. and candidly states that it "would be inconvenient ... to testify either in Los Angeles or in New York." (Muheim Decl. ¶ 4.) (With trial in New York, Muheim will at least not have to travel as far and will be spared from crossing time zones.) Vincent Wagner, who formerly served as plaintiff's manager and who could apparently testify as to plaintiff's abilities, maintains his office in New York, but states that he would not "consider it a great inconvenience to testify in Los Angeles." (Wagner Decl. ¶ 3.)

*5 Thus, although these witness may be willing to testify in California, it would clearly be more convenient for most or all of them to testify in New York.

Lastly, plaintiff, a resident of California, states that transfer "would *severely* impact on my ability to proceed with this action and would deprive me of the counsel of my choice." (Fodor Decl. ¶ 15.) Aside from having to retain New York counsel, which is not a proper consideration under applicable case law, *see infra*, plaintiff does not describe how he would be inconvenienced. And, as it appears that his present manager is based in New York, (*see* Vrettos Decl. ¶ 1), plaintiff certainly appears to have some contacts in that state.

In balance, it appears that the convenience of witnesses and parties would be best served by transfer to New York: the vast majority of parties and witnesses reside and work in or near New York.

b. AVAILABILITY OF COMPULSORY PROCESS

The availability of compulsory process is another factor to be considered by the Court. *Supco*, 538 F. Supp. at 1191; *cf. Gulf Oil Corp. v. Gilbert*, 330

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                       Page 5
Not Reported in F.Supp., 1994 WL 822477 (C.D.Cal.), 23 Media L. Rep. 1498
**(Cite as: Not Reported in F.Supp.)**

U.S. 501, 508-09 (1947). This factor obviously dovetails with the witness-related issues discussed above.

Aside from the employee witnesses, it would appear that many anticipated witnesses identified above are beyond the subpoena power of this Court, as they are not residents of California. Defendants' correctly note that, if trial proceeds in California, they will be at a disadvantage with respect to the many New-York-based witnesses identified by plaintiff, as the appearance of these witnesses will then be entirely at the election of plaintiff.

It thus appears that the availability of compulsory process in New York also favors transfer to that forum.

### c. LENGTH OF TIME PENDING

The Court may also look to the length of time that the case has been pending before transfer. *See Kasey,* 408 F.2d at 20 (stating that transfer of case, which had been pending for nine years, "would not serve the interest of justice").

Here, as removal was perfected only in July of this year, the case had been pending for a mere three months before defendants' request to transfer venue was made. Thus, this case has not been pending in this Court for a sufficient length of time to militate against transfer.

### d. JUDICIAL ECONOMY

The Court should also consider judicial economy when determining whether transfer is proper. *Van Dusen,* 376 U.S. at 645.

This Court has expended little time or treasure with respect to this case: No analysis of the merits has been made since no dispositive motions have yet been considered. In fact, the mandatory status conference has not even been held, and as noted *supra,* this matter has been pending for only a short period of time.

The interests in judicial economy would therefore not militate against transfer.

### e. EASE OF ACCESS TO SOURCES OF PROOF

Yet another factor that should be considered is the relative ease of access to sources of proof. *See Pacific Car & Foundry,* 403 F.2d at 953.

*6 Here it is undisputed that all relevant documentary evidence is maintained in New York. (Mazur Decl. ¶ 4.) Plaintiff asserts that much has already been produced in discovery, but that assertion ignores the concerns underlying this factor. If trial is held outside New York, the originals or sufficient duplicates will have to be shipped there and authenticating witnesses will have to be produced.

Thus, this prong clearly favors venue in New York.

### f. FAMILIARITY WITH STATE LAW

In *Van Dusen,* the Supreme Court held, based on the principles underlying diversity of citizenship jurisdiction and the desire to avoid the inequitable results that might result from a change in the applicable law upon transfer, that the law that would have been applied in the transferor court is the law that shall be applied in the transferee court. 376 U.S. at 639. The high court also stated that transfer from the state whose law was applicable might be disfavored if that state's pertinent law was unsettled or posed difficult questions. *Id.* at 645-46.

Although no choice of law determination has been made, the parties have not identified any unsettled areas in the laws of either California or New York that would weigh for or against transfer. Additionally, many of the defenses urged herein are based on federal constitutional law, with which both the transferor and transferee courts are equally familiar.

Based on the foregoing, there is no reason to deny transfer based on the presumption that this Court has a greater familiarity with California law, should

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 6

Not Reported in F.Supp., 1994 WL 822477 (C.D.Cal.), 23 Media L. Rep. 1498
**(Cite as: Not Reported in F.Supp.)**

the law of California ultimately be held applicable.

### g. PLAINTIFF'S CHOICE OF FORUM

As noted above, the plaintiff's choice of forum is entitled to some weight in the Court's determination, *Norwood v. Kirkpatrick,* 349 U.S. 29 (1955), although the importance of this factor varies among jurisdictions and in light of the subject matter of the case. For example, plaintiff's choice has been said to be "a factor," "held in varying degrees of esteem," "highly esteemed," entitled to "great weight," entitled to "substantial weight," and that it should " rarely be disturbed." 15 Wright et al., *supra,* § 3848, at 375-77 (internal quotation marks omitted). However, plaintiff's choice is also said "to have less weight than usual in derivative actions, class actions, and in other particular kinds of cases." *Id.* at 378-79 (footnotes omitted).

Here, plaintiff asserts that his choice of forum should be "accorded substantial weight." (Pl.'s Opp'n at 32.) First, even if plaintiff's choice is accorded substantial weight, the Court finds that it would be outweighed by the other factors discussed herein.

Additionally, the Ninth Circuit case relied on by plaintiff does not clearly support this assertion. In *Pacific Car & Foundry,* an antitrust case, the district court denied defendant's motion for transfer under § 1404(a). 403 F.2d at 951. On review by mandamus, the circuit court began by noting that "[t]here can be no doubt that in antitrust cases the plaintiff is given a wide choice of forum." *Id.* 953. The court, however, further stated that "Plaintiff's choice of forum, then, is not the final word. In judging the weight to be given such a choice, as is the case with other types of actions, consideration must be given to the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to his cause of action." *Id.* at 954. As neither party had substantial business contacts with the forum state, the court issued the writ and found that plaintiff's choice of forum was "supported only by the fact that it was chosen." *Id.* at 954-55.

*7 It is thus clear under the Ninth Circuit precedent cited by plaintiff that the weight to be given plaintiff's choice of forum is a malleable concept that varies with the facts and subject matter of the case. For the reasons discussed below, the Court finds that the instant action is one of the "particular kinds of cases" in which plaintiff's choice is entitled to less than substantial weight.

In the *Dworkin* case, District Judge Brimmer addressed the unique venue issues that are raised when the defendant's rights under the First Amendment are at issue. In that defamation case, the defendant magazine moved to transfer venue under § 1404(a) from the district court in Wyoming to the Central District of California. 647 F. Supp. at 1279. Judge Brimmer ultimately granted defendant's motion, based in part on his concern that First Amendment rights could be chilled by not allowing transfer. Quoting extensively from the district court's opinion on a § 1404(a) motion in the *Westmoreland v. CBS* case, in which General William Westmoreland had filed a libel suit against CBS in his home district of South Carolina, Judge Brimmer stated:

the Second Circuit [has] observed that the First Amendment may be regarded "as giving forum non conveniens special dimensions and constitutional stature in actions for defamation against publishers and broadcasters." [*Buckley v. New York Post,* 373 F.2d 175, 183-84 (2d Cir. 1967).] Although not controlling, this Court is not unmindful of the *chilling effect on First Amendment rights when a defendant is subjected to a trial involving weeks or months and a tremendous expense in a forum several hundred miles from his home and occupation.* Conceivably, this factor could become a prime consideration in a publisher's or telecaster's decision to report and publish items critical of national figures. To hold otherwise could provide a vehicle for a plaintiff aggrieved, real or imagined, to bombard the national media with litigation with no other purpose that harassment.

647 F. Supp. at 1283 (quoting *Westmoreland v. CBS,* 8 Med. L. Rptr. 2593, 2496-97 (D.S.C. 1982) (emphasis added by court).

Thus, based on the important consideration of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03894-MMC   Document 25-5   Filed 08/31/2007   Page 8 of 9   Page 8 of 9

Not Reported in F.Supp.                                                                 Page 7
Not Reported in F.Supp., 1994 WL 822477 (C.D.Cal.), 23 Media L. Rep. 1498
**(Cite as: Not Reported in F.Supp.)**

protecting First Amendment rights, plaintiff's choice of forum must be given less weight than might otherwise be afforded under a § 1404(a) analysis.

Based on the foregoing, plaintiff's choice of forum is not a sufficient reason for this Court to deny transfer: first, even if plaintiff's choice is given substantial weight, it is outweighed by the other factors discussed herein; second, in light of the speech-related concerns at issue, plaintiff's choice must be afforded less than substantial weight.

### h. CONVENIENCE OF COUNSEL

Plaintiff contends that transfer of this case to New York "would deprive [him] of the counsel of [his] choice." (Fodor Decl. ¶ 15.) This argument is based on the ground that present counsel is not admitted to practice in the state of New York. (Adsit Decl. ¶ 11.)

*8 This is not a proper factor for the Court to consider in deciding whether transfer is warranted. *Solomon v. Continental American Life Ins. Co.,* 472 F.2d 1043, 1047 (3d Cir. 1973) ("The convenience of counsel is not a factor to be considered."); *Burstein v. Applied Extrusion Technologies, Inc.,* 829 F. Supp. 106 (D. Del. 1992) (same). Although plaintiff does not specifically argue this point, plaintiff's inconvenience in retaining local counsel is also entitled to little or no weight. *Scheinbart v. Certain-Teed Prods. Corp.,* 367 F. Supp. 707, 710 (S.D.N.Y. 1973).

Additionally, it would appear that plaintiff's present counsel might be able to utilize the pro hac vice procedure, if available, in the transferee court.

### i. INTERESTS OF JUSTICE

The transfer statute itself requires that the interests of justice be served by the transfer. 28 U.S.C. § 1404(a).

Based on the individual factors identified above, and especially on the concerns raised by the First Amendment, the Court finds that the requested transfer of venue is indeed in the interest of justice.

### V. CONCLUSION

Based on the foregoing, the Court hereby ORDERS that VENUE BE TRANSFERRED to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

SO ORDERED.

FN1. At 24, Eugene Fodor became the first American to ever win the top prize in the prestigious Tchaikovsky violin competition in Moscow. He returned a hero, like the young Van Cliburn. Fodor was given a key to New York City, played for Mayor Beame, and was the first artist invited to perform in the Ford White House. He wasn't just talented, he was a media star, an irresistible combination of Western dude and musical prodigy--Eugene the Kid.
Pheobe Hoban, *Prodigal Son: After the Drug Bust, Eugene Fodor Tries a Comeback,* N.Y. Mag., Dec. 4, 1989, at 100, 100-01 (Berglas Decl., Ex. A, at 0011-12).

FN2. By way of example, these references include the following: (1) "Yet in the wake of his success, Fodor began struggling with a psychological demon. He alienated prospective sponsors and found his credibility with colleagues damaged as he failed to live up to expectations. He began experimenting with drugs, and when he was arrested for breaking into a hotel room at age thirty-nine, 34 grams of cocaine as well as a hypodermic needle with traces of heroin were found in his possession[,]" *Your Own Worst Enemy, supra,* at 1; (2) " [W]hy would Fodor throw away his success just when he had everything going for him?", *id.* at 3; (3) "This book is devoted to understanding the behaviors of people like ... Fodor who inflict pain,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 8
Not Reported in F.Supp., 1994 WL 822477 (C.D.Cal.), 23 Media L. Rep. 1498
**(Cite as: Not Reported in F.Supp.)**

suffering, and hardships on themselves for no apparent reason[,]" *id.*

FN3. Berglas apparently stated:
Alcohol and/or drug abuse serves two purposes for self-destructive people. It helps them blot out their own faults and inadequacies ... and gives them an external excuse for failure. *Example:* Violinist Eugene Fodor was a national hero at age 24 after he won the Tchaikovsky Violin Competition in Moscow. But within a few years, his reputation sank as he turned to drugs and was eventually arrested after breaking into a hotel room.
(Compl. ¶ 25.)

FN4. This second removal proceeding properly vested subject matter jurisdiction in the district court. *See* 28 U.S.C. § 1446(b); *Powers v. Chesapeake & Ohio Ry.,* 169 U.S. 92, 102 (1898).

FN5. The Court feels that principles of comity mandate that all of the issues raised in the summary judgment papers be left for resolution by the transferee court. That is, assuming that this Court granted anything less than complete summary judgment in favor of all defendants, the transferee court would be saddled with this Court's analysis and rulings for the balance of the litigation. As the Court may raise transfer of venue sua sponte, *Mills v. Beech Aircraft Corp.,* 886 F.2d 758, 761 (5th Cir. 1989); *Starnes v. McGuire,* 512 F.2d 918, 933-34 (D.C. Cir. 1974), it is perfectly appropriate to deviate from the order in which defendants suggest these issues should be addressed.

C.D.Cal. 1994
Fodor v. Berglas
Not Reported in F.Supp., 1994 WL 822477 (C.D.Cal.), 23 Media L. Rep. 1498

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.