QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Daniel H. Bromberg (Bar No. 242659)
  danbromberg@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065

  Fred G. Bennett (Bar No. 059135)
  fredbennett@quinnemanuel.com
  Steven G. Madison (Bar No. 101006)
  stevemadison@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Respondents Leonard Bosack, The
& Trust, Richard Troiano, & Capital Partners,
L.P., Cartesian Partners, L.P., Leonard Bosack
and Bette M. Kruger Charitable Foundation, Inc.,
and & Capital, Inc.

O'MELVENY & MYERS LLP
  Steven L. Smith (Bar No.109942)
  ssmith@omm.com
  Scott T. Nonaka (Bar No. 224770)
  snonaka@omm.com
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone:    (415) 984-8700
Facsimile:    (415) 974-8701

Attorneys for Respondent Sandy Lerner

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID SOWARD, *et al.*,<br><br>        Petitioners,<br><br>    v.<br><br>THE & TRUST, *et al.*,<br><br>        Respondents. | CASE NO. C–07–3894<br><br>**RESPONDENTS' REPLY IN SUPPORT OF CROSS-MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Date:    October 5, 2007<br>Time:    9:00 a.m.<br>Crtrm.:    7, 19th floor<br>           Hon. Maxine M. Chesney<br><br>Trial Date:    None Set |

51204/2230104.1

# TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................................1

ARGUMENT ......................................................................................................1

I.  THE WESTERN DISTRICT OF WASHINGTON SHOULD DETERMINE THE
    PROPER VENUE FOR CONSOLIDATING THE PARTIES' DISPUTE ..........................1

    A.  Soward's Objections To the First-To-File Rule Should Be Directed To the
        First-Filed Court. .................................................................................1

    B.  Soward's Objections To The First-To-File Rule Are Without Merit.......................3

II. IF THIS ACTION IS NOT STAYED, IT SHOULD BE TRANSFERRED TO THE
    WESTERN DISTRICT OF WASHINGTON.............................................................6

    A.  Soward Fails To Rebut Respondents' Showing That The Western District
        Of Washington Is Already Familiar With The Parties' Dispute And That
        The Interests Of Justice Therefore Strongly Favor Consolidation There. .................6

    B.  Soward Does Not Dispute That The Western District Of Washington Is A
        Proper Venue.......................................................................................7

    C.  Soward's Claims Of Inconvenience Are Weak And Do Not Justify
        Retaining This Case In The Face The Strong Judicial Interest In
        Consolidating The Parties' Dispute Before A Judge Familiar With The
        Dispute. ..............................................................................................8

III. THE FEDERAL ARBITRATION ACT DOES NOT HELP SOWARD ..............................9

CONCLUSION ..................................................................................................10

RESPONDENTS' REPLY IN SUPPORT OF CROSS-MOTION TO STAY OR, IN THE ALTERNATIVE, TO
TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

1

# TABLE OF AUTHORITIES

2
Page

3

## Cases

4

5
*Alltrade, Inc. v. Uniweld Prods., Inc.*,
    946 F.2d 622 (9th Cir. 1991)..........................................................................1, 2, 3

6
*Amazon.com v. Cendant Corp.*,
    404 F. Supp. 2d 1256 (W.D. Wash. 2005) ................................................................8

7

8
*Am. Motorists Ins. Co. v. United Furnace Co.*,
    876 F.2d 293 (2d Cir. 1989) .........................................................................................6

9
*Am. Postal Workers Union AFL-CIO v. United States Postal Serv.*,
    682 F.2d 1280 (9th Cir. 1981) ....................................................................................8

10

11
*Bank of America, N.A. v. S.I.P. Assets, LL*,
    2007 WL 2698192 (D. Del. Sep. 11, 2007) ..............................................................3

12
*British Telecomm. plc v. McDonnell Douglas Corp.*,
    1993 WL 149860 (N.D. Cal. May 3, 1993) ..............................................................3

13

14
*Bull H/N Information Sys., Inc. v. Hutson*,
    229 F.3d 321 (1st Cir. 2000) .......................................................................................5

15
*Cantrell v. Forest Publ'g Co.*,
    419 U.S. 245 (1974) ......................................................................................................9

16

17
*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976) ......................................................................................................9

18
*Flotsam of California, Inc. v. Huntington Beach Conf. & Visitors Bureau, No. C 06-7028*,
    2007 WL 1152682 (N.D. Cal. Apr. 8, 2007) ............................................................9

19

20
*Hart Surgical, Inc. v. Ultracision, Inc.*,
    244 F.3d 231 (1st Cir. 2001) .......................................................................................4

21
*Horton v. Liberty Mut. Ins. Co.*,
    367 U.S. 348 (1961) ......................................................................................................5

22

23
*Hunt v. Washington State Apple Adver. Comm'n*,
    432 U.S. 333 (1977) ......................................................................................................5

24
*Intuitive Surgical, Inc. v. California Inst. of Tech.*,
    No. C07-0063, 2007 WL 1150787 (N.D. Cal. Apr. 18, 2007)..............................1

25

26
*Island Creek Coal Sales Co. v. City of Gainseville*,
    729 F.2d 1046 (6th Cir. 1984) ....................................................................................4

27
*M.D. Beauty, Inc. v. Gross*,
    2003 WL 24056263 (N.D. Cal. Oct. 27, 2003) .......................................................3

28

-ii-                                                   Case No. C–07–3894

# TABLE OF AUTHORITIES
## (continued)

Page

*McGregor Van de Moere, Inc. v. Paychex, Inc.,*
 927 F. Supp. 616 (W.D.N.Y. 1996) ..................................................4

*Metallgesellschaft A.G. v. M/V Capitan Constante,*
 790 F.2d 280 (2d Cir. 1986) ..........................................................4

*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
 678 F.2d 93 (9th Cir. 1982)............................................................2

*Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.,*
 935 F.2d 1019 (9th Cir. 1991) ........................................................4

*Publicis Comm. v. True North Comm., Inc.,*
 206 F.3d 725 (7th Cir. 2000)..........................................................4

*Regents of the University of California v. Eli Lilly & Co.,*
 119 F.3d 1559 (Fed. Cir. 1997) ......................................................8

*Regional Rail Reorganization Cases,*
 419 U.S. 102 (1974) ......................................................................6

*Sony Computer Entm't America, Inc. v. Am. Medical Response, Inc.,*
 2007 WL 781969 (N.D. Cal. Mar. 13, 2007) ..................................2

*St. Paul Mercury Indemnity Co. v. Red Cab Co.,*
 303 U.S. 283 (1938) ......................................................................5

### Statutes

Federal Arbitration Act, 9 U.S.C. § 1 *et seq* ...........................................8

9 U.S.C. § 12  .........................................................................................4

28 U.S.C. § 1404(a)..........................................................................1, 10

RESPONDENTS' REPLY IN SUPPORT OF CROSS-MOTION TO STAY OR, IN THE ALTERNATIVE, TO
TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

1  Respondents respectfully submit the following reply in support of their cross-motion to

2  stay or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a).

3  **INTRODUCTION**

4  Soward's opposition ignores two crucial points. First, when parallel actions are pending in

5  different courts, those actions should be consolidated, and comity demands that the court where

6  the first action was filed—here, the Western District of Washington—should determine the proper

7  venue. Second, Judge Zilly has already reviewed hundreds of pages of documents concerning this

8  case, and judicial economy therefore counsels that he preside over the parties' dispute. Nothing

9  that Soward says undermines these simple yet dispositive points.

10  **ARGUMENT**

11  **I.    THE WESTERN DISTRICT OF WASHINGTON SHOULD DETERMINE THE PROPER VENUE FOR CONSOLIDATING THE PARTIES' DISPUTE**

12  Respondents' cross-motion demonstrated that the Western District of Washington should

13  determine the proper venue for resolving the parties' dispute because (1) the suit in that district

14  involves the same issues and parties as this one, (2) the Washington suit was filed before this one,

15  and (3) Judge Zilly is already familiar with the parties' dispute. Resp. Mem. at 9-11. Soward

16  does not—and cannot—dispute these points. Nor does he offer any reason why this Court rather

17  than the Western District of Washington should determine where to consolidate the parties'

18  actions. Instead, ignoring the question of which court should decide the proper venue for the

19  parties' dispute, he argues that the first-to-file rule is inapplicable because the suit in Washington

20  was anticipatory, because the Western District of Washington lacks subject matter jurisdiction,

21  and because the balance of convenience weighs in favor of keeping this matter here. None of

22  these arguments is persuasive.

23  **A.    Soward's Objections To the First-To-File Rule Should Be Directed To the First-Filed Court.**

24

25  The most obvious flaw in Soward's arguments is that they are directed to the wrong court:

26  the first-to-file rule requires that the court where the first action was filed consider any exceptions

27  to the rule. *See Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 627-28 (9th Cir. 1991);

28  *Intuitive Surgical, Inc. v. California Inst. of Tech.*, No. C07-0063, 2007 WL 1150787, *3 (N.D.

-1-                                                    Case No. C–07–3894
RESPONDENTS' REPLY IN SUPPORT OF CROSS-MOTION TO STAY OR, IN THE ALTERNATIVE, TO
TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

1    Cal. Apr. 18, 2007) ("[T]he court in the first-filed action should decide whether there is an

2    exception to the first-to-file rule."); *Sony Computer Entm't America, Inc. v. Am. Medical*

3    *Response, Inc.*, 2007 WL 781969, *4 (N.D. Cal. Mar. 13, 2007) ("As the court with the first-filed

4    action, this Court can consider the balance of convenience exception to the first-to-file rule.").

5    　　　　Soward's invocation of exceptions to the first-to-file rule conflates two distinct aspects of

6    the rule.  As previously discussed, Resp. Mem. at 10-11, the first aspect of the rule concerns which

7    court should apply the rule and determine the proper venue, and it is governed by considerations

8    of comity which require deference to the court in which the dispute was first filed.  *See, e.g.*,

9    *Alltrade*, 946 F.2d at 628; *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982).

10   The second aspect of the rule deals with where the merits of the underlying dispute should be

11   resolved.  Specifically, it creates a presumption which "should not be disregarded lightly," that the

12   first-filed court should resolve the merits.  *Alltrade*, 946 F.2d at 625; *Pacesetter*, 678 F.2d at 95.

13   The exceptions invoked by Soward concern the application of the rule, but have no effect on the

14   core requirement that the first-filed court be the one to apply it.

15   　　　　The Ninth Circuit made this distinction clear in *Alltrade*.  In that case, Uniweld Products

16   sued Alltrade in the Southern District of Florida seeking to modify an agency decision canceling

17   Alltrade's trademark registration.  *See Alltrade*, 946 F.2d at 624.  The following day Alltrade sued

18   in the Central District of California seeking to overturn the decision entirely.  *Id.*  Applying the

19   first-to-file rule, the Central District dismissed this latter action in deference to the previously filed

20   action in Florida.  On appeal Alltrade argued that the district court erred because the Florida suit

21   was brought in bad faith, one of the exceptions to the first-to-file rule.  *Id.* at 628.  The Ninth

22   Circuit disagreed.  Although it recognized that Alltrade had raised "serious questions concerning

23   Uniweld's conduct," the court held that Alltrade had "addressed itself to the wrong court" and that

24   the district court properly deferred to the first-filed action in Florida.  *Id. But see id.* at 628-29

25   (requiring stay rather than dismissal).

26   　　　　This case is indistinguishable.  Here, as in *Alltrade*, the parties filed parallel actions, and

27   like Alltrade, Soward is asking the court in which the second action was filed to retain the case

28   based upon the anticipatory suit and inconvenience exceptions to the first-to-file rule.  Thus, just

as the plaintiff in *Alltrade* did, Soward is addressing these arguments to the wrong court. Because the action in the Western District of Washington was filed before this one, comity requires that the Western District decide the proper venue for consolidation, including the question whether the presumption in favor of the first-filed court is applicable. Indeed, comity considerations apply with even greater force here because Judge Zilly already has invested considerable time and effort in familiarizing himself with the dispute between the parties.

Soward's jurisdictional objections are misdirected as well. In *Alltrade*, there also was a jurisdictional objection, and the court of appeals held that the objection "lies in the hands of the Florida court," where the first action was filed, "not its California counterpart." *Alltrade*, 946 F.2d at 627. Indeed, comity considerations apply with special force in this context because "it would be presumptuous for [a] court to decline to apply the first-to-file rule when the court whose jurisdiction is being challenged has not had an opportunity to fully consider the issue." *British Telecomm. plc v. McDonnell Douglas Corp.*, 1993 WL 149860, *4 (N.D. Cal. May 3, 1993); *accord M.D. Beauty, Inc. v. Gross*, 2003 WL 24056263, *5 (N.D. Cal. Oct. 27, 2003); *Bank of America, N.A. v. S.I.P. Assets, LLC*, 2007 WL 2698192, *3 (D. Del. Sep. 11, 2007). Comity demands that the Western District of Washington be allowed to consider objections to its jurisdiction as well as any exceptions to the first-to-file rule.

### B.  Soward's Objections To The First-To-File Rule Are Without Merit.

If this Court does consider Soward's objections to application of the first-to-file rule, it should reject them because they are without merit.

*Anticipatory Suit*—Soward asserts that the petition to confirm and vacate filed in the Western District of Washington was an anticipatory suit because in late March, several weeks before the petition was filed, he announced that he planned to enforce the arbitration awards in San Francisco. Pet. Opp. at 8. This assertion is nonsense. When Soward made this announcement, Respondents already had an action pending in the Western District, which was not dismissed until April 19, nearly a month *after* Soward's announcement. *See* Bromberg Decl. ¶ 21 & Ex. Q. Even more important, as previously explained, Respondents filed the petition in the Western District of Washington for a perfectly legitimate reason: to preserve their right to

1    challenge Interim Award No. 4. *See* Resp. Mem. at 11 & n.8. That award was issued in January

2    2007, and Respondents therefore were concerned about the Federal Arbitration Act's requirement

3    that motions to vacate be filed within ninety days of an award. *See* 9 U.S.C. § 12.

4         *Bad Faith*—Soward contends that that Respondents' petition was filed in bad faith because

5    it sought to vacate an arbitration award that was not "final." Pet. Opp. at 8-9. Quoting from a

6    Second Circuit decision, Soward asserts that an arbitration award cannot be final unless it

7    completely determines all of the claims submitted to the arbitrators. Pet. Opp. at 8-9. That is not

8    the law. Under the Federal Arbitration Act, "an award which finally and definitely disposes of a

9    separate independent claim may be confirmed although it does not dispute of all the claims that

10    were submitted to arbitration." *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280,

11    283 (2d Cir. 1986); *see also Island Creek Coal Sales Co. v. City of Gainseville*, 729 F.2d 1046,

12    1049 (6th Cir. 1984) (holding that an arbitration award may be final and subject to judicial review

13    if it "finally and definitively disposes of a separate independent claim"). This is true even if an

14    award only decides liability and leaves the issue of damages for a later award. *See Hart Surgical,*

15    *Inc. v. Ultracision, Inc.*, 244 F.3d 231, 234 (1st Cir. 2001) (holding that a "liability determination

16    is final and subject to district court review"); *McGregor Van de Moere, Inc. v. Paychex, Inc.*, 927

17    F. Supp. 616, 618 (W.D.N.Y. 1996) (same). Indeed, the Ninth Circuit reviewed an "interim final

18    order" in one of the cases cited by Soward. *See Pacific Reinsurance Mgmt. Corp. v. Ohio*

19    *Reinsurance Corp.*, 935 F.2d 1019, 1022-23 (9th Cir. 1991); *see also Publicis Comm. v. True*

20    *North Comm., Inc.*, 206 F.3d 725, 728 (7th Cir. 2000) ("The content of a decision—not its

21    nomenclature—determines finality.").

22         Respondents had ample reason to believe that the interim awards at issue in their petition

23    to confirm and vacate were final. First, Interim Award No. 3—which Respondents seek to

24    confirm because its factual findings contradict and undermine the findings upon which Interim

25    Award No. 4 and the punitive damages are predicated (*see* Resp. Mem. at 5-6 & n.5)—was plainly

26    intended to be final: the award states that it "is intended to be confirmable upon entry by the

27    Panel." Interim Award No. 3 at 10. Second, although Interim Award No. 4 states that it is not

28    intended to be confirmable until incorporated into a final award, *see* Interim Award No. 4 at 25, it

1 also states that it includes a "full settlement and determination" of Respondents' liability for

2 compensatory damages, as well as the related factual findings, on Soward's conversion and breach

3 of fiduciary duty claims. Interim Award No. 4 at 27. Moreover, the subsequent assessment of

4 punitive damages and attorney's fees did not affect this determination. The "Final Award" states

5 that "[t]his award does not change or modify in any manner any of the Panel's earlier

6 determinations." Final Award at 3. Consequently, Interim Award No. 3, which finally and

7 definitely disposed of Soward's claims relating to the value of his interest in Cartesian, and

8 Interim Award No. 4, which finally and definitely disposed of liability and compensatory damages

9 on his tort claims, were both final for purposes of review under the Federal Arbitration Act upon

10 issuance. Thus, there is no basis for Soward's claims of bad faith.

11     *Subject Matter Jurisdiction*—Soward also asserts that the petition filed in the Western

12 District of Washington did not "place[] any amount of money in controversy" because it was filed

13 before a final award was issued. Pet. Opp. at 12. That is wrong. The petition alleged that the

14 amount in controversy exceeded $75,000, *see* Petition to Confirm and Vacate Arbitration Award

15 ¶ 6 (Bromberg Decl., Ex. R), and, contrary to Soward's suggestion, that allegation must be

16 credited unless it "appear[]s to a legal certainty that the claim is really for less than the

17 jurisdictional amount." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288

18 (1938). Even more important, the amount in controversy is determined in light of the value of the

19 right placed in issue. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347

20 (1977). Accordingly, when a party moves to vacate a partial yet final arbitration award, the

21 amount in controversy is measured not by the damages imposed in that award but rather by "the

22 amount at stake in the entire arbitration." *Bull H/N Information Sys., Inc. v. Hutson*, 229 F.3d 321,

23 329 (1st Cir. 2000); *see also Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353-54 (1961)

24 (determining amount in controversy on appeal from worker's compensation determination based

25 upon the potential value of the claim rather than the amount awarded). As demonstrated by the

26 massive final award in this matter, most of which is predicated upon Interim Award No. 4, that

27 amount clearly exceeds $75,000.

28

1    In asserting that there was nothing in controversy before a final award was issued, Soward

2    is really claiming that Respondents' challenge to Interim Award No. 4 was not ripe before the

3    final award.  Ripeness is, however, "peculiarly a question of timing," which is governed by "the

4    situation now." *Reg'l Rail Reorganization Cases*, 419 U.S. 102, 140 (1974).  "It is irrelevant

5    whether the case was ripe for review when the complaint was filed." *Am. Motorists Ins. Co. v.*

6    *United Furnace Co.*, 876 F.2d 293, 302 n.4 (2d Cir. 1989).  Accordingly, even assuming it was not

7    ripe at the time of filing, Respondents' challenge to Interim Award No. 4 is ripe at this time, now

8    that the Final Award has been entered.

9    For this reason as well, Soward's objections to application of the first-to-file rule are

10   without merit.  Under that rule, and the comity and judicial economy concerns underlying it, this

11   action must be stayed so that the Western District of Washington may decide the proper venue in

12   which to consolidate the parties' actions.

13   **II.    IF THIS ACTION IS NOT STAYED, IT SHOULD BE TRANSFERRED TO THE**
         **WESTERN DISTRICT OF WASHINGTON**

14

15   If this action is not stayed, it should be transferred to the Western District of Washington.

16   Soward asserts that there is "no earthly reason why this action should be in Washington rather

17   than California."  Resp. Mem. at 1.  In fact, there is a compelling reason: Judge Zilly is already

18   familiar with the parties' dispute, and the interests of justice strongly favor consolidating this

19   matter before him.  *Id.* at 13-16.  None of Soward's arguments even begin to undermine this point.

20         **A.    Soward Fails To Rebut Respondents' Showing That The Western District Of**
               **Washington Is Already Familiar With The Parties' Dispute And That The**
21             **Interests Of Justice Therefore Strongly Favor Consolidation There.**

22   Although Soward previously represented to the Court that Judge Zilly had "not done . . .

23   any extensive work," Response to Notice of Pendency (Bromberg Decl., Ex. W), his opposition

24   makes no attempt to defend that representation.  This is not surprising.  As previously shown,

25   Resp. Mem. at 14-15, in the suit brought in 2004 Judge Zilly received hundreds of pages of

26   documents concerning the parties' dispute and "read every piece of paper submitted."  Transcript

27   at 6-7 (Bromberg Decl., Ex. P); Bromberg Decl. ¶¶ 11-18.  In the petition filed this April, Judge

28   Zilly similarly received and reviewed hundreds of pages of documents concerning the parties'

1  arbitration.  Bromberg Decl. ¶¶ 23, 26.  As a result, Judge Zilly plainly has done extensive work in

2  familiarizing himself with the parties' dispute, and because it is in the interests of justice to

3  conserve the federal judiciary's finite resources, those interests heavily favor consolidating the

4  parties' dispute before him and avoiding wasteful duplication by this Court.  Resp. Mem. at 14-15.

5        Soward has no response to this point.  He wanly points out that the proceedings in

6  Washington have been stayed.  Pet. Opp. at 11.  Judge Zilly, however, continued the stay "[i]n

7  light of the pending motion for remand in the Northern District of California,"  8/20/2007 Minute

8  Order (Bromberg Decl., Ex. V), not this motion to transfer, and he ordered the parties to file a

9  status report within ten days of this Court's resolution of the motion to remand.  *See id*.  Thus,

10  there is no reason to conclude that he stayed the Washington action in expectation that this Court

11  would determine venue.  To the contrary, as previously explained, Judge Zilly issued the stay

12  because the Washington action cannot be consolidated with this action until the motion to remand

13  is resolved.  Resp. Mem. at 11.

14    **B.    Soward Does Not Dispute That The Western District Of Washington Is A
15          Proper Venue.**

16        Respondents demonstrated that the Western District of Washington is a proper venue

17  because the parties' relationship was centered there and a substantial part of the events underlying

18  the claims still at issue between the parties occurred there.  Resp. Mem. at 12-13.  Soward does

19  not dispute this—nor could he—given Judge Zilly's 2004 ruling that the Western District of

20  Washington is a proper and convenient venue.  10/29/2004 Minute Order at 1 (Bromberg Decl.,

21  Ex. O).  Instead, Soward asserts that Respondents "waived" the benefit of Judge Zilly's ruling by

22  agreeing to arbitrate their claims.  Pet. Opp. at 1, 6.  Soward does not, however, cite any authority

23  for this assertion or explain how Respondents relinquished their right to contest arbitration awards

24  in Washington by agreeing to submit to arbitration.  As pointed out previously, arbitration awards

25  frequently are reviewed outside the jurisdiction where the arbitration occurred.  Resp. Mem. at 17.

26

27

28

1    **C.    Soward's Claims Of Inconvenience Are Weak And Do Not Justify Retaining**
2    **This Case In The Face The Strong Judicial Interest In Consolidating The**
     **Parties' Dispute Before A Judge Familiar With The Dispute.**

3    Respondents demonstrated in the opening brief that Soward would suffer minimal

4    inconvenience litigating in Washington, where he once lived and his relationship with

5    Respondents was centered, and that this inconvenience would be outweighed by the strong interest

6    of justice in consolidating this matter before the judge already familiar with it.  Resp. Mem. at 15-

7    17.  Soward does not seriously dispute these points.  Instead, he asserts that certain factors courts

8    "may" consider in deciding whether to transfer—which, not surprisingly, omit the interests of

9    justice and judicial economy—do not support a transfer.  Pet. Opp. at 9.  Respondents' motion to

10   transfer cannot, however, be defeated by simply ignoring the elephant in the room.  Because the

11   interests of justice strongly favor consolidation of the parties' dispute before Judge Zilly, Soward

12   must show a strong countervailing interest in litigating here.  *See, e.g., Regents of the Univ. of*

13   *California v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997); *Amazon.com v. Cendant*

14   *Corp.*, 404 F. Supp.2d 1256, 1260 (W.D. Wash. 2005).  Soward has not done so.

15   For example, Soward asserts that the location where the agreements were negotiated favors

16   a San Francisco venue.  Pet. Opp. at 10.  There are, however, no contract claims in dispute.

17   Soward has received payment for all the amounts awarded him in Interim Award Nos. 1, 2, and 3,

18   and only the tort claims underlying the punitive damages award and attorneys' fees are still in

19   issue.  Thus, where the agreements between the parties were made has little significance here.[1]

20   Similarly, it makes no difference that the arbitrators applied California law to Soward's

21   punitive damages claim.  The punitive damages award will not be reviewed under California law.

22   It will reviewed under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and California law will

23   

24   [1]  In addition, the evidence cited by Soward does not support his assertions.  For example,
25   while Soward claims that his contracts with Respondents were negotiated in San Francisco, Pet.
     Opp. at 10, the declaration he cites states only that his "original contracts" were negotiated there.
26   Soward Decl. ¶ 25(A) (Bromberg Decl., Ex. J).  Similarly, while Soward claims that "the
     agreement for Cartesian Partners was negotiated by telephone with Soward in San Francisco," Pet.
27   Opp. at 10, his declaration states only that he had discussions (presumably with Bosack in
     Washington) "concerning the formation of Cartesian Partners" from there , *id.* ¶ 25(F).
28   

RESPONDENTS' REPLY IN SUPPORT OF CROSS-MOTION TO STAY OR, IN THE ALTERNATIVE, TO
TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

1    only be relevant to the extent that the arbitrators manifestly disregarded it.  *See, e.g., Am. Postal*

2    *Workers Union AFL-CIO v. United States Postal Serv.*, 682 F.2d 1280, 1284-85 (9th Cir. 1981).

3    The Western District of Washington is in every bit as good a position as this Court to determine

4    whether the arbitrators disregarded controlling authority.  As a result, the application of California

5    law to Soward's punitive damages claim also has little significance.

6         The other factors cited by Soward are largely irrelevant as well.  Soward acknowledges

7    that there is no need for compulsory process because this action concerns the enforcement of

8    arbitration awards, *see* Pet. Opp. at 11, and although he points out that records, transcripts, and

9    other materials relating to the arbitration are located in San Francisco, *see id.*, he does not explain

10   how that has significance when there will be no evidentiary hearings in these proceedings, and all

11   documentary materials presumably will be filed electronically.  Soward also invokes the deference

12   owed a plaintiff's choice of forum.  *Id.* at 10.  However, as previously shown, that deference is

13   minimal where, as here, suit has been brought in another forum.  *See* Resp. Mem. at 17.

14        Finally, Soward asserts that it may be less expensive to proceed in this court because it will

15   be necessary to retain local counsel and to incur travel costs if this action is heard in Washington.

16   Pet. Opp. at 10.  Soward has, however, already retained local counsel in Washington, and, as this

17   Court has observed, it is not a major inconvenience for the parties to travel to a large city such as

18   Seattle for hearings.  *See, e.g., Flotsam of California, Inc. v. Huntington Beach Conf. & Visitors*

19   *Bureau*, No. C 06-7028, 2007 WL 1152682, *2 (N.D. Cal. Apr. 8, 2007).  Moreover, as Soward

20   recently has received nearly half a million dollars in satisfaction of the unchallenged portions of

21   the arbitration awards, the expense of traveling up to Seattle for hearing will not significantly

22   inconvenience him.  Thus, Soward has not offered any substantial reason for the Court to retain

23   this matter and certainly no reason that can overcome the strong public interest in consolidating

24   the parties' dispute in Washington before Judge Zilly who already is familiar with the dispute.

25   **III.    THE FEDERAL ARBITRATION ACT DOES NOT HELP SOWARD**

26        At the end of his brief, Soward argues that staying this case would conflict with the Federal

27   Arbitration Act's goal of expeditious handling of arbitration proceedings.  Pet. Opp. at 11-12.  In

28   fact, a stay would further the FAA's goals because Judge Zilly, due to his familiarity with the

1    parties' dispute, will be able to digest the parties' arguments and render a more speedy decision

2    than this Court. Here again, Soward's argument cannot withstand analysis.[2]

3                                    **CONCLUSION**

4          For the foregoing reasons, this matter should be stayed in light of the action pending before

5    Judge Zilly in the Western District of Washington. Alternatively, this case should be transferred

6    to the Western District of Washington in the interests of justice pursuant to 28 U.S.C. § 1404(a).

7    DATED: September 21, 2007      QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
8

9
                                   By  /s/  Daniel H. Bromberg
10                                     Attorneys for Respondents Leonard Bosack, The & Trust,
                                       Richard Troiano, & Capital Partners, L.P., Cartesian
11                                     Partners, L.P., Leonard Bosack and Bette M. Kruger
                                       Charitable Foundation, Inc., and & Capital, Inc.
12
     DATED: September 21, 2007      O'MELVENY & MYERS LLP
13

14
                                   By  /s/  Scott T. Nonaka
15                                     Attorneys for Respondent Sandy Lerner

16

17
     _____
18      [2]  Soward's factual assertions cannot withstand analysis either. In particular, his suggestion
     that Respondents have misled the court (*see* Pet. Opp. at 3-4) is baseless. Most of Soward's
19   objections concern Respondents' description of the Clark Nuber audit. *See* Pl. Opp. at 3-4
     (discussing Resp. Mem. at 3). Soward does not, however, contend that Respondents
20   mischaracterized the audit. Instead, he asserts that the audit was contradicted by the arbitrators'
     findings. There is, however, only one instance in which the arbitrators directly contradicted the
21   audit, and Respondents recognized this by saying that audit revealed "what appeared to be" excess
     distributions. Resp. Mem. at 3; *see also* Interim Award No. 1 at 17-19 (recognizing that the
22   distributions violated the terms of the & Capital Agreement but finding those modified by
     conduct). Soward also objects to Respondents' characterization of the arbitration awards, *see* Pet.
23   Opp. at 4, but he does not dispute the points to which Respondents were referring, namely, that he
     dropped his bad faith termination claim and received less than half of the damages he requested.
24   *See* Resp. Mem. at 5, ll. 4-8. Soward's assertion that the arbitrators found negligence but no
     intentional misconduct (Pet. Opp. at 3) is baseless as well. In fact, the arbitrators found that
25   Soward's conduct was reckless, *see* Interim Award No. 1 at 34, 39-43, 52-55; Interim Award No.
26   2 at 5-7, a "higher degree of culpability than negligence" which is frequently considered a form of
27   intentional misconduct. *Cantrell v. Forest Publ'g Co.*, 419 U.S. 245, 251 n.3 (1974); *Ernst &
     Ernst v. Hochfelder*, 425 U.S. 185, 193-94 n.12 (1976).
28

     RESPONDENTS' REPLY IN SUPPORT OF CROSS-MOTION TO STAY OR, IN THE ALTERNATIVE, TO
                    TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)